UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



---

THE DISTRICT DENTAL SOCIETY OF THE
FIRST JUDICIAL DISTRICT, D/B/A THE NEW
YORK COUNTY DENTAL SOCIETY

                               Plaintiffs,

- against -

THE NEW YORK COUNTY DENTAL
ASSOCIATION, INC., ELLIOTT MOSKOWITZ,
MELVYN LEIFERT, and ROBERT RAIBER

                               Defendants.

Case No.

**COMPLAINT**

---

       Plaintiff, The District Dental Society of the First Judicial District, d/b/a the New York County Dental Society, sues Defendants, New York County Dental Association, Inc., Elliott Moskowitz, individually, Melvyn Leifert, individually and Robert Raiber, individually, and alleges as follows:

## NATURE OF ACTION

       1.    This is an action for unfair competition in violation of Section 43(a) of the Lanham Trademark Act, ("Lanham Act"), 15 U.S.C. § 1125(a); for related claims of common law trademark infringement and unfair competition; for tortious interference with business relations; for unfair and deceptive trade practices in violation of New York Gen. Bus. Law § 349; for violation of New York Gen. Bus. Law § 133; and for unjust enrichment.

## PARTIES, JURISDICTION AND VENUE

       2.    Plaintiff, The District Dental Society of the First Judicial District d/b/a the New York County Dental Society (the "NYCDS") is a professional organization, incorporated

pursuant to Chapter 152 of the Laws of the State of New York. The NYCDS's principal place of business is located at 6 East 43rd Street, New York, New York.

3. Defendant, New York County Dental Association, Inc. ("Defendant" or the "New Association") is a professional organization, incorporated under Section 402 of the New York Not-for-Profit Corporation Law (the "NPCL") on February 22, 2008. Defendant does not list an address on its Certificate of Incorporation or its website. Upon information and belief, Defendant's principal place of business is 11 Fifth Avenue, New York, New York 10003 as that is the address listed for service of process.

4. Defendant Dr. Elliott Moskowitz ("Moskowitz") is an individual. Upon information and belief, Moskowitz resides at 11 Fifth Avenue, New York, New York 10003.

5. Defendant Dr. Melvyn Leifert ("Leifert") is an individual. Upon information and belief, Leifert resides at 14 Rutland Road, Great Neck, New York 11020.

6. Defendant Dr. Robert B. Raiber ("Raiber") is an individual. Upon information and belief, Raiber resides at 1385 York Avenue #33D New York, New York 10021.

7. This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. section 1331 because this action arises under the Lanham Act, 15 U.S.C. sections 1114 and 1125, and pursuant to the doctrine of supplemental jurisdiction.

8. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. sections 1391(b) and 1400(a) because the acts that form the basis for this Complaint occurred in this District, and a majority of the documents and witnesses are located here.

## GENERAL ALLEGATIONS

### The NYCDS Formation and Service Marks

9. The NYCDS is a professional organization of dentists licensed and registered in New York State. It is the preeminent organization for professional dentistry in New York County.

10. The NYCDS seeks to promote the science of dentistry, safeguard the interests of the public and the dental profession, elevate the standards of dental care and improve the methods of dental education, foster fraternal relations among dentists, secure the enactment and enforcement of just laws related to the practice of dentistry and enlighten the public regarding issues related to oral health.

11. To that end, the NYCDS provides continuing education and professional training programs, offers products and services to assist its members in providing high quality dental care, advocates for legislation that will promote the best interests of the dental profession and advance patient care in New York County, and educates the public on issues related to dental care and oral health.

12. The NYCDS has approximately 2,550 member dentists. Its membership is comprised primarily of "Active Members," *i.e.*, dentists who spend at least 50% of their time practicing dentistry in New York County. The NYCDS also offers other categories of membership, such as "student membership" for individuals attending dental school or a post-graduate program in dentistry and who reside or attend school in New York County, "associate membership" for dentists who are active members of another component dental NYCDS but wish to join the NYCDS as non-voting members in order to avail themselves of certain membership benefits and, "retired membership" for Active Members of NYCDS who no longer earn income from any activity for which a license to practice dentistry or dental hygiene is

3

required or from service as a dental administrator, dental consultant or faculty member of a dental school.

13. The NYCDS was incorporated on June 24, 1868, pursuant to Chapter 152 of the Laws of the State of New York, enacted on April 7, 1868 (known as "An Act to incorporate the Dental Societies for the purpose of improving and regulating the practice of dentistry in this State"), and continued by Chapter 987, Section 6 of the Laws of 1971 as amended by Chapter 138, Section 1 of the Laws of 1980.

14. The NYCDS has been recognized by the Internal Revenue Service as an organization exempt from federal taxation on Section 501(c)(6) of the Internal Revenue Code. Section 501(c)(6) of the Code provides an exemption from federal taxation for business leagues, professional associations and similar entities organized to promote a common business interest provided that such entities are not organized for profit and no part of their net earnings inures to the benefit of any private individual.

15. On June 19, 1998 the NYCDS filed with the New York Department of State an Assumed Name Certificate authorizing it to do business under the name "New York County Dental Society".

16. Since at least June 1998, the NYCDS has continuously used NEW YORK COUNTY DENTAL SOCIETY as a service mark (the "Mark") in rendering its services and the marketing and advertising thereof in interstate commerce. The Mark has been continuously used since that time.

17. NEW YORK COUNTY DENTAL SOCIETY has come to be recognized and relied upon by members and dentists as identifying the NYCDS and its services.

18. The NYCDS's assumed name represents valuable goodwill.

4

19. The Mark NEW YORK COUNT DENTAL SOCIETY has acquired distinctiveness.

20. In addition, the NYCDS owns all common law rights in and to the Mark.

**The Tripartite Structure of Organized Dentistry**

21. The dental profession in the United States is structured in what is known as a "tripartite" system, consisting of a (i) local, (ii) state and (iii) national dental association.

22. Dentists in private practice in New York who seek to join the national association of dentists known as the American Dental Association ("ADA") are required to join through the appropriate component dental society in their respective county or judicial district. Dentists joining their respective county or judicial district component also become members of the New York State Dental Association ("NYSDA"), and the ADA.

23. On April 7, 1868, the New York Legislature passed an Act to incorporate dental societies for the purpose of improving and regulating the practice of dentistry in New York (Chapter 152).

24. Pursuant to this Act, local dental societies were organized consistent with the judicial districts of the Supreme Court of the State of New York and they were named "The District Dental Society" of the respective judicial district where they were located.

25. The Act specifically provided for the incorporation of local dental societies in the First through Eighth Judicial Districts. The Act authorized dentists residing in each of these eight judicial districts to meet on the first Tuesday in June, 1868, at a specific location within the district. Provided that at least 15 dentists attended such meeting, the dental society of that judicial district would be deemed incorporated and could proceed to elect officers, adopt bylaws and begin conducting its affairs. The Act further provided that should the dentists residing in

any judicial district not meet and organize on the first Tuesday in June 1868 as provided in the Act, it shall be lawful for them, upon the call of 15 dentists residing in the district, to meet and incorporate at any time.

26. Pursuant to the Act, elected delegates from the component dental societies from the various judicial districts were authorized to meet on the last Tuesday of June 1868 and form the Dental Society of the State of New York ("DSSNY"). DSSNY was formed on or about June 30, 1868. The Act was amended in 1997 to change DSSNY's name to the New York State Dental Association ("NYSDA").

27. NYSDA has approximately 13,300 members almost all of whom are members of the component local dental societies.

28. The component local dental societies each elect representatives to serve on NYSDA's governing body, known as the Board of Governors. Each component society is entitled to elect at least two representatives to the Board of Governors and may be entitled to more representatives based on the size of its membership. The Society has three representatives on the NYSDA Board of Governors, one of whom is the defendant Raiber.

29. By way of example, the NYCDS was established in 1868 as the component organization for the dentists in the First Judicial District, which then included Manhattan and portions of what is now Bronx County. A few years after the Bronx became a separate judicial district in 1982, the Bronx County Dental Society was incorporated.

30. In 1971, the Act was amended to continue the existing district dental societies and to permit the incorporation of a district dental society in any judicial district in which a district dental society is not incorporated.

31. The Act was further amended in 1980 to permit the establishment of component societies along county lines – in addition to judicial districts – to adjust the representation within NYSDA. A county component society may be formed upon the request of 15 or more dentists residing or practicing dentistry within the county and the approval of NYSDA.

32. By way of example, after the 1980 amendment permitting the formation of county component societies, the Tenth District Dental Society, which previously included dentists residing or practicing in both Nassau and Suffolk counties, became the Nassau County Dental Society and a separate county dental society was formed for Suffolk County.

33. The Act provides that a dentist may be a member of only one component society for the purposes of representation in this tripartite structure.

34. The Act provides for the incorporation of component dental societies based on geographic location to ensure adequate representation in this tripartite structure, establishes county lines as the smallest boundaries for such representation, and does not contemplate the creation of more than one dental society per county.

35. As a matter of New York law, a second component society in New York County cannot be established.

**Threats to Put the NYCDS Out of Business**

36. During 2007, tensions between NYSDA and the NYCDS involving the NYCDS's autonomy escalated. These tensions have involved, among other things, the NYCDS's right to express views and take positions on matters affecting its members, including legislative initiatives, that differ from positions taken by NYSDA management.

37. Roy Lasky, the Executive Director of NYSDA, threatened to create a NYSDA office in New York City to supplant the NYCDS and put it out of business.

38. In addition to serving as the Executive Director of NYSDA, Mr. Lasky is an officer of the Empire Dental Political Action Committee ("EDPAC"), NYSDA's political action committee. Mr. Lasky's lobbying firm, Capital Public Affairs, also serves as a lobbyist for EDPAC.

39. Specifically, Mr. Lasky warned the NYCDS that one of the functions of NYSDA's New York City office would be to provide continuing education courses free of charge in direct competition with the NYCDS's continuing education programs.

**Mr. Lasky's July 11, 2007 Telephone Call**

40. On July 11, 2007, Roy Lasky telephoned the NYCDS's Executive Director, Ellen Gerber and the NYCDS's then President, Maitreya P. Padukone, DMD.

41. Mr. Lasky's tone on the telephone conversation was threatening to Ms. Gerber and the NYCDS.

42. Mr. Lasky began the telephone conversation by stating that he understood that the NYCDS's Executive Committee would be meeting in July 2007 to question the votes at NYSDA's Board of Governor's meeting.

43. Mr. Lasky stated further that he has given up on the NYCDS because the NYCDS's members fight him at the legislative level and bypass him by directly contacting state senators and representatives.

44. Mr. Lasky complained that he needs "team players" in the city and he accused the NYCDS of not being a "team player".

45. Mr. Lasky said that he is opening an office in New York City to compete with the NYCDS and to put it out of business.

46. Mr. Lasky told then President Dr. Padukone that he (Padukone) would be responsible for the demise of the NYCDS.

47. Mr. Lasky said that the new office would be a Manhattan division with officers, a newsletter, continuing education programs and other activities.

48. Mr. Lasky claimed that an organizational meeting had already been held to form this new organization.

49. Before concluding the telephone call, Mr. Lasky said that when the NYCDS is ready to be a "team player" he will welcome the NYCDS back.

**Mr. Lasky's July 16, 2007 Memorandum**

50. On July 16, 2007, Mr. Lasky sent a memorandum, on NYSDA letterhead, to the Board of Governors, Component Presidents and Component Executive Directors with the subject line "New York City Office."

51. Mr. Lasky stated:

> NYSDA will open an office in Manhattan to better communicate with the membership and to further develop our relationship with legislative officials at both the state and local levels. A sizeable percentage of our membership either lives or practices in New York City, and it is critical that organized dentistry have a strong presence in this strategic location.

52. Further, Mr. Lasky also wrote that he had hired a former president of the NYCDS, Dr. Elliott Moskowitz, editor of the New York State Dental Journal, to be the director of the new office and that Dr. Melyvn Leifert, another past president of the NYCDS, will be the President of the new office's advisory committee.

53. In concluding, Mr. Lasky noted "[t]here can be no question that the public relations, education and public dental health benefits that will evolve will more than justify the effort we put into this important move."

9

**The Formation of the New Association**

54. On November 15, 2007, an Application for Reservation of Name under section 303 of the Not-for-Profit Corporation Law was filed with the State of New York Department of State reserving the corporate name "New York County Dental Association, Inc."

55. On February 22, 2008, the New Association was incorporated.

56. The New Association's Certificate of Incorporation identifies virtually the identical purposes as the NYCDS.

57. The New Association's Certificate of Incorporation provides that the directors of the New Association shall be Elliott Moskowitz, Melvyn Leifert and Robert B. Raiber, yet another past president of the NYCDS.

58. The New Association's Certificate of Incorporation lists its purposes as including, among other things, "[t]o promote and improve the science, art and profession of dentistry"; "[t]o promote common interests of its members through the establishment of a collegial environment for dentists to explore ethical paths of professional expression and learning as may qualify it as exempt from federal income tax pursuant to Section 501(c)(6) of the Internal Revenue Code of 1986 or the corresponding provision of any subsequent federal tax laws"; and "[t]o support the American Dental Association tri-partite structure on a local, state and national level."

59. Annexed to the New Association's Certificate of Incorporation is the consent, pursuant to Section 404(a) of the NPCL, of the Antitrust Bureau of the New York State Attorney General's Office Antitrust Bureau. Under NPCL Section 404(a), every certificate of incorporation which includes among its purposes the formation of a trade or business association must have the consent of the Attorney General annexed to the certificate before it may be filed with the State.

60.     The New Association was formed to compete with the NYCDS in violation of the limitations provided in New York law governing the composition of Dental Societies.

**The March 28, 2008 Announcement**

61.     On March 28, 2008, Dr. Elliott Moskowitz, as the Executive Director of the New Association, sent a letter to Ellen Gerber, the NYCDS's Executive Director on the New Association's letterhead announcing the formation of a new dental organization in the New York City Area called the "New York County Dental Association."

62.     The New Association's letterhead identifies the following officers: Melvyn Leifert, President, Charles Kaner, Vice President, and Robert Raiber, Secretary Treasurer.

63.     Robert Raiber is a member of the NYCDS and is one of the NYCDS's three representatives to the Board of Governors of NYSDA. He is also a member of the NYSDA Executive Committee and chair of the NYSDA Board Audit Committee. He is also Vice Chairman of the New York State Dental Foundation.

64.     For the last 80 years, NYCDS has co-sponsored the Greater New York Dental Meeting with the Second District Dental Society. This annual dental conference offering scientific sessions, continuing education, and product and technology demonstrations for dentists from all over the United States. The Greater New York Dental Meeting is the largest dental conference in North America and it is a principal source of revenue for both the NYCDS and the Second District Dental Society.

65.     In the March 28 letter, Dr. Moskowitz wrote that the New Association is dedicated to benefiting the dental profession and the public and that it will work closely with organizations that are supportive of the ADA tripartite structure.

66.     The letter provided, in pertinent part, as follows:

> The NYCDA will have a strong legislative presence in the New York City area and our efforts will complement, support and will be coordinated with the legislative goals of the ADA tripartite structure. Additionally, the NYCDA will reach out to our academic institutions in an effort to support meaningful educational programs.

67. In conclusion, Dr. Moskowitz noted that the he looks "forward to announcing upcoming projects of the New York County Dental Association."

68. At a meeting between representatives of NYSDA and the Society held on April 2, 2008, NYSDA denied any knowledge of the New Association.

**New Association's Logo**

69. The New Association's letterhead bears a logo of the Statute of Liberty which is confusingly similar to the Statute of Liberty logo that is used in conjunction with the annual Greater New York Dental Meeting.

**New Association's Website**

70. Upon information and belief, on or about February 26, 2008, Robert Raiber registered the Internet domain name for the New Association as www.nycdentalassociation.org

71. The New Association's Internet domain name is confusingly similar to the NYCDS's domain name www.nycdentalsociety.org.

72. The New Association's Internet website boasts that its goal is:

> [t]o promote the science, art and profession of dentistry as well as to support the American Dental Association Tri-partite structure on a local, state and national level. To disseminate knowledge and information to foster better oral health of the public in the County of New York in all aspects of dentistry by means of educational forums, programs, seminars, publications, the media, and to work with community and legislative bodies to promote increased awareness of the importance of oral health care.

73. In addition, the New Association's Internet website directly solicits the NYCDS's members by stating "Now New York County ADA members may join an association whose goals are to work within the tripartite system."

**Resulting Confusion**

74. The New Association's formation, in violation of New York law, and its marketing, advertising and promotion of its competing services and use of a confusingly similar service mark and similar trade name has caused and will continue to cause confusion among dentists in the organized practice of dentistry.

75. NYCDS has not granted Defendants any right, assignment or license to use its Mark in the manner set forth herein.

76. Defendants' conduct infringes upon the Mark; trades upon the NYCDS's goodwill, reputation and service mark; dilutes the distinctiveness of the Mark; caused, and will continue to cause a likelihood of confusion in the marketplace as to the source and/or sponsorship of the New Association's unauthorized services; and otherwise unfairly competes with the NYCDS as set forth herein.

77. The New Association's conduct has damaged and continues to damage the NYCDS.

78. The NYCDS has no adequate remedy at law.

**COUNT I**
**FEDERAL UNFAIR COMPETITION**
**15 U.S.C. SECTION 1125**
**(Against All Defendants)**

79. Plaintiff incorporates paragraphs 1 through 78 as if fully set forth herein.

80. The New Association's use in commerce of the NEW YORK DENTAL ASSOCIATION falsely designates the New Association and its services as originating from or being sponsored by or somehow connected with the NYCDS.

81. The New Association uses its competing mark to sell, promote, and market its services on its Internet website to gain an unfair competitive advantage over the NYCDS regarding the sale, promotion and marketing of its services.

## COUNT II
## COMMON LAW UNFAIR COMPETITION
### (Against All Defendants)

82. Plaintiff incorporates paragraphs 1 through 81 as if fully set forth herein.

83. The New Association intentionally used the mark, and distributed and publicized unauthorized services bearing the Mark.

84. In violation of New York law governing the establishment of component dental societies, Defendant, following bad-faith misrepresentations, entered into direct competition with Plaintiff using a virtually identical business name and website.

85. Defendants' actions were intended to confuse and mislead patrons and beneficiaries of Plaintiff's services so that such individuals and organizations would believe that Defendant's services were actually Plaintiff's services; an extension of Plaintiff; or services sanctioned or otherwise associated with Plaintiff. Defendants' conduct is and was calculated to deceive and confuse individuals and organizations into believing that they were receiving services authorized by Plaintiff.

86. By its actions, Defendant misappropriated Plaintiff's goodwill. Defendants' conduct further diluted, and continues to dilute, the distinctive quality of the Mark and deprives Plaintiff of its control over the manner of use thereof. By deliberately engaging in such conduct,

Defendant is intentionally passing off its services as if authorized by Plaintiff, and otherwise unjustly enriching itself by trading upon Plaintiff's goodwill and the Mark.

87.  By using a similar name, it is virtually certain that the public will be confused by the businesses using similar names.

88.  By its actions, Defendants are deceptively gaining a competitive advantage over Plaintiff in the industry with respect to using the Mark to sell, promote or market its services.

89.  As a result of Defendants' conduct, Defendant has committed acts of unfair competition.

90.  Plaintiff has been, and absent injunctive relief, will continue to be, injured as a result of Defendant's aforesaid actions.

91.  Plaintiff has no adequate remedy at law.

92.  Plaintiff has been damaged as a direct and proximate result of the Defendant's unfair competitive practices in an amount to be determined at trial.

## COUNT III
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
### (Against Defendant New Association)

93.  Plaintiff incorporates paragraphs 1 through 92 as if fully set forth herein.

94.  Plaintiff has an advantageous business relationship with each of its dentists for whom it provides services. Plaintiff has been engaged in this business for 140 years. These business relationships are sources of actual and potential revenue for Plaintiff.

95.  Defendant was and is aware of the business relationships that exist between Plaintiff and the dentists in New York County, as well as the nature and extent of Plaintiff's reliance on them.

96. In violation of New York law governing the establishment of component dental societies, Defendant unlawfully interfered and continues to interfere with Plaintiff's advantageous business relationships with its members by attempting to induce dentists in New York County to use Defendant's new venture and continue to do so.

97. Defendant has acted with conscious disregard for Plaintiff's rights and with the intent to frustrate and interfere with the Plaintiff's expectations of continuing its established business relationships.

98. Defendant's unlawful conduct has in fact diminished and damaged Plaintiff's advantageous business relationships and has made Plaintiff's dealings within the relationships substantially more difficult.

99. As a result of Defendant's efforts to interfere with and damage Plaintiff's business relationships with its member dentists in New York County, Plaintiff has suffered significant damages, in an amount to be determined at trial.

## COUNT IV
## UNFAIR AND DECEPTIVE TRADE PRACTICES
(Against Defendant New Association)

100. The NYCDS incorporates paragraphs 1 through 99 as if fully set forth herein.

101. The New Association represented to the public that they are properly qualified and licensed to provide, *inter alia,* continuing education and professional training programs and other services in the State of New York.

102. As a result, dentists reasonably relied on the representations of the New Association and as a result have been damaged and will continue to be damaged by the New Association's misrepresentation.

103. By reason of their deliberate and willful acts as set forth above, the New Association engaged in deceptive acts and trade practice in the conduct of its business within the meaning of New York General Business Law § 349.

104. The NYCDS has been, and absent injunctive relief will continue to be, irreparably harmed by the New Association's aforementioned actions.

105. The aforesaid deceptive practices have injured the plaintiff in an amount to be determined at trial.

106. Plaintiff also demands recovery of its attorney's fees.

## COUNT V
### VIOLATION OF GENERAL BUSINESS LAW SECTION 133
### (Against Defendant New Association)

107. The NYCDS incorporates paragraphs 1 through 106 as if fully set forth herein.

108. The New Association used a name with the intent to deceive and mislead the public.

109. The New Association's use of this name is likely to cause, and has caused, confusion, mistake or deception.

110. The New Association's formation violates New York law governing the establishment of component dental societies, to compete with the NYCDS and put it out of business.

111. The New Association's use of the Mark constitutes a violation of New York General Business Law § 133.

112. The aforesaid actions have injured Plaintiff in an amount to be determined at trial.

**COUNT VI**
**UNJUST ENRICHMENT**
(Against Defendant New Association)

113.   The NYCDS incorporates paragraphs 1 through 112 as if fully set forth herein.

114.   By its use of the Mark, a benefit was conferred upon the New Association of which the New Association has full appreciation and knowledge.

115.   The New Association was formed in violation of New York law governing the establishment of component dental societies, to compete with and put the NYCDS out of business.

116.   The New Association accepted and retained a benefit that rightfully belongs to Plaintiff.

117.   The New Association was unjustly enriched because it wrongfully used and retained a benefit from the NYCDS by the New Association's misappropriation of the Mark.

118.   The New Association should be ordered to disgorge its unlawful profits to the NYCDS.

**WHEREFORE**, Plaintiff respectfully prays for relief and judgment against Defendants as follows:

    a.   injunctive relief enjoining and restraining Defendants from distributing, displaying, and advertising any of Defendants' services using the Mark(s) or any confusingly similar trademarks;

    b.   injunctive relief enjoining and restraining Defendants from marketing, advertising or distributing any unauthorized services bearing any of Plaintiff's trademarks;

c. injunctive relief enjoining and restraining Defendants from marketing, advertising or providing any services in New York County in competition with Plaintiff;

d. injunctive relief enjoining and restraining Defendants from making any representations that the New Association is affiliated or associated with Plaintiff;

e. requiring Defendants and their successors, and assigns and all others acting in concert or in privity with Defendants, to account for and pay over to Plaintiff any gains, profits, enrichments, and advantages derived from Defendants' actions referred to herein;

f. requiring Defendants to pay Plaintiff statutory damages for each unauthorized use of Plaintiff's trademark referred to herein, in accordance with 15 U.S.C. section 1117(c);

g. requiring Defendants to pay Plaintiff treble damages for all damages suffered by Plaintiff resulting from Defendants' willful and intentional activities referred to herein, in accordance with 15 U.S.C. section 1117;

h. requiring Defendants to pay Plaintiff for its costs, including Plaintiff's attorney's fees and other expenses referred to herein, in accordance with 15 U.S.C. section 1117;

i. requiring Defendant New Association to pay Plaintiff damages, in an amount to be determined at trial, as a result of Defendant New Association's interference with Plaintiff's business relations;

j. requiring Defendant New Association to pay Plaintiff damages, in an amount to be determined at trial, as a result of Defendant New Association's deceptive trade practices, and recovery of Plaintiff's attorney's fees;

      k.      requiring Defendant New Association to pay Plaintiff damages, in an amount to be determined at trial, as a result of Defendant New Association's use of a name with intent to deceive and mislead;

      l.      an order directing Defendant New Association to disgorge its unlawful profits to Plaintiff, and;

      m.      any and all other relief this Court deems just and proper.

Dated: New York, New York
       June 2, 2008

HOLLAND & KNIGHT LLP

By: _____
    Sean C. Sheely
    Amy B. Kletnick

Attorneys for Plaintiff
195 Broadway
New York, New York 10007
(212) 513-3200

# 5373015_v1