UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE DISTRICT DENTAL SOCIETY OF THE
FIRST JUDICIAL DISTRICT, d/b/a THE NEW
YORK COUNTY DENTAL SOCIETY,

                                        Plaintiff,

              -against-                                     **Case No. 08 CV 05062-LTS-MHD**

THE NEW YORK COUNTY DENTAL
ASSOCIATION, INC., ELLIOTT MOSKOWITZ,
MELVYN LEIFERT, and ROBERT RAIBER,

                                        Defendants.

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
DISMISS COUNTS II, III, IV, V, AND VI OF THE COMPLAINT**

---

NIXON PEABODY LLP
Attorneys for Defendants
437 Madison Avenue
New York, New York 10022
(212) 940-3000

Tamar Y. Duvdevani, Esq.
Andrew C. Rose, Esq.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

LEGISLATIVE BACKGROUND, GOVERNANCE DOCUMENTS AND
     DEFENDANTS' NEW COMPONENT SOCIETY ........................................................... 4

   A.   The 1868 Statute ............................................................................................... 4

   B.   New York Education Law Article 133 .............................................................. 5

   C.   The ADA Constitution and By-Laws ................................................................ 6

   D.   The NYSDA Constitution & By-Laws .............................................................. 7

   E.   The Newly-Approved Component Society ........................................................ 7

PLAINTIFF'S PLEADING OF ITS ALLEGED MONOPOLY .......................................... 8

ARGUMENT ........................................................................................................................ 9

I.       STANDARDS GOVERNING A 12(B)(6) MOTION TO DISMISS ............................... 9

II.     PLAINTIFF'S NON-TRADEMARK THEORIES PERTAINING TO THE
          FORMATION OF THE DEFENDANT ASSOCIATION FAIL AS A MATTER OF
          LAW .......................................................................................................................... 10

   A.   Incorporation of the Association Did Not Violate New York State Law ......................... 10

   B.   No Law Exists Limiting the Number of Component Member Societies .......................... 11

III.    BECAUSE COUNT II RELIES UPON PLAINTIFF'S STATUTORY VIOLATION
          THEORY, IT SHOULD BE DISMISSED ........................................................................ 12

IV.    BECAUSE COUNT III RELIES UPON PLAINTIFF'S STATUTORY VIOLATION
          THEORY, IT SHOULD BE DISMISSED ........................................................................ 12

V.      BECAUSE COUNT IV RELIES UPON PLAINTIFF'S STATUTORY VIOLATION
          THEORY AND IS DEFICIENTLY PLEAD, IT SHOULD BE DISMISSED ............... 13

VI.    COUNT V SHOULD BE DISMISSED AS MOOT ....................................................... 15

VII.   BECAUSE COUNT VI RELIES UPON PLAINTIFF'S STATUTORY VIOLATION
          THEORY, IT SHOULD BE DISMISSED ........................................................................ 16

CONCLUSION ........................................................................................................................ 17

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Barba v. Data Centrum Communs., Inc.*, 07 Civ. 2443, 2008 U.S. Dist. LEXIS 16490 (S.D.N.Y. Feb. 26, 2008) ...................................................................................9

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .....................................10

*Camp Summit of Summitville, Inc. v. Visinski*, 06 Civ. 4994, 2007 U.S. Dist. LEXIS 28496 (S.D.N.Y. Apr. 13, 2007) ...................................................................12

*Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111 (2d Cir.2007) ...........................................13, 14

*County of Suffolk v. First Am. Real Estate Solutions*, 261 F.3d 179 (2d Cir. 2001).....................10

*Ehrenfeld v. Mahfouz*, 04 Civ. 9641, 2006 U.S. Dist. LEXIS 23423 (S.D.N.Y. Apr. 26, 2006).................................................................................................10

*Forrest v. Unifund Fin. Group*, 04 Civ. 5151, 2005 U.S. Dist. LEXIS 9028 (S.D.N.Y. May 12, 2005) .....................................................................................9

*Freedom Holdings Inc. v. Spitzer*, 363 F.3d 149 (2d Cir. 2004) ...................................................10

*Hearts on Fire Co., LLC v. L C Int'l Corp.*, 04 Civ. 2536, 2004 U.S. Dist. LEXIS 14828 (S.D.N.Y. July 30, 2004)...........................................................................12

*International Sport Divers Ass'n v. Marine Midland Bank, N.A.*, 25 F. Supp. 2d 101 (W.D.N.Y. 1998) .........................................................................................14

*Judith Ripka Designs v. Preville*, 935 F. Supp. 237 (S.D.N.Y. 1996)..........................................15

*Kaye v. Grossman*, 202 F.3d 611 (2d Cir. 2000) .........................................................................16

*OneBeacon Ins. Co. v. Forman Int'l*, 04 Civ. 2271, 2005 U.S. Dist. LEXIS 648 (S.D.N.Y. Jan. 19, 2005) .....................................................................................9

*People v. First Am. Corp.*, 07 Civ. 10397, 2008 U.S. Dist. LEXIS 51790 (S.D.N.Y. July 8, 2008)..................................................................................................13

*Peter L. Leepson, P.C. v. Allan Riley Co.*, 04 Civ. 3720, 2006 U.S. Dist. LEXIS 52875 (S.D.N.Y. July 31, 2006).........................................................................10

*In re Pfizer Inc. Sec. Litig.*, 04 Civ. 9866, 2008 U.S. Dist. LEXIS 50923 (S.D.N.Y. July 1, 2008)..................................................................................................10

## STATE CASES

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20
(1995) ...................................................................................................................14

*Second Dist. Dental Soc. v. Boyland*, 139 N.Y.S.2d 123 (N.Y. Sup. Ct. 1955) .............................5

*Wilma Gowns, Inc. v. Wilma Juniors, Inc.*, 82 N.Y.S.2d 119 (N.Y. Sup. Ct. 1948) ....................15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE DISTRICT DENTAL SOCIETY OF THE
FIRST JUDICIAL DISTRICT, d/b/a THE NEW
YORK COUNTY DENTAL SOCIETY,

                                        Plaintiff,

              -against-                                **Case No. 08 CV 05062-LTS-MHD**

THE NEW YORK COUNTY DENTAL
ASSOCIATION, INC., ELLIOTT MOSKOWITZ,
MELVYN LEIFERT, and ROBERT RAIBER,

                                        Defendants.

---

Defendants New York County Dental Association, Elliott Moskowitz, Melvyn Leifert, and Robert Raiber ("defendants") respectfully submit this Memorandum of Law in Support of their Motion to Dismiss plaintiff New York County Dental Society's (the "Society") Second, Third, Fourth, Fifth, and Sixth Counts of plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

In this action, the Society contends that they have a statutory monopoly to be the only professional organization of dentists in New York County. The Society asserts an assortment of trademark and unfair competition claims nominally based upon defendant's former use of a trade name, but which all have as their essential underpinning this purported statutory monopoly theory. The Society appears either to suggest that no other group of dentists may incorporate as a professional society in New York County or that no other professional society of dentists in New York County is entitled to be a component member of the New York State Dental Association (the "NYSDA") due to a now-repealed law enacted in 1868. Thus, it asserts that any competition with it in New York County amounts to unfair competition, deceptive trade

practices, and tortious interference with its business.  The Society is simply wrong, and yet it has concocted this lawsuit in an attempt to stymie legitimate competition that has been approved by every proper authority.

When the defendant New York County Dental Association (the "Association") was formed, it was *not* a component society of the NYSDA.  Only the NYSDA has the power to approve or remove district or county societies as component members.  (*See, e.g.,* Exhibits A, E, F.)  Thus, simply incorporating in New York State did not make the Association a component member of the tripartite system established in this Country for the licensure of dentists.  *See infra* at II(A).  The Society is apparently asserting, incorrectly, that New York State law bars a group of individuals from incorporating with any purpose relating to promoting the science of dentistry in New York County.

For support, the Society invokes an 1868 Statute that - by the Society's own admission - has been legislatively superseded and is no longer good law.  (Compl. ¶ 30-31.)  Even absent this concession, a plain reading of the statute itself reveals no language that would bestow upon the Society a "statutory monopoly".  Instead, the  purpose of the 1868 Statute was simply to create dental societies that would improve and regulate the practice of dentistry in New York State.  And, the system contemplated by that statute was superseded by the methods described under the State's present Education Law, Title 8, Article 133.  The Society has ignored, perhaps deliberately, the superseding impact of the Education Law and, moreover, like the 1868 statute, Education Law Article 133 nowhere contains language granting a statutory monopoly to the Society.  In fact, when Article 133 was amended, it specifically provided for the continuation of the currently established dental societies in each district (like the plaintiff) *and* had provisions for adding *new* district and county dental societies (like the defendant).  Thus, this Education Law

provision has never dictated that only one society may exist in each judicial district or county, and nowhere has it ever stated, by implication or otherwise, that defendant's organization violates any laws.

Moreover, neither the American Dental Association (the "ADA") nor the NYSDA By-Laws create this so-called statutory monopoly. The ADA's By-Laws specifically authorize each state dental association to govern the organization of that states' component societies. And, the NYSDA's By-Laws specifically state, "[p]ursuant to the laws of the State of New York, there may be *at least* one component society in each Judicial District in the State of New York" (*See* Exhibit A at Chapter II, § 10.[1]) (emphasis added); language that clearly contemplates *more than one* society per judicial district.

Indeed, on July 9, 2008 the NYSDA Board of Governors, who preside over all component societies in New York State, including plaintiff, approved the status of the defendant, now the Manhattan Dental Association[2] (the "MDA"), as an official component society located in New York County. Accordingly, there now exist two legislatively authorized and endorsed component societies in New York County; a legal reality that wholly undermines plaintiff's "statutory monopoly" theory. Accordingly, all of plaintiff's claims that rely upon this theory should be dismissed.

---

[1]   Unless otherwise noted, all references to Exhibits are to the July 30, 2008 Declaration of Tamar Y. Duvdevani.

[2]   On June 24, 2008, the defendant submitted for filing a Certificate of Amendment to the Certificate of Incorporation to effect a change of its name from the "New York County Dental Association" to the "Manhattan Dental Association." (*See* Exhibit B.) While awaiting required consent to approve the filing of the Certificate of Amendment from the New York Office of the Attorney General (said consent has now been received) and the New York Department of Education, the defendant additionally submitted for filing a Certificate of Assumed Name to operate under the name Manhattan Dental Association, which was approved and filed by the New York Department of State on June 27, 2008. (*See* Exhibit C.)

It is worthy to note that the anticompetitive insincerity of the Society's position in this lawsuit is manifest.  A review of its complaint and the applicable law definitively establishes that its "statutory monopoly" theory is a sham, and it has doggedly continued to try to shut down the MDA as a competing service organization for dentists in any form despite the defendants' early and cooperative agreement to stop using the name upon which plaintiff's federal trademark infringement claim is entirely based,  "New York County Dental Association".  On July 9, 2008, this Court endorsed that agreement when it So Ordered a stipulation that provided, *inter alia*, that defendant "shall permanently refrain from distributing, displaying and advertising any services under the name New York County Dental Association."  (Docket No. 15; *see also* Exhibit J.) Having effectively vitiated any viable Lanham Act trademark infringement damages by voluntarily eliminating any likelihood of confusion from the use of this name, the plaintiff has since resorted to a wholly whimsical "exceptional case" theory[3] in order to keep its federal jurisdictional basis afloat and continue its crusade against legitimate competition.  Plaintiff's transparent and ill-intentional tactics should not be condoned by this court.

### LEGISLATIVE BACKGROUND, GOVERNANCE DOCUMENTS AND DEFENDANTS' NEW COMPONENT SOCIETY

A.     The 1868 Statute

The statute that pervades the Society's Complaint is found at Chapter 152 of the Laws of the State of New York, enacted on April 7, 1868 ("the 1868 Statute").  (*See* Exhibit D.)  The statute was enacted to establish the dental societies of the State of New York, and allowed

---

[3]     Counsel for the Society represented to Judge Dolinger at the July 15, 2008 conference that its two theories of trademark damages keeping this action afloat are (1) lost profits resulting from actual confusion and (2) entitlement to attorneys fees under the Lanham Act's provision that fees may be awarded in exceptional cases.  *See* 15 U.S.C. 1117.  How the Society plans to demonstrate that this rarely-used and exceptional provision applies to this action will be a subject for another day.

dentists in the several judicial districts of New York to meet and form dental societies.  *See*

(Exhibit D: *§ 1 of Chapter 152 of the Laws of 1868*.)  Additionally, it instructed each district

dental society to send selected delegates to a general meeting in order to organize a State Dental

Society.  (*See id*. at § 2.)  Section 1 of this 1868 Statute organized a society in each of the then-

eight established judicial districts, while Section 12 authorized each society to make all

necessary by-laws for their management, as long as their by-laws were not inconsistent with

those of the State Dental Society.  (*See* Exhibit D.)  The remaining text of the 1868 Statute dealt

only with the organization, structure and management of the State Dental Society.  (*See*

*generally* Exhibit D.)

      Nowhere does this statute ever contain any kind of affirmative limitation on the number

of dental societies per district.

      B.    <u>New York Education Law Article 133</u>

      With the passing of New York Education Law Article 133 (*see* Exhibit E), the 1868

Statute was repealed:

> A study of the scope and provisions of said Article 133 clearly indicates that it
> was a codifying act of all prior statutes dealing with the subject of dentistry.  This
> would include the 1868 statute under which petitioner was organized and the
> powers therein conferred, except to the extent that they were retained in the
> codifying enactment.  <u>Such would be the effect even if there were no express
> repeal of the 1868 statute.  It would be repealed by implication</u>.

*Second Dist. Dental Soc. v. Boyland,* 139 N.Y.S. 2d 123,126 (N.Y. Sup. Ct. 1955) (emphasis

added).  Thus, it is clear that the 1868 Statute is a red herring, and that the Education Law now

governs the formation of component dental societies.

      Section 6603 of Education Law Article 133 directs the efforts of the State Board for

Dentistry and, prior to a 1971 repeal, also addressed district dental societies.  (*See* Exhibit E.)

The historical and statutory notes for this provision reveal that existing district dental societies

were to be continued when the section was repealed.  (*See* Exhibit E: Notes at § 6.1.)  The statute provided for the creation of new dental societies in any judicial district in which a district dental society was not already formed, and also described measures for forming new *county* dental societies, stating that a *county* dental society may be formed "if application by fifteen or more dentists of a county…is approved by the governing body of the New York State Dental Association."  (*See* id. at § 6.2.)  It further provided that, "[s]uch county dental societies shall have the same powers, duties and quorum requirements as district dental societies."  *Id.*

This statute, despite several repeals and amendments, has always been bereft of language limiting the number of dental societies that may exist in each judicial district or county.  That has held true right through the most recent amendment only 3 weeks ago, on July 7, 2008, when the Legislature gave the NYSDA the specific ability to remove any district or county society through a two-thirds vote of its Board of Governors.  (*See* Exhibit F.)

C.      The ADA Constitution & By-Laws

In the United States, dentists are licensed in a tripartite system.  This includes the American Dental Association (the "ADA") at the national level, a state association, such as the NYSDA, at the state level, and a local organization, such as the plaintiff Society, at the local level.  (*See generally* Exhibit G.)

Like the statutory provisions described above, the ADA By-Laws do not limit the number of district or county dental societies that may exist at the local level in any state, including New York.  (*See generally* Exhibit G.)  They do provide, at § 110 of Chapter II, that only one *state* society – called a "Constituent Society" – may be chartered in each state.  But, no such geographic limitation is placed upon the organization of local district or county societies – called "Component Societies."  (*See generally* Chapter III at Exhibit G.)  With respect to Component Societies, the ADA By-Laws merely provide that they "may be organized in conformity with a

6

plan approved by the Constituent Society of which they shall be recognized entities." (By-Laws, § 10, Chapter III at Exhibit G.) Accordingly, under the ADA By-Laws, the number of Component Societies in each state or county is left up to the governing Constituent Society; in New York, the NYSDA.

        D.     <u>The NYSDA Constitution & By-Laws</u>

Similarly, the governance framework of the NYSDA provides no support for plaintiff's one-component society-per-county theory. In describing the structure of component societies, the NYSDA Constitution and By-Laws each provides only that "there may be *at least* one component society in each Judicial District in the State of New York." (By-Laws, § 10, Chapter II; Constitution § 20, Art. III at Exhibit A) (emphasis added). Accordingly, by definition the NYSDA places no limit whatsoever on the number of societies that may exist on the local level; quite to the contrary, its governing documents clear the way for one *or more* such societies in each district (or, for that matter, the counties within a district).

It is significant to note that the NYSDA By-Laws (Chapter II, § 20) currently describes thirteen component societies in New York State (*See* Exhibit A), whereas the 1868 Statute on which plaintiff relies only provided for eight component societies. (*See* Exhibit D at § 1.) Thus, it is clear that the NYSDA is empowered to allow and, in fact has allowed, the existence of "new" component societies within the tripartite system prior to this action.

        E.     <u>The Newly-Approved Component Society</u>

On June 24, 2008, the defendant submitted for filing a Certificate of Amendment to the Certificate of Incorporation to effect a change of its name from the "New York County Dental Association" to the "Manhattan Dental Association." (*See* Exhibit B.) And, on July 9, 2008, the NYSDA voted to approve the Manhattan Dental Association as a new component member

society of the NYSDA.  (*See* Exhibit H.)  Accordingly, both the plaintiff and defendant MDA are

now each fully-authorized component member societies in New York County.

## PLAINTIFF'S PLEADING OF ITS ALLEGED MONOPOLY

The plaintiff Society pleads six counts against the defendants, five of which are premised,

at least in part, upon the Society's purported "statutory monopoly" borne of the now-repealed

1868 Statute.  (*See* Compl. ¶ 79-118.)  The first mention of this "statutory monopoly" appears in

Paragraph 35 of the Complaint, which alleges, "[a]s a matter of New York law, a second

component society in New York County cannot be established."  (Compl. ¶ 35.)  Plaintiff, in its

now-moot application for a Preliminary Injunction, elaborated on this argument, stating on the

first page of its brief:

> [The] New Association . . . is attempting to compete with the Society in violation
> of Chapter 152 of the Laws of the State of New York, enacted on April 7, 1868
> (known as 'An Act to incorporate the Dental Societies for the purpose of
> improving and regulating the practice of dentistry in this State').  This Act gives
> the Society, and other similarly situated local organizations, a *statutory monopoly*
> to provide the services commonly associated with organized dentistry in their
> respective judicial districts or counties in New York state.

(*See* Exhibit I: Memorandum of Law in Support of Plaintiff's Motion for a TRO and Preliminary

Injunction at 1) (emphasis added).  Later in its brief, plaintiff added that, by this statute, "there

can be **one** local component dental association **per county or judicial district**.  Accordingly,

under the tripartite structure established by the New York legislature, dentists in New York

County who wish to participate in organized dentistry only may do so by joining the Society."

*Id*. at 3 (emphasis in original).

This theory is embedded in each of plaintiff's counts for common law unfair competition

(Count II), tortuous interference with business relations (Count III), unfair and deceptive trade

practices (Count IV), violation of General Business Law § 133 (Count V), and unjust enrichment

(Count VI).  Specifically, each of these counts invokes or incorporates by reference some variant of the following allegation as a predicate for their theory of recovery: defendant has committed a "violation of New York Law governing the establishment of component dental societies [the 1868 Statute], to compete with and put the Association out of business"[4] (*See* Compl. ¶¶ 84, 96, 110, 115).  Plaintiff's repetition of this mantra makes clear that, at the core of its Complaint, and indeed this entire lawsuit, is the notion that *it alone* has the proprietary right to exist and represent the interest of dentists in New York County.  Nowhere is this more evident than when the Society accuses the defendant of reaping "a benefit that *rightly belongs*" to the Society and interfering with *the Society's* "advantageous business relationship with its members" by "inducing" dentists in New York County "to use defendant's new venture" (Compl. ¶¶ 116-17, 96) (emphasis added).

## ARGUMENT

## I.    STANDARDS GOVERNING A 12(B)(6) MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint for failing to state a claim upon which relief may be granted.  *See, e.g., Forrest v. Unifund Fin. Group*, 04 Civ. 5151, 2005 U.S. Dist. LEXIS 9028, at *7 (S.D.N.Y. May 12, 2005) (Swain, J.).  Dismissal is appropriate where "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" or where he cannot plead "enough facts to state a claim to relief that is plausible on its face."  *Id.* (quoting *OneBeacon Ins. Co. v. Forman Int'l*, 04 Civ. 2271, 2005 U.S. Dist. LEXIS 648, at *3 (S.D.N.Y. Jan. 19, 2005); *Barba v. Data Centrum Communs., Inc.*, 07 Civ. 2443, 2008 U.S. Dist. LEXIS 16490, at *2 (S.D.N.Y. Feb. 26, 2008)

---

[4]    While Count IV for unfair and deceptive trade practices does not separately recite this language, it incorporates it by reference by relying on defendants' alleged "deliberate and willful acts as set forth above."  (Compl. ¶ 103).

(Swain, J.) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)).  Plaintiff cannot meet this standard with regard to each of its claims premised upon, and undermined by, its faulty "statutory monopoly" theory.

On this motion, the court may consider any documents attached, incorporated by reference, or integral to the claims asserted, as well as any matters of which judicial notice may be taken.  *See In re Pfizer Inc. Sec. Litig.,* 04 Civ. 9866, 2008 U.S. Dist. LEXIS 50923, at *14 (S.D.N.Y. July 1, 2008) (Swain, J.)*; see also, e.g., Peter L. Leepson, P.C. v. Allan Riley Co.,* 04 Civ. 3720, 2006 U.S. Dist. LEXIS 52875, at *6 (S.D.N.Y. July 31, 2006) ("In determining a motion to dismiss, the Court may consider, in addition to the complaint, any written instrument attached to [the complaint] as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint") (internal quotation marks omitted); *Ehrenfeld v. Mahfouz,* 04 Civ. 9641, 2006 U.S. Dist. LEXIS 23423, at *10 (S.D.N.Y. Apr. 26, 2006); *County of Suffolk v. First Am. Real Estate Solutions,* 261 F.3d 179, 184 (2d Cir. 2001).  The court may also view the allegations of the Complaint in light of the full terms of the relevant agreements and statutes.  *See, e.g., Freedom Holdings Inc. v. Spitze*r, 363 F.3d 149, 152 (2d Cir. 2004).  Thus, in this case, the court may properly consider the 1868 Statute and the relevant provisions of the superseding Education Law, as well as the governing documents of the ADA and NYSDA and the status of defendant MDA.

## II.     PLAINTIFF'S NON-TRADEMARK THEORIES PERTAINING TO THE FORMATION OF THE DEFENDANT ASSOCIATION FAIL AS A MATTER OF LAW

### A.     Incorporation of the Association Did Not Violate New York State Law

Plaintiff repeatedly alleges that the establishment of the Association violates "New York State Law governing the establishment of component dental societies."  (Compl. ¶¶ 84, 96, 110, 115.)  This is simply wrong.  As noted above (*see supra* at 4-7), there is no "New York State

Law" that in any way forecloses the Association's existence. Moreover, even assuming *arguendo* that a law limiting the number of component dental societies to one per county or district existed, which it does not, plaintiff's claim would still fail because plaintiff confuses the mere incorporation of an organization of licensed dentists with the act of designating an organization as a component dental society of the NYSDA. The Association did incorporate, but it did not, and could not, incorporate as a component member of the NYSDA. Only the NYSDA has the authority to designate component member societies (Constitution § 20, Art. III at Exhibit A), and thus, prior to the NYSDA's recent July 9, 2008 vote to make defendant Association (now, the MDA) a component society, the Association was simply an incorporated not-for-profit dental organization.

Certainly, no law bars the act of incorporation and the Society's suggestion that the Association cannot incorporate accordingly fails, as a matter of law.

B.    No Law Exists Limiting the Number of Component Member Societies

The Society's primary allegation and pervasive theme, apart from its defunct trademark claim, is that there can only be one component society in each judicial district or county. Its position is founded entirely upon the 1868 Statute, and although its Complaint concedes that the 1868 Statute has been amended several times (Compl. ¶ 30-31), plaintiff conveniently ignores that those amendments have resulted in the repeal of the Statute. Thus, the Society's allegations fail because (1) the 1868 Statute has been superseded (*supra* at 5-6); (2) even if it were not superseded, its terms do not support the Society's suggestion that there exists a statutory monopoly for it in New York County (*supra* at 4-5); and (3) the current and applicable laws and organizational governance structures pertinent to the licensed practice of dentistry in this State affirmatively allow for more than one component society per district or

county.  (*See supra at* 5-7).  Accordingly, as set forth below, all Counts relying upon these assertions should be dismissed.

## III.     BECAUSE COUNT II RELIES UPON PLAINTIFF'S STATUTORY VIOLATION THEORY, IT SHOULD BE DISMISSED

Count II purports to state a claim for "Common Law Unfair Competition."  (Compl. ¶ 14.)  "The elements of an unfair competition claim under New York law are the same as the Lanham Act elements [ownership of a trademark that (1) is entitled to protection, and (2) the defendant's unauthorized use of similar marks in commerce is likely to cause confusion], with an added bad faith requirement."  *Hearts on Fire Co., LLC v. L C Int'l Corp.*, 04 Civ. 2536, 2004 U.S. Dist. LEXIS 14828, at *11 (S.D.N.Y. July 30, 2004) (Swain, J.).  As a component of this Count, plaintiff asserts that "*[i]n violation of New York law governing the establishment of component dental societies,* defendant, following bad-faith misrepresentations, entered into direct competition with plaintiff using a virtually identical business name and website."  (Compl. ¶ 84) (emphasis added).  Thus, it appears that plaintiff is invoking its defunct statutory violation theory to fulfill the necessary element of bad faith.  However, as explained in detail above, since the defendants did not, as a matter of law, violate any New York Statutory prohibition against forming the Association, plaintiff's unfair competition Count should be dismissed for failure to state a claim.

## IV.     BECAUSE COUNT III RELIES UPON PLAINTIFF'S STATUTORY VIOLATION THEORY, IT SHOULD BE DISMISSED

Count III is for "Tortious Interference With Business Relations."  (Compl. ¶ 15.)  In order to properly plead and prove this claim, plaintiff must allege: "(i) business relations with a third party; (ii) defendants' interference with those business relations; (iii) that defendants acted with the sole purpose of harming the plaintiff (i.e. with malice) or used dishonest, unfair, or improper means; and (iv) injury to the relationship."  *Camp Summit of Summitville, Inc. v. Visinski*, 06 Civ.

4994, 2007 U.S. Dist. LEXIS 28496, at *42-43 (S.D.N.Y. Apr. 13, 2007).  It is on the third

element of this test that plaintiff has not, and cannot, make out a viable claim.

    Nowhere in this Count does the plaintiff allege that the defendants acted with the "sole

purpose" of harming the plaintiff, and the only suggestion of some "dishonest, unfair or improper

means" is, again, plaintiff's assertion that the Association violated "*New York law governing the

establishment of component dental societies*."  (Compl. ¶ 96) (emphasis added).  That assertion is

wrong as a matter of law (*supra* at II(A)-(B)) and, as such, it cannot form one of the pillars of a

tortious interference claim.  Accordingly, Count III should also be dismissed for failure to state a

viable claim.

## V.    BECAUSE COUNT IV RELIES UPON PLAINTIFF'S STATUTORY VIOLATION THEORY AND IS DEFICIENTLY PLEAD, IT SHOULD BE DISMISSED

    The Society's Fourth Count alleges Unfair And Deceptive Trade Practices, and asserts

that "dentists reasonably relied on the representations of the New Association and as a result

have been damaged and will continue to be damaged by the New Association's

misrepresentation."  (Compl. ¶ 102.)  The Society also asserts that by "*reason of their deliberate

and willful acts as set forth above*" (including the purported violation of the repealed 1868

Statute), the Association has "engaged in deceptive acts and trade practices in the conduct of its

business within the meaning of New York General Business Law § 349."  (Compl. ¶ 103.)

    In order to establish a violation of Section 349 of New York's General Business Law,

"(1) the defendant's challenged acts or practices must have been directed at consumers, (2) the

acts or practices must have been misleading in a material way, and (3) the plaintiff must have

sustained injury as a result."  *People v. First Am. Corp.*, 07 Civ. 10397, 2008 U.S. Dist. LEXIS

51790, at *10 (S.D.N.Y. July 8, 2008) (Swain, J.) (quoting *Cohen v. JP Morgan Chase & Co.*,

498 F.3d 111, 126 (2d Cir. 2007)).  "Misleading acts or practices" has been objectively defined

13

by the New York Court of Appeals as acts or practices that are "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir.2007) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995)).  Moreover, this statute is not applicable where, as here, (1) the dispute involves two businesses (NYCDA and MDA), *see, e.g., International Sport Divers Ass'n v. Marine Midland Bank, N.A.*, 25 F. Supp. 2d 101, 114 (W.D.N.Y. 1998), and (2) the harm is alleged to effect merely a subclass of the public at large (dentists).  *See id.* ("The conduct need not be repetitive or recurring, but the defendant's acts or practices must have a broad impact on consumers at large.").

In conclusory fashion, the Society asserts only that defendants "represented to the public that they are properly qualified and licensed to provide, *inter alia*, continuing education and professional training programs and other services in the State of New York."  (Compl. ¶ 101.) However, nowhere in the Complaint does the Society allege that the Association actually offered continuing education or professional training services to the public or dentists in general, that the relevant consuming public was, in fact, mislead or how it – the Society – was injured *via* the consuming public's having been mislead.  (*See generally* Complaint.)  The Society also improperly asserts, again in conclusory fashion, that "dentists," and not consumers at large, "reasonably relied upon the representations . . . and as a result have been damaged."  (Compl. ¶ 102.)  As such, this count is defective.

The Complaint also refers to a letter written to the Society's director by the Association. (*See* Exhibit I:  Gerber Declaration at Exhibit 1.)  This letter contains various articulated future intentions of the Association including "benefiting the dental profession and the public", "work[ing] closely with organizations that are supportive of the ADA tripartite structure",

"focus[ing] on the real needs of individual dentists", to "complement, support, and . . .coordinate with the legislative goals of the ADA tripartite structure", and to "reach out to our academic institutions in an effort to support meaningful educational programs." *Id.* The Society does not allege, however, that any of these statements made by the Association are misleading in any way.

Thus, because plaintiff, another business, has failed properly to plead an unfair and deceptive trade practices claim, and its attempt to do so is infected by its reliance on the 1868 Statute, Count IV should be dismissed as a matter of law.

## VI.    COUNT V SHOULD BE DISMISSED AS MOOT

The Society's Fifth Count attempts to frame a violation of General Business Law Section 133 by alleging that Defendant used a name "with the intent to deceive and mislead the public," and that the use of this name is "likely to cause, and has caused, confusion, mistake or deception." (Compl. ¶¶ 108-09.) Critically, the *only* relief afforded under this statute (§ 133) is an injunction:[5] "Injunctive relief under § 133 of the General Business Law may be available if 'it shall appear to the satisfaction of the court of justice that the defendant is in fact assuming, adopting or using such name…'" *Judith Ripka Designs v. Preville*, 935 F. Supp. 237, 260 (S.D.N.Y. 1996) (quoting *Wilma Gowns, Inc. v. Wilma Juniors, Inc.,* 82 N.Y.S.2d 119 (N.Y. Sup. Ct. 1948)), and "application may be made to a court or justice having jurisdiction to issue an injunction." N.Y. Gen. Bus. Law § 133 (McKinney 1988).

Here, because (1) the defendant is no longer using the name "New York County Dental Association", and (2) the parties have agreed to a stipulation that enjoins it from "distributing, displaying, and advertising any services" under that name (Exhibit J at 2), this Count should accordingly be dismissed as moot.

---

[5]    Thus, to the extent that plaintiff seeks damages under this statute, its effort is misplaced.

VII.    **BECAUSE COUNT VI RELIES UPON PLAINTIFF'S STATUTORY VIOLATION THEORY, IT SHOULD BE DISMISSED**

The Society's Sixth Count is for Unjust Enrichment and, like the bulk of the Complaint, it invokes plaintiff's "statutory monopoly" theory to frame this claim; it asserts that the formation of the Association was in *"violation of New York law governing the establishment of component dental societies, to compete with and put the NYCDS out of business."* (Compl. ¶ 115) (emphasis added). Moreover, it is in this Count that the Society leaves no doubt about its belief that it alone is the only entity serving dentists anointed to exist in New York County, and that that privilege "rightly belongs" only to it. (Compl. ¶ 116-17.)

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefited; (2) at the plaintiff's expense; and (3) that 'equity and good conscience' require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). And, the core of an unjust enrichment claim "is that one party has received money or a benefit at the expense of another." *Id.* (citing *City of Syracuse v. R.A.C. Holding, Inc.*, 258 A.D.2d 905, 906, 685 N.Y.S.2d 381, 381 [4th Dep't 1999]).

Here, there can be no question that plaintiff cannot legitimately plead that "equity and good conscience" require restitution; indeed that is probably why it has not done so. Plaintiff's clamoring for a monopolistic "right" to represent the interest of all dentists in New York County to the exclusion of all others, including the MDA, is just that; hollow and self-service posturing unsupported by any existing law (*see supra* at II.). Indeed, had plaintiff seen fit to track the history of its 1868 statutory crutch, it would have seen that the statute affords absolutely no

current and viable basis for relief.[6] Thus, "equity" certainly cannot favor the plaintiff's

anticompetitive tactics under the guise of its specious "statutory monopoly" theory. And, indeed

plaintiff can fare no better on this Count under a trademark theory because the MDA, in good

faith, promptly volunteered to discontinue its use of the allegedly offending mark within two

days of the institution of this suit, and well before that mark could have confused plaintiff's

members into defecting to the Association. (*See* Exhibit J.)

Accordingly, because once again, plaintiff's unjust enrichment claim is fatally infected

by its unfounded "statutory monopoly" theory and is inadequately plead, it should be dismissed.

### CONCLUSION

Based upon the foregoing, defendants respectfully request that the Court dismiss

Counts II, III, IV, V, and VI and all requests for injunctive relief based upon: (1) use of the name

New York County Dental Association, as those requests are now moot; and (2) plaintiff's theory

that defendant is not allowed to exist as a component society in New York County.


Dated: July 30, 2008

                                        **NIXON PEABODY LLP**

                                        __/s/ Tamar Duvdevani_____
                                        Tamar Y. Duvdevani (TD 1974)

                                        437 Madison Avenue
                                        New York, New York 10022
                                        Phone:  (212) 940-3000

*Of counsel*:

Andrew C. Rose, Esq.

---

[6]   Defendants assume that the Society's election to plead its reliance on a superseded and repealed statute was the result of oversight alone.  If not, then Rule 11 may be implicated by its approach.