UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE DISTRICT DENTAL SOCIETY OF THE
FIRST JUDICIAL DISTRICT, d/b/a THE NEW
YORK COUNTY DENTAL SOCIETY,

Plaintiff,

-against-

THE NEW YORK COUNTY DENTAL
ASSOCIATION, INC., ELLIOTT MOSKOWITZ,
MELVYN LEIFERT, and ROBERT RAIBER,

Defendants.

**Case No. 08 CV 05062-LTS-MHD**

**DECLARATION OF
TAMAR Y. DUVDEVANI**

TAMAR Y. DUVDEVANI declares under penalty of perjury that the following is true and
correct:

1.      I am an associate of Nixon Peabody LLP, attorneys for defendants New York

County Dental Association, Elliott Moskowitz, Melvyn Leifert, and Robert Raiber.  I submit this

Declaration in support of defendants' Motion to Dismiss.

2.      Attached as <u>Exhibit A</u> is a true and complete copy of the New York State Dental

Association Constitution and By-Laws.

3.      Attached as <u>Exhibit B</u> is a true and complete copy of the Certificate of

Amendment to the Certificate of Incorporation and Consent to File for the Manhattan Dental

Association, Inc.

4.      Attached as <u>Exhibit C</u> is a true and complete copy of the Assumed Name

Certificate for the Manhattan Dental Association, Inc.

5.      Attached as <u>Exhibit D</u> is a true and complete copy of Chapter 152 of the Laws of

1868 of New York State.

6.    Attached as <u>Exhibit E</u> is a true and complete copy of New York Education Law, Title 8, Article 133, § 6603 and accompanying Notes.

7.    Attached as <u>Exhibit F</u> is a true and complete copy of Bill S08370, the July 9, 2008 amendment to Chapter 987 of the Laws of 1971 of New York State.

8.    Attached as <u>Exhibit G</u> is a true and complete copy of the American Dental Association Constitution and By-Laws.

9.    Attached as <u>Exhibit H</u> is a true and complete copy of the New York State Dental Association Board of Governors Meeting Minutes for July 9, 2008.

10.    Attached as <u>Exhibit I</u> is a true and complete copy of Plaintiff's Memorandum of Law in Support of Plaintiff New York County Dental Society's Motion for a Temporary Restraining Order and Preliminary Injunction and Plaintiff's Order to Show Cause for Preliminary Injunction and Temporary Restraining Order.

11.    Attached as <u>Exhibit J</u> is a true and complete copy of the July 09, 2008 Court Ordered Stipulation.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 30th day of July, 2008

_____/s/ Tamar Y. Duvdevani_____
        Tamar Y. Duvdevani



CONSTITUTION AND BYLAWS

July 2008

CONTENTS

PAGE

CHARTER ...................................................... 1

GOVERNING STATUTE ............................................ 2

CONSTITUTION:
    Article I. Name .......................................... 5
    Article II. Object ....................................... 5
    Article III. Organization ................................ 5
        Section 10. Incorporation ............................ 5
        Section 20. Component Societies ...................... 5
        Section 30. Membership ............................... 5
    Article IV. Government ................................... 5
    Article V. Officers ...................................... 6
    Article VI. Meetings:
        Section 10. Annual Meeting ........................... 6
        Section 20. Business Sessions ........................ 6
        Section 30. Location of Meetings ..................... 6
        Section 40. Special Meetings ......................... 6
        Section 50. Quorum ................................... 6
    Article VII. Code of Ethics .............................. 6
    Article VIII. Amendments ................................. 6

BYLAWS:
    Chapter I. Membership:
        Section 10. Classifications .......................... 8
        Section 20. Qualification:
                    A. Active Member ......................... 8
                    B. Life Member ........................... 8
                    C. Retired Member ........................ 8
                    D. Honorary Member ....................... 9
                    E. Student Member ........................ 9
        Section 30. In Good Standing ......................... 9
        Section 40. Rights and Privileges:
                    A. Active Member ......................... 10
                    B. Life Member ........................... 10
                    C. Retired Member ........................ 11
                    D. Honorary Member ....................... 11
                    E. Student Member ........................ 11
        Section 50. Disciplinary Proceedings:
                    A.    Conduct Subject to Discipline ...... 12
                    A-1. Direct Referral of Ethics Cases ..... 12
                    B.    Disciplinary Penalties ............. 13
                    C.    Disciplinary Proceedings ........... 14
                    D.    Appeals ............................ 15
    Chapter II. Component Societies:
        Section 10. Organization ............................. 16
        Section 20. Name ..................................... 16
        Section 30. Powers and Duties ........................ 16

i.

Chapter III. Board of Governors:
    Section 10. Composition ................................... 18
    Section 20. Certification of Governors .................... 19
    Section 30. Powers ........................................ 19
    Section 40. Duties ........................................ 20
    Section 50. Meetings ...................................... 20
    Section 60. Official Call:
                A. Annual Meeting ............................. 21
                B. Special Meetings ........................... 21
    Section 70. Quorum ........................................ 21
    Section 80. Order of Business ............................. 21
                A. Stated Meetings ............................ 21
                B. Special Meetings ........................... 22
    Section 90. Rules of Order:
                A. Standing Rules ............................. 22
                B. Additional Rules ........................... 22
    Section 100. Standing Committees of the Board of Governors:
                A. Credentials, Rules & Order ................. 23
                B. Constitution and Bylaws .................... 23
                C. Finance, Budget and Audit ................. 23
                D. Reference Committees ....................... 24
Chapter IV. Elective Officers:
    Section 10. Number and Title .............................. 24
    Section 20. Eligibility ................................... 24
    Section 30. Nominations ................................... 24
    Section 40. Additional Nominations ........................ 24
    Section 50. Elections ..................................... 25
    Section 60. Tenure of Office .............................. 25
    Section 70. Installation .................................. 25
    Section 80. Vacancies ..................................... 25
    Section 90. Duties of the Elective Officers:
                A. President .................................. 25
                B. President Elect ............................ 26
                C. Vice President ............................. 26
                D. Secretary-Treasurer ........................ 27
    Section 100. Administrative Year .......................... 28

Chapter V. Appointive Officer:
    Section 10. Number and Titles ............................. 28
    Section 20. Appointment ................................... 28
    Section 30. Tenure of Office and Remuneration ............. 28
    Section 40. Duties:
                A. Executive Director ......................... 28
    Section 50. Vacancies ..................................... 29

Chapter VI. Executive Committee ............................... 29

Chapter VII. Conflict of Interest ............................. 30

Chapter VIII. Code of Ethics .................................. 30

Chapter IX. Administrative Code:
    Section 10. ........................................... 31
    Section 20. ........................................... 31

Chapter X. Finances:
    Section 10. Membership Dues:
                A. Active Members ........................... 31
                B. Recent Graduate .......................... 31
                C. Life Members ............................. 32
                D. Pro-Rated Dues ........................... 32
                E. Active Duty .............................. 33
                F. Retired Members .......................... 33
                G. Student Members .......................... 33
                H. Honorary Members ......................... 33
    Section 20. Fiscal Year ................................. 33
    Section 30. General Operating Fund ...................... 33
    Section 40. Relief Fund ................................. 33
    Section 50. Restricted Funds ............................ 34

Chapter XI. Delegates to the American Dental Association ..... 34

Chapter XII. Publications:
    Section 10. Official Journal ............................ 35
    Section 20. Official Transactions ....................... 35

Chapter XIII. Indemnification ............................... 35
Chapter XIV. Amendments ..................................... 36

iii.

C H A R T E R

The Ninety-First Session of the Legislature

Chapter 152, Passed April 7, 1868

PREAMBLE

AN ACT to incorporate Dental Societies for the purpose of improving and regulating the practice of dentistry in this State.

The People of the State of New York, represented in Senate and Assembly, do enact as follows:

Section 1.  It shall be lawful for the dentists in the several judicial districts of the Supreme Court of this State, to meet together at the various designated places, on the first Tuesday of June, eighteen hundred and sixty-eight, at two o'clock in the afternoon of that day, and such dentists so convened shall proceed to the choice of a staff of officers; whenever said societies shall be organized as aforesaid, they are hereby constituted bodies corporated, in fact and under the name of "The District Dental Association" of the respective judicial district where they shall be located.

Section 2.  Each of the said districts when organized as aforesaid, shall elect eight delegates, who shall meet at the Capitol, in the City of Albany, on the last Tuesday of June, eighteen hundred and sixty-eight and proceed to organize a State Dental Association, which shall be named:

"The New York State Dental Association"

Reuben E. Fenton, Governor

Stewart L. Woodward, Lieutenant Governor

Homer A. Nelson, Secretary of State

GOVERNING STATUTE NOW IN EFFECT
(L. 1980, c. 138; L. 1997, c. 683; L.2002, c. 18 EDUCATION LAW,
s6603, n.; L. 2007, c.498)

```
 1   s5. The Dental Society of the State of New York is continued and
 2   shall be renamed the New York State Dental Association and shall
 3   be composed of the members of the district and county societies.
 4   The State Dental Association shall meet annually on the second
 5   Wednesday of May, or at such other time and at such place as may
 6   be determined in the Bylaws of the Association or by resolution,
 7   at the preceding Annual Meeting.  Twenty members shall be a
 8   quorum.  A president, president elect, vice president, and
 9   secretary-treasurer shall be elected annually, and shall hold
10   their office for one year, and until others shall be chosen in
11   their places.  The officers shall be elected by the directors of
12   the association.  The Association may elect honorary members from
13   any state or country not eligible to regular membership, who
14   shall not be entitled to vote or hold any office in the
15   Association.  Such Association may purchase and hold real estate
16   and personal estate for the purpose of its incorporation.  The
17   Association shall have the power to make all needful bylaws not
18   inconsistent with the laws of the State, for the management of
19   its affairs and property and the admission and expulsion of
20   members.  Notwithstanding any other provision of law, the
21   directors of the Association may, by a three-fourths vote,
22   suspend or remove any director of the Association, or by a two-
23   thirds vote remove a district or county society as a component
24   member.   Notwithstanding any other provision of law, the time
25   period for voting by members of the association shall run from
26   the date of giving written notice in any mailing or other
27   publication by the association of any such amendment to the date
28   of the commencement of the next regular meeting of the directors
29   of the association.
30
31
32   s6.1.  The existing district dental societies are continued.  In
33   any judicial district in which a district dental society is not
34   incorporated, fifteen or more dentists of such district
35   authorized to practice dentistry in this State may become a
36   district dental society of such district, by publishing a call
37   for a meeting of the dentists of the district to be held at a
38   time and place mentioned therein within the district, in at least
39   one newspaper in each county of the district, at least once a
40   week for at least four weeks immediately preceding the time when
41   such meeting is to be held, and by meeting at the time and place
42   specified in such notice with such dentists authorized to
43   practice dentistry in the district as may respond to such call,
44   and by making and filing with the secretary of the State Dental
```

1   Association a certificate, to be executed and acknowledged by the
2   dentists so meeting, or by at least fifteen of them, which shall
3   set forth that such meeting has been held pursuant to such
4   notice, the corporate name of the society, which shall be the
5   district dental society of the judicial district where located,
6   the names and places of residence of the officers of the society
7   for the first year, or until the first annual meeting, which
8   officers shall be a president, vice president, secretary and
9   treasurer, the time and place of the annual meeting of the
10  society and the general objects and purposes of the society.
11  Thereupon the persons executing such certificate and all other
12  dentists in good standing and authorized to practice dentistry in
13  such district, who shall subscribe to its bylaws, shall be a
14  corporation by the name expressed in such certificate.  Every
15  licensed and registered dentist in the judicial district in which
16  such a society is formed, shall be eligible for membership in the
17  district society of the district in which he/she resides or
18  practices dentistry, except if such dentist resides or practices
19  dentistry in a county in which a county dental society is formed
20  in the manner hereinafter provided, he/she shall be eligible for
21  membership in such county society; provided, however, that after
22  September 1, 1990, any licensed and registered dentist who is not
23  a member of the State Dental Association shall be eligible for
24  membership only in the district or county society in which he/she
25  maintains his/her or her primary practice.  Any member of a
26  district or county dental society who has been a member of such
27  district or county dental society continuously since January 1,
28  1977, may maintain his/her membership in that district or county
29  dental society notwithstanding where such member resides or
30  practices dentistry, provided that for purposes of counting the
31  number of members in any district or county dental society with
32  respect to any New York State Dental Association or American
33  Dental Association matter relating to representation, all such
34  members affected by this provision shall be counted only as
35  members of the district or county dental society where they
36  maintain their primary practice and not as members of any other
37  district or county dental society.  The dental societies of the
38  respective districts of the State shall have power to make all
39  necessary bylaws not inconsistent with the laws of this State for
40  the management of their affairs and property and the admission
41  and expulsion of members; providing that no bylaw of any district
42  society shall be repugnant to or inconsistent with the bylaws of
43  the State Association.  Twenty members or ten percent of the
44  total membership entitled to vote, whichever is less, shall be a
45  quorum.  Such societies may purchase and hold real and personal
46  property for the purposes of their incorporation.
47
48  2.  Notwithstanding the provisions of this section or any other
49  law or rule to the contrary, a county dental society may be
50  formed if application by fifteen or more dentists of a county or
51  fifteen or more dentists from each of the contiguous counties, or

3

```
 1    fifty percent or more of the dentists in a county or from each
 2    contiguous county with fewer than thirty dentists is approved by
 3    the governing body of the New York State Dental Association.
 4    Every licensed and registered dentist who resides or practices
 5    dentistry within the geographic area in which such a county
 6    society is formed shall be eligible to membership in such
 7    society; provided, however, that after September 1, 1990, any
 8    licensed and registered dentist who is not a member of the State
 9    Dental Association shall be eligible for membership only in the
10    county society in which he/she maintains his/her primary
11    practice.  Any member of a district or county dental society who
12    has been a member of such district or county dental society
13    continuously since January 1, 1977, may maintain his/her
14    membership in that district or county dental society
15    notwithstanding where such member resides or practices dentistry,
16    provided that for purposes of counting the number of members in
17    any district or county dental society with respect to any New
18    York State Dental Association or American Dental Association
19    matter relating to representation, all such members affected by
20    this provision shall be counted only as members of the district
21    or county dental society where they maintain their primary
22    practice and not as members of any other district or county
23    dental society.  Such county dental societies shall have the same
24    powers, duties and quorum requirements as district dental
25    societies.
```

4

CONSTITUTION

1   **ARTICLE I. NAME**
2
3   The name of this organization shall be the New York State Dental
4   Association, hereinafter referred to as "the Association" or
5   "this Association."
6
7
8   **ARTICLE II. OBJECT**
9
10  The object of the Association shall be to encourage the
11  improvement of the health of the public, to promote the art and
12  science of dentistry, and to represent the interests of the
13  members of the profession and the public which it serves.
14
15
16  **ARTICLE III. ORGANIZATION**
17
18  Section 10.   Incorporation.   The Association is a non-profit
19  organization, incorporated on June 30, 1868, pursuant to Chapter
20  152 of the Laws of the State of New York, as adopted on April 7,
21  1868, and continued by Chapter 987, Section 5, of the Laws of
22  1971 as amended by Chapter 138, Section 5 of the Laws of 1980
23  (Education Law, s6603 note).
24
25  Section 20.   Component Societies.   The Association may be
26  composed of at least one component society in each of the
27  Judicial Districts of the State of New York.   All component
28  societies shall be governed in conformity with Chapter II of the
29  Bylaws.
30
31  Section 30.   Membership.   The membership of this Association
32  shall consist of the members of the component dental societies
33  whose qualifications and classifications shall be as established
34  in Chapter I of the Bylaws.
35
36
37  **ARTICLE IV. GOVERNMENT**
38
39  Section 10.   The legislative and governing body of this
40  Association shall be the Board of Governors, as provided in
41  Chapter III of the Bylaws.
42
43  Section 20.   The administration of this Association shall be
44  conducted by the officers, as provided in Chapters IV and V of
45  the Bylaws.
46

**ARTICLE V. OFFICERS**

Section 10.   The elective officers of this Association shall be a President, a President Elect, a Vice President, and a Secretary-Treasurer, each of whom shall be elected as provided in Chapter IV of the Bylaws.

Section 20.   The appointive officer of this Association shall be an Executive Director, who shall be appointed by the Board of Governors, as provided in Chapter V of the Bylaws.

**ARTICLE VI. MEETINGS**

Section 10.   Annual Meeting.   The Association shall meet annually in December or at such other time as may be determined by the Board of Governors.

Section 20.   Business Sessions.   Business sessions of the Association shall be conducted by the members of the Association during the Annual Meeting.   Notice of such sessions shall be published in the official publication of the Association at least fifteen (15) days prior to the Annual Meeting.

Section 30.   Location of Meetings.   The Annual Meeting shall be held at a location approved by a majority vote of the Board of Governors.

Section 40.   Special Meetings.   Special meetings shall be called by the President at the written request of fifty (50) active members in good standing.   At least twenty (20) days' notice must be given the members for such meeting, and such notice shall state the purpose of such meeting.

Section 50.   Quorum.   Twenty (20) members of the Association, present in person, and entitled to vote, shall constitute a quorum for the transaction of business at any duly constituted meeting.

**ARTICLE VII. CODE OF ETHICS**

Section 10.   The Code of Ethics of this Association shall not conflict with the Principles of Ethics of the American Dental Association.

**ARTICLE VIII. AMENDMENTS**

This Constitution may be amended as follows:

6

1.  The amendment to be acted upon must be in writing, published in The New York State Dental Journal at least thirty (30) days prior to the Annual Meeting at which action is to be taken, and read at a previous Annual Meeting of the Association, except that an amendment presented with the consent of three-quarters (3/4) of the members present in person and voting may be voted upon at the same Annual Meeting.

2.  Such amendment shall be adopted by the affirmative votes of two-thirds (2/3rds) of the members present in person and voting at the Annual General Membership Meeting at which action thereon is taken.

BYLAWS

1    **CHAPTER I. MEMBERSHIP**
2
3    <u>Section 10.</u>   Classification.   The members of this Association
4    shall be classified as follows:
5
6    a. Active Member
7    b. Life Member
8    c. Retired Member
9    d. Honorary Member
10   e. Student Member
11
12   <u>Section 20.</u>   Qualification.
13
14   A. Active Member.  Any dentist licensed or authorized to practice
15      in the State of New York, and who is an active member in good
16      standing of a component society, shall be classified as an
17      active member of this Association.  Life members of the
18      American Dental Association and component societies, not
19      eligible for Life Membership in the New York State Dental
20      Association, may also be eligible for active membership in
21      this Association.
22
23   B. Life Member.  An active and/or retired member in good
24      standing, who has been a member of the New York State Dental
25      Association for thirty (30) consecutive years, or for a total
26      of forty (40) years, or who has been an active member of the
27      American Dental Association for thirty (30) years inclusive of
28      the last ten (10) consecutive years of active membership in
29      the New York State Dental Association, or a dentist who has
30      held twenty-five (25) years membership in the National Dental
31      Association, and who has subsequently held at least ten (10)
32      years of membership in the New York State Dental Association,
33      having attained the age of sixty-five (65) years, shall be
34      classified as a life member.  Life membership shall be
35      effective the calendar year following the year in which the
36      requirements are met.  The Executive Director will give
37      notification to members who are eligible for life membership.
38      Such applicant must be a member in good standing at the time
39      of his/her classification as a life member.  Maintenance of
40      membership in good standing in his/her component society shall
41      be requisite for continuance of Life Membership in the
42      Association.
43
44   C. Retired Member.  A member in good standing who has been an
45      active member of the New York State Dental Association and is
46      now an active or retired member of his/her component society
47      and who is no longer earning income from the performance of
48      services as a member of the faculty of a dental school, as a
49      dental administrator, or consultant, or as practitioner of any

8

```
 1     activity for which a license to practice dentistry or dental
 2     hygiene is required, may be classified as a retired member
 3     upon application to the Executive Director, and upon proof of
 4     qualifications.  To qualify for retired membership status, the
 5     member shall submit an affidavit attesting to his/her
 6     retirement on or before April 1.  His/Her component society
 7     shall submit a certificate verifying his/her active or
 8     retirement status.  Maintenance of active or retired
 9     membership in good standing in his/her component society shall
10     be requisite for entitlement to and continuance of retired
11     membership in this Association.
12
13  D. Honorary Member.  Any individual who has contributed
14     materially to the advancement of the art and science of
15     dentistry may be elected by the Board of Governors as an
16     honorary member of this Association.  Recipients of the New
17     York State Dental Association Award in Memory of William
18     Jarvie and Harvey J. Burkhart shall be awarded honorary
19     membership of this Association provided they are not active or
20     life or retired members of the Association.
21
22     The names and qualifications of candidates for honorary
23     membership shall be submitted in writing to the Board of
24     Governors for evaluation at a meeting prior to the one at
25     which action shall be taken.
26
27  E. Student Member.  A pre-doctoral student of a dental school
28     accredited by the American Dental Association who is an active
29     member of the American Student Dental Association and a
30     student member of the ADA; or any dentist eligible for
31     membership who is engaged full time in (1) an advanced
32     training course of not less than one academic year's duration
33     in an accredited school; or (2) an internship or residency
34     program approved by the Council on Dental Education and
35     Licensure may be classified as a student member of this
36     Association.
37
38  Section 30.   In Good Standing.
39
40  A. Any member of this Association not under final sentence of
41     suspension or expulsion whose dues for the current calendar
42     year have been paid shall be considered a member in good
43     standing.
44
45  B. Any member of this Association receiving assistance from the
46     Relief Fund of this Association or who has claimed hardship,
47     based on a written explanation acceptable to the NYSDA of the
48     nature of the hardship, shall be exempt from the payment of
49     dues and shall be considered in good standing.
50
51  C. An active, life, retired, or student member whose dues have
```

9

not been paid by March 31 of the current year, shall cease to
be a member of this Association.  If a member who is dropped
pays his/her dues before December 31 of the current year,
he/she will be reinstated and not lose continuity of
membership.  If an active, life, or retired member who has
resigned or been dropped wishes to apply for membership in a
subsequent year, he/she may do so without penalty of back
dues.  For continuity of membership, back dues shall be
accepted for not more than three (3) years of delinquency
immediately prior to the date of application for such payment.
The rate of such dues shall be in accordance with Chapter I.
Section 50A of the ADA Bylaws and Chapter X. Section 10 of the
Bylaws of this Association.  The requirement of paying current
dues does not apply to retired life members of this
Association for the purpose of determining their good
standing.

D.  Every member of this Association shall be bound by the Peer
Review Manual of this Association.  Failure to do so shall
constitute grounds for suspension or revocation of membership
in this Association.

Section 40.   Rights and Privileges.

A.  Active Member

   1. An active member in good standing shall have the right to
      vote at all regular and special meetings of the Association.

   2. An active member in good standing shall be eligible for
      election as a delegate or alternate delegate to the House of
      Delegates of the American Dental Association, to membership
      on the Board of Governors of this Association and for
      election or appointment to any office, committee, council,
      board and similar position in the American Dental
      Association, unless otherwise provided for in these Bylaws.

   3. An active member in good standing shall receive annually a
      certificate of membership from the American Dental
      Association, the Journal of the American Dental Association
      and The New York State Dental Journal.  He/She shall be
      entitled also to admission to any scientific session of the
      American Dental Association, to any scientific or general
      business session of this Association and shall be entitled
      to such other services as are provided by the American
      Dental Association and this Association for active members.

B.   Life Member

   1. A life member shall be entitled to all the privileges of an
      active member, except that the life member who no longer

1       pays dues to this Association shall not receive the Journal
2       of the American Dental Association unless by subscription.
3
4     2. A life member shall receive a certificate of life
5       membership.
6
7   C.    Retired Member
8
9     1. A retired member shall be entitled to all the privileges of
10       an active member.
11
12     2. A retired member in good standing shall receive annually a
13       retired membership certificate.
14
15   D.    Honorary Member
16
17     1. An honorary member shall not have the right to vote or hold
18       office.
19
20     2. An honorary member shall receive a certificate of honorary
21       membership and the Journal of the New York State Dental
22       Association.
23
24     3. He/She shall also be entitled to admission to any scientific
25       session of this Association.
26
27   E.    Student Member
28
29     1. A student member in good standing shall receive annually a
30       membership certificate and the publications of the
31       Association. He/She shall be entitled to admission to any
32       scientific and business session of the Association and shall
33       be entitled to such other services as are provided by the
34       American Dental Association and this Association for Active
35       Members.
36
37     2. A student member shall not have the right to vote or hold
38       office, except that one student member shall be elected as a
39       voting member of the Board of Governors as provided in
40       Chapter III of these Bylaws.
41
42     3. Years of student membership shall not be included as years
43       of active membership for the purpose of determining
44       eligibility for life membership.
45
46 Section 50.   Disciplinary Proceedings.
47
48 This section is based on, and is intended to be consistent with
49 the procedures for discipline of members set forth in the Bylaws
50 of the American Dental Association.
51

A. Conduct Subject to Discipline.  A member may be disciplined
   by this Association or by the member's component society
   for: (1) having been found guilty of a felony; (2) having
   been found guilty of unprofessional conduct as defined by
   the laws and regulations of any state; or (3) violating the
   Bylaws or the Principles of Ethics and Code of Professional
   Conduct of this Association, the American Dental Association
   or a component society.  Disciplinary proceedings shall be
   instituted by the ethics committee of the component society
   where the alleged ethical violation took place, or, upon the
   request of said component ethics committee, the Council on
   Ethics of this Association may initiate disciplinary
   proceedings.  In the event the component society refers the
   matter to this Association and this Association declines to
   initiate disciplinary proceedings, the component society may
   not thereafter initiate proceedings.

A-1. Direct Referral Ethics Cases Involving Members Previously
     Found Guilty or Disciplined for Professional Misconduct by
     the New York State Board of Regents.  Notwithstanding any
     other provisions of the Bylaws or Code of Ethics, any member
     found guilty of, or disciplined for, professional misconduct
     by the New York State Board of Regents shall have the case
     directly referred to the Council on Ethics of the
     Association in accordance with the following procedure.  The
     entire official evidentiary record of the professional
     discipline case shall be obtained from the New York State
     Education Department and shall be transmitted to a Screening
     Committee of the Council on Ethics of the Association.  The
     Screening Committee shall review the case record and
     determine whether the case should be presented to the full
     Council on Ethics of the Association for further action.  A
     majority vote of the Screening Committee shall be
     determinative.  The Screening Committee may elect to make a
     recommendation to the full Council on Ethics of the
     Association as to the penalty to be imposed by the
     Association, but such recommendation shall not be binding on
     the full Council.  If the case is referred by the Screening
     Committee to the full Council on Ethics of the Association
     for action, the member shall be notified in writing not less
     than thirty days in advance of the date, time, and place of
     the full Council meeting at which the matter will be
     considered.  Such notice shall include a brief statement of
     the matter to be considered.  The dentist may submit a
     written statement to the Council, may elect to appear before
     the Council, and may be represented by an attorney for the
     purpose of making a presentation to the Council in
     mitigation or explanation as to the appropriate penalty to
     be imposed by the Association.  The only matter to be
     considered is the penalty to be imposed for having been
     found guilty of, or disciplined for, professional misconduct

12

1   by the New York State Board of Regents.  If the member
2   chooses to appear before the Council, the Council may ask
3   questions of the member during the member's presentation to
4   the Council. A transcript of the proceeding shall not be
5   required.  The Council shall issue a written decision in
6   accord with its usual procedures contained in Paragraph C of
7   this Section.  A majority vote of the Council members
8   present and voting shall be determinative.  The normal
9   appeal process contained in Paragraph D of this Section
10  shall apply to such cases.
11
12  B. Disciplinary Penalties.  A member may be placed under a
13     sentence of censure or suspension or may be expelled from
14     membership for any of the offenses enumerated in Section 50A
15     of this Chapter.
16
17     Censure is a disciplinary sentence expressing in writing
18     severe criticism or disapproval of a particular type of
19     conduct or act.
20
21     Suspension, subject to Chapter I, Section 30A of these
22     Bylaws, means all membership privileges except the
23     obligation to participate in the Association's Peer Review
24     and Quality Assurance proceedings and continued entitlement
25     to coverage under insurance programs are lost during the
26     suspension period.  Suspension shall be unconditional and
27     for a specified period at the termination of which full
28     membership privileges are automatically restored.  A
29     subsequent violation shall require a new disciplinary
30     procedure before additional discipline may be imposed.
31
32     Expulsion is an absolute discipline and may not be imposed
33     conditionally except as otherwise provided herein.
34     Probation, to be imposed for a specified period and without
35     loss of rights, may be administratively and conditionally
36     imposed when circumstances warrant in lieu of a suspended
37     disciplinary penalty.  Probation shall be conditioned on
38     good behavior.  Additional reasonable conditions may be set
39     forth in the decision for the continuation of probation.  In
40     the event that the conditions for probation are found by the
41     society which preferred charges to have been violated, after
42     a hearing on the probation violation charges in accordance
43     with Section 50A-1 of this Chapter, the original
44     disciplinary penalty shall be automatically reinstated;
45     except that when circumstances warrant the original
46     disciplinary penalty may be reduced to a lesser penalty.
47     There shall be no right of appeal from a finding that the
48     conditions of probation have been violated.
49
50     After all appeals are exhausted or after the time for filing
51     an appeal has expired, the sentence meted out to any active,

13

life or retired member, including those instances when the
disciplined member has been placed on probation, shall be
promulgated by this Association, the member's component
society, and the American Dental Association.

C. Disciplinary Proceedings.  Before a disciplinary penalty is
invoked against a member the following procedures shall be
followed by the society preferring charges:

a.   Hearing.  The accused member shall be entitled to a
     hearing at which the accused shall be given the
     opportunity to present a defense to all charges brought
     against the accused.  The society shall permit the
     accused member to be represented by legal counsel.

b.   Notice.  The accused member shall be notified in
     writing of charges brought against the accused and of
     the time and place of the hearing, such notice to be
     sent by registered letter addressed to the accused's
     last known address and mailed not less than twenty-one
     (21) days prior to the date set for hearing.  An
     accused member, upon request, shall be granted one
     postponement for a period not to exceed thirty (30)
     days.

c.   Charges.  The written charges shall include an
     officially certified copy of the alleged conviction or
     determination of guilt, or a specification on the Bylaw
     or ethical provisions alleged to have been violated, as
     the case may be, and a description of the conduct
     alleged to constitute each violation.

d.   Decision.  Every decision which shall result in
     censure, suspension or expulsion or in probation shall
     be reduced to writing and shall specify the charges
     made against the member, the facts which substantiate
     any or all of the charges, the verdict rendered, the
     penalty imposed or when appropriate, the suspended
     penalty imposed and the conditions for probation, and a
     notice shall be mailed to the accused member informing
     the accused of the right to appeal.  Within ten (10)
     days of the date on which the decision is rendered a
     copy thereof shall be sent by registered mail to the
     last known address of each of the following parties:
     the accused member; the Chairperson of the Council on
     Ethics of this Association; the Secretary of this
     Association; the secretary and the ethics committee
     chairperson of the component society of which the
     accused is a member; the Chairperson of the Council on
     Ethics, Bylaws and Judicial Affairs and the Executive
     Director of the American Dental Association.  After the

1  decision has become final, the Council publishes a
2  summary of the decision in The New York State Dental
3  Journal.
4
5  D. Appeals.  The accused member under sentence of censure,
6  suspension or expulsion shall have the right to appeal from
7  a decision of the component society to this Association by
8  filing an appeal in affidavit form with the Secretary of
9  this Association.  Such an accused member, or the component
10  society concerned, shall have the right to appeal from a
11  decision of this Association to the Council on Ethics,
12  Bylaws and Judicial Affairs of the American Dental
13  Association by filing an appeal in affidavit form with the
14  Chairperson of the Council on Ethics, Bylaws and Judicial
15  Affairs of the American Dental Association.  When the
16  Council on Ethics of this Association has heard the initial
17  disciplinary proceeding and rendered a decision, an appeal
18  from such a decision shall be made directly to the Council
19  on Ethics, Bylaws and Judicial Affairs of the American
20  Dental Association by filing an affidavit with the
21  Chairperson of said council.
22
23  An appeal from any decision shall not be valid unless notice
24  of appeal is filed within thirty (30) days and the
25  supporting brief, if one is to be presented, is filed within
26  sixty (60) days after such decision has been rendered.  A
27  reply brief, if one is to be presented, shall be filed
28  within ninety (90) days after such decision is rendered.  A
29  rejoinder brief, if one is to be presented, shall be filed
30  within one hundred five (105) days after such decision is
31  rendered.  After all briefs have been filed, a minimum of
32  forty-five (45) days shall lapse before the hearing date.
33  Omission of briefs will not alter the briefing schedule or
34  hearing date unless otherwise agreed to by the parties and
35  the chairman of the appropriate appellate agency.  No
36  decision shall become final while an appeal therefrom is
37  pending or until the thirty- (30) day period for filing
38  notice of appeal has elapsed.  In the event of a sentence of
39  expulsion and no notice of appeal is received within the
40  thirty- (30) day period, this Association shall notify all
41  parties of the failure of the accused member to file an
42  appeal.  The sentence of expulsion shall take effect on the
43  date the parties are notified.  This Association and the
44  member's component society shall each determine what portion
45  of current dues, if any, shall be returned to the expelled
46  member.  Dues paid to the American Dental Association shall
47  not be refundable in the event of expulsion.  The procedure
48  used in processing appeals shall be as described in Chapter
49  XII Section 20D of the Bylaws of the American Dental
50  Association.

**CHAPTER II. COMPONENT SOCIETIES**

Section 10.   Organization.   Pursuant to the laws of the State of New York, there may be at least one component society in each Judicial District of the State of New York.

Section 20.   Name.   Each component society shall take its name from the Judicial District or County in which it is located and chartered.

The component societies are as follows:

| | | |
|---|---|---|
| NEW YORK COUNTY | - | County of New York |
| SECOND DISTRICT | - | Counties of Kings, Richmond |
| THIRD DISTRICT | - | Counties of Columbia, Sullivan, Ulster, Greene, Albany, Rensselaer |
| FOURTH DISTRICT | - | Counties of Schenectady, Saratoga, Washington, Essex, Franklin, Clinton, Warren, Montgomery, Hamilton, Fulton, Schoharie |
| FIFTH DISTRICT | - | Counties of Oneida, Onondaga, Lewis, Oswego, Herkimer, Jefferson, Madison, St. Lawrence |
| SIXTH DISTRICT | - | Counties of Otsego, Delaware, Chenango, Broome, Tioga, Chemung, Tompkins, Cortland, Schuyler |
| SEVENTH DISTRICT | - | Counties of Livingston, Wayne, Seneca, Yates, Ontario, Steuben, Monroe, Cayuga |
| EIGHTH DISTRICT | - | Counties of Erie, Chautauqua, Cattaraugus, Orleans, Niagara, Genesee, Alleghany, Wyoming |
| NINTH DISTRICT | - | Counties of Westchester, Orange, Rockland, Putnam, Dutchess |
| NASSAU COUNTY | - | County of Nassau |
| QUEENS COUNTY | - | County of Queens |
| SUFFOLK COUNTY | - | County of Suffolk |
| BRONX COUNTY | - | County of Bronx |

Section 30.   Powers and Duties.

   A. Each component society shall have the power to elect to membership all eligible persons who maintain their primary practice within the said component.  This restriction shall not be retroactive.

   B. Any dentist who actively practices within the geographic boundaries of more than one component society must designate one such component as the location of his/her primary practice as a condition of applying for and/or maintaining membership in a component society.  However, a recent graduate of a dental school shall have five years from the date of graduation or five years from the date of completion of training in his/her specialty area, whichever date comes later, in which to designate the location of his/her primary

practice, during which time he/she shall be eligible for membership in any component society in which he/she practices. This provision shall not apply to dentists who are members of the NYSDA upon the effective date of this amendment.

C. Each component society shall have the power to organize its members into branch societies.

D. Each component society shall have the power to provide for its financial support and to make laws, rules and regulations to govern its members provided such laws, rules and regulations do not conflict with these Bylaws.

E. Each component society shall have the power to discipline its members by reprimand, censure, suspension or expulsion, subject, however, to such rights conferred upon its members in Chapter I. Section 50. of these Bylaws.

F. Each component society shall have its membership dues and assessments collected by this Association.  Such dues shall not be unduly retained by this Association prior to being remitted to each respective component society.

G. A member in good standing of one component society who is eligible for transfer to another component society may make application for such transfer provided there are no formal charges pending against him/her.  If the transfer is effected on or before March 31 of the year of application, his/her dues should be paid to the component society to which he/she is transferring. If the transfer is effected after March 31, the society from which transfer is sought shall retain the dues for the current year.

H. Application for transfer of membership from one component society to another shall be made to the component society in which the applicant maintains his/her primary practice and to which transfer is sought.  The component society receiving such application shall obtain from the component society of which the applicant is currently a member certification that the applicant is in good standing and that there are no formal charges pending against him/her.

17

**CHAPTER III. BOARD OF GOVERNORS**

Section 10.    Composition.

A. The Board of Governors shall be composed of the officially
   certified members of each component society designated to
   serve as governors, the duly elected American Student Dental
   Association representative, and ex-officio, the elective
   officers and the Immediate Past President with power to
   vote. The Trustee to the American Dental Association and the
   appointive officer, shall be ex-officio members of the Board
   of Governors, without power to vote.

B. Each component society shall be represented by two (2) or
   more members who are elected to serve for a term of two (2)
   years. The number of Governors from each component society
   shall be based on the following formula:  Up to 1,000
   members, two (2) Governors; for each additional 1,000
   members or major portion thereof, one (1) additional
   Governor.   For purposes of this paragraph, the number of
   members shall be those eligible to vote on December 31
   preceding the first meeting in the succeeding calendar year
   at which the Governors are to take office.   The Executive
   Director shall notify each component society in writing by
   February 1st of the official number of Governors based on
   the certification of members eligible to vote on the
   preceding December 31.

C. Governors shall take office at the same time as the duly
   elected officers of the Association.

D. In the event of the death, resignation, removal from a
   component or election to another office of a Governor, or a
   change in the number of representatives to which a component
   is entitled, the vacancy or elimination shall be filled or
   vacated by the governing body of the component society
   affected.

E. In the temporary absence of a Governor, the representative
   or representatives in attendance from that component shall
   nominate to the Chair, a substitute member for that meeting
   and any subsequent meeting in which the vacancy exists,
   unless the Board of Governors is otherwise instructed by the
   president of such component society.

F. The American Student Dental Association representative to
   the Board of Governors shall be elected annually by the
   Region II Caucus of the American Student Dental Association
   at its Annual Session held in August or September.   The
   American Student Dental Association representative to the
   Board of Governors shall be a predoctoral dental student

1   attending a New York State dental school and a member of the
2   Association, the American Dental Association, and the
3   American Student Dental Association.  The American Student
4   Dental Association representative to the Board of Governors
5   shall take office upon his/her election and shall serve
6   until a successor is elected.  In the event of the death,
7   resignation, or removal from the American Student Dental
8   Association of the American Student Dental Association
9   representative to the Board of Governors, the vacancy shall
10  be filled by the Region II Caucus of the American Student
11  Dental Association.  In the temporary absence of the
12  American Student Dental Association representative to the
13  Board of Governors, the members of the American Student
14  Dental Association in attendance shall nominate to the Chair
15  a substitute representative for that meeting and any
16  subsequent meeting in which the vacancy exists, unless the
17  Board of Governors is otherwise instructed by the Region II
18  Caucus of the American Student Dental Association.
19
20  Section 20.   Certification of Governors.
21
22  The Secretary of each component society shall file with the
23  Executive Director of this Association, at least thirty (30) days
24  prior to the first day of the Annual Meeting of this Association,
25  the names of the Governors duly elected by that component
26  society. The Region II Caucus of the American Student Dental
27  Association shall file with the Executive Director of this
28  Association the name of the American Student Dental Association
29  representative to the Board of Governors within thirty (30) days
30  after the election of the American Student Dental Association
31  representative to the Board of Governors by the Region II Caucus
32  of the American Student Dental Association.
33
34  Section 30.   Powers.
35
36  The Board of Governors as the legislative and governing body of
37  this Association shall have the power:
38
39     A. To recommend to the Association the Code of Ethics for
40        governing the professional conduct of the members of this
41        Association.
42
43     B. To elect delegates and alternate delegates to the American
44        Dental Association pursuant to Chapter X of the Bylaws.
45
46     C. To approve all memorials, resolutions or opinions in the
47        name of the New York State Dental Association.
48
49     D. To create special committees.
50
51     E. To recommend a special assessment for a period of one (1)

19

year, not to exceed fifty ($50.00) dollars; this assessment
to take effect on January 1 immediately following
ratification by the members of the Association present and
voting at the Annual Meeting of the New York State Dental
Association and at component dental society meetings.

F. To elect honorary members.

G. To modify the membership dues by no more than the rate of
   inflation, as defined in Chapter XIV of these Bylaws.

H. To elect the Trustee for the Second District of the American
   Dental Asociation.

I. To elect the officers of the Association.

Section 40.    Duties.

It shall be the duty of the Board of Governors:

A. To appoint the chairman and members of all councils and
   special committees, unless otherwise provided for in the
   Bylaws.

B. To receive and act upon reports of officers, councils and
   committees and communications from component societies and
   members of this Association.

C. To appoint an Executive Director and an Editor.  The Editor
   shall be an observer to the Board of Governors and Executive
   Committee and shall be given access to all meetings of
   Association committees as needed.  The Editor shall be the
   Editor-in-Chief of all official journals of the Association,
   and as such, shall exercise full editorial control over such
   publications, subject to policies and procedures established
   by the Board of Governors and these Bylaws.  Any active or
   life or retired member of the ADA in good standing may be
   appointed to the position of Editor by the Board of
   Governors.

D. To adopt an annual budget.

E. To select the place for the Annual Meeting of the
   Association.

Section 50.    Meetings.

A. The Board of Governors shall hold stated meetings during the
   Annual Meeting of the Association, and during the spring of
   each year, to transact the business of the Association.

B. The December meeting of the Board of Governors shall be designated as the Annual Meeting.

C. Special Meetings.  Special meetings of the Board of Governors shall be called by the President, with the consent of the Executive Committee, or on written request of one-third (1/3) of the Board of Governors.  Only such business shall be considered at such special meetings as shall be mentioned in the call.  The time and place of any special meeting of the Board of Governors shall be determined by the President, provided, however, that the time selected shall be not less than fifteen (15) nor more than thirty (30) days after the date of such request.

D. The stated meetings of the Board of Governors shall be open to the members of the Association who may present any matter of interest to the Association for the consideration of the Board of Governors.

E. The President will preside at all meetings.  The President Elect, Vice President, or Immediate Past President are authorized to preside at the request of the President.

Section 60.  Official Call.

A. Annual Meeting.  The Executive Director of the Association shall cause to be published in The New York State Dental Journal an official notice of the time and place of each stated meeting, and he/she shall send each member of the Board of Governors a copy of such notice, as soon as practicable, but not less than thirty (30) days before the opening of such a meeting.

B. Special Meetings.  The Executive Director of the Association shall send an official written notice of the time and place of each special meeting and a statement of the business to be considered to every member of the Board of Governors.

Section 70.  Quorum.

The presence of a majority of the members of the Board of Governors representing a majority of the component societies shall constitute a quorum of the Board of Governors.

Section 80.  Order of Business.

A.    Stated Meetings

     1.    First Session

          a. Session called to order by the President

21

```
 1                        b. Roll Call
 2                        c. Adoption of minutes of previous meeting
 3                        d. Reports of officers
 4                        e. Nominations and election of delegates, alternate-
 5                           delegates, and members of councils
 6                        f. Reports of councils and committees
 7                        g. Supplementary reports
 8                        h. Unfinished business
 9                        i. New Business
10                        j. Communications
11                        k. Adjournment
12
13            2.    Second Session
14
15                        a. Roll Call
16                        b. Supplementary reports
17                        c. Reports of reference committees
18                        d. Nominations, elections, and appointment of
19                           chairman of councils and special committees
20                        e. Unfinished business
21                        f. Communications
22                        g. Adjournment
23
24     B.    Special Meetings
25
26                        a. Meeting called to order by the President
27                        b. Roll Call
28                        c. Reading of the call for special meeting
29                        d. Transactions of business as provided in the call
30                        e. Adjournment
31
32     Section 90.    Rules of Order.
33
34     A.    Standing Rules
35
36        1. Reports
37
38          All reports, except supplemental reports, of elective
39          officers, councils, Trustee to the American Dental
40          Association, the State Board for Dentistry, special
41          committees shall be published under the direction of the
42          Executive Director of the Association and sent to each
43          governor at least fourteen (14) days in advance of the
44          opening of the Annual Meeting or Semi-Annual Meeting.  All
45          supplemental reports of any such officers or agencies shall
46          be distributed, if possible, to each Governor before such
47          report is considered by the Board of Governors.
48
49     B.    Additional Rules
50
51          Sturgis Standard Code of Parliamentary Procedure shall
```

22

1   govern the deliberations of the Board of Governors and this
2   Association, in all cases in which they are applicable and
3   not in conflict with the standing rules or these Bylaws.
4
5
6   Section 100.   Standing Committees of the Board of Governors.
7
8   A.   Credentials, Rules and Order
9
10    1. Personnel
11
12     This committee shall consist of three (3) Governors
13     appointed by the President at least twenty (20) days in
14     advance of any session of the Board of Governors.  The
15     chairman shall be appointed by the President from the
16     members of the committee for a period of one (1) year.
17
18    2. Duties
19
20       a. To review the agenda as published in the reports and to
21          consider requests from officers and members of the
22          Board for any change in the order of business.
23       b. To report to the Board of Governors regarding the
24          agenda and the order of business after the roll call of
25          each session of the Board.
26       c. To conduct a hearing on any contest which might arise
27          over the representation of a district and to report its
28          recommendation to the Board of Governors.
29
30  B.   Constitution and Bylaws
31
32    1. Personnel
33
34     This committee shall consist of three (3) Governors, elected
35     by the Board for a term of one (1) year.  The chairman shall
36     be appointed by the President from the members of this
37     committee for a period of one (1) year.
38
39    2. Duties
40
41       a. To examine the articles of the Constitution and Bylaws
42          with a view to suggesting changes that will advance the
43          administrative efficiency of this Association.
44       b. To review all proposed amendments for proper language
45          and consistency prior to publication.
46
47  C.   Audit
48
49    1. Personnel
50
51     This committee shall consist of three (3) Governors, elected

by the Board for a term of one (1) year.  At least one such member shall have recent, relevant financial knowledge. The chairman shall be appointed by the President from the members of this committee for a period of one (1) year.

  2. Duties

      a. To examine the books and records of the Association.
      b. To select and contract with an independent audit firm to conduct an annual financial statement audit of the Association.  Such audit firm, or its lead partner in charge of our engagement, must be changed at least every five (5) years.
      c. To study the audit of the Association's accounts and to submit a certified audit of the financial condition of the Association for the fiscal year to the Board of Governors.

D. Reference Committees.  Such reference committees as necessary shall be appointed from the Board of Governors by the President to expedite the business before the Board.


**CHAPTER IV. ELECTIVE OFFICERS**

<u>Section 10.</u>  Number and Title.

The elective officers of this Association shall be President, President Elect, Vice President, Secretary-Treasurer as provided in Article V of the Constitution.  The President, President Elect, and Vice President of the Association shall serve according to the following rotation:  Suffolk County, Fourth District, Ninth District, Queens County, New York County, Bronx County, Fifth District, Nassau County, Seventh District, Third District, Eighth District, Sixth District, Second District.

<u>Section 20.</u>  Eligibility.

Only an active, retired or life member in good standing of this Association shall be eligible to serve as an elective officer.

<u>Section 30.</u>  Nominations.

At the Annual meeting of the NYSDA Board of Governors, a nomination for each of the offices of President Elect, Vice President, Secretary-Treasurer shall be made by the Council on Nominations.

<u>Section 40.</u>  Additional Nominations.

Additional nominations may be made by petition signed by at least

five (5) members in good standing of each of the component
societies and presented to the Executive Director of this
Association at least fifteen (15) days prior to the opening of
the Annual Meeting.

Section 50.  Elections.

The elective officers of the Association shall be elected by a
majority vote of the Board of Governors during the Annual
Meeting.

Section 60.  Tenure of Office.

The elective officers shall serve for a term of one (1) year or
until their successors are elected and installed, with the
Secretary-Treasurer allowed to serve a maximum of five (5)
consecutive terms.

Section 70.  Installation.

The elective officers shall be installed during the Annual
Meeting at which they were elected and assume their duties the
following January 1.

Section 80.  Vacancies.

In the event the office of President, President Elect or Vice
President becomes vacant, the vacancy shall be filled by another
active, life or retired member in good standing of the his/her
component society in accordance with Chapter 10 of this section
of the Bylaws, subject to the approval of the Board of Governors.

Section 90.  Duties of the Elective Officers.

A. President.  It shall be the duty of the President:

    1. To preside at all meetings of the Board of Governors and to
       serve as an ex-officio member thereof.

    2. To preside at the general sessions of the Annual Meeting and
       to deliver an address at the opening general session of such
       meeting on such matters as he/she may deem important to the
       public and the dental profession.

    3. To call special meetings of the Board of Governors as
       provided in Chapter III, Section 50.C, of these Bylaws.

    4. To appoint the chair of councils, and the chair and members
       of all committees not otherwise provided for in these
       Bylaws.

25

5. To fill any vacancies that may occur not otherwise provided for in these Bylaws.

6. To submit a written report of the activities of his/her office to the Board of Governors.

7. To serve as an official representative of this Association in its contacts with governmental, civic, business and professional organizations for the purpose of advancing the objectives and policies of this Association.

8. To perform such other duties as may be provided in these Bylaws.

B. President Elect.  It shall be the duty of the President Elect:

1. To assist the President as requested.

2. To serve as an ex-officio member of the Board of Governors.

3. To succeed to the office of President without other election at the next Annual Meeting of the Association after that at which he/she was elected to the office of President Elect.

4. To make disbursements when the Secretary-Treasurer is not available, upon the order of the Board of Governors or upon presentation of a voucher, in duplicate, signed by either the President or the Executive Director.

5. Shall make official visits to component societies.

C. Vice President.  It shall be the duty of the Vice President:

1. To assist the President as requested.

2. To serve as ex-officio member of the Board of Governors.

3. To succeed to the office of President in the event of vacancy of such office as provided in this Chapter of the Bylaws.

4. To make disbursement when the Secretary-Treasurer and the President Elect are not available, upon the order of the Board of Governors or upon presentation of a voucher, in duplicate, signed by either the President or the Executive Director.

5. Shall make official visits to component societies.

26

D. Secretary-Treasurer.   The Secretary-Treasurer shall serve as
   an ex-officio member of the Board of Governors and in other
   positions as defined in these Bylaws.  He/she shall serve as
   the elected officer responsible for the administrative and
   financial functioning of the Association and shall utilize
   the Executive Director, as appropriate, to fulfill such.

   The Secretary-Treasurer shall be responsible for:

   1. The recording of all proceedings of the meetings of the
      Board of Governors and the Association.

   2. To secure custody of all monies, securities and deeds
      belonging to the Association.  He/She shall ensure such
      funds are invested in accordance with the rules and policies
      prescribed by the Board of Governors, and will report
      periodically on the investment performance of such assets.

   3. The selection of investment advisory companies for managing
      excess Association funds, subject to the approval of the
      Executive Committee.

   4. A proper and periodic accounting of all financial
      transactions to the Board of Governors.

   5. The development of an annual operating budget for the
      Association for approval by the Board of Governors.  Such
      budget must be developed in consultation with the President,
      President Elect, Vice President, and Executive Director.

   6. Securing an adequate bond at the expense of the Association
      for pertinent members and employees serving on official
      Association business.

   7. All necessary technical editorial changes to the
      Constitution and Bylaws relating to spelling, grammar,
      punctuation, renumbering or re-lettering, name changes,
      gender neutrality, or other similar technical editorial
      matters.  All such changes shall be reported by the
      Secretary-Treasurer to the Board of Governors at the Board
      of Governors meeting immediately following the making of
      such changes.  Nothing in this provision shall be construed
      as allowing the Secretary-Treasurer to make any substantive
      change to the Constitution or Bylaws.  Pursuant to Article
      VIII of the Constitution and Chapter XIV of the Bylaws, any
      change make by the Secretary-Treasurer may be altered or
      recinded.

   8. Any other duties as may be assigned by the President or the
      Board of Governors.

Section 100. Administrative Year. The administrative year of this Association shall begin on January 1st and end December 31st of each year.

**CHAPTER V. APPOINTIVE OFFICER.**

Section 10. Number and Titles.

The appointive officer of this Association shall be an Executive Director.

Section 20. Appointment.

Any active or life member of the ADA in good standing may be appointed to the position of Executive Director by the Board of Governors.

Section 30. Tenure of Office and Remuneration.

The Board of Governors shall determine the term of office and remuneration of the appointive officer of this Association.

Section 40. Duties.

A.    Executive Director. It shall be the duty of the Executive Director:

   1. To be the executive head of the State Office and all its activities.

   2. To engage all employees except as otherwise provided in these Bylaws.

   3. To certify as to the qualifications of applicants for life or retired membership.

   4. To supervise and coordinate the activities of all councils and committees of the Association in regard to their specific assignments.

   5. To assist all the officers of this Association in the performance of their respective duties.

   6. To perform such other duties as may be directed by the Board of Governors.

   7. To furnish an adequate bond at the expense of the Association.

28

8. To receive dues, assessments and other monies and account to the Secretary-Treasurer for same.

9. To serve as a trustee of such insurance policies as require trustees.

10. To make properly vouchered disbursements.  Records of all invoices and disbursements are to be forwarded to the Secretary-Treasurer within fifteen (15) days.

11. To implement in such ways as may be necessary all officially adopted policies and programs except as otherwise provided in the Bylaws.

12. To appropriately administer all procedures and programs entered in the official proceedings of meetings of the Association.

13. To maintain a record and report to the Board of Governors the names of all deceased members of the Association.

14. To serve as an ex-officio member of the Board of Governors without the right to vote.

Section 50.  Vacancies.

In the event of a vacancy in an appointive office, such vacancy shall be filled by the Executive Committee until the next meeting of the Board of Governors.


CHAPTER VI. EXECUTIVE COMMITTEE.

The Executive Committee shall be composed of the elected officers, the Immediate Past President, the Chair of the Committee on Finance, Budget and Audit, two Governors nominated by the President Elect from components not otherwise represented and elected by the Board of Governors, and additional Governors from components not otherwise represented, nominated by the Officers and elected by the Board of Governors at the Annual Meeting.  If the Secretary-Treasurer or the Chair of the Committee on Finance, Budget & Audit are from components already represented on the Committee, they shall be ex-officio members without the right to vote.  The Executive Director shall be an ex-officio member without the right to vote.  The President shall be chair of this committee.  Meetings shall be called by the President, or any four of its members.  A quorum shall consist of eight (8) members with the right to vote.

The duties of the Executive Committee shall be to transact business on behalf of the Association, between stated meetings of

29

the Board of Governors.  The Executive Committee shall not have
the right to levy special assessments.  It must report all
actions taken by it, for the record, at the next stated meeting
of the Board of Governors.


**CHAPTER VII.   CONFLICT OF INTEREST.**

It is the policy of this Association that individuals who serve
in elective, appointive or employed offices or positions do so in
a representative or fiduciary capacity that requires loyalty to
the Association.   At all times while serving in such offices or
positions, these individuals shall further the interests of the
Association as a whole.   In addition, they shall avoid:


   a. placing themselves in a position where personal or
      professional interests may conflict with their duty to this
      Association;

   b. using information learned through such office or position
      for personal gain or advantage;

   c. obtaining by a third party an improper gain or advantage.

As a condition for selection, each nominee, candidate and
applicant shall disclose any situation which might be construed
as placing the individual in a position of having an interest
that may conflict with his/her duty to the Association.   While
serving, the individual shall comply with the conflict of
interest policy applicable to his/her office or position, and
shall report any situation in which a potential conflict of
interest may arise.   The Board of Governors shall approve the
compliance activities that will implement the requirements of
this chapter.


**CHAPTER VIII. CODE OF ETHICS.**

<u>Section 10.</u>   The Code of Ethics of this Association shall be that
in effect on the date of the adoption of these Bylaws.   A true
copy thereof, certified to be correct by the chair of the Council
on Ethics and the Secretary-Treasurer of this Association, shall
be lodged in the official records of the Association.

<u>Section 20.</u>   The Code of Ethics of this Association may be
amended in the same manner as provided in Chapter XIII hereof for
amendment of the Bylaws.   Any such amendment of the Code of
Ethics shall become effective in accordance with its terms when
certified by the chair of the Council on Ethics and the
Secretary-Treasurer of the Association and lodged in the official

records of the Association.

Section 30.  Each component society may adopt a Code of Ethics, not in conflict with that of the Code of Ethics of this Association.  Each component society shall file a copy of its Code of Ethics with the Executive Director of the Association.

Section 40.  Every member of this Association shall be bound by the Code of Ethics of this Dental Association, the component society of which he/she is a member and the Code of Ethics of the component society in each component in which he/she practices, or conducts or participates in other professional dental activities. Failure to do so shall constitute grounds for suspension or revocation of membership in this Association.  Upon receipt of a disciplinary decision from a component society regarding an ethical violation committed by a member, the component society in which the member holds membership shall enforce the disciplinary decision  of the component society that rendered the disciplinary decision.


CHAPTER IX. ADMINISTRATIVE CODE.

Section 10.  The Administrative Code of this Association established the councils of this Association, their numbers of members and tenure, methods of selection, and their responsibilities and duties.  A true copy thereof, certified to be correct by the Secretary-Treasurer of this Association shall be lodged in the official records of the Association.

Section 20.  The Administrative Code may be amended by the approval of two-thirds (2/3rds) vote of the Board of Governors.


CHAPTER X. FINANCES.

Section 10.  Membership Dues.

A. Active Members.  The dues for active membership of the Association shall be Four hundred seventy-seven ($477.00)dollars per annum.  Dues of active members are due January 1 of each year.

Seventy-five dollars of the membership dues shall be contributed to the NYSDA endorsed political action committee unless a member exercised his/her right to reassign such amount to another NYSDA fund as provided on the dues statement.

B. Recent Graduate Members.  The payment of dues for the first five (5) full calendar years of active membership starting

```
 1        January 1 following graduation from dental school or
 2        completion of an advanced training course of not less than
 3        one (1) academic year's duration or residency training
 4        program which was commenced upon graduation from dental
 5        school shall be as follows:
 6
 7        First full year following graduation from dental school:  25
 8        percent of active member dues plus the dues of the American
 9        Dental Association for such members.
10
11        Second and Third year:  50 percent of dues for active
12        members plus the dues of the American Dental Association for
13        such members.
14
15        Fourth and Fifth year:  75 percent of dues of active members
16        plus the dues of the American Dental Association for such
17        members.
18
19        Sixth year:  100 percent of dues of active members plus the
20        dues of the American Dental Association for such members.
21
22
23        Any dentist shall be classified as a recent graduate member,
24        upon completion of a course in dental education upon
25        graduation, or completion of a full-time internship,
26        residency, or post-graduate work; providing that he/she has
27        maintained his/her membership status in the American Dental
28        Association during such period of education.  Dues of
29        recently graduated members are due January 1 of each year.
30
31   C. Life Members.  The dues for life members who continue to be
32        gainfully employed in dentistry* shall be fifty percent
33        (50%) of dues for active members.  All other life members
34        shall be exempt from payment of dues from this Association.
35        Dues of life members are due January 1 of each year.
36
37        (* that gainfully employed in dentistry shall mean:  earning
38        income by the performance of services as a member of the
39        faculty of a dental or dental auxiliary school, as a dental
40        administrator or consultant, or as a practitioner of any
41        activity for which a dental degree is required.)
42
43   D. All members, except life, honorary, recent graduate or
44        student members elected after July 1st, shall pay one-half
45        of the current year's dues; those who are elected after
46        October 1st shall pay one-quarter of the current year's
47        dues; except that former active members whose membership has
48        lapsed for failure to pay current year's dues shall, upon
49        reinstatement or election to active membership, be required
50        to pay the full year's dues.  New members who have not
51        previously been members of the American Dental Association,
```

32

the Association, and a component society, and who do not
qualify for a dues reduction as recent graduate members,
shall pay only one-half of the dues amount otherwise
chargeable to them under these Bylaws for their first year
of membership.

E. An active member, who had been such when he/she entered upon
active duty in one of the armed services or equivalent duty
in the Public Health Service, but who, during such military
or equivalent duty, interrupted his/her active membership
because of failure to pay dues and who, within one (1) year
after separation from such military or equivalent duty,
resumed his/her active membership, may pay back dues for any
missing period of active membership at the rate of dues
current during the missing years of membership.  Retroactive
dues of the New York State Dental Association shall be
waived for members who provide affidavits supporting that
they were in Federal Dental Services during the period
between the years 1940-1948 inclusive.

F. Retired Members.  The dues of retired members shall be
twenty-five percent (25%) of NYSDA active member dues and
due January 1 of each year.

G. Student Members.  The dues of student members shall be ten
($10.00) dollars due on January 1 of each year.  Student
members who are first, second, third and fourth year
students attending dental schools in the State of New York
and those residents of New York State who are in attendance
at dental schools outside of New York State and are members
of the ASDA shall be exempt from the payment of dues of this
Association. Student membership terminates on December 31
after graduation or on completion of an internship,
residency or graduate work as provided in Chapter I. Section
20. E.

H. Honorary Members.  Honorary members shall be exempt from
payment of dues of this Association.

Section 20.  Fiscal Year.  The fiscal year of this Association
shall begin on January 1st and end on December 31st of each year.

Section 30.  General Operating Fund.  The General Operating Fund
shall consist of all monies received other than those
specifically allocated to other funds by these Bylaws.  This fund
shall be used for defraying all expenses incurred by this
Association not otherwise provided for in these Bylaws.

Section 40.  Relief Fund.  This Association shall establish a
Relief Fund, fully segregated from any other funds of the
Association, for the purpose of granting official aid to

dentists, their dependents and survivors in accordance with the
rules and regulations formulated by the Council on Relief and
approved by the Board of Governors.

Section 50.  Restricted Funds.  Other restricted funds may be
established by order of the Board of Governors.  They shall be
under the supervision of the Secretary-Treasurer and the
Committee on Finance, Budget and Audit of the Board of Governors.

## CHAPTER XI. DELEGATES TO THE AMERICAN DENTAL ASSOCIATION

A. The Board of Governors shall elect annually at the Annual
   Meeting, delegates and alternates to the American Dental
   Association from nominations made by the component
   societies. The delegates to the American Dental Association
   shall be the official representatives of this Association in
   the House of Delegates of the ADA.

B. The number of delegates and alternates is determined by the
   American Dental Association on the basis of its membership
   records at the close of the calendar year immediately
   preceding its Annual Meeting for which the delegates and
   alternates are to be elected.  The distribution of these
   delegates and alternates among the component societies shall
   be according to a standing resolution of the Board of
   Governors, except as may otherwise be provided for in
   Section D of this Chapter.

C. The elective officers and the Immediate Past President shall
   represent the Association as delegates-at-large in the House
   of Delegates of the American Dental Association.

D. Vacancies occurring among the delegates prior to sixty (60)
   days before the first meeting of the Annual Session of the
   ADA House of Delegates, shall be filled by the President of
   this Association from the alternate delegates of the
   component where the vacancy has occurred or if none be
   available, such vacancies shall be filled by the Executive
   Committee, from nominees supplied by the component, or
   should none be supplied, from all the alternate delegates,
   and should none be available, from all the active, life and
   retired members of the Association.  Vacancies occurring
   among the delegates within sixty (60) days before the first
   meeting and through the adjournment of the Annual Session of
   the ADA House of Delegates, shall be filled by the Chair of
   the Second Trustee District Caucus from among all the
   alternates, giving priority to the alternates from the
   component where the vacancy has occurred, or should none be
   available, from the active, life and retired members of the
   Association.

34

E. Vacancies occurring among the delegates-at-large shall be filled from among the alternate delegates-at-large. The alternate delegates-at-large shall be the Executive Director, and available Past Presidents and should none of these be available, from the regular alternate delegates present, then from the active members of this Association.

F. The delegates from this Association shall meet on or before the opening day of the House of Delegates of the American Dental Association, to select a chair and secretary. The chair, in addition to his/her other duties, shall make a report of the transactions of the House of Delegates to this Association, during the following scheduled Annual Meeting.

**CHAPTER XII. PUBLICATIONS.**

Section 10.   Official Journal.

A. This Association shall publish or cause to be published an official journal under the title of The New York State Dental Journal. This journal will be published in accordance with the policies established by the Council on Publications and adopted by the Board of Governors.

B. The object of The Journal shall be to report, chronicle and evaluate activities of scientific and professional interest to the profession.

C. The frequency of issue and the subscription rate shall be determined by the Council on Publications and approved by the Board of Governors.

Section 20.   Official Transactions.

The transactions of the Association and the Board of Governors, and the reports of the officers, councils and committees shall be published under the direction of the Executive Director, and shall be the official record of the New York State Dental Association.

**CHAPTER XIII. INDEMNIFICATION.**

Each member of the Board of Governors, trustee, officer, council member, committee member, employee and other agent of this Association shall be held harmless and indemnified by the Association against all claims and liabilities and all costs and expenses, including attorney's fees, reasonably incurred or

imposed upon him/her in connection with or resulting from any
action, suit or proceeding, or the settlement or compromise
thereof, to which he/she may be made a party by reason of any
action taken or omitted to be taken by him/her as a member of the
Board of Governors, trustee, officer, council member, committee
member, employee or agent of the Association, in good faith.
This right of indemnification shall insure to such person whether
or not he/she is a member of the Board of Governors, trustee,
officer, council member, committee member, employee or agent at
the time such liabilities, costs or expenses are imposed or
incurred and, in the event of his/her death, shall extend to
his/her legal representatives.  The Association shall indemnify
each member of the Board of Governors, trustee, officer, council
member, committee member, employee and other agent of this
Association to the full extent permissible by law.


**CHAPTER XIV. AMENDMENTS.**

These Bylaws may be amended as follows:

   1. Except as specified in section 3 below, the amendment to be
      acted upon must be in writing, published in the New York
      State Dental Journal at least thirty (30) days prior to the
      Annual Meeting at which action is to be taken, and read at a
      previous Annual Meeting of the Association, except that an
      amendment presented with the consent of three-quarters (3/4)
      of the members present in person and voting may be voted
      upon at the same meeting.

   2. Such amendment shall be adopted by the affirmative votes of
      two-thirds (2/3rds) of the members present in person and
      voting at the annual general membership meeting at which
      action thereon is taken.

   3. Amendments which relate to dues and special assessments:
      1) Amendments to modify the membership dues at no more than
      the rate of inflation may be adopted by the affirmative
      votes of two-thirds (2/3rds) of the Governors voting at a
      stated meeting,
      2a) Amendments that modify the membership dues at more than
      the rate of inflation shall be approved by the affirmative
      votes of two-thirds (2/3rds) of the Governors voting at a
      stated meeting and, the majority vote of the cumulative
      membership in attendance at meetings of the component
      societies, such meetings to take place no later than the
      commencement date of the next regular meeting of the Board
      of Governors, provided that the amendment be printed in The
      New York State Dental Journal at least 30 days in advance of
      the component meetings in which the membership is to vote.
      2b)  Amendments relating to special assessments require, an

1  affirmative vote of two-thirds (2/3rds) of the cumulative
2  membership in attendance at meetings of the component
3  societies, such meetings to take place no later than the
4  commencement date of the next regular meeting of the Board
5  of Governors, provided that the amendment be printed in The
6  New York State Dental Journal at least 30 days in advance of
7  the component meetings in which the membership is to vote.
8  3)  For the purposes of this section, the "rate of
9  inflation" shall be the annual percentage change in the U.S.
10  Department of Labor's Consumer Price Index - All Urban
11  Consumers - Northeast Region, as of the preceding August 31.
12
13  4. Amendments which relate to elective representatives and
14  special revisions of the Bylaws shall be adopted by the
15  combined affirmative vote of two-thirds (2/3rds) of the
16  members present in person and voting (i) at the Annual
17  Meeting at which action thereon is taken, and (ii) at the
18  meeting of each component society held no later than the
19  commencement date of the Spring Semi-Annual Meeting of the
20  Board of Governors following such Annual Meeting (excluding
21  from consideration at any such meeting of a component
22  society the vote of any member who had voted on such
23  amendment at the Annual Meeting).



**STATE OF NEW YORK**
**OFFICE OF THE ATTORNEY GENERAL**
ANDREW M. CUOMO

# FACSIMILE TRANSMISSION

DATE __7/16/08__              **NUMBER OF PAGES** __14__
                             **(INCLUDING THIS PAGE)**

TO __Steven Hensley__

_____     **FAX NO.(** 866 __)__ 420-0199

FROM __Sheryl Martin-Moriarty__

**REMARKS**

Re:  Manhattan Dental Association Inc.


Attached:

Certificate of Amendment to the Certificate of Incorporation and Consent to File

---

### *IF THERE IS A PROBLEM WITH THIS TRANSMISSION, PLEASE CONTACT*

NAME __Sheryl Martin-Moriarty__              OFFICE __Antitrust Bureau__

TELEPHONE NO.(212 )__416-8436__              FAX NO.(212  )__416-6015__

---

## CONFIDENTIAL

The information contained in this facsimile is privileged and confidential information intended only for the use of the individual or entity named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this is strictly prohibited.

*IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR,*
*PLEASE IMMEDIATELY NOTIFY THE SENDER BY TELEPHONE.  THANK YOU.*

**THE CAPITOL, ALBANY, NY 12224-0341**

OAG 005 (1/07)

JUL-16-2008  15:40        NYS                                    212 416 6015      P.02



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

ANDREW M. CUOMO
ATTORNEY GENERAL

DIVISION OF ECONOMIC JUSTICE
ANTITRUST BUREAU

Re: Manhattan Dental Association Inc.

Pursuant to Section 804(a)(i) of the Not-for-
Profit Corporation Law consent is hereby given
to the filing of this Certificate of Amendment
to the Certificate of Incorporation. This
consent however, shall not be construed as
approval by the Attorney General of the purposes
or objects of such corporation.

_____                    7/14/08
Assistant Attorney General                     Date

120 Broadway, New York, NY 10271 ● (212) 416-8262 ● Fax (212) 416-6015 ● http://www.oag.state.ny.us

# CERTIFICATE OF AMENDMENT
## OF THE
## CERTIFICATE OF INCORPORATION
### OF
## NEW YORK COUNTY DENTAL ASSOCIATION, INC.

Under Section 803 of the Not-for-Profit Corporation Law

**FIRST**:  The name of the corporation, as said name appears on the index of names of existing domestic and foreign corporations of any type or kind in the New York Department of State, is New York County Dental Association, Inc.

**SECOND**:  The date of filing of the certificate of incorporation with the Department of State is February 22, 2008.

**THIRD**:    The law the corporation was formed under is the Not-for-Profit Corporation Law of the State of New York.

**FOURTH**:  The corporation is a corporation as defined in Section 102(a)(5) of the Non-for-Profit Corporation Law.  The corporation is a Type B corporation.

**FIFTH**:  The amendment effected by this certificate of amendment is as follows: Paragraph First of the certificate of incorporation relating to the name of the corporation is hereby amended to read as follows:

"Paragraph First:  The name of the corporation is Manhattan Dental Association Inc."

**SIXTH**:   The Secretary of State is designated as agent of the corporation upon whom process against it may be served.  The address to which the Secretary of State shall forward copies of process accepted on behalf of the corporation is:  Dr. Elliot Moskowitz, 11 Fifth Avenue, New York, New York 10003.

**SEVENTH**:  The certificate of amendment was authorized by the vote of a majority of the entire board of directors.  The corporation currently has no members.

*Remainder of Page Intentionally Left Blank*

11061672.1

**IN WITNESS WHEREOF,** the undersigned affirms under the penalties of perjury that the statements contained herein are true on this 24th day of June, 2008.


By: /s/ Robert B. Raiber
Name: Robert B. Raiber, DDS
Title:  Secretary

11061672.1

# CERTIFICATE OF AMENDMENT

## OF THE

## CERTIFICATE OF INCORPORATION

## OF

## NEW YORK COUNTY DENTAL ASSOCIATION, INC.

Under Section 803 of the Not-for-Profit Corporation Law

Filed by:  Steven A. Hensley / Nixon Peabody LLP

437 Madison Avenue

New York, New York  10022

11061672.1

# STATE OF NEW YORK

# DEPARTMENT OF STATE

I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is a true copy of said original.



WITNESS my hand and the official seal of the Department of State, at the City of Albany, on February 27, 2008.

Paul LaPointe
Special Deputy Secretary of State

Rev. 06/07

080222000533

## CERTIFICATE OF INCORPORATION

### OF

### NEW YORK COUNTY DENTAL ASSOCIATION, INC.

#### Under Section 402 of the Not-for-Profit Corporation Law

**FIRST:**      The name of the corporation is New York County Dental Association, Inc.

**SECOND:**      The corporation is a corporation as defined in subparagraph (a)(5) of Section 102 (Definitions) of the *Not-for-Profit Corporation Law.*

**THIRD:**      The corporation shall be a Type B corporation pursuant to Section 201 of the *Not-for-Profit Corporation Law.*

**FOURTH:**      The office of the corporation is to be located in the County of New York, State of New York.

**FIFTH:**      The nature of the corporation is to engage in any lawful act or activity for which corporations that are organized not-for-profit may be organized under the laws of the State of New York. Initially and more specifically the purposes for which the corporation is formed are as follows:

(a) To promote and improve the science, art and profession of dentistry.

(b) To promote common interests of its members through the establishment of a collegial environment for dentists to explore ethical paths of professional expression and learning as may qualify it as exempt from federal income tax pursuant to Section 501(c)(6) of the Internal Revenue Code of 1986 or the corresponding provision of any subsequent federal tax laws.

(c) To support the American Dental Association tri-partite structure on a local, state and national level.

(d) To disseminate knowledge and information to foster better oral health care of the public in the County of New York in all aspects of dentistry by means of educational forums, programs, seminars, publications, and the media.

(e) To work with community and legislative bodies to promote an increased awareness of the importance of oral health care.

(f) To do any other act or thing incidental to or connected with the foregoing purposes or in advancement thereof, but not for the pecuniary profit or financial gain of its members,

SOCO/ 889629

080222000533

trustees, directors or officers, except as permitted under Article 5 of the *Not-for-Profit Corporation Law*.

(g) In addition to the foregoing corporate purposes, and subject to the limitations and restrictions provided herein, the corporation shall have all of the general powers set forth in Section 202 of the *Not-for-Profit Corporation Law*.

SIXTH:    At all times and under all circumstances, and notwithstanding merger, consolidation, reorganization, termination, dissolution, or winding up of the corporation, voluntary or involuntary or by the operation of law, or upon amendment of the Articles of the Corporation:

(a) Nothing herein shall be construed as authorizing the corporation to possess any purpose, object or power or to do any act or thing forbidden by law to a not-for-profit corporation organized under the laws of the State of New York.

(b) Notwithstanding any other provision of this Certificate, the corporation shall not engage in, conduct or carry on any activities, nor shall it have or exercise any power or authority whether it be expressly, by interpretation, or by operation of law, directly or indirectly, not permitted to be conducted or carried on by an organization exempt pursuant to Section 501(c)(6) of the Internal Revenue Code of 1986 or its regulation, as they now exist or the corresponding provision of any subsequent federal tax law.

(c) The corporation has not been formed for pecuniary profit or financial gain, and no part of the earnings, assets, income or profit of the corporation is distributable to, or inures to the benefit of, its incorporators, members, trustees, directors, officers or any private individual or shareholder, except that reasonable compensation may be paid for services rendered to or for the corporation effecting one or more of its purposes and except to make reimbursement in reasonable amounts for expenses actually incurred in carrying out one or more of the purposes set forth in paragraph FIFTH hereinabove and except to the extent permitted under the *Not-for-Profit Corporation Law*.

(d) Neither the whole, nor any part or portion, of the assets or net earnings of the corporation shall be used, nor shall the corporation ever be operated, for objects or purposes other than those set forth in paragraph FIFTH hereinabove.

(e) The corporation shall not, except to an insubstantial degree, engage in any activities or exercise any powers that are not in furtherance of its purposes. The corporation shall not operate for the purpose of carrying on a trade or business for profit.

(f) None of the purposes or activities of the corporation are designed or intended to authorize the proposed corporation or any of its members, in any form whatsoever, to treat or deal with collective bargaining, the regulation of wages, hours, working conditions, employer-employee grievances or any other employer-employee relations.

SGCGB 899829

(g) Nothing contained in this certificate shall authorize or empower the corporation to perform or engage in any act or practice prohibited by the *General Business Law*, Section 340, or other anti-monopoly or antitrust statute of the State of New York.

(h) Nothing herein shall authorize the corporation to operate a college or university or to advertise or offer credit-bearing courses or degrees in the State of New York.

(i) Nothing herein shall authorize the corporation to engage in the practice of any profession, including the professions of dentistry or dental hygiene, or to use a professional title of any profession required to be licensed pursuant to Title VIII of the *Education Law*.

(j) Nothing herein shall authorize the corporation to provide professional training in the professions of dentistry or dental hygiene or any other profession required to be licensed under Title VIII of the *Education Law*.

(k) Any referral made to an individual licensed pursuant to Title VIII of the *Education Law* for the performance of professional services pursuant to such Title shall be made on a non-fee basis.

**SEVENTH:**   There shall be at least three (3) directors of the corporation.  The names and addresses of the initial directors, each of whom is of full age, are as follows:

1.    Dr. Elliot Moskowitz
      11 Fifth Avenue
      New York, New York 10003

2.    Dr. Melvyn Leifert
      14 Rutland Road
      Great Neck, New York 11020

3.    Dr. Robert B. Raiber
      45 Rockefeller Plaza  # 1809
      New York, New York 10111

**EIGHTH:**    The Secretary of State is designated as agent of the corporation upon whom process against it may be served. The address which the Secretary of State shall mail a copy of any process accepted on behalf of the corporation is:

      Dr. Elliot Moskowitz
      11 Fifth Avenue
      New York, New York 10003

**NINTH:**    Each of the incorporators is of the age of eighteen (18) years or over.

SGCOJ 889829

IN WITNESS WHEREOF, this certificate has been made, subscribed and acknowledged by the undersigned this $17$ day of January, 2008.

X _____

Dr. Elliot Moskowitz
11 Fifth Avenue
New York, New York 10003

X _____

Dr. Melvyn Leifert
14 Rutland Road
Great Neck, New York 11020

X _____

Dr. Robert B. Raiber
45 Rockefeller Plaza # 1809
New York, New York 10111

SGCGJ 585829

STATE OF NEW YORK
THE STATE EDUCATION DEPARTMENT
Albany, New York

## CONSENT TO FILING WITH THE DEPARTMENT OF STATE
### (General Use)

Consent is hereby given to the filing of the annexed certificate of incorporation

of _____ **New York County Dental Association, Inc.** _____

[name of entity]

pursuant to the applicable provisions of the Education Law, the Not-for-Profit Corporation Law, the Business Corporation Law, the Limited Liability Company Law or any other applicable statute.

This consent is issued solely for purposes of filing the annexed document by the Department of State and shall not be construed as approval by the Board of Regents, the Commissioner of Education or the State Education Department of the purposes or objects of such entity, nor shall it be construed as giving the officers or agents of such entity the right to use the name of the Board of Regents, the Commissioner of Education, the University of the State of New York or the State Education Department in its publications or advertising matter.



IN WITNESS WHEREOF this instrument is executed and the seal of the State Education Department is affixed.

RICHARD P. MILLS
Commissioner of Education

By: *Seth D. Gilboord*

Seth D. Gilboord

Commissioner's authorized designee

FEB 0 6 2008

Date

**THIS DOCUMENT IS NOT VALID WITHOUT THE SIGNATURE OF THE COMMISSIONER'S AUTHORIZED DESIGNEE AND THE OFFICIAL SEAL OF THE STATE EDUCATION DEPARTMENT.**

JUL-16-2008  15:42          NYS                                         212 416 6015     P.12

FEB-14-2008  16:23      NYS                              212 416 6015     P.02



## STATE OF NEW YORK
### OFFICE OF THE ATTORNEY GENERAL

ANDREW M. CUOMO                                        DIVISION OF ECONOMIC JUSTICE
ATTORNEY GENERAL                                              ANTITRUST BUREAU

                                (NH)

Re: NEW YORK COUNTY DENTAL ASSOCIATION, INC.

Pursuant to Section 404(a) of the Not-for-
Profit Corporation Law consent is hereby given
to the filing of this Certificate of Incorporation.
This consent, however, shall not be construed as
approval by the Attorney General of the purposes
or objects of such corporation.

_____           _____
Assistant Attorney General                 Date   2/14/08

120 Broadway, New York, NY 10271 ● (212) 416-8262 ● Fax (212) 416-6015 ● http://www.oag.state.ny.us

.N. Y. S. DEPARTMENT OF STATE                    ALBANY, NY 12231-0001
DIVISION OF CORPORATIONS AND STATE RECORDS

                        FILING RECEIPT
============================================================
ENTITY NAME: NEW YORK COUNTY DENTAL ASSOCIATION, INC.

DOCUMENT TYPE: EXTENSION OF RESERVATION (DOM NFP)
               DURATION
============================================================
FILED:01/15/2008 DURATION:03/17/2008 CASH#:080115000972 FILM #:080115000875

        FILER:
        -----
        THIEN-NGA NGUYEN-CLARK
        C/O SHEEHAN GREENE CARRAWAY ET AL.
        S4 STATE STREET, 10TH FLOOR
        ALBANY, NY 12207

        ADDRESS FOR PROCESS:
        --------------------


        REGISTERED AGENT:
        -----------------





** SUBMIT RECEIPT WHEN FILING CERTIFICATE **
APPLICANT NAME : THIEN-NGA NGUYEN-CLARK
============================================================
SERVICE COMPANY: ** NO SERVICE COMPANY **        SERVICE CODE: 00

FEES         10.00                          PAYMENTS      10.00
          --------                                      --------
FILING       10.00                          CASH           0.00
TAX           0.00                          CHECK         10.00
CERT          0.00                          CHARGE         0.00
COPIES        0.00                          DRAWDOWN       0.00
HANDLING      0.00                          OPAL           0.00
                                            REFUND         0.00
============================================================
                                            DOS-1025 (04/2007)

080.22200 6 533

## CERTIFICATE OF INCORPORATION

### OF

### NEW YORK COUNTY DENTAL ASSOCIATION, INC.

Under Section 402 of the Not-for-Profit Corporation Law

Filed by:    Thien-Nga Nguyen-Clark, Esq.
             Sheehan Greene Carraway Golderman & Jacques LLP
             54 State Street, 10th Floor
             Albany, NY 12207

8GC0J 849829

Type B

STATE OF NEW YORK
DEPARTMENT OF STATE
FILED  FEB 2 2 2008
TAX $
Y:
NY

8GC0J 849829

588

# STATE OF NEW YORK

# DEPARTMENT OF STATE

I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is a true copy of said original.



WITNESS my hand and official seal of the Department of State, at the City of Albany, on June 27, 2008.

*Paul LaPointe*

Paul LaPointe
Special Deputy Secretary of State

Rev. 06/07

## Certificate of Assumed Name
Pursuant to General Business Law, §130

NYS Department of State
Division of Corporations, State Records and UCC
41 State Street, Albany, NY 12231-0001
www.dos.state.ny.us

NAME OF ENTITY
1

# NEW YORK COUNTY DENTAL ASSOCIATION, INC.

1a. *FOREIGN ENTITIES ONLY* If applicable, the fictitious name the entity agreed to use in New York State is

2. NEW YORK LAW FORMED OR AUTHORIZED UNDER (CHECK ONE)

| | |
|---|---|
| Business Corporation Law | Limited Liability Company Law |
| Education Law | ✕ Not-for-Profit Corporation Law |
| Insurance Law | Revised Limited Partnership Act |
| Other (specify law): | |

3. ASSUMED NAME

# MANHATTAN DENTAL ASSOCIATION

4. PRINCIPAL PLACE OF BUSINESS IN NEW YORK STATE (MUST BE NUMBER AND STREET. IF NONE, INSERT OUT-OF-STATE ADDRESS)

## 11 FIFTH AVENUE
## NEW YORK, NEW YORK 10003

5. COUNTIES IN WHICH BUSINESS WILL BE CONDUCTED UNDER ASSUMED NAME

ALL COUNTIES (if not, circle county[ies] below)

| | | | | | | |
|---|---|---|---|---|---|---|
| Albany | Clinton | Greene | Montgomery | Oswego | Schenectady | Ulster |
| Allegany | Columbia | Hamilton | Nassau | Otsego | Schoharie | Warren |
| Bronx | Cortland | Herkimer | ✕New York | Putnam | Schuyler | Washington |
| Broome | Delaware | Jefferson | Niagara | Queens | Seneca | Wayne |
| Cattaraugus | Dutchess | Kings | Oneida | Rensselaer | Steuben | Westchester |
| Cayuga | Erie | Lewis | Onondaga | Richmond | Suffolk | Wyoming |
| Chautauqua | Essex | Livingston | Ontario | Rockland | Sullivan | Yates |
| Chemung | Franklin | Madison | Orange | St. Lawrence | Tioga | |
| Chenango | Fulton | Monroe | Orleans | Saratoga | Tompkins | |
| | Genesee | | | | | |

6. INSERT THE ADDRESS OF EACH LOCATION WHERE BUSINESS WILL BE CARRIED ON OR TRANSACTED UNDER THE ASSUMED NAME.
Use a continuous sheet, if needed. (The address must be set forth in terms of a number and street, city, state and zip code. Please note that the address(es) reflected in paragraph 6 must be within the county(ies) circled in paragraph 5. If the entity does not have a specific location where it will conduct business under the assumed name please check the statement below.)

## 11 FIFTH AVENUE
## NEW YORK, NEW YORK 10003

No New York State Business Location

DOS-1338 (Rev. 4/07)                    -1-

200806270l4

INSTRUCTIONS FOR SIGNATURE: If corporation, by an officer; if limited partnership, by a general partner; if limited liability company, by a member or manager or by an authorized person or attorney-in-fact for such corporation, limited partnership, or limited liability company. If the certificate is signed by an attorney-in-fact, include the name and title of the person for whom the attorney-in-fact is acting. (Example, John Smith, attorney-in-fact for Robert Johnson, president.)

Robert B. Raiber, DDS, Secretary                    /s/ Robert B. Raiber

Name and Title                                      Signature


# CERTIFICATE OF ASSUMED NAME
# OF

NEW YORK COUNTY DENTAL ASSOCIATION, INC.

*(Insert Entity Name)*


Pursuant to §130, General Business Law

FILED
2008 JUN 27  AM 9: 21

CSC 45

FILER'S NAME AND MAILING ADDRESS

STEVEN A. HENSLEY
NIXON PEABODY LLP
437 MADISON AVENUE
NEW YORK, NEW YORK 10022

Cust Reg # 628098MPJ

FEE
TAX  $20055,
BY: mi


NOTE: This form was prepared by the New York State Department of State. You are not required to use this form. You may draft your own form or use forms available at legal stationery stores. The Department of State recommends that all documents be prepared under the guidance of an attorney. The certificate must be submitted with a $25 fee. The Department of State also collects the following, additional, county clerk fees for each county in which a **corporation** does or transacts business: $100 for each county within New York City (Bronx, Kings, New York, Queens and Richmond) and $25 for each county outside New York City. All checks over $500 must be certified.

*(For office use only)*


080222009533

m)

2008 JUN 27  AM 9: 15
RECEIVED

exempt from sections twenty-seven, thirty-one, thirty-two, thirty-seven, thirty-eight, forty, forty-four and forty-five of said act, and from sections one and two of chapter one hundred and forty of the laws of eighteen hundred and fifty-four.

§ 5. Except as in this act provided the said company shall be subject to the provisions and liabilities, and shall have the powers and privileges contained and specified in the said act of April second, eighteen hundred and fifty, so far as the same are or shall be applicable.

§ 6. The aforesaid railroad shall be constructed on the most approved plan for the construction of city street railroads, and the track of such road shall be laid flush with the surface of the street, and shall conform to the grade as it now is, or as it shall be from time to time altered, and the company shall keep the surface of said street, inside the rails of said railroad track and for one foot outside thereof, in good and proper order and repair, according to the terms of the grant for the use of said streets to said company, made by the common council of said city, or as by said common council may be hereafter required, and may charge, collect and receive, for the carrying of passengers, a sum not exceeding six cents each.

§ 7. This act shall take effect immediately.

# Chap. 152.

AN ACT to incorporate Dental Societies for the purpose of improving and regulating the practice of dentistry in this State.

Passed April 7, 1868.

*The People of the State of New York, represented in Senate and Assembly, do enact as follows :*

SECTION 1. It shall be lawful for the dentists in the several judicial districts of the Supreme Court of this State to meet together at the following named places, to wit : In district number one, at the Cooper Institute, in the city of New York; district number two, at City Hall in the city of Brooklyn; district number three, at

*Margin notes:*

Exemptions from certain provisions of general railroad act.

General powers.

Manner of constructing railroad.

Rate of passenger fare.

Dentists; where to convene for district organization.

264 LAWS OF NEW YORK.

the Delavan House, in the city of Albany ; district number four, at the Clarendon Hotel, Saratoga Springs ; district number five, at Stanwix Hall Hotel, in the village of Rome ; district number six, at the Lewis House, in the village of Binghamton ; district number seven, at the Canandaigua Hotel, in the village of Canandaigua ; district number eight, at Medical Hall, in the city of Buffalo.

**Date of meeting.** On the first Tuesday of June, eighteen hundred and sixty-eight, at two o'clock in the afternoon of that day, and such dentists so convened as aforesaid, or any part of them, not less than fifteen in number, shall

**Choice of officers.** proceed to the choice of a president, vice-president, secretary and treasurer, who shall hold their offices for one year, and until others shall be chosen in their places ;

**Corporate names of district societies.** and whenever said societies shall be organized as aforesaid, they are hereby constituted bodies corporate, in fact and under the names of "The District Dental Society" of the respective judicial districts where they shall be located ; provided always, that if the dentists residing in any district shall not meet and organize themselves as aforesaid, it shall be lawful for them, at the call of fifteen dentists residing in any such district, to meet at such other time and place as they shall designate ; and their proceedings shall be as valid as if such meeting had been at the time before specified.

**State dental society** § 2. Each of said district societies, when organized as aforesaid, shall elect eight delegates, who shall meet at the Capitol, in the city of Albany, on the last Tuesday of June, eighteen hundred and sixty-eight, and proceed to organize a State Dental Society, which shall be named "The Dental Society of the State of New York," and,

**Officers.** being met, not less than thirty-three in number, shall proceed to elect, and shall annually thereafter elect a president, vice-president, secretary and treasurer, who shall hold their offices for one year, and until others shall be chosen in their places ; and said society shall be a body corporate, under the name and style as aforesaid.

**District societies and State society to file records of organization.** § 3. The secretaries of each of the district societies shall lodge, in the county clerk's office of some county within their district, a copy of all the proceedings and records of their organization ; and it shall also be the

duty of the Secretary of the State Dental Society, in like manner, to lodge, in the office of the Secretary of State, a copy of its records and proceedings had at the organization thereof; and the said county clerks, respectively, and the Secretary of State shall file the same in their respective offices, and shall receive therefor a fee of one dollar.

§ 4. At the first meeting of said State Dental Society, the same being duly organized as aforesaid, the delegation from each district society shall be divided into four classes of two delegates each, who shall serve one, two, three and four years respectively, and until others shall be elected in their places; and the said district societies, at each annual meeting thereafter, shall choose two delegates to the State Society, to serve each four years, and fill all vacancies in their respective delegations that may have occurred by death or otherwise. *Classification of district delegates.*

§ 5. Each of the incorporated dental colleges of this State may elect, annually, two delegates to the State Dental Society, who shall be entitled to all the privileges, and subject to the same rules and regulations as other delegates. *Privileges of dental colleges.*

§ 6. The said State Dental Society may elect permanent members of said society from among eminent dentists residing in this State, but not to exceed twenty in number, at its first meeting, nor more than five in any one year thereafter; which members so elected shall be entitled to all the privileges of delegate members, but shall receive no compensation for their attendance on meetings of the State society, except when sent as delegates by the district societies or colleges aforesaid. And the said State society may elect honorary members from any State or Country; but no person shall be elected an honorary member who is eligible to regular membership, nor shall any honorary member be entitled to vote or hold any office in said society. *Permanent members.* *Honorary members.*

§ 7. The several district societies established as aforesaid, at their annual meetings, shall appoint not less than three nor more than five censors, to continue in office for one year, and until others are chosen, who shall constitute a district board of censors, whose duty it shall be carefully and impartially to inquire into the qualifi- *District board of censors.* *Duties.*

266                    LAWS OF NEW YORK.

cations of all persons who shall present themselves, within the districts where they reside, for examination, and report their opinion, in writing, to the president of said district society, who shall thereupon issue, on the recommendation of said board of censors, a certificate of qualification to such person or persons, countersigned by the secretary, and bearing the seal of the said district society.

*Certificates of qualification.*

§ 8. The State Dental Society, organized as aforesaid, at its first meeting shall appoint eight censors, one from each of the said district societies, who shall constitute a State board of censors, and at the first meeting of said board the members shall be divided into four classes, to serve one, two, three and four years respectively, and said State Dental Society shall, at each annual meeting thereafter, appoint two censors, to serve each four years and until their successors shall be chosen, and fill all vacancies that may have occurred in the board by death, or otherwise.   Each district society shall be entitled to one and only one member of said board of censors. Said board of censors shall meet at least once in each year, at such time and place as they shall designate, and being thus met they, or a majority of them, shall carefully and impartially examine all persons who are entitled to examination under the provisions of this act, and who shall present themselves for that purpose, and report their opinion in writing to the president of said State Dental Society, and on the recommendation of said board it shall be the duty of the president aforesaid, to issue a diploma to such person or persons, countersigned by the secretary, and bearing the seal of said society.

*State board of censors.*

*Classification.*

*Duties of state censors.*

*When president may issue diplomas.*

§ 9. All dentists in regular practice at the time of the passage of this act, and all persons who shall have received a diploma from any dental college in this State, and all students who shall have studied and practiced dental surgery with some accredited dentist or dentists for the term of four years, shall be entitled to an examination by said board of censors.   Deductions from such term of four years shall be made in either of the following cases :

*Course of study requisite for examination.*

*Exceptions.*

   1. If the student, after the age of sixteen, shall have pursued any of the studies usual in the colleges of the

## NINETY-FIRST SESSION.                        267

United States, the period, not exceeding one year, during which he shall have pursued such studies, shall be deducted.

2. If the student, after the age of sixteen, shall have attended a complete course of lectures of any incorporated dental or medical college in the United States, one year shall be deducted.

§ 10. Every person, on receiving a diploma from the State Dental Society, shall pay into the treasury thereof the sum of twenty dollars, and on receiving a certificate of qualification from the dental society of any district, the sum of ten dollars into the treasury thereof. *Fee for certificates and diplomas.*

§ 11. The dental societies of the respective districts, and the dental society of the State, may purchase and hold such real and personal estate as the purposes of their respective corporations may require. The district societies each not exceeding in value the sum of five thousand dollars, and the State Dental Society not exceeding twenty-five thousand dollars in value. *Value of real and personal estate which may be held.*

§ 12. The respective societies herein provided for may make all needful by-laws, rules and regulations, not inconsistent with any existing law, for the management of the affairs and property of said societies respectively, and providing for the admission and expulsion of members, provided that such by-laws rules and regulations of the respective district societies shall not be repugnant to nor inconsistent with the by-laws, rules and regulations of the State Dental Society. *By-laws.*

§ 13. All dentists who shall have been in regular practice in this State, at the time of the passage of this act, and all persons who shall have received a certificate of qualification from any district society, shall be eligible to membership in said district societies. *Privileges of membership.*

§ 14. The Dental Society of the State of New York shall be entitled to all the privileges and immunities granted to the medical societies of this State. *General privileges.*

§ 15. This act shall take effect immediately.

5 of 24 DOCUMENTS

NEW YORK CONSOLIDATED LAW SERVICE
Copyright © 2008 Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved

*** THIS SECTION IS CURRENT THROUGH CH. 115, 06/17/2008 ***

EDUCATION LAW
TITLE VIII.  THE PROFESSIONS
ARTICLE 133.  DENTISTRY AND DENTAL HYGIENE

**Go to the New York Code Archive Directory**

*NY CLS Educ § 6603* (2008)

§ 6603.  State board for dentistry

A state board for dentistry shall be appointed by the board of regents on recommendation of the commissioner for the purpose of assisting the board of regents and the department on matters of professional licensing and professional conduct in accordance with section sixty-five hundred eight of this title.  The board shall be composed of not less than thirteen dentists licensed in this state for at least five years, not less than three dental hygienists licensed in this state for at least five years, and not less than one certified dental assistant licensed in this state for at least one year.  An executive secretary to the board shall be appointed by the board of regents on recommendation of the commissioner and shall be a dentist licensed in this state.

**HISTORY:**    Add, L 1971, ch 987, § 2; amd, L 1981, ch 292, § 2,  L 1992, ch 692, § 1,  L 1999, ch 393, § 1, eff July 27, 1999.
   Former § 6603, add, L 1947, ch 820, with substance transferred from § 1302; repealed, L 1971, ch 987, § 1, eff Sept. 1, 1971; re-enacted as § 6 of L 1971, ch 987, which appears as a note to Article 133.

**NOTES:**

Research References & Practice Aids:

Annotations:
   Regulation of prosthetic dentistry. 45 ALR2d 1243

**LexisNexis 50 State Surveys, Legislation & Regulations**
   Dental Professionals

Case Notes: 1.--5. [Reserved for future use.] 6. Under former § 6602 [state dental society] 7. Under former § 6603 [district dental societies] 8. Under former § 6604 [powers of district dental societies]

1.--5. [Reserved for future use.]

NY CLS Educ § 6603

**6. Under former § 6602 [state dental society]**

A district dental society, as a component part of the state dental society, functions as an agent of the state, and a code of ethics adopted by the district society providing it would be unethical for any member to publish or broadcast any manuscript or talk to the lay public without securing the society's approval therefor, which authorized the suspension or expulsion of any member guilty of violating the code, was an unconstitutional interference with the right of free speech. *Firestone v First Dist. Dental Soc. (1969) 59 Misc 2d 362, 299 NYS2d 551.*

District Dental Societies were established under L. 1868, c. 152, which delegated to them the right to select qualified dental practitioners. Such functions are now given by the Education Law to the State Board of Dental Examiners, and to such extent the 1868 law is superseded, and dental societies are not State agencies and are not exempt from taxation. *Second Dist. Dental Soc. v Boyland (1955, Sup) 139 NYS2d 123.*

By-laws of state dental society in conflict with section are invalid. *1927 Ops Atty Gen 145.*

**7. Under former § 6603 [district dental societies]**

District Dental Societies were established under L. 1868, c. 152, which delegated to them the right to select qualified dental practitioners. Such functions are now given by the Education Law to the State Board of Dental Examiners, and to such extent the 1868 law is superseded, and dental societies are not State agencies and are not exempt from taxation. *Second Dist. Dental Soc. v Boyland (1955, Sup) 139 NYS2d 123.*

This section providing for incorporation of district dental societies is exclusive. Such corporation may not be created under Mem Corp Law, Art III, because it has been elsewhere provided for, namely by this section. *1915 Ops Atty Gen 247.*

**8. Under former § 6604 [powers of district dental societies]**

Dental society could not require pre-publication submission of member's manuscript under this section. *Firestone v First Dist. Dental Soc. (1965) 46 Misc 2d 726, 260 NYS2d 782,* revd on other grounds (1965, 1st Dept) *24 App Div 2d 268, 265 NYS2d 525,* appeal after remand *(1969) 59 Misc 2d 362, 299 NYS2d 551.*

1 of 24 DOCUMENTS

NEW YORK CONSOLIDATED LAW SERVICE
Copyright © 2008 Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved

*** THIS SECTION IS CURRENT THROUGH CH. 115, 06/17/2008 ***

EDUCATION LAW
TITLE VIII. THE PROFESSIONS
ARTICLE 133. DENTISTRY AND DENTAL HYGIENE

**Go to the New York Code Archive Directory**

*NY CLS Educ Article 133 Note* (2008)

Educ Article 133 Note

**HISTORY:**   Add, L 1971, ch 987, § 2, eff Sept 1, 1971.
    Former Article 133, add, L 1947, ch 820, with substance transferred from Article 49; repealed, L 1971, ch 987, § 1, eff Sept 1, 1971.

**NOTES:**

Editor's Notes

Laws 1971, ch 987, §§ 5, 6, provide as follows:
    § 5. The Dental Society of the State of New York is continued and shall be renamed the New York State Dental Association and shall be composed of the members of the district and county societies. The state dental association shall annually meet on the second Wednesday of May, or at such other time and at such place as may be determined in the bylaws of the association or by resolution, at the preceding annual meeting. Twenty members shall be a quorum. A president, president-elect, vice-president, and secretary-treasurer shall be elected annually, and shall hold their office for one year, and until others shall be chosen in their places. The officers shall be elected by the directors of the association. The association may elect honorary members from any state or country not eligible to regular membership, who shall not be entitled to vote or hold any office in the association. Such association may purchase and hold real estate and personal estate for the purpose of its incorporation. The association shall have the power to make all needful bylaws not inconsistent with the laws of the state, for the management of its affairs and property and the admission and expulsion of members. Notwithstanding any other provision of law, the directors of the association may, by a three-fourths vote, suspend or remove any director of the association. Notwithstanding any other provision of law, the time period for voting by the members of the association on any amendment to the constitution or bylaws of the association shall run from the date of giving written notice in any mailing or other publication by the association of any such amendment to the date of the commencement of the next regular meeting of the directors of the association. (Amd, L 1980, ch 138, § 1, L 1989, ch 466, § 1, L 1997, ch 683, § 1, L 2002, ch 18, § 1, eff March 26, 2002, L 2007, ch 498, § 1, eff Aug 1, 2007.).
    § 6. 1. The existing district dental societies are continued. In any judicial district in which a district dental society is not incorporated, fifteen or more dentists of such district authorized to practice dentistry in this state may become a district dental society of such district, by publishing a call for a meeting of the dentists of the district to be held at a time and place mentioned therein within the district, in at least one newspaper in each county of the district, at least once a week for at least four weeks immediately preceding the time when such meeting is to be held, and by meeting at the time and place specified in such notice with such dentists authorized to practice dentistry in the district as may respond to such call, and by making and filing with the secretary of the state dental association a certificate, to be executed and

acknowledged by the dentists so meeting, or by at least fifteen of them, which shall set forth that such meeting has been held pursuant to such notice, the corporate name of the society, which shall be the district dental society of the judicial district where located, the names and places of residence of the officers of the society for the first year, or until the first annual meeting, which officers shall be a president, vice-president, secretary and treasurer, the time and place of the annual meeting of the society and the general objects and purposes of the association. Thereupon the persons executing such certificate and all other dentists in good standing and authorized to practice dentistry in such district, who shall subscribe to its bylaws, shall be a corporation by the name expressed in such certificate. Every licensed and registered dentist in the judicial district in which such a society is formed, shall be eligible to membership in the district society of the district in which he or she resides or practices dentistry, except if such dentist resides or practices dentistry in a county in which a county dental society is formed in the manner hereinafter provided, he or she shall be eligible to membership in such county society; provided, however, that after September 1, 1990 any licensed and registered dentist who is not a member of the state dental association shall be eligible for membership only in the district or county society in which he or she maintains his or her primary practice. Any member of a district or county dental society who has been a member of such district or county dental society continuously since January first, nineteen hundred seventy-seven, may maintain his or her membership in that district or county dental society notwithstanding where such member resides or practices dentistry, provided that for purposes of counting the number of members in any district or county dental society with respect to any New York state dental association or american dental association matter relating to representation, all such members affected by this provision shall be counted only as members of the district or county dental society where they maintain their primary practice and not as members of any other district or county dental society. The dental societies of the respective districts of the state shall have power to make all necessary bylaws not inconsistent with the laws of this state for the management of their affairs and property and the admission and expulsion of members; providing that no bylaw of any district society shall be repugnant to or inconsistent with the bylaws of the state association. Twenty members or ten percent of the total membership entitled to vote, whichever is less, shall be a quorum. Such societies may purchase and hold real and personal property for the purposes of their incorporation. (Amd, L 1980, ch 138, § 1, L 1990, ch 338, § 1, L 1997, ch 683, § 2, eff Nov 23, 1998.).

2. Notwithstanding the provisions of this section or any other law or rule to the contrary, a county dental society may be formed if application by fifteen or more dentists of a county or fifteen or more dentists from each of contiguous counties, or fifty percent or more of the dentists in a county or from each contiguous county with fewer than thirty dentists is approved by the governing body of the New York State Dental Association. Every licensed and registered dentist who resides or practices dentistry within the geographic area in which such a county society is formed shall be eligible to membership in such society; provided, however, that after September 1, 1990, any licensed and registered dentist who is not a member of the state dental association shall be eligible for membership only in the county society in which he or she maintains his or her primary practice. Any member of a district or county dental society who has been a member of such district or county dental society continuously since January first, nineteen hundred seventy-seven, may maintain his or her membership in that district or county dental society notwithstanding where such member resides or practices dentistry, provided that for purposes of counting the number of members in any district or county dental society with respect to any New York state dental association or american dental association matter relating to representation, all such members affected by this provision shall be counted only as members of the district or county dental society where they maintain their primary practice and not as members of any other district or county dental society. Such county dental societies shall have the same powers, duties and quorum requirements as district dental societies. (Amd, L 1980, ch 138, § 1, L 1986, ch 823, § 1, L 1990, ch 338, § 1, L 1997, ch 683, § 2, eff Nov 23, 1998.).

Laws 1997, ch 683, § 3, eff Nov 23, 1998, provides as follows:

§ 3. Notwithstanding any inconsistent provision of law, in the event the name "the Dental Society of the State of New York" appears in any provision of general, special or local law, rule or regulation, such name shall be construed to refer to the New York State Dental Association pursuant to the provisions of section one of this act.

New York References:

This article referred to in §§ 6509-a, 6510-b, 6600, 6602, 6605, 6610; CLS Correc § 24-a; CLS *Exec § 838*; CLS *Pub Health §§ 14, 18, 230, 4702*

# NEW YORK STATE
# ASSEMBLY

Sheldon Silver - Speaker

**Wednesday, July 30, 2008**

## Bill Text - S08370

Back | New York State Bill Search | Assembly Home

See Bill Summary

S T A T E   O F   N E W   Y O R K

8370

I N   S E N A T E

June 2, 2008

Introduced by COMMITTEE ON RULES -- read twice and ordered printed, and
when printed to be committed to the Committee on Rules

AN ACT to amend chapter 987 of the laws of 1971 amending  the  education
law  and  the  civil practice law and rules relating to the regulation
and practice of certain professions, and to continue the dental socie-
ty of the state of New York, in relation to district and county socie-
ties of the New York state dental association

THE PEOPLE OF THE STATE OF NEW YORK, REPRESENTED IN SENATE AND  ASSEM-
BLY, DO ENACT AS FOLLOWS:

```
 1    Section  1.  Section 5 of chapter 987 of the laws of 1971 amending the
 2  education law and the civil practice law and rules relating to the regu-
 3  lation and practice of certain professions, and to continue  the  dental
 4  society  of the state of New York, as amended by chapter 498 of the laws
 5  of 2007, is amended to read as follows:
 6    S 5. The Dental Society of the State of  New  York  is  continued  and
 7  shall  be  renamed  the  New  York State Dental Association and shall be
 8  composed of the members of the district and county societies. The  state
 9  dental  association  shall annually meet on the second Wednesday of May,
10  or at such other time and at such place as  may  be  determined  in  the
11  bylaws  of  the  association  or  by resolution, at the preceding annual
12  meeting. Twenty members shall be a quorum.    A  president,  president-e-
13  lect,  vice-president,  and secretary-treasurer shall be elected annually,
14  and  shall  hold  their  office  for one year, and until others shall be
15  chosen in their places.  The officers shall be elected by the  directors
16  of  the  association.  The association may elect honorary members from any
17  state  or  country  not eligible to regular membership, who shall not be
18  entitled to vote or hold any office in the association. Such association
19  may purchase and hold real estate and personal estate for the purpose of
20  its incorporation. The association shall have the  power  to  make  all
21  needful  bylaws  not  inconsistent  with  the laws of the state, for the
22  management of its affairs and property and the admission  and  expulsion
23  of members. Notwithstanding any other provision of law, the directors of
24  the  association  may,  by  a  three-fourths vote, suspend or remove any
25  director of the association, OR BY A TWO-THIRDS VOTE REMOVE  A  DISTRICT
```

EXPLANATION--Matter in ITALICS (underscored) is new; matter in brackets
{ } is old law to be omitted.

LBD17033-01-8

S. 8370                                    2

1  OR  COUNTY  SOCIETY  AS  A COMPONENT MEMBER.   Notwithstanding any other
2  provision of law, the time period for voting by the members of the asso-
3  ciation on any amendment to the constitution or bylaws  of  the  associ-
4  ation shall run from the date of giving written notice in any mailing or
5  other  publication  by the association of any such amendment to the date
6  of the commencement of the next regular meeting of the directors of  the
7  association.
8    S 2. This act shall take effect immediately.

American Dental Association

# Constitution

# and

# Bylaws

Revised to
January 1, 2008

ADA American Dental Association®

# Contents

Constitution of American Dental Association ............................................. 3

    Amendments, Article VIII ................................................ 5

    Annual Session, Article VI .............................................. 4

    Government, Article IV ................................................. 4

    Name, Article I........................................................ 3

    Object, Article II ..................................................... 3

    Officers, Article V.................................................... 4

    Organization, Article III.............................................. 3

    Principles of Ethics and Code of Professional

       Conduct, Article VII .............................................. 5

Bylaws of American Dental Association ..................................... 6

    Alliance of the American Dental Association,

       Chapter XVIII ................................................... 77

    Amendments, Chapter XXI..................................... 78

    American Dental Association Foundation,

       Chapter XIII ................................................... 68

    Appointive Officer, Chapter IX ............................... 49

    Board of Trustees, Chapter VII.............................. 37

    Commissions, Chapter XIV ................................... 69

    Component Societies, Chapter III............................ 23

    Conflict of Interest, Chapter VI ............................. 36

    Constituent Societies, Chapter II ........................... 18

    Construction, Chapter XX.................................... 78

    Councils, Chapter X........................................... 50

Elective Officers, Chapter VIII ......................................................45

Finances, Chapter XVII ...............................................................76

House of Delegates, Chapter V .....................................................26

Indemnification, Chapter XIX .......................................................77

Membership, Chapter I .................................................................6

Principles of Ethics and Code of Professional Conduct and

    Judicial Procedure, Chapter XII ................................. ......63

Publications, Chapter XVI ...........................................................75

Scientific Session, Chapter XV......................................................75

Special Committees, Chapter XI....................................................63

Trustee Districts, Chapter IV ........................................................24


Articles of Incorporation of American Dental Association..........……79

# *Constitution*

• • • • • • • • • • • • • • • • • • • • • • •

## ARTICLE I • NAME

1  The name of this organization shall be the American
2  Dental Association, hereinafter referred to as "the
3  Association" or "this Association."

## ARTICLE II • OBJECT

4  The object of this Association shall be to encourage
5  the improvement of the health of the public and to
6  promote the art and science of dentistry.

## ARTICLE III • ORGANIZATION

7   *Section 10.* INCORPORATION: This Association is
8   a non-profit corporation organized under the laws of
9   the State of Illinois. If this corporation shall be
10  dissolved at any time, no part of its funds or property
11  shall be distributed to, or among, its members but,
12  after payment of all indebtedness of the corporation,
13  its surplus funds and properties shall be used for
14  dental education and dental research in such manner
15  as the then governing body of the Association may
16  determine.

17  *Section 20.* HEADQUARTERS OFFICE: The
18  registered office of this Association shall be known
19  as the Headquarters Office and shall be located in the
20  City      of      Chicago,      County      of      Cook,
21  State of Illinois.

22  *Section 30.* BRANCH OFFICES: Branch offices of
23  this Association may be established in any city of the
24  United States by a majority vote of the House of
25  Delegates.

26  *Section 40.* MEMBERSHIP: The membership of this
27  Association shall consist of dentists and other
28  persons whose qualifications and classifications shall
29  be as established in Chapter I of the *Bylaws*.

30  *Section      50.*  CONSTITUENT      SOCIETIES:
31  Constituent societies of this Association shall be
32  those dental societies or dental associations chartered
33  as  such  in  conformity  with  Chapter  II  of
34  the *Bylaws*.

35 *Section 60.* COMPONENT SOCIETIES: Component
36 societies of this Association shall be those dental
37 societies or dental associations organized as such in
38 conformity with Chapter III of the *Bylaws* of this
39 Association and in conformity with the bylaws of
40 their respective constituent societies.

41 *Section 70.* TRUSTEE DISTRICTS: The constituent
42 societies of the Association and the federal dental
43 services shall be grouped into seventeen (17) trustee
44 districts, as provided in Chapter IV of the *Bylaws*.

ARTICLE IV • GOVERNMENT

45 *Section 10.* LEGISLATIVE BODY: The legislative
46 and governing body of this Association shall be a
47 House of Delegates which may be referred to as "the
48 House" or "this House," as provided in Chapter V of
49 the *Bylaws*.

50 *Section 20.* ADMINISTRATIVE BODY: The
51 administrative body of this Association shall be a
52 Board of Trustees, which may be referred to as "the
53 Board" or "this Board" as provided in Chapter VII of
54 the *Bylaws*.

ARTICLE V • OFFICERS

55 *Section 10.* ELECTIVE OFFICERS: The elective
56 officers of this Association shall be a President, a
57 President-elect, a First Vice President, a Second Vice
58 President, a Treasurer and a Speaker of the House of
59 Delegates, each of whom shall be elected by the
60 House of Delegates as provided in Chapter VIII of
61 the *Bylaws*.

62 *Section 20.* APPOINTIVE OFFICER: The
63 appointive officer of this Association shall be an
64 Executive Director who shall be appointed by the
65 Board of Trustees as provided in Chapter IX of the
66 *Bylaws*.

ARTICLE VI • ANNUAL SESSION

67 The annual session of this Association shall be
68 conducted in accordance with Chapters V and XV of
69 the *Bylaws*.

ARTICLE VII • PRINCIPLES OF ETHICS AND
CODE OF PROFESSIONAL CONDUCT

70 The *Principles of Ethics and Code of Professional*
71 *Conduct* of this Association and the codes of ethics

4                              Constitution

74  *of Professional Conduct* of this Association, shall
75  govern the professional conduct of all members.

ARTICLE VIII • AMENDMENTS

76  This *Constitution* may be amended by a two-thirds
77  (2/3) affirmative vote of the delegates present and
78  voting, provided that the proposed amendments have
79  been presented in writing at any previous session of
80  the House of Delegates.
81    This *Constitution* may also be amended at any
82  session of the House of Delegates by a unanimous
83  vote, provided the proposed amendments have been
84  presented in writing at a previous meeting of such
85  session.

Constitution                    5

8            Bylaws

# *Bylaws*

. . . . . . . . . . . . . . . . . . . . . . . .

## CHAPTER I • MEMBERSHIP

86 *Section 10.* CLASSIFICATION: The members of this
87 Association shall be classified as follows:

88 Active Members
89 Life Members
90 Retired Members
91 Nonpracticing Dentist Members
92 Student Members
93 Honorary Members
94 Provisional Members
95 Associate Members
96 Affiliate Members

97 *Section 20.* QUALIFICATIONS, PRIVILEGES,
98 DUES AND SPECIAL ASSESSMENTS:

99 A. ACTIVE MEMBER.
100    a. QUALIFICATIONS. An active member shall be
101 a dentist who is licensed to practice dentistry (or
102 medicine provided the physician has a D.D.S. or
103 D.M.D. or equivalent dental degree) in a state or
104 other jurisdiction of the United States and shall be a
105 member in good standing of this Association as that
106 is defined in these *Bylaws*.  In addition, a dentist
107 shall be a member in good standing of this
108 Association's constituent and component societies,
109 unless:
110    (1) the dentist is in the exclusive employ of, or is
111 serving on active duty in, one of the federal
112 dental services.  A dentist is considered to be in
113 the exclusive employ of one of the federal dental
114 services when the dentist is under contract to
115 provide dental services to the beneficiaries of the
116 federal agency on a full-time basis and does not
117 engage in private practice within the jurisdiction
118 of a constituent or component society;
119    (2) the dentist is practicing in a country other than
120 the United States and consequently is ineligible
121 for membership in a constituent or component
122 society; or
123    (3) the dentist is working as a dental school
124 faculty member, dental administrator or
125 consultant within the territorial jurisdiction of a
126 constituent society and is ineligible for active

127  membership in the constituent or component
128  society because the dentist is not licensed in the
129  territorial jurisdiction of that constituent.

130  *Explanatory Notes*:  The term "other jurisdiction of
131  the United States" as used in this *Constitution and*
132  *Bylaws* shall mean the District of Columbia, the
133  Commonwealth    of    Puerto    Rico,    the
134  Commonwealth of the Northern Mariana Islands
135  and the territories of the United States Virgin
136  Islands, Guam and American Samoa.

137  The term "federal dental services" as used in this
138  *Constitution and Bylaws* shall mean the dental
139  departments of the Air Force, the Army, the Navy,
140  the Public Health Service, the department of
141  Veterans Affairs and other federal agencies.

142  The term "direct member" as used in this
143  *Constitution and Bylaws* shall mean a member in
144  good standing who pursuant to Chapter I of these
145  *Bylaws* does not hold membership in any
146  constituent society of this Association.
147  b. PRIVILEGES.
148  (1) An active member in good standing shall
149  receive annually a membership card and *The*
150  *Journal of the American Dental Association,* the
151  subscription price of which shall be included in the
152  annual dues.  An active member shall be entitled to
153  attend any scientific session of this Association and
154  receive such other services as are provided by the
155  Association.
156  (2) An active member in good standing shall be
157  eligible for election as a delegate or alternate
158  delegate to the House of Delegates and for election
159  or appointment to any office or agency of this
160  Association, except as otherwise provided in these
161  *Bylaws.*
162  (3) An active member under a disciplinary sentence
163  of suspension shall not be privileged to hold office,
164  either elective or appointive, including delegate and
165  alternate delegate, in such member's component
166  and constituent societies and this Association, or to
167  vote or otherwise participate in the selection of
168  officials of such member's component and
169  constituent societies and this Association.
170  c. DUES AND SPECIAL ASSESSMENTS.
171  Beginning January 1, 2006, and each year
172  thereafter, the dues of active members shall be the
173  amount established annually by the House of
174  Delegates in accordance with the procedure set
175  forth in Chapter V, Section 130Ad of these *Bylaws.*
176  In addition to their annual dues, active members
177  shall pay any special assessments levied by the
178  House of Delegates, due January 1 of each year.
179  However, any dentist, who satisfies the eligibility
180  requirements for active membership and any of the

CHAPTER I • MEMBERSHIP

181 following conditions shall be entitled to pay the
182 reduced active member dues and any special
183 assessment stated under such satisfied condition so
184 long as that dentist maintains continuous
185 membership, subject to the further reductions
186 permitted under the provisions of Chapter I, Section
187 20Ad of these *Bylaws*:
188 (1) Dentists, when awarded a D.D.S. or D.M.D.
189 degree, shall be exempt from the payment of active
190 member dues and any special assessment for the
191 remaining period of that year and the following first
192 full calendar year. Dentists shall pay twenty-five
193 percent (25%) of active member dues and special
194 assessment for the second full calendar year
195 following the year in which the degree was
196 awarded, fifty percent (50%) of active member dues
197 and special assessment in the third year, seventy-
198 five percent (75%) of active member dues and
199 special assessment in the fourth year and one
200 hundred percent (100%) in the fifth year and
201 thereafter. Eligibility for this benefit shall be
202 conditioned on maintenance of continuous
203 membership or payment of reduced dues and
204 special assessment(s) for the years not previously
205 paid, at the rates current during the missing year(s).
206 (2) The dentist who is engaged full-time in (a) an
207 advanced training course of not less than one (1)
208 academic year's duration in an accredited school or
209 a residency program in areas neither recognized by
210 this Association nor accredited by the Commission
211 on Dental Accreditation or (b) a residency program
212 or advanced education program in areas recognized
213 by this Association and in a program accredited by
214 the Commission on Dental Accreditation shall pay
215 thirty dollars ($30.00) due on January 1 of each
216 year until December 31 following completion of
217 such program. For the dentist who enters such a
218 course or program while eligible for the dues
219 reduction program set forth in the foregoing
220 condition (1), the applicable reduced dues rate shall
221 be tolled until completion of that program. Upon
222 completing the program, the dentist shall pay dues
223 and any special assessments for active members at
224 the reduced dues rate where the dentist left off in
225 the progression under condition (1). Eligibility for
226 this benefit shall be conditioned on maintenance of
227 continuous membership or payment of post-
228 graduate student dues and active member dues and
229 special assessment(s) for years not previously paid,
230 at the rates current during the missing years. The
231 dentist who is engaged full-time in (a) an advanced
232 training course of not less than one (1) academic
233 year's duration in an accredited school or residency
234 program in areas neither recognized by this
235 Association nor accredited by the Commission on
236 Dental Accreditation or (b) a residency program or

237 advanced education program in areas recognized by
238 this Association and in a program accredited by the
239 Commission on Dental Accreditation shall be
240 exempt from the payment of any active member
241 special assessment then in effect through December
242 31 following completion of such course or program.
243 (3) A graduate of a non-accredited dental school
244 who has recently been licensed to practice dentistry
245 in a jurisdiction in which there is a constituent
246 dental society of the American Dental Association
247 shall be exempt from payment of active member
248 dues and any special assessment for the remaining
249 period of the year in which the license was issued
250 and the following first full calendar year. The
251 newly licensed graduate of a non-accredited school
252 shall pay twenty-five percent (25%) of active
253 member dues and any special assessment the
254 second calendar year following the year in which
255 the license was obtained, fifty percent (50%) of
256 active member dues and any special assessment in
257 the third year, seventy-five percent (75%) of active
258 member dues and any special assessment in the
259 fourth year and one hundred (100%) in the fifth
260 year and thereafter.
261 (4) A licensed dentist who has never been an active
262 member of this Association and is ineligible for
263 dues reduction as a new graduate under this Section
264 of the *Bylaws*, shall pay fifty percent (50%) of
265 active member dues and any special assessment in
266 the first year of membership, and shall pay one
267 hundred percent (100%) of active member dues and
268 any special assessment in the second year and each
269 year thereafter.
270 (5) The Board of Trustees may authorize limited
271 dues reduction, up to fifty percent (50%) of active
272 member dues and any special assessments for the
273 purposes of promoting active membership in target
274 U.S. markets through marketing campaigns
275 recommended by the Council on Membership. This
276 reduction of active member dues and any special
277 assessments shall be on a one-time only basis for
278 these members.
279 d. ACTIVE MEMBERS SELECTED AFTER
280 JULY 1 AND OCTOBER 1. Those members
281 selected to active membership in this Association
282 after July 1, except for those whose membership
283 has lapsed for failure to pay the current year's dues
284 and/or special assessments, shall pay one half (1/2)
285 of the current year's dues and one half (1/2) of any
286 active member special assessment then in effect,
287 and those selected after October 1, shall be exempt
288 from the payment of the current year's dues and any
289 active member special assessment then in effect on
290 a one-time only basis.

291  B.  LIFE MEMBER.
292  a. QUALIFICATIONS. A life member shall be a
293  member in good standing of this Association who
294  (1) has been an active and/or retired member in
295  good standing of this Association for thirty (30)
296  consecutive years or a total of forty (40) years of
297  active and/or retired membership or has been a
298  member of the National Dental Association for
299  twenty-five (25) years and subsequently held at
300  least ten (10) years of membership in the American
301  Dental Association; (2) has attained the age of
302  sixty-five (65) years in the previous calendar year;
303  and (3) has submitted an affidavit attesting to the
304  qualifications for this category through said
305  component and constituent societies, if such exist.
306  A dentist who immigrated to the United States may
307  receive credit for up to twenty-five (25) consecutive
308  or total years of membership in a foreign dental
309  association in order to qualify for the respective
310  requirements for life membership.
311  Years of student membership shall not be counted
312  as active membership for purposes of establishing
313  eligibility for life membership unless the dentist was
314  an active member in good standing prior to
315  becoming a student member.
316  The Association will give notification to members
317  who are eligible for life membership. Life
318  membership shall be effective the calendar year
319  following the year in which the requirements are
320  fulfilled.   Maintenance of membership in good
321  standing in the member's constituent and component
322  societies, if such exist, shall be a requisite for
323  continuance of life membership in this Association.
324  b. PRIVILEGES. A life member in good standing of
325  this Association shall receive annually a membership
326  card.   A life member shall be entitled to all the
327  privileges of an active member, except that a retired
328  life member shall not receive *The Journal of the*
329  *American Dental Association* except by subscription.
330  A life member under a disciplinary sentence of
331  suspension shall not be privileged to hold office,
332  either elective or appointive, including delegate and
333  alternate delegate, in such member's component and
334  constituent societies and this Association, or to vote
335  or otherwise participate in the selection of officials
336  of such member's component and constituent
337  societies and this Association.
338  c. DUES AND SPECIAL ASSESSMENTS.
339  (1) ACTIVE LIFE MEMBERS. Regardless of a
340  member's previous classification of membership, the
341  dues of life members who have not fulfilled the
342  qualifications of retired membership pursuant to
343  Chapter I, Section 20C of these *Bylaws* with regard
344  to income related to dentistry shall be fifty percent
345  (50%) of the dues of active members, due January 1
346  of each year.  In addition to their annual dues, active

347 life members shall pay fifty percent (50%) of any
348 active member special assessment levied by the
349 House of Delegates, due January 1 of each year.
350 (2) RETIRED LIFE MEMBERS. Life members who
351 have fulfilled the qualifications of Chapter I, Section
352 20C of these *Bylaws* with regard to income related to
353 dentistry shall be exempt from payment of dues and
354 any special assessment levied by the House of
355 Delegates.
356 (3) ACCEPTANCE OF BACK DUES AND
357 SPECIAL ASSESSMENTS. For the purpose of
358 establishing continuity of active membership to
359 qualify for life membership, back dues and special
360 assessments, except as otherwise provided in these
361 *Bylaws*, shall be accepted for not more than the three
362 (3) years of delinquency prior to the date of
363 application for such payment. The rate of such dues
364 and/or special assessments, except as otherwise
365 provided in these *Bylaws*, shall be in accordance
366 with Chapter I, Section 40 of these *Bylaws*.
367 For the purpose of establishing continuity of active
368 membership in order to qualify for life membership,
369 an active member, who had been such when entering
370 upon active duty in one of the federal dental services
371 but who, during such federal dental service,
372 interrupted the continuity of active membership
373 because of failure to pay dues and/or special
374 assessments and who, within one year after
375 separation from such military or equivalent duty,
376 resumed active membership, may pay back dues and
377 special assessments for any missing period of active
378 membership at the rate of dues and/or special
379 assessments current during the missing years of
380 membership.

381 C. RETIRED MEMBER.
382 a. QUALIFICATIONS. A retired member shall be
383 an active member in good standing of this
384 Association who is now a retired member of a
385 constituent society, if such exists, and is no longer
386 earning income from the performance of any
387 dentally related activity, and has submitted an
388 affidavit attesting to qualifications for this category
389 through said component and constituent society, if
390 such exist. Maintenance of active or retired
391 membership in good standing in the member's
392 component society and retired membership in good
393 standing in the member's constituent, if such exist,
394 entitling such member to all the privileges of an
395 active member, shall be requisite for entitlement to
396 and continuance of retired membership in this
397 Association.
398 b. PRIVILEGES. A retired member in good
399 standing shall receive annually a membership card.
400 A retired member shall be entitled to all the
401 privileges of an active member.

402   A retired member under a disciplinary sentence of
403   suspension shall not be privileged to hold office,
404   either elective or appointive, including delegate and
405   alternate delegate, in such member's component
406   and constituent societies and this Association, or to
407   vote or otherwise participate in the selection of
408   officials of such member's component and
409   constituent societies and this Association.
410   c. DUES AND SPECIAL ASSESSMENTS. The
411   dues of retired members shall be twenty-five
412   percent (25%) of the dues of active members, due
413   January 1 of each year. In addition to their annual
414   dues, retired members shall pay twenty-five percent
415   (25%) of any active member special assessment
416   levied by the House of Delegates, due January 1 of
417   each year.
418   D. NONPRACTICING DENTIST MEMBER.
419   a. QUALIFICATIONS. A nonpracticing dentist
420   member shall be a dentist who is ineligible for
421   any other classification of membership and:
422   (1) has a dental degree from any country;
423   (2) resides in the United States or its territories;
424   (3) does not hold a dental license in the United
425   States nor has a revoked U.S. dental license;
426   (4) is not delivering patient care as a dentist for
427   remuneration; and
428   (5) is a member in good standing of this
429   Association, and the Association's constituent
430   and component societies, if such exists.
431   b. PRIVILEGES.
432   (1) A nonpracticing dentist member in good
433   standing shall receive annually a membership
434   card and *The Journal Of The American Dental*
435   *Association*, the subscription price of which shall
436   be included in the annual dues. A nonpracticing
437   dentist member shall be entitled to attend any
438   scientific session of this Association and receive
439   such other services as are authorized by the
440   Association.
441   (2) A nonpracticing dentist member in good
442   standing shall be eligible for election to any
443   council.
444   (3) A nonpracticing dentist member shall also be
445   eligible for appointment as an additional member
446   to any council, provided the council requests such
447   additional nonpracticing membership
448   representation and the Board of Trustees
449   approves the council's request. Such members
450   shall be appointed by the Board of Trustees. The
451   tenure of an additional council member shall be
452   one (1) term of four (4) years.
453   (4) A nonpracticing dentist member under a
454   disciplinary sentence of suspension shall not be
455   privileged to serve as a member of any council.
456   c. DUES AND SPECIAL ASSESSMENTS. The

457 dues of nonpracticing dentists shall be fifty
458 percent (50%) of the dues of active members, due
459 January 1 of each year. In addition to their
460 annual dues, nonpracticing dentists shall pay fifty
461 percent (50%) of any active member special
462 assessment levied by the House of Delegates, due
463 January 1 of each year.

464 E. STUDENT MEMBER.
465 a. QUALIFICATIONS. A student member shall be
466 a predoctoral student of a dental school accredited
467 by the Commission on Dental Accreditation of this
468 Association, a predoctoral student of a dental
469 school listed in the World Directory of Dental
470 Schools compiled by the FDI World Federation or a
471 dentist eligible for membership in this Association
472 who is engaged full time in an advanced training
473 course of not less than one academic year's
474 duration in an accredited school or residency
475 program.
476 b. PRIVILEGES. A student member in good
477 standing of this Association shall receive annually a
478 membership card and *The Journal of the American*
479 *Dental Association,* the subscription price of which
480 shall be included in the annual dues. A student
481 member shall be entitled to attend any scientific
482 session of this Association.
483   A student member under a disciplinary sentence of
484 suspension shall not be privileged to serve as the
485 American Student Dental Association's delegate or
486 alternate delegate in this Association's House of
487 Delegates.
488 c. DUES AND SPECIAL ASSESSMENTS.
489 (1) PREDOCTORAL STUDENT MEMBERS: The
490 dues of predoctoral student members shall be five
491 dollars ($5.00) due January 1 of each year. Such
492 student members shall be exempt from the payment
493 of any special assessment levied by the House of
494 Delegates.
495 (2) POSTDOCTORAL STUDENTS AND
496 RESIDENTS: The dues of dentists who are student
497 members pursuant to Chapter I, Section 20E shall
498 be thirty dollars ($30.00) due January 1 of each
499 year. Such student members shall be exempt from
500 the payment of any special assessment levied by the
501 House of Delegates.
502 (3) Student membership terminates on December
503 31 after graduation or after completion of a
504 residency or graduate work.

505 F. HONORARY MEMBER.
506 a. QUALIFICATIONS. An individual who has
507 made outstanding contributions to the advancement
508 of the art and science of dentistry, upon election by
509 the Board of Trustees, shall be classified as an
510 honorary member of this Association.
511 b. PRIVILEGES. An honorary member shall

CHAPTER I • MEMBERSHIP

512    receive a membership card and *The Journal of the*
513    *American Dental Association.* An honorary member
514    shall be entitled to attend any scientific session of
515    this Association and receive such other services as
516    are authorized by the Board of Trustees.
517    c. DUES AND SPECIAL ASSESSMENTS.
518    Honorary members shall be exempt from payment
519    of dues and any special assessment levied by the
520    House of Delegates.
521    G. PROVISIONAL MEMBER.
522    a. QUALIFICATIONS.   A provisional member
523    shall be a dentist who:
524    (1) has received a D.D.S. or D.M.D. degree from a
525    dental school accredited by the Commission on
526    Dental Accreditation of the American Dental
527    Association or shall be a graduate of an
528    unaccredited dental school who has recently been
529    licensed to practice dentistry in a jurisdiction in
530    which there is a constituent dental society;
531    (2) has not established a place of practice; and
532    (3) shall have applied for provisional membership
533    within 12 months of graduation or licensure.
534    Provisional membership shall terminate December
535    31 of the second full calendar year following the
536    year in which the degree was awarded.
537    b. PRIVILEGES. A provisional member in good
538    standing shall be entitled to all the privileges of an
539    active member except that, notwithstanding
540    anything in these *Bylaws* to the contrary, a
541    provisional member shall have no right to appeal
542    from a denial of active membership in the
543    Association.
544    A provisional member under a disciplinary
545    sentence of suspension shall not be privileged to
546    hold office, either elective or appointive, including
547    delegate and alternate delegate, in such member's
548    component and constituent societies and this
549    Association, or to vote or otherwise participate in
550    the selection of officials of such member's
551    component and constituent societies and this
552    Association.
553    c. DUES AND SPECIAL ASSESSMENTS. The
554    dues and/or special assessments of provisional
555    members shall be the same as the dues and/or
556    special assessments of active members.
557    H. ASSOCIATE MEMBER.
558    a. QUALIFICATIONS. An associate member shall
559    be a person ineligible for any other type of
560    membership in this Association, who contributes to
561    the advancement of the objectives of this
562    Association, is employed in dental-related
563    education or research, does not hold a dental license
564    in the United States, and has applied to and been

565 approved by the Board of Trustees.*
566 b. PRIVILEGES. An associate member in good
567 standing shall receive annually a membership card
568 and *The Journal of the American Dental*
569 *Association*, the subscription price of which shall be
570 included in the annual dues. An associate member
571 shall be entitled to attend any scientific session of
572 this Association and receive such other services as
573 are authorized by the Board of Trustees.
574 c. DUES AND SPECIAL ASSESSMENTS. The
575 dues of associate members shall be twenty-five
576 percent (25%) of the dues of active members, due
577 January 1 of each year. In addition to their annual
578 dues, associate members shall pay twenty-five
579 percent (25%) of any active member special
580 assessment levied by the House of Delegates, due
581 January 1 of each year.

582 I. AFFILIATE MEMBER.
583 a. QUALIFICATIONS. An affiliate member shall
584 be a dentist who is ineligible for any other
585 classification of membership and:
586 (1) is practicing in a country other than the United
587 States;
588 (2) has been classified as an affiliate member upon
589 application to and approval by the Board of
590 Trustees; and
591 (3) is a member in good standing of this
592 Association.
593 b. PRIVILEGES. An affiliate member in good
594 standing shall receive annually a membership card,
595 have access to the members-only content areas of
596 ADA.org, be entitled to attend any scientific session
597 of this Association, purchase items through the
598 ADA Catalog at the member rate and receive such
599 other services as are authorized by the Board of
600 Trustees.
601 c. DUES AND SPECIAL ASSESSMENTS. The
602 dues of affiliate members shall be twelve dollars
603 ($12.00) for those members practicing in least
604 developed and low income countries eligible for
605 special fee criteria as established by the Fédération
606 Dentaire Internationale and seventy-five dollars
607 ($75.00) for other such members, due January 1 of
608 each year. Affiliate members shall be exempt from
609 the payment of any special assessment levied by the
610 House of Delegates.

-----

* Individuals who are classified as associate members
of this Association prior to the 1996 annual session of
the House of Delegates but who are not employed
full-time in dentally-related education or research by
an accredited institution of higher education, may
maintain their associate membership so long as other
eligibility requirements are met and current dues and
special assessments are paid.

611  *Section 30.* DEFINITION OF "IN GOOD
612  STANDING". A member of this Association whose
613  dues and special assessments for the current year have
614  been paid shall be in good standing; provided,
615  however, that a member, to remain in good standing
616  may be required under the bylaws of the member's
617  constituent or component society, to meet standards
618  of continuing education, pay special assessments,
619  cooperate with peer review bodies or committees on
620  ethics, or attend, if a newly admitted active member, a
621  stated number of membership meetings between the
622  date of admission and the completion of the first
623  calendar year of active membership. If under a
624  disciplinary sentence of suspension, such member
625  shall be designated as a "member in good standing
626  temporarily under suspension" until the member's
627  disciplinary sentence has terminated.
628    The requirement of paying current dues does not
629  apply to retired life, honorary and those members of
630  this Association who pursuant to Section 50 of this
631  Chapter have been granted dues waivers for the
632  purpose of determining their good standing. The
633  requirement of paying special assessments does not
634  apply to retired life, honorary, affiliate, student and
635  those members of this Association who pursuant to
636  Section 50 of this Chapter have been granted special
637  assessment waivers for purposes of determining their
638  good standing.

639  *Section 40.* LAPSE OF MEMBERSHIP AND
640  REINSTATEMENT.

641  A. LAPSE OF MEMBERSHIP. Any member whose
642  dues and special assessments have not been paid by
643  March 31 of the current year shall cease to be a
644  member of this Association. Further, an associate
645  member who terminates employment in dental-related
646  education or research shall cease to be an associate
647  member of this Association December 31 of that
648  calendar year.

649  B. REINSTATEMENT. Reinstatement of active, life,
650  retired, nonpracticing dentist, student or affiliate
651  membership may be secured on payment of
652  appropriate dues and special assessments of this
653  Association by any former member and on
654  compliance by any former member with the pertinent
655  bylaws and regulations of the constituent and
656  component societies involved and this Association.

657  *Section 50.* DUES OR SPECIAL ASSESSMENT
658  RELATED ISSUES.
659  A. PAYMENT DATE AND INSTALLMENT
660  PAYMENTS. Dues and special assessments of all
661  members are payable January 1 of each year, except
662  for active and active life members who may
663  participate in an installment payment plan. Such plan
664  shall be sponsored by the members' respective

665 constituent or component dental societies, or by this
666 Association if the active or active life members are in
667 the exclusive employ of, or are serving on active duty
668 in, one of the federal dental services. The plan shall
669 require monthly installment payments that conclude
670 with the current dues and special assessment amount
671 fully paid by June 30. Transactional costs may be
672 imposed, prorated to this Association and the
673 constituent or component dental society. The
674 installment plan shall provide for the expeditious
675 transfer of member dues and special assessments to
676 this Association and the applicable constituent or
677 component dental society, if such exists, as soon as
678 commercially feasible.

679 B. FINANCIAL HARDSHIP WAIVERS. Those
680 members who have suffered a significant financial
681 hardship that prohibits them from payment of their
682 full dues and/or special assessments may be excused
683 from the payment of fifty percent (50%), seventy-five
684 percent (75%) or all of the current year's dues and/or
685 special assessment(s) as determined by their
686 constituent and component dental societies. The
687 constituent and component society secretaries shall
688 certify the reason for the waiver, and the constituent
689 and component societies shall provide the same
690 proportionate waiver of their dues as that provided by
691 this Association.*

692 C. WAIVERS FOR ACTIVE MEMBERS
693 TEMPORARILY ACTIVATED TO FEDERAL
694 SERVICE. An active member in good standing who
695 pursuant to Chapter I of these *Bylaws* holds
696 membership in a constituent and component society
697 and is temporarily called to active duty with a federal
698 dental service on a non-career basis shall be exempt
699 from the payment of dues to this Association during
700 such military duty, but not to exceed a period of three
701 years.

702 D. WAIVERS FOR ACTIVE MEMBERS
703 WORKING FOR A CHARITABLE
704 ORGANIZATION. An active member who is

---

\* Members with disabilities who were granted dues
and special assessment disability waivers prior to the
2007 House of Delegates may continue to receive
such waivers provided they are unable to practice
dentistry within the definition of these *Bylaws* and
they submit through the member's component and
constituent societies, if such exist, to this Association,
a medical certificate attesting to the disability and a
certificate from said component and constituent
societies, if such exist, attesting to the disability, upon
request of the Association, during the exemption
period.

705　serving the profession by working full-time for a
706　charitable organization and is receiving neither
707　income nor a salary for such charitable service other
708　than a subsistence amount which approximates a cost
709　of living allowance shall be exempt from the payment
710　of dues and any special assessment then in effect
711　through December 31 following completion of such
712　service provided that such charitable service is being
713　performed continuously for not less than one (1) year
714　and provided further that such member does not
715　supplement such subsistence income by the
716　performance of services as a member of the faculty of
717　a dental or dental auxiliary school, as a dental
718　administrator or consultant, or as a practitioner of any
719　activity for which a license to practice dentistry or
720　dental hygiene is required.

721　E. CALCULATING PERCENTAGE DUES OR
722　SPECIAL ASSESSMENTS. In establishing the dollar
723　rate of dues or special assessments in this chapter
724　expressed as a percentage of active member dues or
725　special assessments, computations resulting in
726　fractions of a dollar shall be rounded up to the next
727　whole dollar.

728　*Section 60.* INTERIM SERVICES FOR
729　APPLICANTS. A dentist who has submitted a
730　complete application for active membership in this
731　Association and the appropriate constituent and
732　component societies, if such exist, may on a one-
733　time, interim basis: receive complimentary copies of
734　the *Journal of the American Dental Association* and
735　the *ADA News*, have access to the ADA.org member-
736　only content areas and purchase items at a member
737　rate through the ADA Catalog. Such interim services
738　shall terminate when the membership application has
739　been processed or within six (6) months of the
740　application submission, whichever is sooner.
741　Applicants shall have no right of appeal from a denial
742　of membership in the Association.

## CHAPTER II • CONSTITUENT SOCIETIES

743　*Section 10.* ORGANIZATION: A constituent society
744　may be organized and chartered, subject to the
745　approval of the House of Delegates, upon application
746　of at least one hundred (100) dentists, practicing in
747　any state or other jurisdiction of the United States
748　who are active, life or retired members of the
749　Association in good standing. No such society shall
750　be chartered in any state or other jurisdiction of the
751　United States in which a constituent society is already
752　chartered by this Association.

753　*Section 20.* NAME: A constituent society shall take
754　its name from the state or other jurisdiction of the
755　United States.

*Section 30.* POWERS AND DUTIES:

A. A constituent society shall have the power to select its active, life, and retired members as active members of this Association within the limits of Section 40 of this Chapter.

B. It shall have the power to organize its members into component societies within the limits imposed by Chapter III, Section 10 of these *Bylaws.*

C. It shall have the power to provide for its financial support and to establish bylaws, rules and regulations to govern its members provided such bylaws, rules and regulations do not conflict with, or limit, these *Bylaws.*

D. It shall have the power to discipline any of its members subject to the provisions in Chapter XII, Section 20 of these *Bylaws.*

E. It shall be its duty to collect membership dues and special assessments for this Association in conformity with Chapter I, Section 20, of these *Bylaws.*

F. It shall have the power to establish committees, councils and commissions of the constituent society; to designate their power and duties; and to adopt reasonable eligibility requirements for service thereon.

*Section 40.* MEMBERSHIP:

A. The active, life, and retired membership of each constituent society, except as otherwise provided in these *Bylaws,* shall consist solely of dentists practicing within the territorial jurisdiction of the constituent society; dentists retired from active practice; dentists engaged in activities furthering the object of this Association; dentists serving on the faculty of a dental school or receiving compensation as a dental administrator or consultant within the jurisdiction of the constituent society but are licensed in another jurisdiction; and dentists in a federal dental service (provided that the federal dentist is either licensed in or serving within the confines of the constituent society's jurisdiction), provided that such dentists are active, life or retired members in good standing of a component of the constituent (except for the federal dentists), if such exists, and this Association.

*Explanatory Note:* A dentist who has retired from active practice or who is engaged in activities furthering the object of this Association shall be considered to be practicing dentistry within the meaning of this section.

B. REMOVAL FROM ONE JURISDICTION TO ANOTHER. A member who has changed the location of the member's practice from the jurisdiction of one constituent society to that of another constituent society may maintain active membership in the

CHAPTER II • CONSTITUENT SOCIETIES

810 constituent society in which membership is being
811 held for the calendar year following that of the
812 member's removal from the jurisdiction of such
813 society. The same privilege shall apply to a member
814 who is separated from a federal dental service and
815 who enters practice in an area under the jurisdiction
816 of a constituent society or a member who is retired
817 from a federal dental service and who is serving on a
818 faculty of a dental school, or is receiving
819 compensation as a dental administrator or consultant,
820 or is engaged in any activity in the area under the
821 jurisdiction of a constituent society for which a
822 license to practice dentistry or dental hygiene is
823 required by the state or other jurisdiction of the
824 United States wherein the activity is conducted. A
825 dentist who retires from active practice and
826 establishes residence in an area outside of the
827 jurisdiction of the constituent society in which the
828 dentist holds membership shall be permitted to
829 continue membership in such constituent society for
830 the period of retirement.
831    A member who is unsuccessful in transferring
832 membership from one constituent society to another
833 shall be entitled to a hearing (by either the component
834 or constituent society), on the decision denying the
835 member's application for transfer of membership and
836 to appeal to the constituent society to which transfer
837 is sought, if applicable, and thereafter to the Council
838 on Ethics, Bylaws and Judicial Affairs of this
839 Association in accordance with the procedures in
840 Chapter XII, Section 20C and D of these *Bylaws* even
841 though a disciplinary penalty is not involved.

842 C. PRIVILEGES. An active, life, or retired member
843 in good standing shall enjoy all privileges of
844 constituent society membership except as otherwise
845 provided by these *Bylaws*.

846 D. MULTIPLE JURISDICTIONS. A member may
847 hold membership in more than one constituent society
848 with the consent of the constituent society involved.
849 A member is required to maintain active membership
850 in the constituent society, if accepted therein, in
851 whose jurisdiction the member maintains or practices
852 dentistry at a secondary or "branch" office. In order to
853 meet the requirement of tripartite membership, a
854 member must also maintain active membership in one
855 component society of each constituent society into
856 which the member is accepted, if such exist. If such a
857 member is accused of unethical conduct and
858 disciplinary proceedings are brought, then those
859 proceedings shall be instituted in the component or
860 constituent society where the alleged unethical
861 conduct occurred. A disciplinary ruling affecting
862 membership in one constituent society shall affect
863 membership in both societies and in the Association.
864 A member shall have the right of appeal as provided

865 in Chapter XII of the *Bylaws*. Such member shall pay
866 dues in this Association only through the constituent
867 society in whose jurisdiction the member conducts
868 the major part of the member's practice.

869 *Section 50.* OFFICERS: The officers of a constituent
870 society shall be president, secretary, treasurer and such
871 others as may be prescribed in its bylaws.

872 *Section 60.* SESSIONS: A constituent society shall
873 hold a business session at least once each calendar
874 year.

875 *Section 70.* CONSTITUTION AND BYLAWS: Each
876 constituent society shall adopt and maintain a
877 constitution and bylaws which shall not be in conflict
878 with, or limit, the *Constitution and Bylaws*
879 of this Association and shall file a copy thereof and
880 any changes which may be made thereafter, with the
881 Executive Director of this Association.

882 *Section 80.* "PRINCIPLES OF ETHICS AND CODE
883 OF PROFESSIONAL CONDUCT": The *Principles of*
884 *Ethics and Code of Professional Conduct* of this
885 Association and the code of ethics adopted by the
886 constituent society shall be the code of ethics of that
887 constituent society for governing the professional
888 conduct of its members.

889 *Section 90.* RIGHT OF HEARING AND APPEAL:
890 Disputes arising between constituent societies or
891 between a constituent society and one or more of its
892 component societies may be referred to the Council
893 on Ethics, Bylaws and Judicial Affairs of this
894 Association for hearing and decision as provided in
895 Chapter X, Section 120Gd in accordance with the
896 procedure of Chapter XII, Section 20C and D of these
897 *Bylaws* even though a disciplinary penalty is not
898 involved.

899 *Section 100.* PRIVILEGE OF REPRESENTATION:
900 Each constituent society shall be entitled to two (2)
901 delegates in the House of Delegates, except that one
902 (1) delegate shall be allocated to the Virgin Islands
903 Dental Association. The Air Force Dental Corps, the
904 Army Dental Corps, the Navy Dental Corps, the
905 Public Health Service and the Department of
906 Veterans Affairs shall each be entitled to two
907 delegates, one of which shall be elected by the
908 respective service, without regard to the number of
909 members. The remaining number of delegates shall
910 be allocated as provided in Chapter V, Sections 10C
911 and 10D.
912 Each constituent society and each federal dental
913 service may select from among its active, life and
914 retired members the same number of alternate
915 delegates as delegates and shall designate the
916 alternate delegate who shall replace an absent
917 delegate.

CHAPTER II • CONSTITUENT SOCIETIES

918    *Section 110.* CHARTERED CONSTITUENT
919    SOCIETIES: The Executive Director of the
920    Association is authorized to issue a charter to each
921    constituent society denoting its name and territorial
922    jurisdiction. The following societies are chartered as
923    constituent societies of this Association:

924    Alabama Dental Association
925    Alaska Dental Society
926    Arizona State Dental Association
927    Arkansas State Dental Association
928    California Dental Association
929    Colorado Dental Association
930    Connecticut State Dental Association, The
931    Delaware State Dental Society
932    District of Columbia Dental Society, The
933    Florida Dental Association
934    Georgia Dental Association
935    Hawaii Dental Association
936    Idaho State Dental Association
937    Illinois State Dental Society
938    Indiana Dental Association
939    Iowa Dental Association
940    Kansas Dental Association
941    Kentucky Dental Association
942    Louisiana Dental Association, The
943    Maine Dental Association
944    Maryland State Dental Association
945    Massachusetts Dental Society
946    Michigan Dental Association
947    Minnesota Dental Association
948    Mississippi Dental Association, The
949    Missouri Dental Association
950    Montana Dental Association
951    Nebraska Dental Association, The
952    Nevada Dental Association
953    New Hampshire Dental Society
954    New Jersey Dental Association
955    New Mexico Dental Association
956    New York State Dental Association
957    North Carolina Dental Society, The
958    North Dakota Dental Association
959    Ohio Dental Association
960    Oklahoma Dental Association
961    Oregon Dental Association
962    Pennsylvania Dental Association
963    Puerto Rico, Colegio de Cirujanos Dentistas de
964    Rhode Island Dental Association
965    South Carolina Dental Association
966    South Dakota Dental Association
967    Tennessee Dental Association
968    Texas Dental Association
969    Utah Dental Association
970    Vermont State Dental Society

CHAPTER III • COMPONENT SOCIETIES

| 971 | Virgin Islands Dental Association |
| 972 | Virginia Dental Association |
| 973 | Washington State Dental Association |
| 974 | West Virginia Dental Association |
| 975 | Wisconsin Dental Association |
| 976 | Wyoming Dental Association |

## CHAPTER III • COMPONENT SOCIETIES

977 *Section 10.* ORGANIZATION: Component societies
978 may be organized in conformity with a plan approved
979 by the constituent society of which they shall be
980 recognized entities provided, however, that the active,
981 life or retired members of each component society
982 shall consist of dentists who are members in good
983 standing of their respective constituent societies and
984 of this Association. The plan adopted by the
985 constituent society may or may not limit active
986 membership in a component society to dentists who
987 reside or practice within the geographic area of that
988 component society. Each component society shall
989 adopt and maintain a constitution and bylaws, which
990 shall not be in conflict with, or limit, the *Constitution*
991 *and Bylaws* of this Association or that of its
992 constituent society, and shall file a copy thereof and
993 any changes which may be made thereafter with the
994 Executive Director of this Association.

995 *Section 20.* POWER AND DUTIES:

996 A. A component society shall have the power to
997 select its active, life, and retired members as active
998 members of the constituent society in accordance
999 with Chapter II, Section 40, of these *Bylaws.*

1000 B. It shall have the power to provide for its financial
1001 support, to establish bylaws, rules and regulations, not
1002 in conflict with, or limiting, the *Constitution and*
1003 *Bylaws* of this Association or that of its constituent
1004 society and to adopt a code of ethics not in conflict
1005 with the *Principles of Ethics and Code of*
1006 *Professional Conduct* of this Association or code of
1007 ethics of its constituent society.

1008 C. It shall have the power to discipline any of its
1009 members subject to the provisions in Chapter XII,
1010 Section 20 of these *Bylaws.*

1011 D. It shall have the power to establish committees,
1012 councils and commissions of the component society;
1013 to designate their powers and duties; and to adopt
1014 reasonable eligibility requirements for service
1015 thereon.

1016 *Section 30.* PRIVILEGES OF MEMBERSHIP: An
1017 active, life, or retired member in good standing shall
1018 have the opportunity of enjoying all privileges of
1019 component society membership except as otherwise
1020 provided by these *Bylaws.*

1021 *Section 40.* TRANSFER FROM ONE COMPONENT
1022 TO ANOTHER:

1023 A member who has changed residence or location of
1024 practice within the jurisdiction of a constituent
1025 society so that the member no longer fulfills the
1026 membership requirements of the component society
1027 of which he or she is a member may maintain active
1028 membership in that component society for the
1029 calendar year following such change of residence or
1030 practice location.
1031 A member who is required to transfer membership
1032 from one component society to another and whose
1033 application for transfer of membership is denied shall
1034 be entitled to a hearing (by either the component or
1035 constituent society), on the decision denying the
1036 member's application for transfer of membership and
1037 to appeal to the member's constituent society, if
1038 applicable, and the Council on Ethics, Bylaws and
1039 Judicial Affairs of this Association in accordance
1040 with the procedures in Chapter XII, Section 20C and
1041 D of these *Bylaws* even though a disciplinary
1042 penalty is not involved. A component society which
1043 receives an application for transfer of membership
1044 from a dentist who has moved from the jurisdiction of
1045 another constituent society is governed by Chapter II,
1046 Section 40B of these *Bylaws.*

## CHAPTER IV • TRUSTEE DISTRICTS

1047 *Section 10.* ORGANIZATION: The constituent
1048 societies and the federal dental services shall be
1049 organized into seventeen (17) trustee districts.

1050 *Section 20.* PURPOSE: The purpose of establishing
1051 trustee districts is to provide representation of the
1052 members of the constituent societies and the federal
1053 dental services on the Board of Trustees.

1054 *Section 30.* COMPOSITION: The trustee districts are
1055 numbered and composed as follows:

1056 DISTRICT 1
1057 Connecticut State Dental Association, The
1058 Maine Dental Association
1059 Massachusetts Dental Society
1060 New Hampshire Dental Society
1061 Rhode Island Dental Association
1062 Vermont State Dental Society

1063 DISTRICT 2
1064 New York State Dental Association

1065 DISTRICT 3
1066 Pennsylvania Dental Association

1067 DISTRICT 4
1068 Air Force Dental Corps

| 1069 | Army Dental Corps |
| 1070 | Delaware State Dental Society |
| 1071 | District of Columbia Dental Society, The |
| 1072 | Maryland State Dental Association |
| 1073 | Navy Dental Corps |
| 1074 | New Jersey Dental Association |
| 1075 | Public Health Service |
| 1076 | Puerto Rico, Colegio de Cirujanos Dentistas de |
| 1077 | Veterans Affairs |
| 1078 | Virgin Islands Dental Association |
| 1079 | DISTRICT 5* |
| 1080 | Alabama Dental Association |
| 1081 | Georgia Dental Association |
| 1082 | Mississippi Dental Association, The |
| 1083 | DISTRICT 6 |
| 1084 | Kentucky Dental Association |
| 1085 | Missouri Dental Association |
| 1086 | Tennessee Dental Association |
| 1087 | West Virginia Dental Association |
| 1088 | DISTRICT 7 |
| 1089 | Indiana Dental Association |
| 1090 | Ohio Dental Association |
| 1091 | DISTRICT 8 |
| 1092 | Illinois State Dental Society |
| 1093 | DISTRICT 9 |
| 1094 | Michigan Dental Association |
| 1095 | Wisconsin Dental Association |
| 1096 | DISTRICT 10 |
| 1097 | Iowa Dental Association |
| 1098 | Minnesota Dental Association |
| 1099 | Nebraska Dental Association, The |
| 1100 | North Dakota Dental Association |
| 1101 | South Dakota Dental Association |
| 1102 | DISTRICT 11 |
| 1103 | Alaska Dental Society |
| 1104 | Idaho State Dental Association |
| 1105 | Montana Dental Association |
| 1106 | Oregon Dental Association |
| 1107 | Washington State Dental Association |
| 1108 | DISTRICT 12 |
| 1109 | Arkansas State Dental Association |
| 1110 | Kansas Dental Association |
| 1111 | Louisiana Dental Association, The |
| 1112 | Oklahoma Dental Association |
| 1113 | DISTRICT 13 |
| 1114 | California Dental Association |
| 1115 | DISTRICT 14 |
| 1116 | Arizona State Dental Association |
| 1117 | Colorado Dental Association |
| 1118 | Hawaii Dental Association |

| 1119 | Nevada Dental Association |
| 1120 | New Mexico Dental Association |
| 1121 | Utah Dental Association |
| 1122 | Wyoming Dental Association |

| 1123 | DISTRICT 15 |
| 1124 | Texas Dental Association |

| 1125 | DISTRICT 16 |
| 1126 | North Carolina Dental Society, The |
| 1127 | South Carolina Dental Association |
| 1128 | Virginia Dental Association |

| 1129 | DISTRICT 17[*] |
| 1130 | Florida Dental Association |

## CHAPTER V • HOUSE OF DELEGATES

1131 *Section 10.* COMPOSITION.

1132 A. VOTING MEMBERS. The House of Delegates
1133 shall be limited to four hundred sixty (460) voting
1134 members for the two years 2004 to 2005 inclusive.
1135 Thereafter, the number of voting members shall be
1136 determined by the methodologies set forth in Section
1137 10C of this Chapter.  It shall be composed of the
1138 officially certified delegates of the constituent dental
1139 societies, two (2) officially certified delegates from
1140 each of the five (5) federal dental services and five (5)
1141 student members of the American Student Dental
1142 Association who are officially certified delegates
1143 from the American Student Dental Association.

1144 B. EX OFFICIO MEMBERS.   The elective and
1145 appointive officers and trustees of this Association
1146 shall be *ex officio* members of the House of Delegates
1147 without the power to vote. They shall not serve as
1148 delegates.  Past presidents of this Association shall be
1149 *ex officio* members of the House of Delegates without
1150 the power to vote unless designated as delegates.

1151 C. REPRESENTATIONAL REQUIREMENTS AND
1152 GOALS.  Each constituent society shall be entitled to

---

* In order to establish the required pattern of four,
four, four and five members respectively retiring from
councils and commissions each year, members of
councils and commissions from the new 5th and 17th
districts who are in office at the time this footnote
becomes effective shall finish their terms in
accordance with their scheduled term completion
dates. Councils and commissions that have incumbent
members from the new 5th district shall add a new
member from the 17th district to a full four-year term.
Councils and commissions that have incumbent
members from the new 17th district shall add a new
member from the new 5th district to a full four-year
term.

two (2) delegates, except that one (1) delegate shall be allocated to the Virgin Islands Dental Association. The Air Force Dental Corps, the Army Dental Corps, the Navy Dental Corps, the Public Health Service and the Department of Veteran Affairs shall each be entitled to two (2) delegates, one of which shall be elected by the respective service, without regard to the number of members.

For the two years 2004-2005 inclusive, the remaining number of delegates shall be allocated to the constituent societies, through their trustee districts based on the representational goals that each trustee district's representation in the House of Delegates shall vary by no more or less than 0.3% from its active, life or retired membership share in this Association, based on the Association's December 31, 2002 membership records, and that no district or constituent shall lose a delegate from its 2003 allocation. Thereafter, to allow for changes in the delegate allocation due to membership fluctuations, the Board of Trustees shall use this variance method of district delegate allocation (a variance of no more than 0.3% of its active, life and retired membership share in the Association) at subsequent intervals of three (3) years, with the first such review occurring for the 2006 House of Delegates. Such reviews shall be based on the Association's year-end membership records for the calendar year preceding the review period in question. No district shall lose a delegate unless their membership numbers are at least one percent less than their membership numbers of the prior three years. Any changes deemed necessary shall be presented to the House of Delegates in the form of a *Bylaws*' amendment to Section 10D of this Chapter.

D. DELEGATE ALLOCATION.    Based on the representational requirements and goals set forth in Section 10C, the delegates are allocated as follows:

DISTRICT 1
Connecticut State Dental Association, The,
    7 delegates
Maine Dental Association, 3 delegates
Massachusetts Dental Society, 13 delegates
New Hampshire Dental Society, 3 delegates
Rhode Island Dental Association, 3 delegates
Vermont State Dental Society, 2 delegates
District Total: 31 delegates

DISTRICT 2
New York State Dental Association, 41 delegates
District Total: 41 delegates

DISTRICT 3
Pennsylvania Dental Association, 18 delegates
District Total: 18 delegates

| | |
|---|---|
| 1206 | DISTRICT 4 |
| 1207 | Air Force Dental Corps, 2 delegates |
| 1208 | Army Dental Corps, 2 delegates |
| 1209 | Delaware State Dental Society, 2 delegates |
| 1210 | District of Columbia Dental Society, The, |
| 1211 |   2 delegates |
| 1212 | Maryland State Dental Association, 7 delegates |
| 1213 | Navy Dental Corps, 2 delegates |
| 1214 | New Jersey Dental Association, 12 delegates |
| 1215 | Public Health Service, 2 delegates |
| 1216 | Puerto Rico, Colegio de Cirujanos Dentistas de, |
| 1217 |   2 delegates |
| 1218 | Veterans Affairs, 2 delegates |
| 1219 | Virgin Islands Dental Association, 1 delegate |
| 1220 | District Total: 36 delegates |
| | |
| 1221 | DISTRICT 5 |
| 1222 | Alabama Dental Association, 5 delegates |
| 1223 | Georgia Dental Association, 9 delegates |
| 1224 | Mississippi Dental Association, The, 3 delegates |
| 1225 | District Total: 17 delegates |
| | |
| 1226 | DISTRICT 6 |
| 1227 | Kentucky Dental Association, 6 delegates |
| 1228 | Missouri Dental Association, 7 delegates |
| 1229 | Tennessee Dental Association, 7 delegates |
| 1230 | West Virginia Dental Association, 3 delegates |
| 1231 | District Total: 23 delegates |
| | |
| 1232 | DISTRICT 7 |
| 1233 | Indiana Dental Association, 9 delegates |
| 1234 | Ohio Dental Association, 16 delegates |
| 1235 | District Total: 25 delegates |
| | |
| 1236 | DISTRICT 8 |
| 1237 | Illinois State Dental Society, 19 delegates |
| 1238 | District Total: 19 delegates |
| | |
| 1239 | DISTRICT 9 |
| 1240 | Michigan Dental Association, 17 delegates |
| 1241 | Wisconsin Dental Association, 9 delegates |
| 1242 | District Total: 26 delegates |
| | |
| 1243 | DISTRICT 10 |
| 1244 | Iowa Dental Association, 5 delegates |
| 1245 | Minnesota Dental Association, 9 delegates |
| 1246 | Nebraska Dental Association, The, 3 delegates |
| 1247 | North Dakota Dental Association, 2 delegates |
| 1248 | South Dakota Dental Association, 2 delegates |
| 1249 | District Total: 21 delegates |
| | |
| 1250 | DISTRICT 11 |
| 1251 | Alaska Dental Society, 2 delegates |
| 1252 | Idaho State Dental Association, 3 delegates |
| 1253 | Montana Dental Association, 2 delegates |
| 1254 | Oregon Dental Association, 6 delegates |
| 1255 | Washington State Dental Association, 10 delegates |
| 1256 | District Total: 23 delegates |

1257    DISTRICT 12
1258    Arkansas State Dental Association, 4 delegates
1259    Kansas Dental Association, 4 delegates
1260    Louisiana Dental Association, The, 6 delegates
1261    Oklahoma Dental Association, 5 delegates
1262    District Total: 19 delegates

1263    DISTRICT 13
1264    California Dental Association, 63 delegates
1265    District Total: 63 delegates

1266    DISTRICT 14
1267    Arizona State Dental Association, 6 delegates
1268    Colorado Dental Association, 8 delegates
1269    Hawaii Dental Association, 3 delegates
1270    Nevada Dental Association, 3 delegates
1271    New Mexico Dental Association, 3 delegates
1272    Utah Dental Association, 4 delegates
1273    Wyoming Dental Association, 2 delegates
1274    District Total: 29 delegates

1275    DISTRICT 15
1276    Texas Dental Association, 23 delegates
1277    District Total: 23 delegates

1278    DISTRICT 16
1279    North Carolina Dental Society, The, 9 delegates
1280    South Carolina Dental Association, 5 delegates
1281    Virginia Dental Association, 10 delegates
1282    District Total: 24 delegates

1283    DISTRICT 17
1284    Florida Dental Association, 21 delegates
1285    District Total: 21 delegates

1286    AMERICAN STUDENT DENTAL
1287    ASSOCIATION, 5 delegates

1288    E. ALTERNATE DELEGATES.  Each constituent
1289    dental society and each federal dental service may
1290    select from among its active, life and retired members
1291    the same number of alternate delegates as delegates.
1292    The American Student Dental Association may select
1293    from among its active members the same number of
1294    alternate delegates as delegates.

1295    F.   SELECTION   OF   AMERICAN   STUDENT
1296    DENTAL   ASSOCIATION   DELEGATES   AND
1297    ALTERNATE DELEGATES. The American Student
1298    Dental Association shall select its five (5) delegates
1299    from its even numbered regions in even numbered
1300    years,  and  the  odd  numbered  regions  in  odd
1301    numbered   years,   with   their   alternate   delegates
1302    selected from the opposite groups of regions.

1303    Section 20. ELECTION  OF  DELEGATES  AND
1304    ALTERNATE DELEGATES: The officially certified
1305    delegates   and   the   alternate   delegates   of   each
1306    constituent society shall be elected by one or more of
1307    the following methods:

29                    Bylaws

1308 1. By the membership at large of that constituent
1309 society
1310 2. By the constituent society's governing legislative
1311 body
1312 3. By a component with respect to the delegates
1313 representing that component
1314 Each federal dental service and the American Student
1315 Dental Association may establish its own method for
1316 selecting delegates.

1317 *Section 30.* CERTIFICATION OF DELEGATES
1318 AND ALTERNATE DELEGATES: The executive
1319 director or equivalent chief executive officer of each
1320 constituent society, the ranking administrative officer
1321 of each federal dental service, and the secretary of the
1322 American Student Dental Association shall file with
1323 the Executive Director of this Association, at least
1324 sixty (60) days prior to the first day of the annual
1325 session of the House of Delegates, the names of the
1326 delegates and alternate delegates designated by the
1327 society, service or association. The Executive
1328 Director of this Association shall provide each
1329 delegate and alternate delegate with credentials which
1330 shall be presented to the Committee on Credentials,
1331 Rules and Order of the House of Delegates. In the
1332 event of a contest over the credentials of any delegate
1333 or alternate delegate, the Committee on Credentials,
1334 Rules and Order shall hold a hearing and report its
1335 findings and recommendations to the House of
1336 Delegates for final action.

1337 *Section 40.* POWERS:

1338 A. The House of Delegates shall be the supreme
1339 authoritative body of this Association.

1340 B. It shall possess the legislative powers.

1341 C. It shall determine the policies which shall govern
1342 this Association in all of its activities.

1343 D. It shall have the power to enact, amend and repeal
1344 the *Constitution and Bylaws.*

1345 E. It shall have the power to adopt and amend the
1346 *Principles of Ethics and Code of Professional*
1347 *Conduct* for governing the professional conduct of the
1348 members.

1349 F. It shall have the power to grant, amend, suspend or
1350 revoke charters of constituent societies. It shall also
1351 have the power by a two-thirds (2/3) affirmative vote
1352 of the delegates present and voting to suspend the
1353 representation of a constituent society in the House of
1354 Delegates upon a determination by the House that the
1355 bylaws of the constituent society violate the
1356 *Constitution* or *Bylaws* of this Association providing,
1357 however, such suspension shall not be in effect until
1358 the House of Delegates has voted that the constituent
1359 society is in violation and has one year after

1360 notification of the specific violation in which to
1361 correct its constitution or bylaws.

1362 G. It shall have the power to create special
1363 committees of the Association.

1364 H. It shall have the power to establish branch offices
1365 of the Association.

1366 I. It shall have the power to approve all memorials,
1367 resolutions or opinions issued in the name of the
1368 American Dental Association.

1369 *Section 50.* DUTIES: It shall be the duty of the House
1370 of Delegates:

1371 A. To elect the elective officers.

1372 B. To elect the members of the Board of Trustees.

1373 C. To elect the members of the councils and
1374 commissions except as otherwise provided by these
1375 *Bylaws.*

1376 D. To receive and act upon reports of the committees
1377 of the House of Delegates.

1378 E. To adopt an annual budget and establish the dues
1379 of active members for the following year.

1380 F. To serve as the court of appeal from decisions of
1381 the Council on Ethics, Bylaws and Judicial Affairs
1382 except those decisions involving discipline of
1383 members.

1384 *Section 60.* TRANSFER OF POWERS AND
1385 DUTIES OF THE HOUSE OF DELEGATES: The
1386 powers and duties of the House of Delegates, except
1387 the power to amend, enact and repeal the *Constitution*
1388 *and Bylaws,* and the duty of electing the elective
1389 officers and the members of the Board of Trustees,
1390 may be transferred to the Board of Trustees of this
1391 Association in time of extraordinary emergency. The
1392 existence of a time of extraordinary emergency may
1393 be determined by unanimous consent of the members
1394 of the Board of Trustees present and voting at a
1395 regular or special session. Such extraordinary
1396 emergency may also be determined by mail vote of
1397 the last House of Delegates on recommendation of at
1398 least four (4) of the elective officers. A mail vote to
1399 be valid shall consist of ballots received from not less
1400 than one-fourth (1/4) of the members of the last
1401 House of Delegates. A majority of the votes cast
1402 within thirty (30) days after the mailing of the ballot
1403 shall decide the vote.

1404 *Section 70.* ANNUAL SESSION: The House of
1405 Delegates shall meet annually.

1406 *Section 80.* SPECIAL SESSIONS: A special session
1407 of the House of Delegates shall be called by the
1408 President on a three-fourths (3/4) affirmative vote of

1409 the members of the Board of Trustees or on written
1410 request of delegates representing at least one-third
1411 (1/3) of the constituent societies and not less than
1412 one-fifth (1/5) of the number of officially certified
1413 delegates of the last House of Delegates. The time
1414 and place of a special session shall be determined by
1415 the President, provided the time selected shall be not
1416 more than forty-five (45) days after the request was
1417 received. The business of a special session shall be
1418 limited to that stated in the official call except by
1419 unanimous consent.

1420 *Section 90.* OFFICIAL CALL:

1421 A. ANNUAL SESSION. The Executive Director of
1422 the Association shall cause to be published in *The*
1423 *Journal of the American Dental Association* an
1424 official notice of the time and place of each annual
1425 session, and shall send to each member of the House
1426 of Delegates an official notice of the time and place
1427 of the annual session at least thirty (30) days before
1428 the opening of such session.

1429 B. SPECIAL SESSION. The Executive Director of
1430 the Association shall send an official notice of the
1431 time and place of each special session and a statement
1432 of the business to be considered to every officially
1433 certified delegate and alternate delegate of the last
1434 House, not less than fifteen (15) days before
1435 the opening of such session.

1436 *Section 100.* QUORUM: One-fourth (1/4) of the
1437 voting members of the House of Delegates,
1438 representing at least one-fourth (1/4) of the
1439 constituent societies and federal dental services, shall
1440 constitute a quorum for the transaction of business at
1441 any meeting.

1442 *Section 110.* OFFICERS:

1443 A. SPEAKER AND SECRETARY. The officers of
1444 the House shall be the Speaker of the House of
1445 Delegates and the Secretary of the House of
1446 Delegates. The Executive Director of this Association
1447 shall serve as Secretary of the House of Delegates.
1448   In the absence of the Speaker the office shall be
1449 filled by the President. In the absence of the Secretary
1450 of the House of Delegates the Speaker shall appoint a
1451 Secretary of the House of Delegates *pro tem.*

1452 B. DUTIES.
1453   a. SPEAKER. The Speaker shall preside at all
1454 meetings of the House of Delegates and, in
1455 accordance with Chapter V, Section 140Bb,
1456 determine the order of business for all meetings
1457 subject to the approval of the House of Delegates,
1458 appoint tellers to assist in determining the result of
1459 any action taken by vote and perform such other
1460 duties as custom and parliamentary procedure

1461 require. The decision of the Speaker shall be final
1462 unless an appeal from such decision shall be made
1463 by a member of the House, in which case final
1464 decision shall be by majority vote. In addition,
1465 following adjournment of the Standing Committee
1466 on Constitution and Bylaws, the Speaker and the
1467 Chair of the Council on Ethics, Bylaws and Judicial
1468 Affairs shall be responsible for reviewing and either
1469 approving or redrafting any new resolutions or
1470 changes to resolutions that propose amendments to
1471 the *Constitution and Bylaws*, in accordance with
1472 Chapter V, Section 140Ab.
1473 b. SECRETARY. The Secretary of the House of
1474 Delegates shall serve as the recording officer of the
1475 House and the custodian of its records, and shall
1476 cause a record of the proceedings of the House to be
1477 published as the official transactions of the House.

1478 *Section 120.* ORDER OF BUSINESS: The order of
1479 business shall be that order of business adopted by the
1480 House of Delegates in conformity with Chapter V,
1481 Section 110Ba and Chapter V, Section 140Bb.

1482 *Section 130.* RULES OF ORDER:
1483 A. STANDING RULES AND REPORTS.
1484 a. REPORTS. All reports of elective officers,
1485 councils and committees, except supplemental
1486 reports, shall be sent to each delegate and alternate
1487 delegate at least fourteen (14) days in advance of the
1488 opening of the annual session. All supplemental
1489 reports shall be distributed to each delegate before
1490 such report is considered by the House of Delegates.
1491 b. APPROPRIATION OF FUNDS. Any resolution
1492 proposing an appropriation of funds, except those
1493 relating to the annual budget, shall be referred to the
1494 Board of Trustees for a report at the same session on
1495 the availability of funds for the purpose specified.
1496 c. APPROVAL OF ANNUAL BUDGET. The
1497 proposed annual budget shall be submitted to the
1498 Board of Trustees to the members of the House of
1499 Delegates at least fourteen (14) days prior to the
1500 opening meeting of the annual session, shall be
1501 referred to a special reference committee on budget
1502 for hearings at the annual session and then shall be
1503 considered for approval as a special order of
1504 business at the second meeting of the House of
1505 Delegates. In the event the budget as submitted is
1506 not approved, all recommendations for changes shall
1507 be referred to the Board of Trustees to prepare and
1508 present a revised budget. This procedure shall be
1509 repeated until a budget for the ensuing fiscal year
1510 shall be adopted.
1511 d. APPROVAL OF THE DUES OF ACTIVE
1512 MEMBERS. The dues of active members of this
1513 Association shall be established by the House of
1514 Delegates as the last item of business at each annual

1515 session. The resolution to establish the dues of
1516 active members for the following year shall be
1517 proposed at each annual session by the Board of
1518 Trustees in conformity with Chapter VII, Section
1519 100F of these *Bylaws*, may be amended to any
1520 amount and/or reconsidered by the House of
1521 Delegates until a resolution establishing the dues of
1522 active members is adopted by a two-thirds (2/3)
1523 affirmative vote of the delegates present and
1524 voting.
1525 e. INTRODUCTION OF NEW BUSINESS. No new
1526 business shall be introduced into the House of
1527 Delegates less than 15 days prior to the opening of
1528 the annual session, unless submitted by a Trustee
1529 District. No new business shall be introduced into
1530 the House of Delegates at the last meeting of a
1531 session except when such new business is submitted
1532 by a Trustee District and is permitted to be
1533 introduced by a two-thirds (2/3) affirmative vote of
1534 the delegates present and voting. The motion
1535 introducing such new business shall not be
1536 debatable. Approval of such new business shall
1537 require a majority vote except new business
1538 introduced at the last meeting of a session that
1539 would require a bylaw amendment cannot be
1540 adopted at such last meeting. Reference committee
1541 recommendations shall not be deemed new business.
1542 f. RESOLUTIONS. A resolution becomes the
1543 property of the American Dental Association when
1544 submitted to the ADA House of Delegates for
1545 consideration. If adopted by the House of Delegates,
1546 this Association shall be the sole owner of the
1547 resolution which shall constitute "work made for
1548 hire" under copyright laws. This Association shall
1549 have the exclusive right to seek copyright
1550 registration for the resolution and to secure
1551 copyrights and retain ownership of such copyrights
1552 in its own name.

1553 B. ADDITIONAL RULES. The rules contained in the
1554 current edition of *The Standard Code of*
1555 *Parliamentary Procedure* by Alice Sturgis shall
1556 govern the deliberations of the House of Delegates in
1557 all cases in which they are applicable and not in
1558 conflict with the standing rules or these *Bylaws.*

1559 *Section 140.* COMMITTEES: The committees of the
1560 House of Delegates shall be:

1561 A. COMMITTEE ON CONSTITUTION AND
1562 BYLAWS.
1563 a. COMPOSITION. The Committee shall consist of
1564 not more than eight (8) nor less than six (6)
1565 members of the Council on Ethics, Bylaws and
1566 Judicial Affairs of this Association appointed by the
1567 President in consultation with the Speaker of the
1568 House of Delegates and the Council Chair.

b. DUTIES: Prior to the first meeting of each new session of the House of Delegates, the Committee shall review all resolutions proposing amendments to the *Constitution and Bylaws* and shall either approve the text of the amendment as written or shall redraft the resolution to accomplish the intent of the maker in the form currently used by the House of Delegates. The Committee shall file a report of its findings and actions at the first meeting of the House of Delegates and then shall adjourn. Thereafter until the House of Delegates adjourns *sine die,* the Speaker of the House and the Chair of the Council on Ethics, Bylaws and Judicial Affairs shall be responsible for reviewing any new resolutions or changes to resolutions that propose amendments to the *Constitution and Bylaws*, and they shall either approve the text of the amendment as written or shall redraft the resolution to accomplish the intent of the maker in the form currently used by the House of Delegates.

B. COMMITTEE ON CREDENTIALS, RULES AND ORDER.

a. COMPOSITION. The Committee, consisting of nine (9) members from the officially certified delegates and alternate delegates, shall be appointed by the President at least sixty (60) days in advance of each session.

b. DUTIES. It shall be the duty of the Committee (1) to record and report the roll call of the House of Delegates at each meeting; (2) to conduct a hearing on any contest regarding the certification of a delegate or alternate delegate and to report its recommendations to the House of Delegates; (3) to prepare a report, in consultation with the Speaker and Secretary of the House of Delegates, on matters relating to the order of business and special rules of order; (4) to consider all matters referred to it and report its recommendations to the House of Delegates.

C. RESOLUTIONS COMMITTEE.

a. COMPOSITION. The Resolutions Committee shall consist of the Speaker and the Secretary of the House of Delegates and the chairs of the reference committees authorized by Subsection D of this Chapter.

b. DUTIES. The duties of the Resolutions Committee shall be to examine resolutions after action by the reference committees and arrange a sequence for House action based upon the importance of the resolutions' subject matter.

D. REFERENCE COMMITTEES.

a. COMPOSITION. Reference committees, consisting of nine (9) members from the officially

1622 certified delegates and alternate delegates, shall be
1623 appointed by the President at least sixty (60) days in
1624 advance of each annual session.
1625 b. DUTIES. It shall be the duty of a reference
1626 committee to consider reports referred to it, to
1627 conduct open hearings and to report its
1628 recommendations to the House of Delegates.

1629 E. SPECIAL COMMITTEES. The Speaker, with the
1630 consent of the House of Delegates, shall appoint
1631 special committees to perform duties not otherwise
1632 assigned by these *Bylaws,* to serve until adjournment
1633 *sine die* of the session at which they were appointed.

1634 *Section 150.* ELECTION PROCEDURE: Elective
1635 officers, members of the Board of Trustees and
1636 members of councils and committees shall be elected
1637 by the House of Delegates except as otherwise
1638 provided in these *Bylaws.* Voting shall be by ballot,
1639 except that when there is only one candidate for an
1640 office, council or committee, such candidate may be
1641 declared elected by the Speaker. The Secretary shall
1642 provide facilities for voting. The polls shall be open
1643 for at least one and one-half (1-1/2) hours.
1644 a. When one is to be elected, and more than one has
1645 been nominated, the majority of the ballots cast shall
1646 elect. In the event no candidate receives a majority
1647 of the votes cast on the first ballot, the two (2)
1648 candidates receiving the greatest number of votes
1649 shall be balloted upon again.
1650 b. When more than one is to be elected, and the
1651 nominees exceed the number to be elected, the votes
1652 cast shall be non-cumulative, and the candidates
1653 receiving the greatest number of votes shall be
1654 elected.

## CHAPTER VI • CONFLICT OF INTEREST

1655 It is the policy of this Association that individuals
1656 who serve in elective, appointive or employed offices
1657 or positions do so in a representative or fiduciary
1658 capacity that requires loyalty to the Association. At
1659 all times while serving in such offices or
1660 positions, these individuals shall further the interests
1661 of the Association as a whole. In addition, they shall
1662 avoid:
1663 a. placing themselves in a position where personal or
1664 professional interests may conflict with their duty to
1665 this Association.
1666 b. using information learned through such office or
1667 position for personal gain or advantage.
1668 c. obtaining by a third party an improper gain or
1669 advantage.
1670 As a condition for selection, each nominee,
1671 candidate and applicant shall complete a conflict of
1672 interest statement as prescribed by the Board of
1673 Trustees, disclosing any situation which might be

CHAPTER VII • BOARD OF TRUSTEES

1674    construed as placing the individual in a position of
1675    having an interest that may conflict with his or her
1676    duty to the Association. Candidates for offices of
1677    President-elect, Second Vice President, Treasurer,
1678    Speaker of the House, nominees for office of trustee,
1679    and nominees to councils and commissions shall file
1680    such statements with the Secretary of the House of
1681    Delegates to be made available to the delegates prior
1682    to election.    As a condition of appointment,
1683    consultants, advisers and staff of Councils,
1684    Commissions and Special Committees, and each
1685    person nominated or seeking such positions, shall file
1686    conflict of interest statements with the executive
1687    director of this Association.
1688    While serving in any elective, appointive or
1689    employed office or position, the individual shall
1690    comply with the conflict of interest policy applicable
1691    to his or her office or position, shall complete and file
1692    a conflict of interest statement for each year of
1693    service, and shall promptly report any situation in
1694    which a potential conflict of interest may arise.
1695    The Board of Trustees shall approve any additional
1696    compliance activities that will implement the
1697    requirements of this chapter. The Board of Trustees
1698    shall render a final judgment on what constitutes a
1699    conflict of interest.

## CHAPTER VII • BOARD OF TRUSTEES

1700    *Section 10.* COMPOSITION: The Board of Trustees
1701    shall consist of one (1) trustee from each of the
1702    seventeen (17) trustee districts. Such seventeen (17)
1703    trustees, the President-elect and the two Vice
1704    Presidents shall constitute the voting membership of
1705    the Board of Trustees. In addition, the President, the
1706    Treasurer and the Executive Director of the
1707    Association, except as otherwise provided in the
1708    *Bylaws* shall be *ex officio* members of the Board
1709    without the right to vote.

1710    *Section 20.* QUALIFICATIONS: A trustee must be
1711    an active, life or retired member, in good standing, of
1712    this Association and an active, life, or retired member
1713    of one of the constituent societies of the trustee
1714    district which the trustee is elected to represent.
1715    Should the status of any trustee change in regard to
1716    the preceding qualifications during the trustee's term
1717    of office, that office shall be declared vacant by the
1718    President and the President shall fill such vacancy as
1719    provided in Chapter VII, Section 80, of these *Bylaws.*

1720    *Section 30.* TERM OF OFFICE: The term of office of
1721    a trustee shall be four (4) years. The tenure of a
1722    trustee shall be limited to one (1) term of four (4)
1723    years.

*Section 40.* NOMINATION:

A. SINGLE CONSTITUENT DISTRICT. In trustee districts consisting of a single constituent dental society, the trustee nomination procedures shall be determined by an elective process established by the constituent dental society which shall produce a single nominee for trustee. Until such time as the Speaker declares the nominee elected pursuant to Paragraph A of Section 50 of this Chapter, the nomination may be reconsidered by the duly constituted caucus of the trustee district during the appropriate annual session, provided that at no time shall more than one nominee be presented by the trustee district for election. The House of Delegates may vote to reject any such nominee and thereby compel the trustee district caucus to select a different nominee.

B. MULTIPLE CONSTITUENT DISTRICTS. In multiple constituent districts, the delegates from the constituent societies of the trustee district in which the term of the trustee is to terminate, shall hold a caucus to select a nominee or nominees for the office of trustee. Such caucus shall be called by the trustee whose term is about to expire, or by the trustee's designee. The notice of the time and place of such caucus shall be reported to the Secretary of the House.

At the caucus the delegates shall nominate one (1) or two (2) candidates for the office of trustee, whose name or names shall be presented to the House of Delegates in accordance with the following rules. An action taken at a duly constituted caucus of the trustee district to nominate or select a trustee may be reconsidered at a later caucus during the appropriate annual session.

a. A person receiving the unanimous vote of the delegates present and voting at the caucus shall be the only nominee presented by the district.

b. In the event that one (1) candidate receives a majority vote, one (1) or more of the delegates voting in the minority may select another nominee and the names of both nominees shall be presented to the House of Delegates as the nominees of that district.

c. The number of votes received by each nominee in the caucus shall be reported to the House of Delegates.

C. NOMINATING PROCEDURE. Candidates for the office of trustee shall be nominated from the floor of the House of Delegates by a simple declaratory statement, which may be followed by an acceptance speech not to exceed four (4) minutes by the candidate from the podium, according to the protocol established by the Speaker of the House of Delegates.

1778     Seconding a nomination is not permitted.

1779     *Section 50.* ELECTION: The trustee shall be elected
1780     by the House of Delegates according to the following
1781     rules:

1782     A. If there is only one (1) nominee from a trustee
1783     district, the Speaker shall declare such nominee
1784     elected.

1785     B. If there are two (2) nominees from a trustee
1786     district, the election shall be by ballot in accordance
1787     with Chapter V, Section 150. The nominee receiving
1788     the larger number of votes cast shall be declared
1789     elected. The method of election set forth in this
1790     paragraph shall not be used for any trustee district
1791     consisting of a single constituent dental society. A
1792     trustee district consisting of a single constituent
1793     dental society may present a single nominee to be
1794     elected pursuant to Paragraph A of this Section.

1795     *Section 60.* INSTALLATION: The trustee shall be
1796     installed by the President or by the President's
1797     designee.

1798     *Section 70.* REMOVAL FOR CAUSE: The House of
1799     Delegates may remove a trustee for cause in
1800     accordance with procedures established by the House
1801     of Delegates, which procedures shall provide for
1802     notice of the charges and an opportunity for the
1803     accused to be heard in his or her defense. A two-
1804     thirds (2/3) affirmative vote of the delegates present
1805     and voting is required to remove a trustee from office.
1806     If the House of Delegates elects to remove the trustee,
1807     that action shall create a vacancy on the Board of
1808     Trustees which shall be filled in accordance with
1809     Chapter VII, Section 80.

1810     *Section 80.* VACANCY: In the event of a vacancy in
1811     the office of trustee, an active, life or retired member
1812     may be appointed by the President to fill the
1813     unexpired term of the vacancy. The appointment shall
1814     be made by the President with the advice and consent
1815     of the former trustee's district. A trustee district may
1816     file rules with the Association's Executive Director
1817     setting forth how its nominee shall be chosen. In the
1818     event an appointment to fill the vacancy has not been
1819     made by the time of the next meeting of the House of
1820     Delegates following the occurrence of the vacancy,
1821     then a successor trustee shall be elected for the
1822     remainder of the unexpired term by the House of
1823     Delegates pursuant to the provisions of Chapter VII,
1824     Sections 40 and 50 of these *Bylaws.* If the term of the
1825     vacated trustee position has less than fifty percent
1826     (50%) of a full four-year term remaining at the time
1827     the successor trustee is appointed or elected, the
1828     successor trustee shall be eligible for election to a
1829     new, consecutive four-year term. If fifty percent
1830     (50%) or more of the vacated term remains to be

1831 served at the time of the appointment or election, the
1832 successor trustee shall not be eligible for another
1833 term.

1834 *Section 90.* POWERS:
1835 A. The Board of Trustees shall be the managing body
1836 of the Association, vested with full power to conduct
1837 all business of the Association, subject to the laws of
1838 the State of Illinois, the *Articles of Incorporation,* the
1839 *Constitution and Bylaws* and the mandates of the
1840 House of Delegates. The power of the Board of
1841 Trustees to act as the managing body of the
1842 Association shall not be construed as limiting the
1843 power of the House of Delegates to establish policy
1844 with respect to the governance of this Association in
1845 all its activities, except for areas expressly
1846 reserved in these *Bylaws* as powers and/or duties of
1847 the Board of Trustees, as the same may be amended
1848 by the House of Delegates from time to time in
1849 accordance with these *Bylaws.*

1850 B. It shall have the power to establish rules and
1851 regulations not inconsistent with these *Bylaws* to
1852 govern its organization and procedure.

1853 C. It shall have the power to direct the President to
1854 call a special session of the House of Delegates as
1855 provided in Chapter V, Section 80, of the *Bylaws.*

1856 D. It shall have full discretionary power to cause to be
1857 published in, or to be omitted from, any official
1858 publication of the Association any article in whole or
1859 in part.

1860 E. It shall have the power to establish *ad interim*
1861 policies when the House of Delegates is not in session
1862 and when such policies are essential to the
1863 management of the Association provided, however,
1864 that all such policies must be presented for review
1865 and consideration by the House of Delegates at its
1866 next session.

1867 F. It shall have the power to remove a council
1868 member for cause in accordance with procedures
1869 established by the Board of Trustees in its *Rules.*

1870 G. It shall have the power to elect honorary members.

1871 H. It shall have the power to appoint its members to
1872 committees that shall have the power to perform any
1873 duty that the Board of Trustees may lawfully
1874 delegate.

1875 I. It shall have the interim power to supervise,
1876 monitor and guide the activities of all councils and
1877 special committees in order to ensure the fulfillment
1878 of initiatives and directives assigned to each council
1879 or special committee by the House of Delegates or
1880 Board of Trustees subject to the requirement that all
1881 interim actions of the Board must be approved by the

1882 House of Delegates.

1883 J. In accordance with the laws of the State of Illinois,
1884 it shall have the power to transact its business by
1885 unanimous consent via mail ballot, including
1886 electronic mail; to authorize the councils,
1887 commissions and committees of this Association to
1888 transact their business by mail ballot; and to establish
1889 rules and procedures for itself and for councils,
1890 commissions and committees of this Association to
1891 govern the use of ballots circulated and returned by
1892 U.S. mail, overnight courier, facsimile transmission
1893 or electronic mail.

1894 K. It shall have the power to appoint agents and/or
1895 other representatives for the purpose of supervising,
1896 managing and otherwise conducting business under
1897 its direction and in accordance with these *Bylaws* and
1898 the laws of the State of Illinois. No such appointment
1899 shall relieve the Board of Trustees of its fiduciary
1900 duties as the managing body of the Association as
1901 provided in these *Bylaws*.

1902 *Section 100.* DUTIES: It shall be the duty of the
1903 Board of Trustees:

1904 A. To provide for the purchase, sale, mortgage,
1905 maintenance and supervision of the Headquarters
1906 Office and all other property or offices owned or
1907 operated by this Association.

1908 B. To appoint the Executive Director of the
1909 Association.

1910 C. To determine the date and place for convening
1911 each annual session and provide for the management
1912 and general arrangements for each annual session as
1913 provided in Chapter XV, Section 30.

1914 D. To cause to be bonded by a surety company the
1915 Treasurer, the Executive Director and employees of
1916 the Association entrusted with Association funds.

1917 E. To provide guidelines and directives to govern the
1918 Treasurer's custody, investment and disbursement of
1919 Association funds and other property as provided in
1920 Chapter VIII, Section 90F, of these *Bylaws*; and to
1921 cause all accounts of the Association to be audited by
1922 a certified public accountant at least once a year.

1923 F. To prepare a budget for carrying on the activities
1924 of the Association for each ensuing fiscal year, and
1925 present for action by each House of Delegates a
1926 resolution setting forth the proposed dues of active
1927 members for the following year. Notice of such a
1928 resolution shall be sent by a certifiable method of
1929 delivery to each constituent society not less than
1930 ninety (90) days before such session to permit
1931 prompt, adequate notice by each constituent society to
1932 its delegates and alternate delegates to the House of

1933 Delegates of this Association, and shall be announced
1934 to the general membership in an official publication
1935 of the Association at least sixty (60) days in advance
1936 of the annual session.

1937 G. To establish rules to govern its procedures in
1938 serving as the nominating committee for the office of
1939 Treasurer, and as provided in Chapter VIII of these
1940 *Bylaws,* to submit in printed form the name(s) and
1941 curriculum vitae of the Board's nominee(s) to the
1942 House of Delegates in the first mailing to the House
1943 in the year that the incumbent Treasurer's term is
1944 about to end.

1945 H. To submit to the House of Delegates at the
1946 opening meeting of the annual session, in printed
1947 form, nominations for membership to the councils,
1948 except as otherwise provided in these *Bylaws.*

1949 I. To appoint annually the chair of each council,
1950 except as otherwise provided in these *Bylaws,* and to
1951 act upon council, commission, and bureau
1952 nominations for consultants and advisers except as
1953 otherwise provided in these *Bylaws.*

1954 J. To provide interim guidance and supervision to all
1955 councils and special committees in order to ensure the
1956 fulfillment of initiatives and directives assigned to
1957 each council or special committee by the House of
1958 Delegates or Board of Trustees.

1959 K. To review the reports of councils and special
1960 committees of the Association and to make
1961 recommendations concerning such reports to the
1962 House of Delegates.

1963 L. To act upon applications for active membership
1964 from applicants practicing in dependencies of the
1965 United States in which no constituent society exists or
1966 in federal dental services.

1967 M. To submit an annual report to the House of
1968 Delegates of its activities and those of the Treasurer
1969 and Executive Director.

1970 N. To review the delegate allocations to the House of
1971 Delegates as provided in Chapter V, Section 10C, of
1972 these *Bylaws.*

1973 O. To elect associate members.

1974 P. To establish other funds as divisions of the General
1975 Fund in accordance with the provisions of Chapter
1976 XVII, Section 30.

1977 Q. To appoint special committees of the Association
1978 in accordance with Chapter XI, Section 10 of these
1979 *Bylaws.*

1980 R. To perform such other duties as are prescribed by
1981 these *Bylaws.*

Case 1:08-cv-05062-LTS-MHD   Document 20-9   Filed 07/30/2008   Page 4 of 41

1982  S. To establish such administrative agencies of this
1983  Association as may be necessary to implement the
1984  Association's programs, to assign the duties of such
1985  agencies through the Executive Director of the
1986  Association under whose jurisdiction each shall
1987  operate, and to require reports of such agencies
1988  through the same channels.

1989  *Section 110.* SESSIONS:

1990  A. REGULAR SESSIONS. The Board of Trustees
1991  shall hold a minimum of three regular sessions each
1992  year. The number of actual regular meetings to be
1993  held in excess of three for the ensuing year shall be
1994  determined in advance by the Board of Trustees.

1995  B. SPECIAL SESSIONS. Special sessions of the
1996  Board of Trustees may be called at any time either by
1997  the President or at the request of five voting members
1998  of the Board, provided notice is given to each
1999  member in advance of the session.

2000  C. PLACE OF MEETINGS: Regular or special
2001  meetings may be held in a single geographic location
2002  within or outside the state of Illinois or from multiple
2003  remote locations through the use of a conference
2004  telephone or other communications equipment by
2005  means of which all members can communicate with
2006  each other; provided, however, special meetings held
2007  through the use of a conference telephone or other
2008  communications equipment may be called by the
2009  President or at the request of five voting members of
2010  the Board of Trustees for matters of the Association
2011  requiring immediate attention. Such meetings shall be
2012  conducted in accordance with rules and procedures
2013  established by the Board of Trustees.

2014  *Section 120.* QUORUM: A majority of the voting
2015  members of the Board of Trustees shall constitute a
2016  quorum.

2017  *Section 130.* OFFICERS:

2018  A. CHAIR AND SECRETARY. The officers of the
2019  Board of Trustees shall be the President of the
2020  Association who shall be the Chair, and the Executive
2021  Director of the Association who shall be the
2022  Secretary.
2023  In the absence of the President, the office of Chair
2024  shall be filled by the President-elect and, in his or her
2025  absence, by the First or Second Vice President in that
2026  order and, in their absence, a voting member of the
2027  Board shall be elected Chair *pro tem.*
2028  In the absence of the Secretary, the Chair shall
2029  appoint a Secretary *pro tem.*

2030  B. DUTIES.
2031  a. CHAIR. The Chair shall preside at all meetings of
2032  the Board of Trustees. The Chair shall cast the
2033  deciding vote in case of a tie.

b. SECRETARY. The Secretary shall serve as the recording officer of the Board of Trustees and as the custodian of its records. The Secretary shall cause a factual record of the proceedings to be published as the official transactions of the Board.

*Section 140.* COMMITTEES: The Board of Trustees shall have a standing Committee on the New Dentist. The Committee shall consist of one (1) member from each trustee district who are active members selected by the Board of Trustees and confirmed by the House of Delegates. Members of the Committee shall have received their D.D.S. or D.M.D. degree less than ten (10) years before the time of selection. The chair of the Committee shall be appointed annually by the Board of Trustees.

Members of the Committee shall serve one (1) term of four (4) years and shall not be eligible for appointment to a council or commission for a period of two (2) years after completing service on the Committee. However, the Board of Trustees shall stagger the terms of the members of the Committee in a manner so four (4) members will complete their terms each year, except every fourth year when five (5) members shall complete their terms.

The Board of Trustees shall have the power to remove a Committee member for cause in accordance with procedures established by the Board in its *Rules*. In the event of any vacancy on the Committee, the Board of Trustees shall select a member of this Association possessing the same qualifications as established by these *Bylaws* for the previous member, to fill such vacancy for the remainder of the unexpired term. If the term of the vacated Committee position has less than fifty percent (50%) of a full four-year term remaining at the time the successor member is selected, the successor member shall be eligible for selection to a new, consecutive four-year term. If fifty percent (50%) or more of the vacated term remains to be served at the time of selection, the successor member shall not be eligible for another term.

The Committee's work shall be assigned by the Board of Trustees, and reports and proposals formulated by the Committee shall be referred to the Board for decision and action. The duties of the Committee shall be:

a. To provide the Board of Trustees with expertise on issues affecting new dentists less than ten years following graduation from dental school.

b. To advocate to the Board of Trustees and other agencies of this Association the perspectives of the new dentist in the development of policies, programs, benefits and services of the Association.

c. To identify the needs and concerns of new graduate dentists and make recommendations for

CHAPTER VII • BOARD OF TRUSTEES
CHAPTER VIII • ELECTIVE OFFICERS

2089 any programs to assist with their transition to
2090 practice.
2091 d. To stimulate the increased involvement and active
2092 participation of new dentists in organized dentistry.
2093 e. To serve as *ex officio* members, without the power
2094 to vote, of councils and commissions of this
2095 Association on issues affecting new dentists; these
2096 appointments will be recommended by the
2097 Committee and assigned by the Board of Trustees.
2098 f. To enhance communications with constituent and
2099 component new/young dentist networks.

## CHAPTER VIII • ELECTIVE OFFICERS

2100 *Section 10.* TITLE: The elective officers of this
2101 Association shall be President, President-elect, First
2102 Vice President, Second Vice President, Treasurer and
2103 Speaker of the House of Delegates, as provided in
2104 Article V of the *Constitution.*

2105 *Section 20.* ELIGIBILITY: Only an active, life or
2106 retired member, in good standing, of this Association
2107 shall be eligible to serve as an elective officer.
2108 Trustees and elective officers may not apply for the
2109 office of Treasurer while serving in any of those
2110 offices, except that the Treasurer may apply for a
2111 second term pursuant to Chapter VIII, Section 50 of
2112 these *Bylaws.*

2113 *Section 30.* NOMINATIONS:

2114 A. Nominations for the offices of President-elect,
2115 Second Vice President and Speaker of the House shall
2116 be made in accordance with the order of business.
2117 Candidates for these elective offices shall be
2118 nominated from the floor of the House of Delegates
2119 by a simple declaratory statement, which may be
2120 followed by an acceptance speech not to exceed four
2121 (4) minutes by the candidate from the podium,
2122 according to the protocol established by the Speaker
2123 of the House of Delegates. Seconding a nomination is
2124 not permitted.

2125 B. Nominations for the office of Treasurer shall be
2126 made in accordance with the order of business. If
2127 there is only one (1) eligible candidate for the office
2128 of Treasurer, the Board of Trustees shall nominate
2129 that individual from the floor of the House of
2130 Delegates by a simple declaratory statement, which
2131 may be followed by an acceptance speech not to
2132 exceed four (4) minutes by the candidate from the
2133 podium, according to the protocol established by the
2134 Speaker of the House of Delegates. If there are two
2135 (2) or more eligible candidates for the office of
2136 Treasurer, the Board of Trustees shall nominate at
2137 least two (2) and not more than three (3) candidates
2138 from the floor of the House of Delegates by a simple
2139 declaratory statement for each nominee, which may

2140 be followed by an acceptance speech not to exceed
2141 four (4) minutes by the candidate from the podium,
2142 according to the protocol established by the Speaker
2143 of the House of Delegates. Seconding a nomination is
2144 not permitted.

2145 *Section 40.* ELECTIONS: The elective officers shall
2146 be elected in accordance with Chapter V, Section 150.

2147 *Section 50.* TERM OF OFFICE: The President,
2148 President-elect, First Vice President, Second Vice
2149 President and Speaker of the House of Delegates shall
2150 serve for a term of one (1) year, except as otherwise
2151 provided in this chapter of the *Bylaws*, or until their
2152 successors are elected and installed. The term of
2153 office of the Treasurer shall be three (3) years, or
2154 until a successor is elected and installed. The
2155 Treasurer shall be limited to two (2) consecutive
2156 terms of three (3) years each.

2157 *Section 60.* INSTALLATION: The elective officers
2158 shall be installed at the last meeting of the annual
2159 session of the House of Delegates. The President-
2160 elect shall be installed as President at the next annual
2161 session of the House following election. The Second
2162 Vice President shall be installed as First Vice
2163 President at the next annual session of the House
2164 following election.

2165 *Section 70.* REMOVAL FOR CAUSE: The House of
2166 Delegates may remove an elective officer for cause in
2167 accordance with procedures established by the House
2168 of Delegates, which shall include notice of the
2169 charges and an opportunity for the accused to be
2170 heard in his or her defense. A two-thirds (2/3)
2171 affirmative vote of the delegates present and voting is
2172 required to remove an elective officer from office. If
2173 the House of Delegates elects to remove the elective
2174 officer, that action shall create a vacancy which shall
2175 be filled in accordance with Chapter VIII, Section 80.

2176 *Section 80.* VACANCIES:

2177 A. VACANCY OF ELECTIVE OFFICE: In the event
2178 the office of President becomes vacant, the President-
2179 elect shall become President for the unexpired portion
2180 of the term. In the event the office of President
2181 becomes vacant for the second time in the same term
2182 or at a time when the office of President-elect is also
2183 vacant, the First Vice President shall become
2184 President for the unexpired portion of the term. In the
2185 event the office of First Vice President becomes
2186 vacant, the Second Vice President shall become the
2187 First Vice President for the unexpired portion of the
2188 term. A vacancy in the office of the Second Vice
2189 President shall be filled by a majority vote of the
2190 Board of Trustees. In the event of a vacancy in the
2191 office of Speaker of the House of Delegates, the

2192 President, with approval of the Board of Trustees,
2193 shall appoint a Speaker *pro tem*. In the event
2194 the office of President-elect becomes vacant by
2195 reason other than the President-elect succeeding to
2196 the office of the President earlier than the next annual
2197 session, the office of President for the ensuing year
2198 shall be filled at the next annual session of the House
2199 of Delegates in the same manner as that provided for
2200 the nomination and election of elective officers,
2201 except that the ballot shall read "President for the
2202 Ensuing Year." A vacancy in the office of Treasurer
2203 shall be filled by a majority vote of the Board of
2204 Trustees until the process of inviting applications,
2205 screening and nominating candidates and electing a
2206 new Treasurer has been completed by the Board of
2207 Trustees and the House of Delegates. The Treasurer
2208 *pro tem* shall be eligible for election to a new
2209 consecutive three (3) year term.  The newly elected
2210 Treasurer shall be limited to two (2) consecutive
2211 terms of three (3) years each.

2212 B.    TEMPORARY  INCAPACITY   OF   THE
2213 PRESIDENT: Whenever the President notifies the
2214 Board of Trustees that he or she is unable to discharge
2215 the duties of the office of President due to temporary
2216 incapacity, the President-elect shall assume the duties
2217 of the office of President, as Acting President, until
2218 the President notifies the Board of Trustees that he or
2219 she is prepared to resume the duties of the office of
2220 President.  Whenever  the  voting  members  of  the
2221 Board of Trustees of this Association determine by
2222 majority vote that the President is unable to discharge
2223 the duties of his or her office due to temporary
2224 incapacity, the President-elect shall assume the duties
2225 of the office of President, as Acting President, until
2226 the President satisfies the voting members of the
2227 Board of Trustees that he or she is prepared to resume
2228 the duties of the office of President.

2229 *Section 90.* DUTIES:

2230 A. PRESIDENT. It shall be the duty of the President:
2231 a. To serve as the primary official representative of
2232 this Association in its contacts with governmental,
2233 civic, business and professional organizations for
2234 the purpose of advancing the objectives and policies
2235 of this Association.
2236 b. To serve as Chair and *ex officio* member of the
2237 Board of Trustees and to perform such duties as are
2238 provided in Chapters V and VII of these *Bylaws*.
2239 c. To call special sessions of the House of Delegates
2240 and the Board of Trustees as provided in Chapters V
2241 and VII of these *Bylaws*.
2242 d. To appoint the members of all committees of the
2243 House of Delegates except as otherwise provided in
2244 these *Bylaws*.
2245 e. To fill vacancies in the office of trustee as

2246 provided in Chapter VII, Section 80, of these *Bylaws*
2247 and to fill other vacancies in accordance with these
2248 *Bylaws.*
2249 f. To submit an annual report to the House of
2250 Delegates.
2251 g. To perform such other duties as may be provided
2252 in these *Bylaws.*

2253 B. PRESIDENT-ELECT. It shall be the duty of the
2254 President-elect:
2255 a. To assist the President as requested.
2256 b. To serve as an *ex officio* member of the House of
2257 Delegates without the right to vote.
2258 c. To serve as an ex *officio* member of the Board of
2259 Trustees.
2260 d. To succeed to the office of President at the next
2261 annual session of the House of Delegates following
2262 election as President-elect.
2263 e. To succeed immediately to the office of President
2264 in the event of vacancy not only for the unexpired
2265 term but also for the succeeding year.

2266 C. FIRST VICE PRESIDENT. It shall be the duty of
2267 the First Vice President:
2268 a. To assist the President as requested.
2269 b. To serve as an *ex officio* member of the House of
2270 Delegates without the right to vote.
2271 c. To serve as an *ex officio* member of the Board of
2272 Trustees.
2273 d. To succeed to the office of President, as provided
2274 in this chapter of the *Bylaws.*

2275 D. SECOND VICE PRESIDENT. It shall be the duty
2276 of the Second Vice President:
2277 a. To assist the President as requested.
2278 b. To serve as an *ex officio* member of the House of
2279 Delegates without the right to vote.
2280 c. To serve as an *ex officio* member of the Board of
2281 Trustees.
2282 d. To succeed to the office of First Vice President at
2283 the next annual session of the House of Delegates
2284 following election as Second Vice President.
2285 e. To succeed immediately to the office of First Vice
2286 President in the event of vacancy not only for the
2287 unexpired term but also for the succeeding term.

2288 E. SPEAKER OF THE HOUSE OF DELEGATES.
2289 The Speaker shall preside at the meetings of the
2290 House of Delegates and shall perform such duties as
2291 custom and parliamentary procedure require. The
2292 Speaker shall not be a member of the Board of
2293 Trustees.

2294 F. TREASURER. It shall be the duty of the
2295 Treasurer:
2296 a. To serve as custodian of all monies, securities and
2297 deeds belonging to the Association which may come
2298 into the Treasurer's possession.

2299    b. To hold, invest and disburse all monies, securities
2300    and deeds, subject to the direction of the Board of
2301    Trustees.
2302    c. To design a budgetary process in concert with the
2303    Board of Trustees.
2304    d. To oversee Association finances and budget
2305    development.
2306    e. To serve as the principal resource person for the
2307    budget reference committee in the House of
2308    Delegates and to help interpret the Association's
2309    finances for the membership.
2310    f. To review all financial information and data and
2311    report on financial matters to the Board of Trustees
2312    on a quarterly basis.
2313    g. To review travel reimbursement for the elective
2314    officers, trustees and Executive Director.
2315    h. To perform such other duties as may be provided
2316    in these *Bylaws*.

## CHAPTER IX • APPOINTIVE OFFICER

2317    *Section 10*. TITLE: The appointive officer of this
2318    Association shall be an Executive Director, as
2319    provided in Article V of the *Constitution*.

2320    *Section 20*. APPOINTMENTS: While any active, life
2321    or retired member in good standing may be appointed
2322    to the office of Executive Director, the Board of
2323    Trustees may appoint a qualified individual who is
2324    not eligible for membership in this Association.

2325    *Section 30*. TERM OF OFFICE AND SALARY: The
2326    Board of Trustees shall determine the salary, if any,
2327    and the tenure of the Executive Director, which shall
2328    not exceed three (3) years. The completion of the full
2329    term of any appointment shall be at the discretion of
2330    the Board of Trustees.

2331    *Section 40*. DUTIES: The Executive Director shall be
2332    the principal agent of the Board of Trustees and
2333    elective officers. As agent and under the direction of
2334    the Board of Trustees and elective officers, the
2335    Executive Director shall be the chief operating officer
2336    of this Association and all its branches. In this
2337    capacity, the Executive Director shall (a) preserve and
2338    protect the *Constitution and Bylaws* and the standing
2339    rules of this Association; (b) facilitate the activities of
2340    the officers and trustees of this Association in
2341    carrying out their respective administrative
2342    responsibilities under these *Bylaws*; (c) engage the
2343    staff of this Association and direct and coordinate
2344    their activities; (d) provide leadership in the
2345    formulation and recommendation of new
2346    policies to the Board of Trustees and elective officers;
2347    (e) oversee the management of Association policies
2348    that have been adopted by the Board of Trustees
2349    and/or the House of Delegates; (f) assist the Board of

2350 Trustees in supervising, monitoring and providing
2351 guidance to all Association councils, commissions
2352 and committees in regard to their administrative
2353 functions and specific assignments, and to
2354 systematize the preparation of their reports, and to
2355 encourage the exchange of information concerning
2356 mutual interests and issues between councils,
2357 committees and commissions; (g) maintain effective
2358 internal and external relationships through frequent
2359 and comprehensive communication with all officers
2360 and trustees of this Association, the leadership of
2361 related dental organizations, and representatives from
2362 other leading public and private organizations that
2363 interact with this Association; and (h) perform such
2364 other duties as are prescribed by these *Bylaws*.

## CHAPTER X • COUNCILS

2365 *Section 10.* NAME: The councils of this Association
2366 shall be:

2367 Council on Access, Prevention and Interprofessional
2368   Relations
2369 Council on ADA Sessions
2370 Council on Communications
2371 Council on Dental Benefit Programs
2372 Council on Dental Education and Licensure
2373 Council on Dental Practice
2374 Council on Ethics, Bylaws and Judicial Affairs
2375 Council on Government Affairs
2376 Council on Members Insurance and Retirement
2377   Programs
2378 Council on Membership
2379 Council on Scientific Affairs

2380 *Section 20.* MEMBERS, SELECTIONS,
2381 NOMINATIONS AND ELECTIONS:

2382 A. The composition of the councils of this
2383 Association shall be as follows: In addition, a council
2384 may request an additional member who shall be a
2385 nonpracticing dentist member appointed in
2386 accordance with Chapter I, Section 20Db of these
2387 *Bylaws*. Council on Access, Prevention and
2388 Interprofessional Relations shall be composed of one
2389 (1) member from each trustee district whose terms of
2390 office shall be staggered in such a manner that four
2391 (4) members will complete their terms each year
2392 except every fourth year when five (5) members shall
2393 complete their terms. In addition, there shall be one
2394 (1) member who is a physician and one (1) member
2395 who is a health care facility administrator nominated
2396 by the Board of Trustees.

2397 Council on ADA Sessions shall be composed of one
2398 (1) member from each trustee district whose terms of
2399 office shall be staggered in such a manner that four

2400 (4) members will complete their terms each year
2401 except every fourth year when five (5) members shall
2402 complete their terms. In addition, the General Chair
2403 of the Local Arrangements Committee for the current
2404 year and the General Chair-elect for the succeeding
2405 year shall serve as *ex officio* members with the right
2406 to vote and shall not be eligible to serve as Council
2407 Chair.

2408 Council on Communications shall be composed of
2409 one (1) member from each trustee district whose
2410 terms of office shall be staggered in such a manner
2411 that four (4) members will complete their terms each
2412 year except every fourth year when five (5) members
2413 shall complete their terms.

2414 Council on Dental Benefit Programs shall be
2415 composed of one (1) member from each trustee
2416 district whose terms of office shall be staggered in
2417 such a manner that four (4) members will complete
2418 their terms each year except every fourth year when
2419 five (5) members shall complete their terms.

2420 Council on Dental Education and Licensure shall be
2421 composed of sixteen (16) members selected as
2422 follows:
2423 a. Nominations and Selection.
2424 (1) Eight (8) members shall be nominated by the
2425 Board of Trustees on a rotational system by trustee
2426 district from the active, life or retired members of
2427 this Association, no one of whom shall be a full-
2428 time member of a faculty of a school of dentistry or
2429 a member of a state board of dental examiners or
2430 jurisdictional dental licensing agency. A person
2431 shall be considered to be a full-time member of a
2432 faculty if he or she works for the school of dentistry
2433 more than two (2) days or sixteen (16) hours per
2434 week.
2435 (2) Four (4) members who are active, life or retired
2436 members of this Association shall be selected by the
2437 American Association of Dental Examiners from the
2438 active membership of that body, no one of whom
2439 shall be a member of a faculty of a school of
2440 dentistry.
2441 (3) Four (4) members who are active, life or retired
2442 members of this Association shall be selected by the
2443 American Dental Education Association from its
2444 active membership. These members shall hold
2445 positions of professorial rank in dental schools
2446 accredited by the Commission on Dental
2447 Accreditation and shall not be members of any state
2448 board of dental examiners or jurisdictional dental
2449 licensing agency.
2450 b. Election. The eight (8) members of the Council
2451 on Dental Education and Licensure nominated by
2452 the Board of Trustees shall be elected by the House
2453 of Delegates from nominees selected in accordance

2454  with this section.

2455  c. Committees. The Council on Dental Education
2456  and Licensure shall establish a standing Committee
2457  on Dental Education and Educational Measurements
2458  and a standing Committee on Licensure, each
2459  consisting of eight (8) members selected by the
2460  Council. The Council may establish additional
2461  committees when they are deemed essential to carry
2462  out the duties of this Council.

2463  Council on Dental Practice shall be composed of one
2464  (1) member from each trustee district whose terms of
2465  office shall be staggered in such a manner that four
2466  (4) members will complete their terms each year
2467  except every fourth year when five (5) members shall
2468  complete their terms.

2469  Council on Ethics, Bylaws and Judicial Affairs shall
2470  be composed of one (1) member from each trustee
2471  district whose terms of office shall be staggered in
2472  such a manner that four (4) members will complete
2473  their terms each year except every fourth year when
2474  five (5) members shall complete their terms.

2475  Council on Government Affairs shall be composed of
2476  one (1) member from each trustee district whose
2477  terms of office shall be staggered in such a manner
2478  that four (4) members will complete their terms each
2479  year except every fourth year when five (5) members
2480  shall complete their terms. In addition, the chair of
2481  the political action committee shall be an *ex officio*
2482  member of the Council without the power to vote.
2483  Consideration shall be given to a candidate's
2484  experience in the military or other federal dental
2485  services. Members of the Council shall not be in the
2486  full-time employ of the federal government.
2487  Individuals called to active duty from the military
2488  reserves or national guard forces, providing such
2489  active duty has not been requested by the individual,
2490  shall not be considered to be in the full-time employ
2491  of the federal government.

2492  Council on Members Insurance and Retirement
2493  Programs shall be composed of one (1) member from
2494  each trustee district whose terms of office shall be
2495  staggered in such a manner that four (4) members will
2496  complete their terms each year except every fourth
2497  year when five (5) members shall complete their
2498  terms.

2499  Council on Membership shall be composed of one (1)
2500  member from each trustee district whose terms of
2501  office shall be staggered in such a manner that four
2502  (4) members will complete their terms each year
2503  except every fourth year when five (5) members shall
2504  complete their terms.

2505  Council on Scientific Affairs shall be composed of
2506  sixteen (16) members who shall be selected from

2507 nominations open to all trustee districts, and the
2508 current recipient of the Gold Medal Award for
2509 Excellence in Dental Research.

2510 B. Nominations for all councils shall be made by the
2511 Board of Trustees except as otherwise provided in
2512 these *Bylaws*. The Board of Trustees shall adhere to
2513 the systems of nominations provided in Chapter X,
2514 Section 20A of these *Bylaws*\*. The House of
2515 Delegates may make additional nominations pursuant
2516 to the systems for council nominations provided in
2517 Chapter X, Section 20A of these *Bylaws*. The elective
2518 and appointive officers and the trustees of this
2519 Association shall not serve as members of councils.
2520 Members of councils shall be elected by the House of
2521 Delegates in accordance with Chapter V, Section 150
2522 except as otherwise provided in these *Bylaws*.

2523 C. REMOVAL FOR CAUSE. The Board of Trustees
2524 may remove a council member for cause in
2525 accordance with procedures established by the Board
2526 of Trustees, which procedures shall provide for notice
2527 of the charges, including allegations of the conduct
2528 purported to constitute each violation, and a decision
2529 in writing which shall specify the findings of fact
2530 which substantiate any and all of the charges, and that
2531 prior to issuance of the decision of the Board of
2532 Trustees, no council member shall be excused from
2533 attending any meeting of a council unless there is an
2534 opportunity to be heard or compelling reasons exist
2535 which are specified in writing by the Board of
2536 Trustees.

2537 *Section 30.* ELIGIBILITY:

2538 A. All members of councils must be active, life,
2539 retired or nonpracticing dentist members in good
2540 standing of this Association except as otherwise
2541 provided in these *Bylaws*.

2542 B. No member of a council may serve concurrently as
2543 a member of another council or commission.

---

\* In order to establish the required pattern of four,
four, four and five members respectively retiring from
councils and commissions each year, members of
councils and commissions from the new 5th and 17th
districts who are in office at the time this footnote
becomes effective shall finish their terms in
accordance with their scheduled term completion
dates. Councils and commissions that have incumbent
members from the new 5th district shall add a new
member from the 17th district to a full four-year term.
Councils and commissions that have incumbent
members from the new 17th district shall add a new
member from the new 5th district to a full four-year
term.

2544 C. A member of the Council on Dental Education and
2545 Licensure who was selected by the American
2546 Association of Dental Examiners and who is no
2547 longer an active member of the American Association
2548 of Dental Examiners, may continue as a member of
2549 the Council for the balance of that member's term.

2550 D. When a member of the Council on Dental
2551 Education and Licensure who was selected by the
2552 American Dental Education Association, shall cease
2553 to be a member of the faculty of a member school of
2554 that Association, such membership on either council
2555 shall terminate, and the President of the Association
2556 shall declare the position vacant.

2557 E. To be eligible to serve on the Council on Scientific
2558 Affairs, the current recipient of the Gold Medal
2559 Award for Excellence in Dental Research shall be an
2560 active, life, retired or nonpracticing dentist* member
2561 in good standing of this Association if the current
2562 recipient qualifies for such membership.

2563 *Section 40.* CHAIRS: One member of each council
2564 shall be appointed annually by the Board of Trustees
2565 to serve as chair with exception of the Council on
2566 Dental Education and Licensure. The Chair of the
2567 Council on Dental Education and Licensure shall be
2568 appointed from nominations submitted by the
2569 Council.

2570 *Section 50.* CONSULTANTS, ADVISERS AND
2571 STAFF:

2572 A. CONSULTANTS AND ADVISERS. Each council
2573 shall have the authority to nominate consultants and
2574 advisers in conformity with rules and regulations
2575 established by the Board of Trustees except as
2576 otherwise provided in these *Bylaws.*

2577 B. STAFF. The Executive Director shall employ the
2578 staff of councils, in the event they are employees, and
2579 shall select the titles for council staff positions.

2580 *Section 60.* TERM OF OFFICE: The term of office of
2581 members of councils shall be four (4) years except as
2582 otherwise provided in these *Bylaws.* The tenure of a
2583 member of a council shall be limited to one (1) term
2584 of four (4) years except as otherwise provided in
2585 these *Bylaws.* A member shall not be eligible for
2586 appointment to another council or commission for a
2587 period of two (2) years after completing a previous
2588 council appointment. The physician and the health

---

* The eligibility requirement for nonpracticing dentist
membership shall take effect upon completion of the
2006 Gold Medal Award for Excellence in Dental
Research recipient's term on the Council on Scientific
Affairs.

2589  care facility administrator, nominated by the Board of
2590  Trustees for membership on the Council on Access,
2591  Prevention and Interprofessional Relations, shall be
2592  elected for a one (1) year term; however, such
2593  member shall not be limited as to the number of
2594  consecutive one (1) year terms that he or she may
2595  serve. The current recipient of the Gold Medal Award
2596  for Excellence in Dental Research shall serve on the
2597  Council on Scientific Affairs until the award is
2598  bestowed on the next honoree.

2599  *Section 70.* VACANCY: In the event of a vacancy in
2600  the membership of any council, the President shall
2601  appoint a member of the Association possessing the
2602  same qualifications as established by these *Bylaws* for
2603  the previous member, to fill such vacancy until a
2604  successor is elected by the next House of Delegates
2605  for the remainder of the unexpired term. In the event
2606  such vacancy involves the chair of the council, the
2607  President shall have the power to appoint an *ad*
2608  *interim* chair. In the event it is the current recipient of
2609  the Gold Medal Award for Excellence in Dental
2610  Research who cannot serve on the Council on
2611  Scientific Affairs, the President, in consultation with
2612  the Board of Trustees, shall have the power to appoint
2613  a prominent research scientist who shall serve until
2614  the award is bestowed on the next honoree.

2615  If the term of the vacated council position has less
2616  than fifty percent (50%) of a full four-year term
2617  remaining at the time the successor member is
2618  appointed or elected, the successor member shall be
2619  eligible for election to a new, consecutive four-year
2620  term. If fifty percent (50%) or more of the vacated
2621  term remains to be served at the time of the
2622  appointment or election, the successor member shall
2623  not be eligible for another term.

2624  *Section 80.* MEETINGS OF COUNCILS. Each
2625  council shall hold at least one regular meeting
2626  annually, provided that funds are available in the
2627  budget for that purpose and unless otherwise directed
2628  by the Board of Trustees. Meetings may be held in
2629  the Headquarters Building, the Washington Office or
2630  from multiple remote locations through the use of a
2631  conference telephone or other communications
2632  equipment by means of which all members can
2633  communicate with each other. Such meetings shall be
2634  conducted in accordance with rules and procedures
2635  established by the Board of Trustees.

2636  *Section 90.* QUORUM: Except as otherwise provided
2637  in these *Bylaws*, a majority of the members of any
2638  council shall constitute a quorum.

2639  *Section 100.* PRIVILEGE OF THE FLOOR: Chairs
2640  and members of councils who are not members of the
2641  House of Delegates shall have the right to participate
2642  in the debate on their respective reports but shall not

2643  have the right to vote.

2644  *Section 110.* ANNUAL REPORT AND BUDGET:

2645  A. ANNUAL REPORT. Each council shall submit,
2646  through the Executive Director, an annual report to
2647  the House of Delegates and a copy thereof to the
2648  Board of Trustees.

2649  B. PROPOSED BUDGET. Each council shall submit
2650  to the Board of Trustees, through the Executive
2651  Director, a proposed itemized budget for the ensuing
2652  fiscal year.

2653  *Section 120.* DUTIES:

2654  A. COUNCIL ON ACCESS, PREVENTION AND
2655  INTERPROFESSIONAL RELATIONS. The duties
2656  of the Council shall be:
2657  a.  To foster improvement in the health of the public
2658  in matters of access to care, prevention of disease and
2659  interprofessional relations by appropriate programs.
2660  b.  To recommend policies and formulate programs
2661  relating to community oral health, including access to
2662  care, oral health planning, dental health personnel
2663  resources, preventive dentistry, fluoridation and
2664  nutrition issues.
2665  c.  To evaluate for the Association trends in dental
2666  public health and access to care that enhance oral
2667  health on a community level, including public/private
2668  partnerships, tobacco use prevention, volunteerism,
2669  oral cancer prevention and community caries
2670  prevention.
2671  d.  To assist constituent and component societies,
2672  public health agencies and others in the management
2673  and coordination of local resources or programs for
2674  access to care, preventive dentistry and other
2675  community health programs.
2676  e.  To promote the Association's position and
2677  maintain liaison with oral health agencies and special
2678  interest organizations regarding access to care,
2679  community oral health and dental health personnel
2680  issues.
2681  f.  To serve as liaison for the Association with The
2682  Joint Commission and with corporate members  of
2683  The Joint Commission and other national health care
2684  organizations.
2685  g.  To recommend policy on issues pertaining to the
2686  relationship of dentistry to medicine, including
2687  interdisciplinary patient management, dentist-
2688  physician relations, the oral health needs of medically
2689  compromised patients and the role of physical
2690  evaluation and medical risk management in dental
2691  practice.
2692  h.  To conduct activities to improve the health
2693  outcomes of patients requiring cooperative dental-
2694  medical management.
2695  i.  To conduct activities to increase patient access to

2696 dental care, including assessing public and private
2697 dental access programs and advising other
2698 Association agencies charged with recommending
2699 policy and legislation on access to care.
2700 j. To conduct activities to increase access to the
2701 benefits of cooperative dental-medical management
2702 in hospitals, ambulatory care centers, long-term care
2703 facilities and other interdisciplinary health care
2704 settings.
2705 k. To foster dentistry's role in the hospital, including
2706 active medical staff membership and clinical
2707 privileges.
2708 l. To advise other Association agencies charged with
2709 communications, scientific, legislative and legal
2710 activities related to community oral health including
2711 tobacco use prevention, dental health personnel
2712 resources, preventive dentistry, fluoridation and
2713 nutrition issues.

2714 B. COUNCIL ON ADA SESSIONS. The duties of
2715 the Council shall be:
2716 a. To have responsibility for conducting the annual
2717 session of this Association, except the House of
2718 Delegates, subject to approval by the Board of
2719 Trustees as provided in these *Bylaws*.
2720 b. To plan and coordinate other Association sessions
2721 or regional meetings.

2722 C. COUNCIL ON COMMUNICATIONS. The duties
2723 of the Council shall be:
2724 a. To identify, recommend, and maintain an external
2725 strategic communications plan for the Association to
2726 facilitate other work throughout and on behalf of the
2727 Association.
2728 b. To advise the Association on the external image
2729 and brand implications of Association plans,
2730 programs, services and activities.
2731 c. To provide counsel to the Association on the
2732 priority and allocation of externally focused
2733 communication resources, to advise on their
2734 implications, and to identify the areas where the
2735 greatest strategic communications impact can be
2736 achieved.
2737 d. To identify, recommend, articulate and maintain
2738 strategies for significant external communications
2739 campaigns across the Association.
2740 e. To serve as a strategic communications resource
2741 to other Association agencies on communications to
2742 the profession.
2743 f. To create, implement, monitor and update an
2744 ongoing communication support strategy for the
2745 constituent and component dental societies.

2746 D. COUNCIL ON DENTAL BENEFIT
2747 PROGRAMS. The duties of the Council shall be:
2748 a. To formulate and recommend policies relating to
2749 the planning, administration and financing of dental

2750 benefit programs.
2751 b. To study, evaluate and disseminate information
2752 on the planning, administration and financing of
2753 dental benefit programs.
2754 c. To assist the constituent societies and other
2755 agencies in developing programs for the planning,
2756 administration and financing of dental benefit
2757 programs.
2758 d. To provide assistance, guidance and support to
2759 constituent and component societies in the
2760 development and management of professional
2761 review systems.
2762 e. To encourage the inclusion of dental benefits in
2763 health benefit plans and to promote dental benefit
2764 plans in accordance with Association policy.
2765 f. To conduct activities and formulate and
2766 recommend policies concerning the assessment and
2767 improvement of the quality of dental care relating to
2768 dental benefit plans.
2769 g. To formulate procedural and diagnostic codes in
2770 conjunction with national dental organizations and
2771 the dental benefits industry that dentists can use to
2772 report patient care on dental benefit claim forms.

2773 E. COUNCIL ON DENTAL EDUCATION AND
2774 LICENSURE. The duties of the Council shall be:
2775 a. To act as the agency of the Association in matters
2776 related to the evaluation and accreditation of all
2777 dental educational, dental auxiliary educational and
2778 associated subjects.
2779 b. To study and make recommendations including
2780 the formulation and recommendation of policy on:
2781 (1) Dental education and dental auxiliary education.
2782 (2) The recognition of dental specialties.
2783 (3) The recognition of categories of dental
2784 auxiliaries.
2785 (4) The approval or disapproval of national
2786 certifying boards for special areas of dental practice
2787 and for dental auxiliaries.
2788 (5) The educational and administrative standards of
2789 the certifying boards for special areas of dental
2790 practice and for dental auxiliaries.
2791 (6) Associated subjects that affect all dental, dental
2792 auxiliary and related education.
2793 (7) Dental licensure and dental auxiliary
2794 credentialing.
2795 c. To act on behalf of this Association in
2796 maintaining effective liaison with certifying boards
2797 and related agencies for special areas of dental
2798 practice and for dental auxiliaries.
2799 d. To monitor and disseminate information on
2800 continuing dental education and to encourage the
2801 provision of and participation in continuing dental
2802 education.

2803 F. COUNCIL ON DENTAL PRACTICE. The duties
2804 of the Council shall be:

CHAPTER X • COUNCILS

a. To formulate and recommend policies relating to dental practice.

b. To study, evaluate and disseminate information concerning various forms of business organization of a dental practice, economic factors related to dental practice, practice management techniques, auxiliary utilization and dental laboratory services to the end that dentists may continue to improve services to the public.

c. To develop educational and other programs to assist dentists in improved practice management, including practice marketing materials and continuing education seminars, and to assist constituent and component societies and other dental organizations in the development of such programs so that dentists may continue to improve the delivery of their services to the public.

d. To encourage and develop satisfactory relations with the various organizations representing the dental laboratory industry and craft.

e. To formulate programs for establishing and maintaining the greatest efficiency, quality and service of the dental laboratory industry and craft in their relation to the dental profession.

f. To encourage and develop satisfactory relations with the various organizations representing dental auxiliaries.

g. To gather, formulate and disseminate information related to auxiliary utilization, management and employment practices.

h. To serve in a consultative capacity to those educational and promotional activities directed to the public and the profession and to assess their impact on dental practice.

i. To provide assistance, education and information on issues related to dentists' well being.

G. COUNCIL ON ETHICS, BYLAWS AND JUDICIAL AFFAIRS. The duties of the Council shall be:

a. To consider proposals for amending the *Principles of Ethics and Code of Professional Conduct.*

b. To provide advisory opinions regarding the interpretation of the *Principles of Ethics and Code of Professional Conduct.*

c. To consider appeals from members of the Association, or from component societies subject to the requirements of Chapter XII, Section 20 of these *Bylaws.*

d. To hold hearings and render decisions in disputes arising between constituent societies or between constituent and component societies.

e. To discipline any of the direct members of this Association in accordance with the requirements and procedures of Chapter XII of these *Bylaws*, using

2860 hearing panels composed of not less than three (3)
2861 of its elected members selected by the Council chair.
2862 The Council may adopt procedures governing the
2863 discipline of direct members of this Association
2864 consistent with Chapter XII of these *Bylaws*, which
2865 may include the use of an investigating committee
2866 or individual to investigate any complaint made
2867 against such member and report findings to the
2868 hearing panel concerning whether charges should
2869 issue.
2870 f. To review the articles of the *Constitution and*
2871 *Bylaws* in order to keep them consistent with the
2872 Association's program.
2873 g. To recommend editorial changes in the *Bylaws* to
2874 improve their consistency, clarity and style.
2875 h. Notwithstanding paragraph g of this subsection,
2876 the Council shall have the authority to make
2877 corrections in punctuation, grammar, spelling, name
2878 changes, gender references, and similar editorial
2879 corrections in the *Bylaws* which do not alter its
2880 context or meaning. Such corrections shall be made
2881 only by a unanimous vote of the Council members
2882 present and voting.
2883 i. To review the rules and bylaws of all commissions
2884 of  the Association in order to keep such rules and
2885 bylaws consistent with the *Constitution and Bylaws*
2886 of this Association.
2887 j. To act as the Standing Committee on Constitution
2888 and Bylaws of the House of Delegates, with the
2889 composition of such committee to be determined in
2890 accordance with Chapter V, Section 140A of these
2891 *Bylaws*, and to conduct other business it deems
2892 necessary.
2893 k. To provide guidance and advice on ethical and
2894 professional issues to constituent and component
2895 societies.
2896 l. To formulate and disseminate materials related to
2897 ethical and professional conduct in the practice and
2898 promotion of dentistry.

2899 H. COUNCIL ON GOVERNMENT AFFAIRS. The
2900 duties of the Council shall be:
2901 a. To encourage the improvement of the health of
2902 the public and to promote the art and science of
2903 dentistry in matters of legislation and regulations by
2904 appropriate activities.
2905 b. To formulate and recommend policies related to
2906 legislative    and    regulatory    issues    and    to
2907 governmental agency programs.
2908 c. To formulate proposed legislation, approved by
2909 the Board of Trustees, that may be submitted to
2910 Congress and which will promote the art and science
2911 of dentistry in accordance with Association policies.
2912 d. To disseminate information which will assist the
2913 constituent    and    component    societies    involving
2914 legislation and regulation affecting the dental health

2915  of the public.
2916  e. To serve and assist the American Dental
2917  Association as a liaison with agencies of the federal
2918  government.
2919  f. To advise other Association agencies charged with
2920  developing, recommending and/or implementing
2921  legislative policies adopted by the House of
2922  Delegates.
2923  g. To serve as liaison for the American Dental
2924  Association with those agencies of the federal
2925  government which employ dental personnel in direct
2926  dental care delivery programs and the dentists in
2927  those services.
2928  h. To recommend programs and policies which will
2929  ensure that eligible beneficiaries of federal dental
2930  service programs have access to quality dental care.
2931  i. To recommend programs and policies which
2932  promote an efficient and effective dental care
2933  delivery system within the federal dental services.
2934  j. To assist in the development of dental workforce
2935  requirements and appropriate mobilization programs
2936  in times of emergency.
2937  k. To formulate and recommend policies which are
2938  designed to advance the professional status of
2939  federally employed dentists.
2940  l. To monitor dental training programs conducted by
2941  the federal dental services.

2942  I. COUNCIL ON MEMBERS INSURANCE AND
2943  RETIREMENT PROGRAMS. The duties of the
2944  Council shall be:
2945  a. To evaluate on a continuing basis all Association
2946  sponsored insurance programs.
2947  b. To examine and evaluate other insurance
2948  programs that might be of benefit to the
2949  membership.
2950  c. To advise and recommend courses of action on
2951  insurance programs.
2952  d. To assist constituent societies in matters related to
2953  insurance programs.
2954  e. To serve as Trustees for the American Dental
2955  Association Members Retirement Program.*
2956  f. To advise and recommend courses of action on
2957  retirement programs.**

2958  J. COUNCIL ON MEMBERSHIP. Except as
2959  otherwise provided in these *Bylaws*, the duties of the
2960  Council shall be:
2961  a. To formulate and recommend policies related to
2962  membership recruitment and retention and other
2963  related issues.
2964  b. To identify and monitor trends and issues that
2965  affect membership recruitment and retention,
2966  particularly among under-represented segments, and

---

* This duty shall expire April 30, 2008.
** This duty shall commence April 30, 2008.

2967  to encourage membership involvement throughout
2968  organized dentistry.
2969  c. To support, monitor and encourage membership
2970  activities of constituent and component dental
2971  societies and to enhance cooperation and
2972  communication on tripartite recruitment and
2973  retention efforts.
2974  d. To recommend, monitor and support the
2975  development of membership benefits and services
2976  that respond to identified needs of members.
2977  e. To act as an advocate for membership benefits.

2978  K. COUNCIL ON SCIENTIFIC AFFAIRS. The
2979  duties of the Council shall be:
2980  a. To develop and promote an annual research
2981  agenda with appropriate means for funding.
2982  b. To identify emergent issues and areas of research
2983  that require response from the research community.
2984  c. To report results on the latest scientific
2985  developments to practicing dentists.
2986  d. To evaluate and issue statements to the profession
2987  regarding the efficacy of concepts, procedures and
2988  techniques for use in the treatment of patients.
2989  e. To guide, assist and act as liaison to the American
2990  Dental Association Foundation and serve as its peer
2991  review body.
2992  f. To represent the Association on scientific and
2993  research matters and maintain liaison with related
2994  regulatory, research and professional organizations.
2995  g. To encourage the development and improvement
2996  of materials, instruments and equipment for use in
2997  dental practice, and to coordinate development of
2998  national and international standardization programs.
2999  h. To determine the safety and effectiveness of, and
3000  disseminate information on, materials, instruments
3001  and equipment that are offered to the public or the
3002  profession and further critically evaluate statements
3003  of efficacy and advertising claims.
3004  i. To study, evaluate and disseminate information
3005  with regard to the proper use of dental therapeutic
3006  agents, their adjuncts and dental cosmetic agents
3007  that are offered to the public or the profession.
3008  j. To award the American Dental Association Seal to
3009  dental products that meet the Association's
3010  requirements for acceptance.
3011  k. To promote efforts to develop dental research
3012  workforce and to involve students in dental research.
3013  l. To study, evaluate and disseminate information on
3014  those aspects of the dental practice environment
3015  related to the health of the public, dentists and dental
3016  auxiliaries.
3017  m. To serve as the primary resource for scientific
3018  inquiries from the public and the profession.

CHAPTER XI • SPECIAL COMMITTEES
CHAPTER XII • PRINCIPLES OF ETHICS AND
CODE OF PROFESSIONAL CONDUCT AND
JUDICIAL PROCEDURE

## CHAPTER XI • SPECIAL COMMITTEES

3019 *Section 10.* APPOINTMENT AND TERM. Special
3020 committees of this Association may be created at any
3021 session of the House of Delegates or, when the House
3022 is not in session, by the Board of Trustees, for the
3023 purpose of performing duties not otherwise assigned
3024 by these *Bylaws*. Duties otherwise assigned by these
3025 *Bylaws* solely to one (1) council, commission or other
3026 agency should be assigned to that council,
3027 commission or other agency with the necessary
3028 funding to accomplish the task. If duties are assigned
3029 to a special committee that are assigned under these
3030 *Bylaws* to more than one (1) council, commission or
3031 other agency, members of the relevant councils,
3032 commissions or other agencies shall be appointed to
3033 serve on the special committee. Such special
3034 committees may serve until adjournment *sine die* of
3035 the next annual session of the House of Delegates.
3036 The authority for appointing the members of a special
3037 committee and their number shall be set forth in the
3038 resolution creating such committee.

3039 *Section 20.* PRIVILEGE OF THE FLOOR: Chairs
3040 and members of special committees who are not
3041 members of the House of Delegates shall have the
3042 right to participate in the debate on their respective
3043 reports but shall not have the right to vote.

## CHAPTER XII • PRINCIPLES OF ETHICS AND
CODE OF PROFESSIONAL CONDUCT AND
JUDICIAL PROCEDURE

3044 *Section 10.* PROFESSIONAL CONDUCT OF
3045 MEMBERS: The professional conduct of a member
3046 of this Association shall be governed by the
3047 *Principles of Ethics and Code of Professional*
3048 *Conduct* of this Association and by the codes of
3049 ethics of the constituent and component societies
3050 within whose jurisdiction the member practices, or
3051 conducts or participates in other professional dental
3052 activities.

3053 *Section 20.* DISCIPLINE OF MEMBERS:

3054 A. CONDUCT SUBJECT TO DISCIPLINE. A
3055 member may be disciplined for (1) having been found
3056 guilty of a felony, (2) having been found guilty of
3057 violating the dental practice act of a state or other
3058 jurisdiction of the United States, (3) having been
3059 discharged or dismissed from practicing dentistry
3060 with one of the federal dental services under
3061 dishonorable circumstances, or (4) violating the
3062 *Bylaws*, the *Principles of Ethics and Code of*
3063 *Professional Conduct*, or the bylaws or code of ethics

CHAPTER XII - PRINCIPLES OF ETHICS AND
CODE OF PROFESSIONAL CONDUCT AND
JUDICIAL PROCEDURE

3064 of the constituent or component society of which the
3065 accused is a member.  For a member of a constituent
3066 society, disciplinary proceedings may be instituted by
3067 either the member's component or constituent
3068 society. Disciplinary proceedings against a direct
3069 member of this Association  may be instituted by the
3070 Council on Ethics, Bylaws and Judicial Affairs of this
3071 Association.

3072 B. DISCIPLINARY PENALTIES. A member may be
3073 placed under a sentence of censure or suspension or
3074 may be expelled from membership for any of the
3075 offenses enumerated in Section 20A of this Chapter.
3076   Censure is a disciplinary sentence expressing in
3077 writing severe criticism or disapproval of a particular
3078 type of conduct or act.
3079   Suspension, subject to Chapter I, Section 30 of these
3080 *Bylaws*, means all membership privileges except
3081 continued entitlement to coverages under insurance
3082 programs are lost during the suspension period.
3083 Suspension shall be unconditional and for a specified
3084 period at the termination of which full membership
3085 privileges are automatically restored. A subsequent
3086 violation shall require a new disciplinary procedure
3087 before additional discipline may be imposed.
3088   Expulsion is an absolute discipline and may not be
3089 imposed conditionally except as otherwise provided
3090 herein.
3091   Probation, to be imposed for a specified period and
3092 without loss of privileges, may be administratively
3093 and conditionally imposed when circumstances
3094 warrant in lieu of a suspended disciplinary penalty.
3095 Probation shall be conditioned on good behavior.
3096 Additional reasonable conditions may be set forth in
3097 the decision for the continuation of probation. In the
3098 event that the conditions for probation are found by
3099 the society which preferred charges to have been
3100 violated, after a hearing on the probation violation
3101 charges in accordance with Chapter XII, Section 20C,
3102 the original disciplinary penalty shall be
3103 automatically reinstated; except that when
3104 circumstances warrant the original disciplinary
3105 penalty may be reduced to a lesser penalty. There
3106 shall be no right of appeal from a finding that the
3107 conditions of probation have been violated.
3108   After all appeals are exhausted or after the time for
3109 filing an appeal has expired, a sentence of censure,
3110 suspension or expulsion meted out to any member,
3111 including those instances when the disciplined
3112 member has been placed on probation, shall be
3113 promulgated by such member's component and
3114 constituent societies, if such exist, and this
3115 Association.

3116 C. DISCIPLINARY PROCEEDINGS. Before a
3117 disciplinary penalty is invoked against a member, the

CHAPTER XII - PRINCIPLES OF ETHICS AND
CODE OF PROFESSIONAL CONDUCT AND
JUDICIAL PROCEDURE

3118   following procedures shall be followed by the agency
3119   preferring charges:
3120   a. HEARING. The accused member shall be entitled
3121   to a hearing at which the accused shall be given the
3122   opportunity to present a defense to all charges
3123   brought against the accused.  The agency preferring
3124   charges shall permit the accused member to be
3125   represented by legal counsel.
3126   b. NOTICE. The accused member shall be notified
3127   in writing of charges brought against the accused
3128   and of the time and place of the hearing, such notice
3129   to be sent by certified—return receipt requested
3130   letter addressed to the accused's last known address
3131   and mailed not less than twenty-one (21) days prior
3132   to the date set for the hearing. An accused member,
3133   upon request, shall be granted one postponement for
3134   a period not to exceed thirty (30) days.
3135   c. CHARGES. The written charges shall include an
3136   officially certified copy of the alleged conviction or
3137   determination of guilt, or a specification of the
3138   bylaw or ethical provisions alleged to have been
3139   violated, as the case may be, and a description of the
3140   conduct alleged to constitute each violation.
3141   d. DECISION. Every decision which shall result in
3142   censure, suspension or expulsion or in probation
3143   shall be reduced to writing and shall specify the
3144   charges made against the member, the facts which
3145   substantiate any or all of the charges, the verdict
3146   rendered, the penalty imposed or when appropriate
3147   the suspended penalty imposed and the conditions
3148   for probation, and a notice shall be mailed to the
3149   accused member informing the accused of the right
3150   to appeal. Within ten (10) days of the date on which
3151   the decision is rendered a copy thereof shall be sent
3152   by certified—return receipt requested mail to the last
3153   known address of each of the following parties: the
3154   accused member; the secretary of the component
3155   society of which the accused is a member, if
3156   applicable; the secretary of the constituent society of
3157   which the accused is a member, if applicable; the
3158   Chair of the Council on Ethics, Bylaws and Judicial
3159   Affairs of this Association and the Executive
3160   Director of this Association.

3161   D. APPEALS. The accused member under sentence
3162   of censure, suspension or expulsion shall have the
3163   right to appeal from a decision of the accused's
3164   component society to the accused's constituent
3165   society by filing an appeal in affidavit form with the
3166   secretary of the constituent society. Such an accused
3167   member, or the component society concerned, shall
3168   have the right to appeal from a decision of the
3169   constituent society to the Council on Ethics, Bylaws
3170   and Judicial Affairs of this Association by filing an
3171   appeal in affidavit form with the Chair of the Council
3172   on Ethics, Bylaws and Judicial Affairs. Where the

CHAPTER XII · PRINCIPLES OF ETHICS AND
CODE OF PROFESSIONAL CONDUCT AND
JUDICIAL PROCEDURE

3173 accused is a direct member of this Association, the
3174 accused member shall have the right of appeal from a
3175 disciplinary decision of a hearing panel of the Council
3176 on Ethics, Bylaws and Judicial Affairs to the Council
3177 by filing an appeal in affidavit form with the Chair of
3178 the Council on Ethics, Bylaws and Judicial Affairs.
3179 Members of the hearing panel shall not have the right
3180 to vote on the Council's decision on such an appeal.
3181 An appeal from any decision shall not be valid
3182 unless notice of appeal is filed within thirty (30) days
3183 and the supporting brief, if one is to be presented, is
3184 filed within sixty (60) days after such decision has
3185 been rendered. A reply brief, if one is to be presented,
3186 shall be filed within ninety (90) days after such
3187 decision is rendered. A rejoinder brief, if one is to be
3188 presented, shall be filed within one hundred five
3189 (105) days after such decision is rendered. After all
3190 briefs have been filed, a minimum of forty-five (45)
3191 days shall elapse before the hearing date. Omission of
3192 briefs will not alter the briefing schedule or hearing
3193 date unless otherwise agreed to by the parties and the
3194 chair of the appropriate appellate agency.
3195 No decision shall become final while an appeal there
3196 from is pending or until the thirty (30) day period for
3197 filing notice of appeal has elapsed. In the event of a
3198 sentence of expulsion and no notice of appeal is
3199 received within the thirty (30) day period, the
3200 constituent society shall notify all parties of the
3201 failure of the accused member to file an appeal. The
3202 sentence of expulsion shall take effect on the date the
3203 parties are notified. The component and constituent
3204 societies shall each determine what portion of their
3205 current dues and their special assessments, if any,
3206 shall be returned to the expelled member. Dues and
3207 special assessments paid to this Association shall not
3208 be refundable in the event of expulsion. The
3209 following procedure shall be used in processing
3210 appeals:
3211 a. HEARINGS ON APPEAL. The accused member
3212 or the society (or societies) concerned shall be
3213 entitled to a hearing on an appeal, provided that
3214 such appeal is taken in accordance with, and
3215 satisfies the requirements of, Section 20D of this
3216 Chapter. The appellate agency hearing the appeal
3217 shall permit the accused member to be represented
3218 by legal counsel. A party need not appear for the
3219 appeal to be heard by an appellate agency.
3220 b. NOTICE. The appellate agency receiving an
3221 appeal shall notify the society (or societies)
3222 concerned, or where applicable the hearing panel of
3223 the Council on Ethics, Bylaws and Judicial Affairs,
3224 and the accused  member of the time and place of
3225 the hearing, such notice to be sent by certified—
3226 return receipt requested letter to the last known
3227 address of the parties to the appeal and mailed not
3228 less than thirty (30) days prior to the date set for the

CHAPTER XII • PRINCIPLES OF ETHICS AND
CODE OF PROFESSIONAL CONDUCT AND
JUDICIAL PROCEDURE

3229 hearing. Granting of continuances shall be at the
3230 option of the agency hearing the appeal.
3231 c. PREHEARING MATTERS. Prehearing requests
3232 shall be granted at the discretion of the appellate
3233 agency. In appeals to this Association's Council on
3234 Ethics, Bylaws and Judicial Affairs, the Council
3235 chair has the authority to rule on motions from the
3236 parties for continuances and other prehearing
3237 procedural matters with advice from legal counsel
3238 of this Association. The Council chair may consult
3239 with the Council before rendering prehearing
3240 decisions.
3241 d. BRIEFS. Every party to an appeal shall be
3242 entitled to submit a brief in support of the party's
3243 position. The briefs of the parties shall be submitted
3244 to the secretary of the constituent society or the
3245 Chair of the Council on Ethics, Bylaws and Judicial
3246 Affairs of this Association, as the case may be, and
3247 to the opposing party(ies) in accordance with the
3248 prescribed briefing schedule. The party initiating
3249 the appeal may choose to rely on the record and/or
3250 on an oral presentation and not file a brief.
3251 e. RECORD OF DISCIPLINARY
3252 PROCEEDINGS. Upon notice of an appeal the
3253 agency which preferred charges shall furnish to the
3254 appellate agency which has received the appeal and
3255 to the accused member a transcript of, or an
3256 officially certified copy of the minutes of the
3257 hearing accorded the accused member. The
3258 transcript or minutes shall be accompanied by
3259 certified copies of any affidavits or other
3260 documents submitted as evidence to support the
3261 charges against the accused member or submitted
3262 by the accused member as part of the accused's
3263 defense. Where the agency preferring the charges
3264 does not provide for transcription of the hearing,
3265 the accused member, at the accused's own expense,
3266 shall be entitled to arrange for the services of a
3267 court reporter to transcribe the hearing.
3268 f. APPEALS JURISDICTION. The agency to
3269 which a decision has been appealed shall be
3270 required to review the decision appealed from to
3271 determine whether the evidence before the society
3272 or agency which preferred charges against the
3273 accused member supports that decision or warrants
3274 the penalty imposed. The appellate agency shall not
3275 be required to consider additional evidence unless
3276 there is a clear showing that either party to the
3277 appeal will be unreasonably harmed by failure to
3278 consider the additional evidence. The parties to an
3279 appeal are the accused member and the society or
3280 agency which preferred charges. In appeals to the
3281 Council on Ethics, Bylaws and Judicial Affairs of
3282 this Association, the society which heard the first
3283 appeal may, at its option, participate in the appeal.
3284 g. DECISION ON APPEALS. Every decision on

CHAPTER XII • PRINCIPLES OF ETHICS AND
CODE OF PROFESSIONAL CONDUCT AND
JUDICIAL PROCEDURE
CHAPTER XIII • AMERICAN DENTAL
ASSOCIATION FOUNDATION

3285    appeal shall be reduced to writing and shall state
3286    clearly the conclusion of the appellate agency and
3287    the reasons for reaching that conclusion. The
3288    appellate agency shall have the discretion (1) to
3289    uphold the decision of the agency which preferred
3290    charges against the accused member; (2) to reverse
3291    the decision of the agency which preferred charges
3292    and thereby exonerate the accused member; (3) to
3293    deny an appeal which fails to satisfy the
3294    requirements of Section 20D of this Chapter; (4) to
3295    refer the case back to the agency which preferred
3296    charges for new proceedings, if the rights of the
3297    accused member under all applicable bylaws were
3298    not accorded the accused; (5) to remand the case
3299    back to the agency which preferred charges for
3300    further proceedings when the appellate record is
3301    insufficient in the opinion of the appellate agency to
3302    enable it to render a decision; or (6) to uphold the
3303    decision of the agency which preferred charges
3304    against the accused member and reduce the penalty
3305    imposed.
3306    Within thirty (30) days of the date on which a
3307    decision on appeal is rendered, a copy thereof shall
3308    be sent by certified—return receipt requested mail
3309    to the last known address of each of the following
3310    parties: the accused member, the secretary of the
3311    component society of which the accused is a
3312    member, if applicable, the secretary of the
3313    constituent society of which the accused is a
3314    member, if applicable, the Chair of the Council on
3315    Ethics, Bylaws and Judicial Affairs of this
3316    Association and the Executive Director of this
3317    Association.

3318    E. NON-COMPLIANCE. In the event of a failure of
3319    technical conformance to the procedural requirements
3320    of Chapter XII, the agency hearing the appeal shall
3321    determine the effect of non-conformance.

CHAPTER XIII • AMERICAN DENTAL
ASSOCIATION FOUNDATION

3322    *Section 10.* AGENCIES AND PERSONNEL: The
3323    Research Institute and the Paffenbarger Research
3324    Center at the National Institute of Standards and
3325    Technology will be agencies of the American Dental
3326    Association Foundation and the personnel of these
3327    agencies shall be employees of the Foundation.

3328    *Section 20.* FINANCIAL SUPPORT: The
3329    Association shall annually furnish sufficient financial
3330    support, as an addition to generated non-Association
3331    funding, to assure the continued viability of the
3332    Foundation's research activities.

3333 *Section 30.* DUTIES:

3334 A. The Foundation, through its agencies, the Research
3335 Institute and the Paffenbarger Research Center at the
3336 National Institute of Standards and Technology shall:
3337 a. Conduct basic and applied research for the
3338 utilization in and development of oral health.
3339 b. Conduct training programs in research disciplines
3340 that relate to the basic and applied problems of oral
3341 health.

3342 B. In addition, the Foundation shall submit, either
3343 through or in cooperation with the Council on
3344 Scientific Affairs, an annual report to the House of
3345 Delegates, interim reports on request to the Board of
3346 Trustees, and an annual budget to the Board of
3347 Trustees for such financial support allocations as the
3348 Board may deem necessary.

3349 C. In addition, the Foundation's Administrative/
3350 Charitable group shall submit, through the ADA
3351 Board of Trustees acting as the Member, an annual
3352 report to the House of Delegates, interim reports on
3353 request to the Member, and an annual budget to the
3354 Board of Trustees for such financial support
3355 allocations as the Board may deem necessary.

3356 D. The Foundation also may perform such other
3357 charitable and research functions as permitted under
3358 its articles of incorporation and bylaws and the laws
3359 of the State of Illinois.

## CHAPTER XIV • COMMISSIONS

3360 *Section 10.* NAME: The commissions of this
3361 Association shall be:
3362 Commission on Dental Accreditation
3363 Joint Commission on National Dental Examinations

3364 *Section 20.* MEMBERS, SELECTIONS,
3365 NOMINATIONS AND ELECTIONS:
3366 A. COMMISSION ON DENTAL
3367 ACCREDITATION. The number of members and the
3368 method of selection of the members of the
3369 Commission on Dental Accreditation shall be
3370 governed by the *Rules of the Commission on Dental*
3371 *Accreditation* and these *Bylaws.*
3372 Twelve (12) of the members of the Commission on
3373 Dental Accreditation shall be selected as follows:
3374 (1) Four (4) members shall be selected from
3375 nominations open to all trustee districts from the
3376 active, life or retired members of this Association,
3377 no one of whom shall be a faculty member working
3378 for a school of dentistry more than one day per
3379 week or a member of a state board of dental
3380 examiners or jurisdictional dental licensing agency.
3381 These members shall be nominated by the Board of

3382 Trustees and elected by the House of Delegates.
3383 (2) Four (4) members who are active, life or retired
3384 members of this Association shall be selected by
3385 the American Association of Dental Examiners
3386 from the active membership of that body, no one of
3387 whom shall be a member of a faculty of a school of
3388 dentistry.
3389 (3) Four (4) members who are active, life or retired
3390 members of this Association shall be selected by
3391 the American Dental Education Association from
3392 its active membership. These members shall hold
3393 positions of professorial rank in dental schools
3394 accredited by the Commission on Dental
3395 Accreditation and shall not be members of any state
3396 board of dental examiners or jurisdictional dental
3397 licensing agency.

3398 B. JOINT COMMISSION ON NATIONAL
3399 DENTAL EXAMINATIONS. The Joint Commission
3400 on National Dental Examinations shall be composed
3401 of fifteen (15) members selected as follows:
3402 a. Three (3) members shall be nominated by the
3403 Board of Trustees from the active, life or retired
3404 members of this Association and additional
3405 nominations may be made by the House of
3406 Delegates but no one of such nominees shall be a
3407 member of a faculty of a school of dentistry or a
3408 member of a state board of dental examiners or
3409 jurisdictional dental licensing agency. The House of
3410 Delegates shall elect the three (3) members from
3411 those nominated by the Board of Trustees and the
3412 House of Delegates.
3413 b. Six (6) members who are active, life or retired
3414 members of this Association shall be selected by the
3415 American Association of Dental Examiners from the
3416 active membership of that body, no one of whom
3417 shall be a member of a faculty of a dental school.
3418 c. Three (3) members who are active, life or retired
3419 members of this Association shall be selected by the
3420 American Dental Education Association from its
3421 active membership. These members shall hold
3422 positions of professorial rank in the dental schools
3423 accredited by this Association and shall not be
3424 members of any state board of dental examiners or
3425 jurisdictional dental licensing agency.
3426 d. One (1) member who is a dental hygienist shall be
3427 selected by the American Dental Hygienists'
3428 Association.
3429 e. One (1) member who is a public representative
3430 shall be selected by the Joint Commission on
3431 National Dental Examinations.
3432 f. One (1) member who is a dental student shall be
3433 selected annually by the American Student Dental
3434 Association.

3435 *Section 30.* REMOVAL FOR CAUSE: The Board of
3436 Trustees may remove a commission member for

3437 cause in accordance with procedures established by
3438 the Board of Trustees, which procedures shall provide
3439 for notice of the charges, including allegations of the
3440 conduct purported to constitute each violation, and a
3441 decision in writing which shall specify the findings of
3442 fact which substantiate any and all of the charges, and
3443 that prior to issuance of the decision of the Board of
3444 Trustees, no commission member shall be excused
3445 from attending any meeting of a commission unless
3446 there is an opportunity to be heard or compelling
3447 reasons exist which are specified in writing by the
3448 Board of Trustees.

3449 *Section 40.* ELIGIBILITY:

3450 A. All members of commissions who are dentists
3451 must be active, life or retired members in good
3452 standing of this Association except as otherwise
3453 provided in these *Bylaws.*

3454 B. A member of the Joint Commission on National
3455 Dental Examinations, who was selected by the
3456 American Association of Dental Examiners and who
3457 is no longer an active member of that Association,
3458 may continue as a member of the Commission for the
3459 balance of that member's term.

3460 C. When a member of the Joint Commission on
3461 National Dental Examinations, who was selected by
3462 the American Dental Education Association, shall
3463 cease to be a member of the faculty of a member
3464 school of that Association, such membership on the
3465 Commission shall terminate, and the President of the
3466 American Dental Association shall declare the
3467 position vacant.

3468 D. No member of a commission may serve
3469 concurrently as a member of a council or another
3470 commission.

3471 E. CHAIRS. The Commissions of this Association
3472 shall elect their own chairs who shall be active, life or
3473 retired members of this Association.

3474 *Section 50.* CONSULTANTS, ADVISERS AND
3475 STAFF:

3476 A. CONSULTANTS AND ADVISERS. Each
3477 commission shall have the authority to nominate
3478 consultants and advisers in conformity with rules and
3479 regulations established by the Board of Trustees
3480 except as otherwise provided in these *Bylaws.* The
3481 Joint Commission on National Dental Examinations
3482 also shall select consultants to serve on the
3483 Commission's test construction committees. The
3484 Commission on Dental Accreditation shall have the
3485 power to appoint consultants to assist in developing
3486 requirements and guidelines for the conducting of
3487 accreditation evaluations, including site visitations, of
3488 predoctoral, advanced dental educational, and dental

3489   auxiliary educational programs.

3490   B. STAFF. The Executive Director shall employ the
3491   staff of Commissions, in the event they are
3492   employees, and shall select the titles for commission
3493   staff positions.

3494   *Section 60.* TERM OF OFFICE:  The term of office
3495   of members of the commissions shall be four (4)
3496   years except that (a) the term of office of members of
3497   the Commission on Dental Accreditation selected
3498   pursuant to the *Rules of the Commission on Dental*
3499   *Accreditation* shall be governed by those *Rules* and
3500   (b) the term of office of the dental student selected by
3501   the American Student Dental Association for
3502   membership on the Joint Commission on National
3503   Dental Examinations shall be one (1) year.

3504      The tenure of a member of a commission shall be
3505   limited to one (1) term of four (4) years except that
3506   (a) the consecutive tenure of members of the
3507   Commission on Dental Accreditation selected
3508   pursuant to the *Rules of the Commission on Dental*
3509   *Accreditation* shall be governed by those *Rules* and
3510   (b) tenure in office of the dental student selected by
3511   the American Student Dental Association for
3512   membership on the Joint Commission on National
3513   Dental Examinations shall be one (1) term. As of
3514   1990, a member shall not be eligible for appointment
3515   to another commission or council for a period of two
3516   (2) years after completing a previous commission
3517   appointment.

3518   *Section 70.* VACANCY: In the event of a vacancy in
3519   the office of a commissioner, the following procedure
3520   shall be followed:

3521   A. In the event the member of a commission, whose
3522   office is vacant, is or was a member of and was
3523   appointed or elected by this Association, the President
3524   of this Association shall appoint a member of this
3525   Association possessing the same qualifications as
3526   established by these *Bylaws* for the previous member,
3527   to fill such vacancy until a successor is elected by the
3528   next House of Delegates of this Association for the
3529   remainder of the unexpired term.

3530   B. In the event the member of a commission whose
3531   office is vacant was selected by an organization other
3532   than this Association, such other organization shall
3533   appoint a successor possessing the same
3534   qualifications as those possessed by the previous
3535   member of the commission.

3536   C. In the event such vacancy involves the chair of the
3537   commission, the President of this Association shall
3538   have the power to appoint an *ad interim* chair, except
3539   as otherwise provided in these *Bylaws*.

3540   D. If the term of the vacated commission position has

3541 less than fifty percent (50%) of a full four-year term
3542 remaining at the time the successor member is
3543 appointed or elected, the successor member shall be
3544 eligible for election to a new, consecutive four-year
3545 term. If fifty percent (50%) or more of the vacated
3546 term remains to be served at the time of the
3547 appointment or election, the successor member shall
3548 not be eligible for another term.

3549 *Section 80.* MEETINGS OF COMMISSIONS. Each
3550 commission shall hold at least one regular meeting
3551 annually, provided that funds are available in the
3552 budget for that purpose and unless otherwise directed
3553 by the Board of Trustees. Meetings may be held at the
3554 Headquarters Building, the Washington Office or
3555 from multiple remote locations through the use of a
3556 conference telephone or other communications
3557 equipment by means of which all members can
3558 communicate with each other. Such meetings shall be
3559 conducted in accordance with rules and procedures
3560 established by the Board of Trustees.

3561 *Section 90.* QUORUM: A majority of the members of
3562 any commission shall constitute a quorum.

3563 *Section 100.* PRIVILEGE OF THE FLOOR: Chairs
3564 and members of the commissions who are not
3565 members of the House of Delegates shall have the
3566 right to participate in the debate on their respective
3567 reports but shall not have the right to vote.

3568 *Section 110.* ANNUAL REPORT AND BUDGET:

3569 A. ANNUAL REPORT. Each commission shall
3570 submit, through the Executive Director, an annual
3571 report to the House of Delegates and a copy thereof to
3572 the Board of Trustees.

3573 B. PROPOSED BUDGET. Each commission shall
3574 submit to the Board of Trustees, through the
3575 Executive Director, a proposed itemized budget for
3576 the ensuing fiscal year.

3577 *Section 120.* POWER TO ADOPT RULES: Any
3578 commission of this Association shall have the power
3579 to adopt rules for such commission and amendments
3580 thereto, provided such rules and amendments thereto
3581 do not conflict with or limit the *Constitution and*
3582 *Bylaws* of this Association. Rules and amendments
3583 thereto, adopted by any commission of this
3584 Association, shall not be effective until submitted in
3585 writing to and approved by majority vote of the
3586 House of Delegates of this Association, except the
3587 Joint Commission on National Dental Examinations
3588 shall have such bylaws and amendments thereto as
3589 the House of Delegates of this Association may adopt
3590 by majority vote for the conduct of the purposes and
3591 management of the Joint Commission on National
3592 Dental Examinations.

3593    *Section 130.* DUTIES:

3594    A.    COMMISSION    ON    DENTAL
3595    ACCREDITATION. The duties of the Commission
3596    on Dental Accreditation shall be:
3597    a. To formulate and adopt requirements and
3598    guidelines for the accreditation of dental educational
3599    and dental auxiliary educational programs.
3600    b. To accredit dental educational and dental
3601    auxiliary educational programs.
3602    c. To  provide a means for appeal from an adverse
3603    decision of the accrediting body of the Commission
3604    to a separate and distinct body of the Commission
3605    whose membership shall be totally different from
3606    that of the accrediting body of the Commission.
3607    d. To submit an annual report to the House of
3608    Delegates of this Association and interim reports, on
3609    request, and the Commission's annual budget to the
3610    Board of Trustees of the Association.
3611    e. To submit the Commission's articles of
3612    incorporation and rules and amendments thereto to
3613    this Association's House of Delegates for approval
3614    by majority vote either through or in cooperation
3615    with the Council on Dental Education and
3616    Licensure.

3617    B.    JOINT    COMMISSION    ON    NATIONAL
3618    DENTAL EXAMINATIONS. The duties of the Joint
3619    Commission on National Dental Examinations shall
3620    be:
3621    a. To provide and conduct written examinations,
3622    exclusive of clinical demonstrations for the purpose
3623    of assisting state boards of dental examiners in
3624    determining qualifications of dentists who seek
3625    license to practice in any state or other jurisdiction
3626    of the United States. Dental licensure is subject to
3627    the laws of the state or other jurisdiction of the
3628    United States and the conduct of all clinical
3629    examinations for licensure is reserved to the
3630    individual board of dental examiners.
3631    b. To provide and conduct written examinations,
3632    exclusive of clinical demonstrations for the purpose
3633    of assisting state boards of dental examiners in
3634    determining qualifications of dental hygienists who
3635    seek license to practice in any state or other
3636    jurisdiction of the United States. Dental hygiene
3637    licensure is subject to the laws of the state or other
3638    jurisdiction of the United States and the conduct of
3639    all clinical examinations for licensure is reserved to
3640    the individual board of dental examiners.
3641    c. To make rules and regulations for the conduct of
3642    examinations and the certification of successful
3643    candidates.
3644    d. To serve as a resource of the dental profession in
3645    the development of written examinations.

## CHAPTER XV • SCIENTIFIC SESSION

3646 *Section 10.* OBJECT: The scientific session of this
3647 Association is established to foster the presentation
3648 and discussion of subjects pertaining to the
3649 improvement of the health of the public and the
3650 science and art of dentistry.

3651 *Section 20.* TIME AND PLACE: The scientific
3652 session of the Association shall be held annually at a
3653 time and place selected by the Board of Trustees.
3654 Such selection shall be made at least one (1) year in
3655 advance.

3656 *Section 30.* MANAGEMENT AND GENERAL
3657 ARRANGEMENTS: The Board of Trustees shall
3658 provide for the management of, and make all
3659 arrangements for, each scientific session unless
3660 otherwise provided in these *Bylaws.*

3661 *Section 40.* TRADE AND LABORATORY
3662 EXHIBITS: Products of the dental trade and dental
3663 laboratories and other products may be exhibited at
3664 each scientific session under the direction of the
3665 Board of Trustees and in accordance with rules and
3666 regulations established by that body.

3667 *Section 50.* ADMISSION: Admission to meetings of
3668 the scientific sessions shall be limited to members of
3669 this Association who are in good standing and to
3670 others admitted in accordance with rules and
3671 regulations established by the Board of Trustees.

## CHAPTER XVI • PUBLICATIONS

3672 *Section 10.* OFFICIAL JOURNAL:

3673 A. TITLE. This Association shall publish or cause to
3674 be published an official journal under the title of *The*
3675 *Journal of the American Dental Association,*
3676 hereinafter referred to as *The Journal.*

3677 B. OBJECT. The object of *The Journal* shall be to
3678 report, chronicle and evaluate activities of scientific
3679 and professional interest to members of the dental
3680 profession.

3681 C. FREQUENCY OF ISSUE AND SUBSCRIPTION
3682 RATE. The frequency of issue and the subscription
3683 rate of *The Journal* shall be determined by the Board
3684 of Trustees.

3685 *Section 20.* OTHER JOURNALS: The Association
3686 may publish or cause to be published other journals in
3687 the field of dentistry subject to the direction and
3688 regulations of the Board of Trustees.

3689 *Section 30.* OFFICIAL TRANSACTIONS: The
3690 official transactions of the House of Delegates and the

3691  Board of Trustees and the reports of officers, councils
3692  and committees shall be published under the direction
3693  of the Executive Director.

3694  *Section 40.* AMERICAN DENTAL DIRECTORY:
3695  This Association shall cause to be published an
3696  *American Dental Directory.*

## CHAPTER XVII • FINANCES

3697  *Section 10.* FISCAL YEAR: The fiscal year of the
3698  Association shall begin January 1 of each calendar
3699  year and end December 31 of the same year.

3700  *Section 20.* GENERAL FUND: The General Fund
3701  shall consist of all monies received other than those
3702  specifically allocated to other funds by these *Bylaws.*
3703  This fund shall be used for defraying all expenses
3704  incurred by this Association not otherwise provided
3705  for in these *Bylaws.* The General Fund may be
3706  divided into Operating and Reserve Divisions at the
3707  direction of the Board of Trustees.

3708  *Section 30.* OTHER FUNDS: The Association may
3709  establish other funds, at the direction of the Board of
3710  Trustees, for activities and programs requiring
3711  separate accounting records to meet governmental
3712  and administrative requirements. Such funds shall
3713  consist of monies and other assets received or
3714  allocated in accordance with the purpose for which
3715  they are established. Such funds shall be used for
3716  defraying all expenses incurred in their operation,
3717  shall serve only as separate accounting entities and
3718  continue to be held in the name of the American
3719  Dental Association as divisions of the General Fund.

3720  *Section 40.* SPECIAL ASSESSMENTS: In addition
3721  to the payment of dues required in Chapter I, Section
3722  20 of these *Bylaws,* a special assessment may be
3723  levied by the House of Delegates upon active, active
3724  life, retired and associate members of this Association
3725  as provided in Chapter I, Section 20 of these *Bylaws,*
3726  for the purpose of funding a specific project of
3727  limited duration. Such an assessment may be levied at
3728  any annual or special session of the House of
3729  Delegates by a two-thirds (2/3) affirmative vote of the
3730  delegates present and voting, provided notice of the
3731  proposed assessment has been presented in writing at
3732  least ninety (90) days prior to the first day of the
3733  session of the House of Delegates at which it is to be
3734  considered. Notice of such a resolution shall be sent
3735  by a certifiable method of delivery to each constituent
3736  society not less than ninety (90) days before such
3737  session to permit prompt, adequate notice by each
3738  constituent society to its delegates and alternate
3739  delegates to the House of Delegates of this
3740  Association, and shall be announced to the general

3741 membership in an official publication of this
3742 Association at least sixty (60) days in advance of the
3743 session. The specific project to be funded by the
3744 proposed assessment, the time frame of the project,
3745 and the amount and duration of the proposed
3746 assessment shall be clearly presented in giving notice
3747 to the members of this Association. Revenue from a
3748 special assessment and any earnings thereon shall be
3749 deposited in  a separate fund as provided in Chapter
3750 XVII, Section 30 of these *Bylaws*. The House of
3751 Delegates may amend the main motion to levy a
3752 special assessment only if the amendment is germane
3753 and adopted by a two-thirds (2/3) affirmative vote of
3754 the delegates present and voting. The House of
3755 Delegates may consider only one (1) specific project
3756 to be funded by a proposed assessment at a time.
3757 However, if properly adopted by the House of
3758 Delegates, two (2) or more special assessments may
3759 be in force at the same time. Any resolution to levy a
3760 special assessment that does not meet the notice
3761 requirements set forth in the previous paragraph also
3762 may be adopted by a unanimous vote of the House of
3763 Delegates, provided the resolution has been presented
3764 in writing at a previous meeting of the same session.

### CHAPTER XVIII • ALLIANCE OF THE AMERICAN DENTAL ASSOCIATION

3765 *Section 10.* RECOGNITION: The Association
3766 recognizes the Alliance of the American Dental
3767 Association as an organization of the spouses of
3768 active, life, retired or student members in good
3769 standing of this Association, and of spouses of such
3770 deceased members who were in good standing at the
3771 time of death.

3772 *Section 20.* CONSTITUTION AND BYLAWS: No
3773 provision in the constitution and bylaws of the
3774 Alliance shall be in conflict with the *Constitution and*
3775 *Bylaws* of this Association.

### CHAPTER XIX • INDEMNIFICATION

3776 Each trustee, officer, council member, committee
3777 member, employee and other agent of the Association
3778 shall be held harmless and indemnified by the
3779 Association against all claims and liabilities and all
3780 costs and expenses, including attorney's fees,
3781 reasonably incurred or imposed upon such person in
3782 connection with or resulting from any action, suit or
3783 proceeding, or the settlement or compromise thereof,
3784 to which such person may be made a party by reason
3785 of any action taken or omitted to be taken by such
3786 person as a trustee, officer, council member,
3787 committee member, employee or agent of the
3788 Association, in good faith. This right of

CHAPTER XIX • INDEMNIFICATION
CHAPTER XX • CONSTRUCTION
CHAPTER XXI • AMENDMENTS

3789    indemnification shall inure to such person whether or
3790    not such person is a trustee, officer, council member,
3791    committee member, employee or agent at the time
3792    such liabilities, costs or expenses are imposed or
3793    incurred and, in the event of such person's death,
3794    shall extend to such person's legal representatives. To
3795    the extent available, the Association shall insure
3796    against any potential liability hereunder.

## CHAPTER XX • CONSTRUCTION

3797    Where the context or construction requires, all titles
3798    and personal pronouns used in the *Bylaws,* whether
3799    used in the masculine, feminine or neutral gender,
3800    shall include all genders.

## CHAPTER XXI • AMENDMENTS

3801    *Section 10.* PROCEDURE: These *Bylaws* may be
3802    amended at any session of the House of Delegates by
3803    a two-thirds (2/3) affirmative vote of the delegates
3804    present and voting, provided the proposed
3805    amendments shall have been presented in writing at a
3806    previous session or a previous meeting of the same
3807    session.

3808    *Section 20.* AMENDMENT AFFECTING THE
3809    PROCEDURE FOR CHANGING THE DUES OF
3810    ACTIVE MEMBERS: An amendment of these
3811    *Bylaws* affecting the procedure for changing the dues
3812    of active members may be adopted only if the
3813    proposed amendment has been presented in writing at
3814    least ninety (90) days prior to the first day of the
3815    session of the House of Delegates at which it is to be
3816    considered. Notice of such a resolution shall be sent
3817    by a certifiable method of delivery to each constituent
3818    society not less than ninety (90) days before such
3819    session to permit prompt, adequate notice by each
3820    constituent society to its delegates and alternate
3821    delegates to the House of Delegates of this
3822    Association, and shall be announced to the general
3823    membership in an official publication of the
3824    Association at least sixty (60) days in advance of the
3825    annual session.
3826    Amendments affecting the procedure for changing
3827    the dues of active members may also be adopted by a
3828    unanimous vote provided that the proposed
3829    amendment has been presented in writing at a
3830    previous meeting of the same session.

*Articles of*

# Incorporation

. . . . . . . . . . . . . . . . . . . . . .

3831  1. NAME. The name of this corporation is
3832  AMERICAN DENTAL ASSOCIATION.

3833  2. DURATION. The duration of the corporation is
3834  perpetual.

3835  3. PURPOSE AND OBJECT. The purpose and object
3836  of this corporation are to encourage the improvement
3837  of the health of the public and to promote the art and
3838  science of dentistry.

3839  4. OFFICE. The principal office of the corporation
3840  shall be in the City of Chicago, Cook County, Illinois.

3841  5. BYLAWS. The bylaws of the corporation shall be
3842  divided into two categories designated, respectively,
3843  "Constitution" and "Bylaws" and each category shall
3844  be amendable from time to time in the manner and by
3845  the method therein set forth, but in case of any
3846  conflict between the Constitution and the Bylaws the
3847  provisions of the Constitution shall control.

3848  6. MEMBERSHIP. The qualifications, the method of
3849  election, designation or selection, the privileges and
3850  obligations, and the voting rights, if any, of the
3851  various classes of members which are established by
3852  the Constitution and Bylaws of the corporation from
3853  time to time shall be set forth in and governed by
3854  such Constitution and Bylaws.

3855  7. EXERCISE OF CORPORATE POWERS. Except
3856  as otherwise provided by law, the affairs of this
3857  corporation shall be governed and the corporate
3858  powers of the corporation shall be exercised by a
3859  Board of Directors (to be known as the Board of
3860  Trustees), House of Delegates, officers, councils,
3861  committees, members, agents and employees as set
3862  forth in the Constitution and Bylaws and the titles,
3863  duties, powers, and methods of electing, designating
3864  or selecting all of the foregoing shall be as provided
3865  therein.

3866  8. VOTING RIGHTS WITH RESPECT TO
3867  ARTICLES OF INCORPORATION. Only those
3868  members of the corporation shall have voting rights in
3869  respect to amendments to the Articles of
3870  Incorporation who shall have a right to vote on
3871  amendments to the Constitution of the corporation.

American Dental Association
A current electronic version of this document is available at www.ada.org

NYSDA Board of Governors Meeting
July 9, 2008

A conference call of the Executive Committee took place on Friday, June 20 2007.  Upon the request of the president, Dr. Stephen B. Gold, and unanimous consent of the Executive Committee, the following resolution was adopted:

7-EC-08:  RESOLVED:  That a Special Meeting of the Board of Governors be scheduled.

Pursuant to Resolution 7-EC-08, the NYSDA Board of Governors held a special meeting on Wednesday, July 9, 2008 at 7 p.m. at the LaGuardia Marriott Hotel in East Elmhurst, New York.  Present were the following members:  Drs. Stephen Gold, President; Michael Breault, President Elect; Robert Doherty, Vice President; Richard Andolina, Secretary-Treasurer, Steven Gounardes, Immediate Past President; Matthew Neary (NY); Lawrence Bailey (NY); Robert Raiber (NY); Craig Ratner (2); James Sconzo (2); John Essepian (3): Lawrence Busino (3); Mark Bauman (4); James Galati (4); William Karp (5); John Liang (5); Robert Baker (6); Scott Farrell (6); Andrew Vorrasi (7); Robert Buhite (7); Kevin Hanley (8); Jeffrey Baumler (8); Edward Feinberg (9); Malcolm Graham (9); Neal Riesner (9); Frank Palmaccio (N); David Miller (N); Peter Blauzvern (N); Chad Gehani (Q); Robert Shpuntoff (Q); Steven Snyder (S); Paul Leary (S); Richard Herman (B); Steven Harrison (B); Stephanie Demas (ASDA).  Also in attendance were: Mr. Roy Lasky, Executive Director; Dr. William Calnon, ADA Trustee; Dr. Elliot Moskowitz, "NYS Dental Journal" Editor; Ms. Carla Hogan, NYSDA Counsel; Dr. Judith Shub, Assistant Executive Director for Health Affairs; Mr. Michael Herrmann, Assistant Executive Director, Finance and Administration; Ms. Mary Stoll, "NYS Dental Journal" Managing Editor; Ms. Beth Wanek, Associate Executive Director, and Ms. Laura Leon, Assistant Executive Director (and Executive Director of the NYS Dental Foundation).

A copy of the Notice of Special Meeting is attached to these minutes.

Dr. Gold announced that a quorum was present and proceeded with the business of the Board.  He announced that the agenda noticed three items for discussion:
  ➢ Recognition of a New Component
  ➢ Removal of a Component
  ➢ Revisions to the NYSDA Bylaws, Chapter III, Section 10, Paragraph B

Dr. Gold announced that the Board would convene an Executive Session to discuss legal issues regarding the first two items above, and following this session, member guests would be invited to discuss these items.

Following the Executive Session, Dr. Raiber presented the following resolution for the Board's consideration:

1-JUL-08:      RESOLVED:  That the Manhattan Dental Association be recognized as a component of the New York State Dental Association and the American Dental Association.

Dr. Elliott Moskowitz, Executive Director of the Manhattan Dental Association, presented the Board with a petition from 17 dentists who are seeking recognition of a new component.

Lengthy testimony was presented by members of the Board of Governors, and NYSDA members.  After discussion, Dr. Gold called for a vote on Resolution 1-JUL-08.

Dr. Bauman asked that the Board vote by closed ballot.  Dr. Gold accepted Dr. Bauman's request.

Report of the Board's Action:

| | |
|---|---|
| Qualified Voters | 34 |
| Legal Ballots Cast | 33 |
| Illegal Ballots Rejected | 0 |

Final Vote Tally:          17 Yes Votes/16 No Votes

Resolution 1-JUL-08 was adopted.

Dr. Ratner asked the chairman whether recognition of a new component required a Bylaws change.  Dr. Gold deferred the question to NYSDA's attorney, Carla Hogan.  Ms. Hogan advised the Board that the governing statute takes precedence over the bylaws and sets forth the procedure for recognizing a new component.  The statute authorizes the Board to recognize a new component upon petition of at least 15 dentists.  If the petition is approved by the Board, the bylaws would be revised to reflect the addition of the new component.

Discussion took place regarding allocating monies to assist the newly recognized component.  After discussion, it was decided to defer the discussion to the next meeting of the Board of Governors.

This concluded the business of the Board of Governors.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE DISTRICT DENTAL SOCIETY OF THE
FIRST JUDICIAL DISTRICT, D/B/A THE NEW
YORK COUNTY DENTAL SOCIETY

Plaintiffs,

- against -                                    Case No.

THE NEW YORK COUNTY DENTAL
ASSOCIATION, INC., ELLIOTT MOSKOWITZ,
MELVYN LEIFERT, and ROBERT RAIBER

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF
NEW YORK COUNTY DENTAL SOCIETY'S MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 2

    A.    History and Description of the New York County Dental Society........................ 2

    B.    Description of the New Association ................................................................. 3

    C.    Organized Dentistry .......................................................................................... 3

    D.    Threats To Supplant the Society ...................................................................... 4

    E.    The Society's Mark ............................................................................................ 5

    F.    The Defendants' Wrongful Conduct ................................................................ 5

    G.    Resulting Confusion and Harm ........................................................................ 6

LEGAL ARGUMENT .................................................................................................... 7

STANDARD FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY
INJUNCTION ................................................................................................................. 7

POINT I THE SOCIETY IS ENTITLED TO A TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION ........................................................................... 8

    A.    The Society is Likely to Succeed on the Merits ............................................. 8

        1.    Federal Unfair Competition ...................................................................... 8

        2.    Violations of N.Y. Gen. Bus. Law §§ 133 and 349 ................................. 17

        3.    Tortious Interference with Business Relations ........................................ 18

    B.    The Society is Suffering and Will Suffer Irreparable Harm ........................... 19

    C.    The Balance of Hardships Weighs in Favor of the Society ............................ 21

CONCLUSION ............................................................................................................... 23

## TABLE OF AUTHORITIES

TABLE OF AUTHORITIES

### FEDERAL CASES

*American Auto. Ass'n (Inc.) v. AAA Auto. Club of Queens, Inc.*,
No. 97 Civ. 1180, 1999 WL 9791(E.D.N.Y. 1999) ......................................................8, 9, 21

*American Diabetes Ass'n v. National Diabetes Ass'n*,
533 F. Supp. 16 (E.D. Pa. 1981), *aff'd*, 681 F.2d 804 (3d Cir. 1983) ..............................5, 6, 7

*American Optical Corp. v. North American Optical Corp.*,
489 F. Supp. 433 (N.D.N.Y. 1979) ......................................................................12

*BigStar Entm't, Inc. v. Next Big Star, Inc.*,
105 F. Supp. 2d 185 (S.D.N.Y. 2000) ...................................................................16

*Brown v. It's Enterm't, Inc.*,
34 F. Supp. 2d 859 (E.D.N.Y. 1999) ....................................................................21

*Frank Brunckhorst Co. v. G. Heilerman Brewing Co., Inc.*,
875 F. Supp. 966, 980 (E.D.N.Y. 1999) ................................................................14

*Cancer Research Institute, Inc. v. Cancer Research Society, Inc.*
694 F. Supp. 1051 (S.D.N.Y. 1988) .......................................................11, 12, 13, 15

*Charles of the Ritz Group Ltd. v. Quality King Distribs.*,
832 F.2d 1317 (2d Cir. 1987) ............................................................................9

*Church of Scientology Intern. v. Elmira Mission*,
794 F.2d 38 (2d Cir. 1986) ..............................................................................19

*Cline v. 1-888-Plumbing Group, Inc.*,
146 F. Supp. 2d 351 (S.D.N.Y. 2001) ...................................................................12

*Dial-A-Mattress Operating Corp. v. Mattress Madness*,
841 F. Supp. 1339 (E.D.N.Y. 1994) .................................................................20, 21

*Florence Mfg. Co. v. J.C. Dowd & Co.*,
178 F. 73 (2d Cir. 1910) ................................................................................16

*Fonar Corp. v. Magnetic Resonance Plus, Inc.*,
957 F. Supp. 477 (S.D.N.Y. 1997) ......................................................................18

*Genesee Brewing Co., Inc. v. Stroh Brewing Co.*,
  124 F.3d 137 (2d Cir. 1997)..................................................................4, 13

*Hasbro, Inc. v. Lanard Toys, Ltd.*,
  858 F.2d 70 (2d Cir. 1988)..........................................................................13

*Hi-Tech Pharmacal Co., Inc. v. Hi-Tech Pharmaceuticals, Inc.*,
  2007 WL 1988737 (E.D.N.Y. July 5, 2007) ............................................14

*Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.*,
  478 F. Supp. 2d 340 (E.D.N.Y. 2007) ......................................................10

*Jews for Jesus v. Brodsky*,
  993 F. Supp. 282 (D.N.J.), aff'd, 159 F.3d 1351 (3d Cir. 1998) ...............11

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*,
  799 F.2d 867 (2d Cir. 1986).....................................................................9, 13

*McDonald's Corp. v. McBagel's, Inc.*,
  649 F. Supp. 1268 (S.D.N.Y. 1986)..............................................................9

*Medical Economics Co. v. Prescribing Reference, Inc.*,
  294 F. Supp. 2d 456 (S.D.N.Y. 2003)........................................................10

*Mobil Oil Corp. v. Pepasus Petroleum Corp.*,
  818 F.2d 254, 256 (2d Cir. 1987).......................................................9, 13, 14

*North Atlantic Instruments, Inc. v Haber*,
  188 F.3d 38 (2d Cir. 1999).............................................................................7

*Paddington Corp. v. Attiki Importers & Distribs., Inc.*,
  996 F.2d 577 (2d Cir. 1993).........................................................................13

*Perfect Fit Indus., Inc. v. Acme Quilting Co.*,
  618 F.2d 950 (2d Cir. 1980).........................................................................14

*Planned Parenthood Fed'n of America, Inc. v. Bucci*,
  1997 WL 133313, *3 (S.D.N.Y. March 29, 1997) .....................................19

*Polaroid Corp. v. Polarad Elecs. Corp.*,
  287 F.2d 492 (2d Cir. 1961), *cert. denied*, 368 U.S. 820 (1961)...........3, 4, 7, 10, 14

*Revlon Inc. v. Jerell Inc.*,
  713 F. Supp. 93 (S.D.N.Y. 1989) ...............................................................19

*Saratoga Vichy Spring Co. v. Lehman*,
   625 F.2d 1037 (2d Cir. 1980)............................................................................8

*Securitron Magnalock Corp. v. Schnabolk*,
   65 F.3d 256 (2d Cir. 1995)..............................................................................17

*Sports Authority, Inc. v. Prime Hospitality Corp.*
   89 F.3d 955 (2d Cir. 1996) .......................................................................10, 12

*The New York State Society of Certified Public Accountants v. Eric Louis Assocs., Inc.*,
   79 F. Supp. 2d 331 (S.D.N.Y. 1999)..........................................................10, 11

*Time, Inc. v. Peterson Pub. Co.*, 173 F.3d 113, 117 (2d. Cir. 1999)
   173 F.3d 113, 117 (2d. Cir. 1999)................................................................10

*Two Pesos v. Taco Cabana*,
   505 U.S. 763, 112 S. Ct. 2753 (1992).............................................................9

*U-Neek, Inc. v. Wal-Mart Stores, Inc.*,
   147 F. Supp. 2d 158 (S.D.N.Y. 2001)...........................................................17

*W.W.W. Pharm. Co. v. Gillette Co.*,
   984 F.2d 567 (2d Cir. 1993)............................................................................8

*Wali v. Coughlin*,
   754 F.2d 1015 (2d Cir. 1985)..........................................................................7

*Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co.*,
   735 F. Supp. 141 (S.D.N.Y.), *aff'd*, 916 F.2d 76 (2d Cir. 1990) ...................7

*Otokoyama Co. v. Wine of Japan Import, Inc.*,
   175 F.3d 266 (2d Cir. 1999)............................................................................7

## STATE CASES

*Frank's Rest. v. Lauramar Enters.*,
   273 A.D.2d 349 (2000) ...................................................................................17

*Goshen v. Mut. Life Ins. Co.*,
   98 N.Y.2d 314, 746 N.Y.S.2d 858 (2002) .....................................................17

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*,
   50 N.Y.2d 183, 428 N.Y.S.2d 628 (1990) .....................................................18

*M.J. & K. Co., Inc. v. Matthew Bender & Co., Inc.*,
   220 A.D.2d 488 (2d Dep't 1995).....................................................................18

# STATUTES

Fed. R. Civ. P. 65(a) ..........................................................................................................................1

Lanham Trademark Act, 15 U.S.C. § 1125(a)....................................................1, 2, 8, 9, 13

N.Y. Gen. Bus. Law §§ 133....................................................................................2, 10, 12

N.Y. Gen. Bus. Law § 349....................................................................................2, 11

N.Y. Gen. Bus. Law § 133....................................................................................2, 10

Plaintiff, The District Dental Society of the First Judicial District, d/b/a the New York County Dental Society (the "Society"), respectfully submits this memorandum of law in support of its application for an Order to Show Cause seeking a temporary restraining order and preliminary injunction, pursuant to Fed. R. Civ. P. 65(a), enjoining the Defendants, New York County Dental Association, Inc., ("New Association") Elliot Moskowitz, Melvyn Leifert and Robert Raiber (collectively "Defendants"), from, *inter alia*, operating a business under the name "New York County Dental Association" and using that name in its business and engaging in ongoing acts of unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as well as related and independent violations of New York state law.

## PRELIMINARY STATEMENT

The Defendants knowingly and intentionally violated the Society's common law and other proprietary rights and interests in the mark the NEW YORK COUNTY DENTAL SOCIETY when they formed the New Association to unfairly compete with the Society. The Society seeks to enjoin Defendants' unauthorized and unlawful use of the confusingly similarly named New Association which is attempting to compete with the Society in violation of Chapter 152 of the Laws of the State of New York, enacted on April 7, 1868 (known as "An Act to incorporate the Dental Societies for the purpose of improving and regulating the practice of dentistry in this State"). This Act gives the Society, and other similarly situated local professional organizations, a statutory monopoly to provide the services commonly associated with organized dentistry in their respective judicial districts or counties in New York state. Accordingly, the Society respectfully submits that the Defendants must be enjoined from operating the New Association and engaging in acts of unfair competition.

## STATEMENT OF FACTS

This is an unfair competition action involving two competing professional organizations for licensed dentists in New York County. By its complaint, the Society alleges claims against the New Association for unfair competition in violation of Section 43(a) of the Lanham Trademark Act, ("Lanham Act"), 15 U.S.C. § 1125(a); for related claims of common law trademark infringement and unfair competition; for tortious interference with business relations; for unfair and deceptive trade practices in violation of New York Gen. Bus. Law § 349; for violation of New York Gen. Bus. Law § 133; and for unjust enrichment.

### A.    History and Description of the New York County Dental Society

Incorporated 140 years ago on June 24, 1868, the Society is a professional organization of approximately 2,550 member dentists licensed and registered in New York State, all of whom practice in New York County. See Declaration of Ellen Gerber dated June 2, 2008 (hereinafter "Gerber Dec."), ¶ 2. The Society is the preeminent organization for professional dentistry in New York County. *Id.* It seeks to promote the science of dentistry, safeguard the interests of the public and the dental profession, elevate the standards of dental care and improve the methods of dental education, foster fraternal relations among dentists, secure the enactment and enforcement of just laws related to the practice of dentistry and enlighten the public regarding issues related to oral health. *Id.* at ¶ 3. To that end, the Society provides continuing education and professional training programs, offers products and services to assist its members in providing high quality dental care, advocates for legislation that will promote the best interests of the dental profession and advance patient care in New York County, and educates the public on issues related to dental care and oral health. *Id.* at ¶ 4.

B.    **Description of the New Association**

On February 22, 2008, the Defendants -- three past presidents of the Society and current members -- formed their own professional dental organization in New York County by incorporating the New Association.    The New Association's Certificate of Incorporation identifies virtually the identical purposes as the Society.    The New Association's Certificate of Incorporation provides that the directors of the New Association shall be defendants Elliott Moskowitz, Melvyn Leifert and Robert B. Raiber.

As explained below, the New Association was formed to compete with the Society in violation of New York law governing the composition of dental societies which limits the formation of local professional organizations to **one per county**.

C.    **Organized Dentistry**

The dental profession in the United States is structured in what is known as a "tripartite" system, consisting of a (i) local, (ii) state (New York State Dental Association, herinafter the "State Association") and (iii) national dental association, the American Dental Association ("ADA").

In 1868, the New York legislature enacted "An Act to incorporate the Dental Societies for the purpose of improving and regulating the practice of dentistry in this State" which governs the structure of organized dentistry in New York state.    Dentists in private practice in New York who seek to participate in organized dentistry (i.e., by joining the State Association and the ADA) are required to join through the local component dental Society in their respective county or judicial district.    By statute, there can only be **one** local component dental association **per county or judicial district**.    Accordingly, under the tripartite structure established by the New York legislature, dentists in New York County who wish to participate in organized dentistry only may do so by joining the Society.

3

**D.**     <u>Threats To Supplant the Society</u>

Last year, Roy Lasky, the Executive Director of the State Association, threatened to create a branch office in New York City to supplant the Society and put it out of business. *Id.* at ¶ 8. On July 11, 2007, Roy Lasky telephoned the Society's Executive Director, Ellen Gerber and the Society's then President, Maitreya P. Padukone, DMD. *Id.* at ¶ 9. Mr. Lasky said that he is opening an office in New York City to compete with the Society and to put it out of business. Mr. Lasky said that the new office would be a Manhattan division with officers, a newsletter, continuing education programs and other activities. Mr. Lasky claimed that an organizational meeting had already been held to form this new organization. *Id.* at ¶ 10.

On July 16, 2007, Mr. Lasky sent a memorandum, on State Association letterhead, to the Board of Governors, Component Presidents and Component Executive Directors with the subject line "New York City Office."

Mr. Lasky stated:

> NYSDA will open an office in Manhattan to better communicate with the membership and to further develop our relationship with legislative officials at both the state and local levels. A sizeable percentage of our membership either lives or practices in New York City, and it is critical that organized dentistry have a strong presence in this strategic location.

*Id.* at ¶ 11. Mr. Lasky also wrote that he had hired a former president of the Society, Dr. Elliott Moskowitz, editor of the *New York State Dental Journal*, to be the director of the new office and that Dr. Melyvn Leifert, another past president of the Society, will be the President of the new office's advisory committee. *Id.* In concluding, Mr. Lasky noted "[t]here can be no question that the public relations, education and public dental health benefits that will evolve will more than justify the effort we put into this important move." *Id.*

4

E.      **The Society's Mark**

For more than a decade, the Society has continuously used the name NEW YORK COUNTY DENTAL SOCIETY as a service mark (the "Mark") in rendering its services and the marketing and advertising thereof in interstate commerce. The Mark has been continuously used since that time. NEW YORK COUNTY DENTAL SOCIETY has come to be recognized and relied upon by members and dentists as identifying the Society and its services. On June 19, 1998 the Society filed with the New York Department of State an Assumed Name Certificate authorizing it to do business under the name "New York County Dental Society." *Id.* at ¶ 5.

The Society has continuously used the Mark to publicize its activities, to promote its programs, and in connection with the products and services it offers to its members. It has engaged in extraordinary and costly marketing and advertising activities. *Id.* at ¶ 6. The Society's name represents valuable goodwill. *Id.*

F.      **The Defendants' Wrongful Conduct**

After forming the New Association in February, Dr. Elliott Moskowitz, as the Executive Director of the New Association, sent a letter dated March 28, 2008 to Ellen Gerber, the Society's Executive Director on the New Association's letterhead announcing the formation of a new dental organization in the New York City Area called the "New York County Dental Association." *Id.* at ¶ 12.

The letter provides, in pertinent part, as follows:

The NYCDA will have a strong legislative presence in the New York City area and our efforts will complement, support and will be coordinated with the legislative goals of the ADA tripartite structure. Additionally, the NYCDA will reach out to our academic institutions in an effort to support meaningful educational programs.

*Id.* at ¶ 13. In conclusion, Dr. Moskowitz notes that the he looks "forward to announcing upcoming projects of the New York County Dental Association." *Id.*

5

The New Association's letterhead bears a logo of the Statute of Liberty which is similar to the Statute of Liberty logo used in conjunction with the annual Greater New York Dental Meeting. *Id.* ¶ 14. For the last 80 years, the Society has co-sponsored the Greater New York Dental Meeting with the Second District Dental Society. *Id.* This annual dental conference offers scientific sessions, continuing education, and product and technology demonstrations for dentists from all over the United States. *Id.* at ¶ 15. The Greater New York Dental Meeting is the largest dental conference in North America and it is a principal source of revenue for both the Society and the Second District Dental Society. *Id.*

On February 26, 2008, Robert Raiber registered the Internet domain name for the New Association as www.nycdentalassociation.org. *Id.* at ¶ 16. The New Association's Internet domain name is confusingly similar to the Society's domain name www.nycdentalsociety.org. *Id.* at ¶ 7. The New Association's Internet website boasts that its goal is:

> [t]o promote the science, art and profession of dentistry as well as to support the American Dental Association Tri-partite structure on a local, state and national level. To disseminate knowledge and information to foster better oral health of the public in the County of New York in all aspects of dentistry by means of educational forums, programs, seminars, publications, the media, and to work with community and legislative bodies to promote increased awareness of the importance of oral health care.

*Id.* at ¶ 16. The New Association's Internet website directly solicits the Society's members by stating "Now New York County ADA members may join an association whose goals are to work within the tripartite system." *Id.* at ¶ 17.

### G.    Resulting Confusion and Harm

The New Association's formation, in violation of New York law, and its marketing, advertising and promotion of its competing services and use of a confusingly similar service mark and similar trade name has caused and will continue to cause confusion among dentists in the organized practice of dentistry. *Id.* at ¶ 18.

6

As a result of Defendants' use and threatened continued use of the name "NEW YORK COUNTY DENTAL ASSOCIATION", it is likely members of the public have and will continue to believe that the New Association's services originate from, are approved, sponsored, or otherwise associated with the Society. Defendants' use of the name "NEW YORK COUNTY DENTAL ASSOCIATION" and Defendants' continued use will cause confusion and direct economic harm to the Society. Moreover, Defendants threaten to damage the Society's most important asset – its impeccable and untarnished reputation. Based upon the foregoing, the Society seeks injunctive relief as set forth in detail in the Order to Show Cause and Complaint. *Id.* at ¶ 16.

## LEGAL ARGUMENT

### STANDARD FOR TEMPORARY
### RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, a court should grant a preliminary injunction where the requesting party shows that: "1) absent injunctive relief, it will suffer irreparable harm, and 2) either a) that it is likely to succeed on the merits, or b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party." *North Atlantic Instruments, Inc. v Haber*, 188 F.3d 38, 43 (2d Cir. 1999) (*quoting Otokoyama Co. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir. 1999)). The same criteria apply to a temporary restraining order. *Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co.*, 735 F. Supp. 141, 143 (S.D.N.Y.), *aff'd*, 916 F.2d 76 (2d Cir. 1990). "A movant seeking to avail himself of the first alternative need not show that success is an absolute certainty. He need only make a showing that the probability of his prevailing is better than fifty percent. There may remain considerable room for doubt." *Wali v. Coughlin*, 754 F.2d 1015, 1024 (2d Cir. 1985).

In this case, the prerequisites for a temporary restraining order and preliminary injunction are plainly met. A preliminary injunction is necessary and appropriate because Defendants have used its name to provide identical dental professional and educational services as to the Society. The erosion of goodwill caused by Defendants directly infringing use of the NEW YORK COUNTY DENTAL SOCIETY mark is causing irreparable harm to the Society. As set forth below, the Society has established irreparable harm and likelihood of success on the merits for each of its causes of action.

POINT I

**THE SOCIETY IS ENTITLED TO A TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**A.      The Society is Likely to Succeed on the Merits**

In the complaint, the Society has asserted claims for: (1) federal unfair competition, pursuant to section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (2006); (2) violations of N.Y. Gen. Bus. Law §§ 133 (McKinney's 2007) and 349 (McKinney's 2007); (3) tortious interference with existing and prospective business relations under New York law; and (4) unfair competition under New York common law.

**1.      Federal Unfair Competition**

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), prohibits any person from using in commerce any term or false designation of origin which "is likely to cause confusion . . . as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a).[1] To succeed on a claim under section 43(a), a plaintiff must show

---

[1] A claim of unfair competition under New York common law, like that under the Lanham Act, requires proof of likelihood of confusion for injunctive relief. *See W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 576 (2d Cir. 1993) Additionally, there must be some showing of bad faith. *See Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980); *American Auto. Ass'n*, 1999 WL 97918, at *9. In this case, the Society has demonstrated

that there is a likelihood of confusion as to the source or sponsorship of defendant's products or services. *See Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986). Likelihood of confusion refers to confusion of any type, including confusion as to source, sponsorship, affiliation, connection or identification. *McDonald's Corp. v. McBagel's, Inc.*, 649 F. Supp. 1268, 1273 (S.D.N.Y. 1986). Section 43(a) prohibits the infringement of unregistered, common law trademarks. 15 U.S.C. § 1125(A)(1); *Two Pesos v. Taco Cabana*, 505 U.S. 763, 768, 112 S.Ct. 2753 (1992) ("[I]t is common ground that § 43(a) protects qualifying unregistered trademarks…").

As demonstrated below, the Society has established a likelihood of confusion based upon Defendants' past and threatened continued use of "NEW YORK COUNTY DENTAL ASSOCIATION" in connection with its dental educational and association services. Likelihood of confusion is evaluated by considering the multiple factors set forth in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961), *cert. denied*, 368 U.S. 820 (1961), namely, (1) the strength of plaintiff's mark, (2) the similarity between the two marks, (3) the proximity of the products in the marketplace, (4) the likelihood that the prior owner will bridge the gap between the products, (5) evidence of actual confusion, (6) defendant's bad faith, (7) the quality of defendant's product, and (8) the sophistication of the relevant consumer group. Each factor must be considered and no single factor is controlling. *See Charles of the Ritz Group Ltd. v. Quality King Distribs.*, 832 F.2d 1317, 1321 (2d Cir. 1987). However, the Second Circuit has described the first three criteria as "perhaps the most significant." *See American Auto. Ass'n (Inc.) v. AAA Auto. Club of Queens, Inc.*, No. 97 Civ. 1180, 1999 WL 97918, *4 (E.D.N.Y. 1999) (quoting *Mobil Oil Corp. v. Pepasus Petroleum Corp.*, 818 F.2d 254, 256 (2d Cir. 1987).

---

Defendants' bad faith. *See* Part II(A)(1)(f), *infra*. Thus, if the Society demonstrates unfair competition under the Lanham Act, it also has demonstrated unfair competition under New York common law.

An analysis of each of the *Polaroid* factors in this case weighs heavily in favor of the Society. Accordingly, the Society has demonstrated the likelihood of success of its unfair competition claim. *See Sports Authority, Inc. v. Prime Hospitality Corp.,* 89 F.3d 955, 960 (2d Cir. 1996) (court used *Polaroid* test to evaluate likelihood of confusion for both infringement and unfair competition claims).

a)    NEW YORK COUNTY DENTAL SOCIETY is a strong mark

Strength of a mark has two components: 1) inherent strength or distinctiveness, and 2) acquired strength, or degree of consumer recognition. *Medical Economics Co. v. Prescribing Reference, Inc.,* 294 F. Supp.2d 456, 462-63 (S.D.N.Y. 2003). "Section 43(a) may protect unregistered trademarks from infringement, and even offers a degree of protection from unfair competition for 'unregistrable marks,' such as generic words that have acquired secondary meaning." *Genessee Brewing Co., Inc. v. Stroh Brewing Co.,* 124 F.3d 137, 142 (2d Cir. 1997). A mark acquires a "[s]econdary meaning … when the name and the business have become synonymous in the mind of the public, submerging the primary meaning of the term in favor of its meaning as a word identifying that business." *Time, Inc. v. Peterson Pub. Co.,* 173 F.3d 113, 117 (2d. Cir. 1999) (internal quotations omitted). A Plaintiff may prove secondary meaning through a variety of different types of evidence, including consumer surveys, advertising efforts, sales volume, media coverage, and length and exclusivity of the mark. *Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.,* 478 F. Supp.2d 340, 344-45 (E.D.N.Y. 2007).

The Mark, which the Society has owned and used exclusively for at least the past decade, is entitled to protection because it has acquired strength through secondary meaning. *See The New York State Society of Certified Public Accountants v. Eric Louis Assocs., Inc.,* 79 F. Supp.2d 331, 339 (S.D.N.Y. 1999) (hereinafter, "NYSSCPA") (finding that even though the mark,

10

"NYSSCPA," was unregistered, it had acquired secondary meaning and was, therefore, entitled to protection under the Lanham Act).

There are six factors to consider in determining whether a mark has acquired secondary meaning:

> (1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and, (6) length and exclusivity of the mark's use.  No single factor is determinative and every element need not be proved.  The most important factor, however, is (5).

*Id.* (citations omitted).

The mark NEW YORK COUNTY DENTAL SOCIETY is widely advertised and recognized.  The mark NEW YORK COUNTY DENTAL SOCIETY has acquired secondary meaning based on:  (1) The Society's exclusive use of the mark; (2) the extent of the Society's advertising and marketing efforts; (3) the extent of the Society's programs, products and services; and (4) the credentials of those associated with the Society.  *See Cancer Research Institute, Inc. v. Cancer Research Society, Inc.,* 694 F. Supp. 1051, 1055 (S.D.N.Y. 1988); *American Diabetes Ass'n v. Nat'l Diabetes Ass'n,* 533 F. Supp. 16, 19 (E.D. Pa. 1981) (the terms "National" and "American" "may cause confusion because they convey the same meaning or evoke the same mental image."), *aff'd,* 681 F.2d 804 (3d Cir. 1982); *See also Jews for Jesus v. Brodsky,* 993 F. Supp. 282, 303 (D.N.J. 1998), *aff'd,* 159 F.3d 1351 (3d Cir. 1998) (name of plaintiff's organization achieved secondary meaning after being extensively advertised in magazines, brochures, newspapers, and the Internet).

For these reasons, the Mark has acquired secondary meaning that cannot be disputed and it is, therefore, entitled to protection.  Thus, the strength of NEW YORK COUNTY DENTAL Society cannot reasonably be disputed.

b)     Defendants' use of "NEW YORK COUNTY DENTAL ASSOCIATION" is virtually indistinguishable from the Society's Mark

The Defendants' name is virtually identical to the Society's Mark as both marks contain the words "NEW YORK COUNTY DENTAL." The two names are virtually identical and resemble one another in appearance and pronunciation. *See Cancer Research*, *Inst.*, 694 F. Supp. at 1056; *American Optical Corp. v. N. American Optical Corp.*, 489 F. Supp. 443, 449 (N.D.N.Y. 1979); *American Diabetes Ass'n*, 533 F. Supp at 20 (E.D. Pa. 1981). *See also Cline v. 1-888-Plumbing Group, Inc.*, 146 F. Supp. 2d 351, 366 (S.D.N.Y. 2001) (marks 1-800-PLUMBING and 1-888-PLUMBING are nearly identical in their written and aural composition and likely to be confused).

"NEW YORK COUNTY DENTAL SOCIETY" and "NEW YORK COUNTY DENTAL ASSOCIATION" are substantially certain to be confused because both organizations provide association and educational services for the dental profession and dental professionals in the same geographic area. *See Cancer Research*, *Inst.*, 694 F. Supp. at 1056 (finding similarity where two organizations raising funds for cancer had "strikingly" similar names); *American Diabetes*, *Ass'n.*, 533 F. Supp. at 20 (finding similarity between marks of two organizations raising funds for diabetes); *Sports Authority*, 89 F.3d at 962; (in determining similarity, courts look at how the marks are presented in the marketplace). Both marks "NEW YORK COUNTY DENTAL SOCIETY" and "NEW YORK COUNTY DENTAL ASSOCIATION" evoke the image of a dental association whose scope encompasses New York County. Thus, the overall impression of the marks is likely to lead to confusion.

Accordingly, Defendants' use of the name "NEW YORK COUNTY DENTAL ASSOCIATION" in connection with a dental education and association services organization has caused and will continue to cause confusion among the general public.

12

c)    The Dental-Related Activities of the Society and Defendants are Proximate in the Marketplace

The third factor weighs heavily in favor of the Society because the services offered by both parties are directly proximate in the marketplace. *See Cancer Research*, 694 F. Supp. at 1056 (likelihood of confusion between two organizations soliciting funds for cancer in identical markets); American Diabetes, 533 F. Supp. at 20 (E.D. Pa. 1981) (likelihood of confusion between two organization soliciting funds for diabetes in identical markets).

Both the Society and Defendants are engaged in education and professional dental services and are in direct competition in identical markets. Both parties have websites located on the Internet, and compete for the member dentists with practices in New York County, Internet users who are searching for a website that uses the Society's mark as its address. Thus, the likelihood of confusion among Internet users is high.

d)    There is no Gap to Bridge

The fourth *Polaroid* factor, bridging the gap, is not applicable because Defendants have expanded into the Society's market niche and thus there is no gap to bridge. *See Paddington Corp. v. Attiki Importers & Distribs., Inc.*, 996 F.2d 577, 586 (2d Cir. 1993) (where the market for competing goods or services is the same, there is no need to consider whether plaintiff will bridge the gap between the markets). Thus, this factor also favors Society.

e)    Evidence of Actual Consumer Confusion is Not Necessary to Demonstrate Unfair Competition

The law has long provided that trade name and service mark infringement can be found based on proof merely of "likely" confusion. 15 U.S.C. § 1125(a). While there can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion, it is not necessary to show actual confusion to succeed on an unfair competition claim. *See, e.g., Lois Sportswear, U.S.A., Inc.* 799 F.2d at 875; *Mobil Oil Corp.*, 818 F.2d at 259; *American Diabetes*

13

*Ass'n.*, 533 F. Supp. at 20. An absence of actual confusion is less significant when, as the case is here, the period in which the two services have coexisted is a short one. *See Frank Brunckhorst Co. v. G. Heilerman Brewing Co., Inc.*, 875 F. Supp. 966, 980 (E.D.N.Y. 1999) (it would be unfair to penalize plaintiffs by forcing them to wait for more evidence of actual confusion instead of acting to protect their trademark rights before serious damage has occurred).

The New Association's formation, in violation of New York law, and its marketing, advertising and promotion of its competing services and use of a confusingly similar service mark and similar trade name will likely cause confusion among dentists in the organized practice of dentistry.

f)    Defendants' Blatant Use of the Dominant Portion
of the Society's Mark is Clearly in Bad Faith

An analysis of the sixth factor, bad faith, also weighs in favor of the Society. A showing of even a callous or reckless disregard for the rights of others raises a strong presumption of likelihood of confusion. *Mobil Oil Corp.*, 818 F.2d at 258. Where there is proof of wrongful intent, likelihood of confusion may be presumed. *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 618 F.2d 950, 954 (2d Cir. 1980).

There is no question that Defendants -- long time members and former officers of the Society -- knew that the Society has made exclusive use of the mark NEW YORK COUNTY DENTAL SOCIETY for over a decade. Armed with this knowledge, Defendants deliberately created a new association related to the dental professional that directly competes with the Society and uses virtually the identical service mark. Elliot Moskowitz, Melyvyn Leifert and Robert Raiber are active, conscious, moving forces behind the Associations acts of unfair competition.    .

Defendants have used and threaten to continue to use and capitalize on the good will and reputation of the NEW YORK COUNTY DENTAL SOCIETY mark. Defendants have used their similar mark NEW YORK COUNTY DENTAL ASSOCIATION in bad faith and with the intention of capitalizing on the Society's goodwill and likely confusion between the Society and the New Association.

g)     Defendants' Services are Inferior to Those
       the Society has Offered for the Last 140 Years

Of the seventh factor, the quality of the services, there is little information about the nature and quality of Defendants' services, if any, because Defendants have only recently commenced operations (within the last three months).

The Society, on the other hand, has spent considerable time, money, and energy in conducting its activities. *See Gerber Decl.* ¶ 6. The Society has continuously used the Mark to publicize its activities, to promote its programs, and in connection with the products and services it offers to its members. It has engaged in extraordinary and costly marketing and advertising activities. *Id.* As a result of these efforts, it has earned the respect of the lay public, professionals, and dentists. The fledgling nature of Defendants' activities and information pale in comparison, and are of substantially lesser quality when compared to the reputation of the Society. Any ensuing confusion resulting from Defendants' use of "NEW YORK COUNTY DENTAL ASSOCIATION" is likely to be destructive to the image that the Society has established. *See Cancer Research Inst.*, 694 F. Supp. at 1056-57 (plaintiff's interest in protecting its name and reputation is an important consideration in infringement cases).

15

h)    The Dental Professionals Can Not Distinguish
the Parties' Services from One Another

Consumer sophistication, the eighth and final Polaroid factor, also favors the Society. Defendants' use of a similar Mark and website causes not only "initial interest confusion,"[2] but ongoing confusion as one navigates the website, which will affect sophisticated visitors and unsophisticated visitors alike. *See also Florence Mfg. Co. v. J.C. Dowd & Co.*, 178 F. 73, 75 (2d Cir. 1910) (trademark law is not made for the protection of experts but rather for the general public, who do not stop to analyze but are governed by appearances and general impressions). Here, the Society has a statutory monopoly to provide the services commonly associated with organized dentistry in New York County. *See* Chapter 152 of the Laws of the State of New York, enacted on April 7, 1868. No county in New York State has competing local component dental societies. Accordingly, dentists in New York County should not be expected to distinguish between the services of two competing local component organizations.

New York courts have also included an Internet confusion factor. Such confusion arises when a consumer who searches for the Plaintiff's website with the aid of a search engine is directed instead to the Defendant's site because of a similarity in the parties' website addresses. *See BigStar Entm't, Inc. v. Next Big Star, Inc.*, 105 F. Supp.2d 185, 207 (S.D.N.Y. 2000). Here, there can be little doubt that the New Association intentionally created a domain name confusingly similar to the Society's website to deceive the public.

Because all eight *Polaroid* factors, and the Internet confusion factor, weigh heavily in favor of the Society, the Society has demonstrated likelihood of success of its unfair competition claim.

---

[2] Courts have found that a defendant's appropriation of a plaintiff's mark as a domain name and home page address can cause "initial interest confusion." This is the confusion initially experienced by consumers when, while looking for the website of a particular company, they are instead diverted to a website that uses the trademark of that company in its domain name. *See NYSSCPA*, 79 F.Supp.2d at 342.

2.    <u>Violations of N.Y. Gen. Bus. Law §§ 133 and 349</u>

N.Y. Gen. Bus. Law § 133 (McKinney's 2004) protects trade names from unlawful infringement by prohibiting one party from using another party's name as part of its own name with an intent to deceive the public. To prevail under § 133, the Society must demonstrate that Defendants used its name or symbol as part of Defendants' "corporate, assumed or trade name" for purposes of advertising with an intent to deceive. *See U-Neek, Inc. v. Wal-Mart Stores, Inc.*, 147 F. Supp. 2d 158, 176 (S.D.N.Y. 2001). Plaintiff is entitled to an injunction if it shows that Defendants' use of the Plaintiff's trade name "is likely to cause confusion, mistake, or deception; actual confusion need not be shown." *Frank's Rest. v. Lauramar Enters.*, 273 A.D.2d 349, 350 (2000).

N.Y. Gen. Bus. Law § 349 prohibits deceptive acts or practices in the conduct of any business. To prevail under § 349, the Society must show that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *U-Neek*, 147 F. Supp. 2d at 175-76 (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)). In addition, the "gravamen of the complaint must be consumer injury or harm to the public interest." *U-Neek*, 147 F. Supp. 2d at 176 (quoting *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995)). The aim of the statute is "to secure an honest market place where trust, and not deception, prevails." *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 323-24, 746 N.Y.S.2d 858 (2002). "It is not necessary that the Plaintiff be a consumer or stand in the shoes of a consumer to bring a section 349 claim." *Securitron*, 65 F.3d at 264.

In this case, Defendants' formation of a dental education and professional service association with the trade name "NEW YORK COUNTY DENTAL ASSOCIATION" is indisputably directed toward consumers because the purpose of the association is to promote the

17

interests of the dental profession and dental professionals. Further, Defendants' trade name is virtually identical with (1) the service mark NEW YORK COUNTY DENTAL SOCIETY, and (2) the trade name "New York County Dental Society." As a result, consumers have been and will continue to be deceived because Defendants have associated itself with the services provided by the Society. The Defendants' conduct creates both consumer injury and harm to the public interest because dentists are being misinformed and misdirected about the professional organization.

Accordingly, the Society is likely to succeed on its claims pursuant to N.Y. Gen. Bus. Law §§ 133 and 349.

### 3.   **Tortious Interference with Business Relations**

To establish a claim, under New York law, based on tortious interference with existing business relations, the Society must show (1) the existence of a business relation with a third party, (2) Defendant's interference with the relation by use of dishonest, unfair or improper means, and (3) Plaintiff sustained damages. *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 957 F. Supp. 477, 481-82 (S.D.N.Y. 1997). Similarly, "[t]ortious interference with [prospective] business relations applies to those situations where the third parties would have entered into an extended or contractual relationship with Plaintiff but for the wrongful acts of the Defendant" and "[i]n such an action the motive for the interference must be solely malicious." *M.J. & K. Co., Inc. v. Matthew Bender & Co., Inc.*, 220 A.D.2d 488, 490 (2d Dep't 1995). The required elements of a cause of action for tortious interference with prospective business relations are (1) business relations with a third party, (2) Defendant's interference with those business relations, (3) Defendant acting with sole purpose of harming the Plaintiff or using wrongful means, and (4) injury to the business relationship. *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 428 N.Y.S.2d 628 (1980).

By forming the New Association, Defendants intended to interfere with the Society's business relations with its member dentists as well as its potential relations with prospective member dentists. Defendants had no legitimate reason for forming the New Association other than to harm the Society. Indeed, the formation of the New Association followed express threats to supplant the Society with a new organization. The New Association's unlawful conduct has already harmed the Society by interfering with its business and members. Accordingly, the Society is likely to succeed on its claim for tortious interference with business relations.

**B.    The Society is Suffering and Will Suffer Irreparable Harm**

As a result of the New Association's actions, the Society is suffering irreparable harm to its business, goodwill and reputation, and will continue to do so if Defendants are not enjoined. In unfair competition cases, irreparable harm is presumed upon a showing that there is a protectable mark and that likelihood of confusion exists to find a probable violation of the Lanham Act. *See, e.g., Church of Scientology Int'l. v. Elmira Mission*, 794 F.2d 38, 41 (2d Cir. 1986); *Revlon Inc. v. Jerell Inc.*, 713 F. Supp. 93, 96 (S.D.N.Y. 1989). In a Lanham Act claim, a presumption of irreparable harm arises where a plaintiff makes a showing of likelihood of confusion. *Planned Parenthood Fed'n. of America, Inc. v. Bucci*, 1997 WL 133313, *3 (S.D.N.Y. March 29, 1997), *citing, Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 73 (2d Cir. 1988). As set forth above, the facts fully satisfy these requirements.

Likelihood of confusion, as demonstrated above, is itself sufficient to support a finding of irreparable harm in the context of trademark injunction and unfair competition injunctions. *Genesee Brewing Co., Inc.*, 124 F.3d at 142; *see also Hasbro*, 858 F.2d at 73. Therefore, irreparable harm is presumed, and Defendants should be enjoined preliminarily from using the Mark in their domain name and on the website.

In this case, however, there is also evidence of irreparable harm. Defendants' use of a trade name virtually identical to the Society's mark is virtually certain to engender substantial confusion of the public. The chief irreparable harm from unfair competition is loss of control over the reputation associated with the Mark, regardless of the actual quality of the infringing services. Defendants' actions create a likelihood of confusion among members of the dental profession as well as members of the public. The Society's reputation should not be put to jeopardy by misattribution of another's services.

In an action alleging service mark infringement, trade name infringement, or unfair competition, the senior user of the mark is presumed to suffer irreparable harm to their good will and reputation when the activities of a competitor demonstrate a high probability of consumer confusion as to the sponsorship of the service mark or trade name. *See Dial-A-Mattress Operating Corp. v. Mattress Madness,* 841 F. Supp. 1339, 1358 (E.D.N.Y. 1994); *see also Hi-Tech Pharmacal Co., Inc. v. Hi-Tech Pharmaceuticals, Inc.,* No. 05-CV-2679, 2007 WL 1988737 (E.D.N.Y. July 5, 2007). The Society has invested substantial time, money, and effort to develop the reputation of its dental services marketed under its name. It has strived to insure that its member services are of the highest quality.

As long as Defendants are allowed to operate a dental services association that derives its goodwill from its apparent association with the Society, the Society has lost its ability to control its own reputation and goodwill in the marketplace. Any negative or unsatisfying experiences that professional dentists experience with Defendants' practices will be attributed to the Society, and will cause permanent damage to its reputation. In this case, Defendants have and will continue to attempt to usurp the good will of the Society. Thus, a temporary restraining order and preliminary injunction are necessary and appropriate because the service mark NEW YORK

COUNTY DENTAL SOCIETY is too precious of an asset to be left "unprotected in the hands of a likely infringing user." *See Dial-a-Mattress*, 841 F. Supp. at 1359.

**C.**    **The Balance of Hardships Weighs in Favor of the Society**

The analysis of the *Polaroid* factors demonstrates a high likelihood of confusion if Defendants continue to operate under the name "NEW YORK COUNTY DENTAL ASSOCIATION."  Moreover, the balance of hardships weighs in favor of the Society.  The Society is being permanently undermined as the public is misled as to its affiliation with Defendants' services.  Further, the evidence shows that Defendants had a plan in the works to capitalize on the Society's goodwill and reputation.  They established the website with the infringing domain name and set it up so that it would appear as though it was affiliated with the Society.  Defendants had no legitimate purpose for their actions, other than to harm the Society.  Defendants' predatory tactics and express threats to supplant the Society are precisely the type of willful conduct that requires injunctive relief.  On the other hand, as set forth above, the Society has very legitimate reasons for wanting to enjoin Defendants from continuing such activities at the Society's expense.

While the granting of an injunction is governed by equitable principles, injunctive relief as has been described as "particularly appropriate in Lanham Act cases," and "any doubt as to appropriateness of injunctive relief is to be resolved . . . against the defendant, which has shown by its conduct that it cannot be trusted." *American Auto. Ass'n*, 1999 WL 97918, at *8 (quoting *Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc.*, 880 F. Supp. 1005, 1024 (S.D.N.Y. 1994)).  Where there is such a strong probability of success on the merits, a balance of hardship that weighs decidedly in favor of the movant, and a showing of irreparable harm, preliminary injunctive relief is both appropriate and required. *Brown v. It's Enterm't, Inc.*, 34 F. Supp. 2d

859, 860 (E.D.N.Y. 1999). Defendants must be enjoined from continuing to use "NEW YORK

COUNTY DENTAL ASSOCIATION" for dental educational and association services.

## CONCLUSION

For the foregoing reasons, plaintiff, the Society, respectfully requests that the Court issue an Order temporarily and preliminarily enjoining the Defendants from operating a business under the name "New York County Dental Association", including dismantling the New Association's website along with such other and further relief as the Court deems necessary and appropriate.

Dated: New York, New York
      June 3, 2008

                         Respectfully submitted,

                         Holland & Knight LLP

                         By:_____

                             Sean C. Sheely
                             Amy B. Kletnick
                             195 Broadway
                             New York, New York  10007
                             (212) 513-3200

                         Attorneys for Plaintiff The District Dental Society
                         of the First Judicial Districts D/B/A New York
                         County Dental Society

# 5372389_v4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE DISTRICT DENTAL SOCIETY OF THE
FIRST JUDICIAL DISTRICT, D/B/A THE NEW
YORK COUNTY DENTAL SOCIETY

                              Plaintiffs,

      - against -

THE NEW YORK COUNTY DENTAL
ASSOCIATION, INC., ELLIOTT MOSKOWITZ,
MELVYN LEIFERT, and ROBERT RAIBER

                              Defendants.

Case No.

**ORDER TO SHOW CAUSE FOR
PRELIMINARY INJUNCTION AND
TEMPORARY RESTRAINING
ORDER**

Upon the affidavit of Sean C. Sheely and declaration of Ellen Gerber, dated June 2, 2008, and upon the copy of the complaint hereto annexed, it is

ORDERED that the above named defendants show cause before a motion term of this Court, at Room ____, United States Courthouse, 500 Pearl Street, in New York, New York, on June _____, 2008 at _____ o'clock in the _____ thereof, or as soon thereafter as counsel may be heard, why an order for a preliminary injunction should not be issued pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining the defendants during the pendency of this action from

        a.       distributing, displaying, and advertising any of Defendants' services using the Mark(s) or any confusingly similar trademarks;

        b.       marketing, advertising or distributing any unauthorized services bearing any of Plaintiff's trademarks;

      c.      making any representations that the Defendants are affiliated or associated with Plaintiff;

      d.      any and all other relief this Court deems just and proper; and it is further

ORDERED that, sufficient reason having been shown therefor, pending the hearing of plaintiff's application for a preliminary injunction, pursuant to Rule 65, Fed. R. Civ. P., the defendants are temporarily restrained and enjoined from

      a.      distributing, displaying, and advertising any of Defendants' services using the Mark(s) or any confusingly similar trademarks;

      b.      marketing, advertising or distributing any unauthorized services bearing any of Plaintiff's trademarks;

      c.      making any representations that the Defendants are affiliated or associated with Plaintiff;

      d.      any and all other relief this Court deems just and proper; and it is further

ORDERED that personal service of the Complaint, moving papers, a copy of this order and annexed affidavit upon the Defendants or their counsel on or before _____, 2008, shall be deemed good and sufficient service thereof; and it is further

ORDERED that Defendants shall serve answering papers, if any, on or before _____, 2008, by overnight courier and telefax to Holland & Knight LLP, 195 Broadway, New York, New York 10007, Attention: Sean C. Sheely, Esq. (facsimile 212-385-9010); and it is further

ORDERED, that Plaintiff shall serve reply papers, if any, on or before _____, 2008, by personal service to Defendants.

DATED:      New York, New York
              June _____, 2008

ISSUED:      _____

SO ORDERED:

_____
United States District Judge

# 5374841_v1

# GERBER DECLARATION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE DISTRICT DENTAL SOCIETY OF THE
FIRST JUDICIAL DISTRICT, D/B/A THE NEW
YORK COUNTY DENTAL SOCIETY

                       Plaintiffs,

   - against -

THE NEW YORK COUNTY DENTAL
ASSOCIATION, INC., ELLIOTT MOSKOWITZ,
MELVYN LEIFERT, and ROBERT RAIBER

                       Defendants.

Case No.

**DECLARATION OF ELLEN
GERBER IN SUPPORT OF
PLAINTIFF NEW YORK COUNTY
DENTAL SOCIETY'S MOTION FOR
A TEMPORARY RESTRAINING
ORDER AND PRELIMINARY
INJUNCTION**

I, ELLEN GERBER, being duly sworn, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1.    I am the Executive Director of the District Dental Society of the First Judicial District, d/b/a the New York County Dental Society ("Society") and as such I have personal knowledge of the facts set forth below and submit this declaration in support of the Society's Motion, dated June 3, 2008, for a temporary restraining order and preliminary injunction.

2.    Incorporated 140 years ago on June 24, 1868, the Society is a professional organization of approximately 2,550 member dentists licensed and registered in New York State with practices in New York County. The Society is the preeminent organization for professional dentistry in New York County.

3.      The Society seeks to promote the science of dentistry, safeguard the interests of the public and the dental profession, elevate the standards of dental care and improve the methods of dental education, foster fraternal relations among dentists, secure the enactment and enforcement of just laws related to the practice of dentistry and enlighten the public regarding issues related to oral health.

4.      In addition, the Society provides continuing education and professional training programs, offers products and services to assist its members in providing high quality dental care, and advocates for legislation that will promote the best interests of the dental profession and advance patient care in New York county, and educates the public on issues related to dental care and oral health.

5.      NEW YORK COUNTY DENTAL SOCIETY has come to be recognized and relied upon by members and dentists as identifying the Society and its services. On June 19, 1998 the Society filed with the New York Department of State an Assumed Name Certificate authorizing it to do business under the name "New York County Dental Society".

6.      The Society has spent considerable time, money, and energy in conducting its activities. The Society has used the Mark NEW YORK COUNTY DENTAL SOCIETY to publicize its activities, promote its programs, and in connection with the products and services it offers to its members. It has engaged in extraordinary and costly marketing and advertising activities. The Society's name represents valuable goodwill.

7.      The Society's Internet domain name is www.nycdentalociety.org.

2

8.    Last year, Roy Lasky, the Executive Director of the New York State Dental Association, threatened to create a branch office in New York City to supplant the Society and put it out of business.

9.    On July 11, 2007, Roy Lasky telephoned me and the Society's then President, Maitreya P. Padukone, DMD.

10.    During the call, Mr. Lasky said that he was opening an office in New York City to compete with the Society and to put it out of business. Mr. Lasky said that the new office would be a Manhattan division with officers, a newsletter, continuing education programs and other activities. Mr. Lasky claimed that an organizational meeting had already been held to form this new organization.

11.    On July 16, 2007, Mr. Lasky sent a memorandum, on State Association letterhead, to the Board of Governors, Component Presidents and Component Executive Directors with the subject line "New York City Office."

The letter said:

> NYSDA will open an office in Manhattan to better communicate with the membership and to further develop our relationship with legislative officials at both the state and local levels. A sizeable percentage of our membership either lives or practices in New York City, and it is critical that organized dentistry have a strong presence in this strategic location.

Mr. Lasky also wrote that he had hired a former president of the Society, Dr. Elliott Moskowitz, editor of the *New York State Dental Journal*, to be the director of the new office and that Dr. Melyvn Leifert, another past president of the Society, will be the President of the new office's advisory committee.

3

12.    After forming the New York County Dental Association ("New Association") in February, Dr. Elliott Moskowitz, as the Executive Director of the New Association, sent a letter dated March 28, 2008 to me on the New Association's letterhead announcing the formation of a new dental organization in the New York City Area called the "New York County Dental Association."  Attached hereto as Exhibit 1 is a true and correct copy of the March 28, 2008 letter.

13.    The letter provides, in pertinent part, as follows:

> The NYCDA will have a strong legislative presence in the New York City area and our efforts will complement, support and will be coordinated with the legislative goals of the ADA tripartite structure.   Additionally, the NYCDA will reach out to our academic institutions in an effort to support meaningful educational programs.

Dr. Moskowitz concluding the letter by noting that the he looks "forward to announcing upcoming projects of the New York County Dental Association."

14.    The New Association's letterhead bears a logo of the Statute of Liberty which is similar to the Statute of Liberty logo used in conjunction with the annual Greater New York Dental Meeting.   For the last 80 years, the Society has co-sponsored the Greater New York Dental Meeting with the Second District Dental Society.

15.    This annual dental conference offers scientific sessions, continuing education, and product and technology demonstrations for dentists from all over the United States.   The Greater New York Dental Meeting is the largest dental conference in North America and it is a principal source of revenue for both the Society and the Second District Dental Society.

4

16.    On or about February 26, 2008, Robert Raiber registered the Internet domain name for the New Association as www.nycdentalassociation.org. Attached hereto as Exhibit 2 is a true and correct copy of images from the New Association's website. The New Association's Internet website boasts that its goal is:

> [t]o promote the science, art and profession of dentistry as well as to support the American Dental Association Tri-partite structure on a local, state and national level.    To disseminate knowledge and information to foster better oral health of the public in the County of New York in all aspects of dentistry by means of educational forums, programs, seminars, publications, the media, and to work with community and legislative bodies to promote increased awareness of the importance of oral health care.

17.    The New Association's Internet domain name is confusingly similar to the Society's Internet domain name.    The New Association's Internet website directly solicits the Society's members by stating "Now New York County ADA members may join an association whose goals are to work within the tripartite system."

18.    The New Association's formation and its marketing, advertising and promotion of its competing services and use of a confusingly similar service mark and similar trade name has caused and will continue to cause confusion among dentists in the organized practice of dentistry.

19.    As a result of the New Association's use and threatened continued use of the name "NEW YORK COUNTY DENTAL ASSOCIATION", it is likely members of the public have and will continue to believe that the New Association's services originate from, are approved, sponsored, or otherwise associated with the Society. The New Association's use of the name "NEW YORK COUNTY DENTAL

5

ASSOCIATION" and the New Association's continued use will cause confusion and direct economic harm to the Society.   Moreover, the New Association threatens to damage the Society's most important asset – its impeccable and unparalleled reputation.

20.    The New Association's use of a trade name virtually identical to the Society's mark is virtually certain to engender substantial confusion of the public. The New Association's actions create a likelihood of confusion among members of the dental profession as well as members of the public.   The Society's reputation should not be put to jeopardy by misattribution of another's services.

21.    As long as the New Association is allowed to operate a dental services association that derives its goodwill from its apparent association with the Society, the Society has lost its ability to control its own reputation and goodwill in the marketplace.   Any negative or unsatisfying experiences that professional dentists experience with the New Association's practices will be attributed to the Society, and will cause permanent damage to its reputation and irreparable harm to the Society.  The New Association has and will continue to attempt to usurp the good will of the Society.

6

I declare under penalty of perjury that the foregoing statements are true and accurate to the best of my knowledge, information and belief.

Dated:  June 2, 2008                                     By: _Ellen Gerber_____
                                                              ELLEN GERBER

# 5373629_v1

# EXHIBIT 1

# The New York County Dental Association



March, 28, 2008

Ms. Ellen Gerber
Executive Director
The New York County Dental Society
6 East 43rd Street
New York, NY 10017

**Officers**

Melvyn Leifert, D.D.S.
*President*
Dr. Charles Kaner, D.D..S
*Vice-President*
Robert Raiber, D.D.S.
*Secretary-Treasurer*

Elliott M. Moskowitz, D.D.S.,M.Sd
*Executive Director*

*Advisory Board*

George C. Cisneros, D.M.D.,M.M.Sc
Ronniette C. Garcia, D.D.S.
Gus Kaloudis, D.D.S.
Yon Lai, D.D.S.
Ira Lamster, D.D.S.,M.M.Sc
Michael Leifert, D.D.S.
M. Bina Park. D.D.S.,M.S

Dear Ellen,

We are pleased to announce the formation of a new dental organization in
the New York City area. The New York County Dental Association is a
dental organization dedicated to benefitting the dental profession and the
public. We plan to work closely with organizations that are supportive of
the ADA tripartite structure. The NYCDA will focus upon the real needs
of individual dentists and the critical issues affecting the public with
respect to optimizing oral health care in the New York City area.

The NYCDA will have a strong legislative presence in the New York
City area and our efforts will complement, support, and will be
coordinated with the legislative goals of the ADA tripartite structure.
Additionally, the NYCDA will reach out to our academic institutions in an
effort to support meaningful educational programs.

We hope that your organization will view our presence as a collegial
emergence of a new genre of dental organization. Our recent
organizational leadership meetings have centered upon improving oral
health care access of individual patients within our metropolitan region.
We imagine that your Board of Directors's meetings have been similarly
focused upon this very same subject as well as how you will be utilizing
your resources (financial and otherwise) to effectively address this
important subject.

We look forward to announcing upcoming projects of The New York
County Dental Association.

Collegially,

Elliott M. Moskowitz, D.D.S.,M.Sd
Executive Director

*Website www.nycdentalassociation.org*

# EXHIBIT 2

HOME PAGE | CONTACT US



# NEW YORK COUNTY DENTAL ASSOCIATION

## promoting the profession....protecting the public

**promoting the profession......protecting the public**

Our goals are: To promote the science, art and profession of dentistry as well as to support the American Dental Association Tri-partite structure on a local, state and national level.   To disseminate knowledge and information to foster better oral health of the public in the County of New York in all

aspects of dentistry by means of educational forums, programs, seminars, publications, the media, and to work with community and legislative bodies to promote increased awareness of the importance of oral health care.

Now New York County  ADA members may join an association whose goals are to work within the tripartite system .

*We endorse the MLMIC professional protection plan.   As a mutual company ovwned and operated by its policyholders, MLMIC is committed to being here, working for you, now and in the future.*

Copyright 2008. nycdentalassociation, inc.All rights reserved.



GoDaddy.com is the world's #1 ICANN-accredited domain name registrar

# SHEELY AFFIDAVIT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE DISTRICT DENTAL SOCIETY OF THE
FIRST JUDICIAL DISTRICT, D/B/A THE NEW
YORK COUNTY DENTAL SOCIETY

                                        Plaintiffs,

        - against -

THE NEW YORK COUNTY DENTAL
ASSOCIATION, INC., ELLIOTT MOSKOWITZ,
MELVYN LEIFERT, and ROBERT RAIBER

                                        Defendants.

Case No.

**AFFIDAVIT OF SEAN C. SHEELY
IN SUPPORT OF PLAINTIFF'S
ORDER TO SHOW CAUSE FOR A
TEMPORARY RESTRAINING
ORDER AND PRELIMINARY
INJUNCTION**

SEAN C. SHEELY, being duly sworn, hereby deposes and says as follows:

1.      I am a partner with the firm of Holland & Knight LLP, counsel for Plaintiff, the District Dental Society of the First Judicial District, d/b/a New York County Dental Society (the "Society"), in the above captioned action. I am familiar with the proceedings in this case. I make this statement based on my personal knowledge of the facts set forth herein and in support of Plaintiff's Order to Show Cause and Motion for a preliminary injunction and temporary restraining order.

2.      By e-mail and fax dated June 2, 2008, annexed hereto as Exhibit 1, I advised Defendants that Plaintiff would be making this application by order to show cause on June 3, 2008. After sending this notice, I received a call from a lawyer for the defendant, Bill Sheehan, Esq., inquiring about the order to show cause application. He advised that he was not sure if counsel would be appearing for the defendants on this application.

3.      Annexed hereto as Exhibit 2 is a copy of Plaintiff's Complaint in this action, dated June 2, 2008. The Complaint in this action was filed on June 3, 2008.

4.      The Society respectfully moves for a temporary restraining order and preliminary injunction enjoining the defendants from engaging in unfair competition. This order to show cause application is made on the grounds that defendants, unless restrained, will continue to infringe the Society's trademark causing confusion and irreparable harm to the Society's goodwill and reputation.

5.      The Society does not have an adequate remedy at law.

6.      Defendants' use of a trade name virtually identical to the Society's mark is certain to engender substantial confusion of the public. Defendants' actions create a likelihood of confusion among members of the dental profession as well as members of the public. The Society's reputation should not be put to jeopardy by misattribution of another's services.

7.      The Society has invested substantial time, money, and effort to develop the reputation of its dental services marketed under its name. It has strived to insure that its member services are of the highest quality.

8.      As long as Defendants are allowed to operate a dental services association that derives its goodwill from its apparent association with the Society, the Society has lost its ability to control its own reputation and goodwill in the marketplace. Any negative or unsatisfying experiences that professional dentists experience with Defendants' practices will be attributed to the Society, and will cause permanent damage to its reputation and irreparable harm to the Society. Defendants have and will continue to attempt to usurp the good will of the Society.

9.      A temporary restraining order and preliminary injunction are necessary and appropriate because the service mark NEW YORK COUNTY DENTAL SOCIETY is too precious of an asset to be left unprotected in the hands of a likely infringing user.

10.    It is respectfully requested that this Court grant Plaintiff's Order to Show Cause for a preliminary injunction and temporary restraining order and for such other and further relief as this Court may deem just and proper.

11.    No prior application has been made to this or any court for the specific relief requested herein.

Dated: June 3, 2008
      New York, New York

SEAN C. SHEELY

Sworn to before me
this 2nd day of June, 2008.

Notary Public

# 5375264_v1

Elvin Ramos
Notary Public, State of New York
NO. 01RA4870243
Qualified in Queens County
Certificate filed in New York County
Commission Expires September 2, 2010

3

# EXHIBIT 1

# Holland+Knight

Tel   212 513 3200
Fax  212 385 9010

Holland & Knight LLP
195 Broadway, 24th Floor
New York, NY 10007-3189
www.hklaw.com

Sean C. Sheely
212 513 3538
sean.sheely@hklaw.com

June 2, 2008

<u>VIA EMAIL AND FAX</u>

Dr. Elliott Moskowitz
Director, New York County Dental Association
11 Fifth Avenue
New York, New York  10003
Fax: 212-674-7308
typodont@aol.com

Dr. Robert Raiber
630 Fifth Avenue, Suite 1809
New York, New York  10111
Fax: 212-315-0378
drrobertr@aol.com

Dr. Melvyn Leifert
30 Fifth Avenue
New York, New York  10011
Fax: 212-533-0162
docMML@aol.com

Re:     <u>New York County Dental Society</u>

Dear Dr. Moskowtiz, Dr. Raiber and Dr. Leifert:

We represent the District Dental Society of the First Judicial District, d/b/a New York County Dental Society (the "Society").

Please take notice that the Society will be filing a complaint tomorrow morning in the Southern District of New York against the New York County Dental Association and each of you individually for, *inter alia,* unfair competition. The Society will make an application for an Order to Show Cause seeking a Temporary Restraining Order and Preliminary Injunction enjoining the New York County Dental Association and you individually from operating a business under the name "New York County Dental Association" and engaging in ongoing acts of unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), as well as related and independent violations of New York state law.

Drs. Moskowitz, Raiber and Leifert
June 2, 2008
Page 2

We will appear before the Clerk's office at 11:30 a.m.  Please be guided accordingly.

Very truly yours,

Sean C. Sheely

cc:    Ellen Gerber

# 5374612_v1

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE DISTRICT DENTAL SOCIETY OF THE
FIRST JUDICIAL DISTRICT, D/B/A THE NEW
YORK COUNTY DENTAL SOCIETY

                                        Plaintiffs,

        - against -

THE NEW YORK COUNTY DENTAL
ASSOCIATION, INC., ELLIOTT MOSKOWITZ,
MELVYN LEIFERT, and ROBERT RAIBER

                                        Defendants.

Case No.

**COMPLAINT**

Plaintiff, The District Dental Society of the First Judicial District, d/b/a the New York County Dental Society, sues Defendants, New York County Dental Association, Inc., Elliott Moskowitz, individually, Melvyn Leifert, individually and Robert Raiber, individually, and alleges as follows:

## NATURE OF ACTION

1.    This is an action for unfair competition in violation of  Section 43(a) of the Lanham Trademark Act, ("Lanham Act"), 15 U.S.C. § 1125(a); for related claims of common law trademark infringement and unfair competition; for tortious interference with business relations; for unfair and deceptive trade practices in violation of New York Gen. Bus. Law § 349; for violation of New York Gen. Bus. Law § 133; and for unjust enrichment.

## PARTIES, JURISDICTION AND VENUE

2.    Plaintiff, The District Dental Society of the First Judicial District d/b/a the New York County Dental Society (the "NYCDS") is a professional organization, incorporated

pursuant to Chapter 152 of the Laws of the State of New York. The NYCDS's principal place of business is located at 6 East 43rd Street, New York, New York.

3.      Defendant, New York County Dental Association, Inc. ("Defendant" or the "New Association") is a professional organization, incorporated under Section 402 of the New York Not-for-Profit Corporation Law (the "NPCL") on February 22, 2008. Defendant does not list an address on its Certificate of Incorporation or its website. Upon information and belief, Defendant's principal place of business is 11 Fifth Avenue, New York, New York 10003 as that is the address listed for service of process.

4.      Defendant Dr. Elliott Moskowitz ("Moskowitz") is an individual. Upon information and belief, Moskowitz resides at 11 Fifth Avenue, New York, New York 10003.

5.      Defendant Dr. Melvyn Leifert ("Leifert") is an individual. Upon information and belief, Leifert resides at 14 Rutland Road, Great Neck, New York 11020.

6.      Defendant Dr. Robert B. Raiber ("Raiber") is an individual. Upon information and belief, Raiber resides at 1385 York Avenue #33D New York, New York 10021.

7.      This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. section 1331 because this action arises under the Lanham Act, 15 U.S.C. sections 1114 and 1125, and pursuant to the doctrine of supplemental jurisdiction.

8.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. sections 1391(b) and 1400(a) because the acts that form the basis for this Complaint occurred in this District, and a majority of the documents and witnesses are located here.

## GENERAL ALLEGATIONS

### The NYCDS Formation and Service Marks

2

9.    The NYCDS is a professional organization of dentists licensed and registered in New York State.  It is the preeminent organization for professional dentistry in New York County.

10.    The NYCDS seeks to promote the science of dentistry, safeguard the interests of the public and the dental profession, elevate the standards of dental care and improve the methods of dental education, foster fraternal relations among dentists, secure the enactment and enforcement of just laws related to the practice of dentistry and enlighten the public regarding issues related to oral health.

11.    To that end, the NYCDS provides continuing education and professional training programs, offers products and services to assist its members in providing high quality dental care, advocates for legislation that will promote the best interests of the dental profession and advance patient care in New York County, and educates the public on issues related to dental care and oral health.

12.    The NYCDS has approximately 2,550 member dentists.  Its membership is comprised primarily of "Active Members," *i.e.*, dentists who spend at least 50% of their time practicing dentistry in New York County.  The NYCDS also offers other categories of membership, such as "student membership" for individuals attending dental school or a post-graduate program in dentistry and who reside or attend school in New York County, "associate membership" for dentists who are active members of another component dental NYCDS but wish to join the NYCDS as non-voting members in order to avail themselves of certain membership benefits and, "retired membership" for Active Members of NYCDS who no longer earn income from any activity for which a license to practice dentistry or dental hygiene is

required or from service as a dental administrator, dental consultant or faculty member of a dental school.

13.    The NYCDS was incorporated on June 24, 1868, pursuant to Chapter 152 of the Laws of the State of New York, enacted on April 7, 1868 (known as "An Act to incorporate the Dental Societies for the purpose of improving and regulating the practice of dentistry in this State"), and continued by Chapter 987, Section 6 of the Laws of 1971 as amended by Chapter 138, Section 1 of the Laws of 1980.

14.    The NYCDS has been recognized by the Internal Revenue Service as an organization exempt from federal taxation on Section 501(c)(6) of the Internal Revenue Code. Section 501(c)(6) of the Code provides an exemption from federal taxation for business leagues, professional associations and similar entities organized to promote a common business interest provided that such entities are not organized for profit and no part of their net earnings inures to the benefit of any private individual.

15.    On June 19, 1998 the NYCDS filed with the New York Department of State an Assumed Name Certificate authorizing it to do business under the name "New York County Dental Society".

16.    Since at least June 1998, the NYCDS has continuously used NEW YORK COUNTY DENTAL SOCIETY as a service mark (the "Mark") in rendering its services and the marketing and advertising thereof in interstate commerce. The Mark has been continuously used since that time.

17.    NEW YORK COUNTY DENTAL SOCIETY has come to be recognized and relied upon by members and dentists as identifying the NYCDS and its services.

18.    The NYCDS's assumed name represents valuable goodwill.

4

19.     The Mark NEW YORK COUNT DENTAL SOCIETY has acquired distinctiveness.

20.     In addition, the NYCDS owns all common law rights in and to the Mark.

**The Tripartite Structure of Organized Dentistry**

21.     The dental profession in the United States is structured in what is known as a "tripartite" system, consisting of a (i) local, (ii) state and (iii) national dental association.

22.     Dentists in private practice in New York who seek to join the national association of dentists known as the American Dental Association ("ADA") are required to join through the appropriate component dental society in their respective county or judicial district. Dentists joining their respective county or judicial district component also become members of the New York State Dental Association ("NYSDA"), and the ADA.

23.     On April 7, 1868, the New York Legislature passed an Act to incorporate dental societies for the purpose of improving and regulating the practice of dentistry in New York (Chapter 152).

24.     Pursuant to this Act, local dental societies were organized consistent with the judicial districts of the Supreme Court of the State of New York and they were named "The District Dental Society" of the respective judicial district where they were located.

25.     The Act specifically provided for the incorporation of local dental societies in the First through Eighth Judicial Districts. The Act authorized dentists residing in each of these eight judicial districts to meet on the first Tuesday in June, 1868, at a specific location within the district. Provided that at least 15 dentists attended such meeting, the dental society of that judicial district would be deemed incorporated and could proceed to elect officers, adopt bylaws and begin conducting its affairs. The Act further provided that should the dentists residing in

5

any judicial district not meet and organize on the first Tuesday in June 1868 as provided in the Act, it shall be lawful for them, upon the call of 15 dentists residing in the district, to meet and incorporate at any time.

26.     Pursuant to the Act, elected delegates from the component dental societies from the various judicial districts were authorized to meet on the last Tuesday of June 1868 and form the Dental Society of the State of New York ("DSSNY"). DSSNY was formed on or about June 30, 1868. The Act was amended in 1997 to change DSSNY's name to the New York State Dental Association ("NYSDA").

27.     NYSDA has approximately 13,300 members almost all of whom are members of the component local dental societies.

28.     The component local dental societies each elect representatives to serve on NYSDA's governing body, known as the Board of Governors. Each component society is entitled to elect at least two representatives to the Board of Governors and may be entitled to more representatives based on the size of its membership. The Society has three representatives on the NYSDA Board of Governors, one of whom is the defendant Raiber.

29.     By way of example, the NYCDS was established in 1868 as the component organization for the dentists in the First Judicial District, which then included Manhattan and portions of what is now Bronx County. A few years after the Bronx became a separate judicial district in 1982, the Bronx County Dental Society was incorporated.

30.     In 1971, the Act was amended to continue the existing district dental societies and to permit the incorporation of a district dental society in any judicial district in which a district dental society is not incorporated.

31.     The Act was further amended in 1980 to permit the establishment of component societies along county lines – in addition to judicial districts – to adjust the representation within NYSDA. A county component society may be formed upon the request of 15 or more dentists residing or practicing dentistry within the county and the approval of NYSDA.

32.     By way of example, after the 1980 amendment permitting the formation of county component societies, the Tenth District Dental Society, which previously included dentists residing or practicing in both Nassau and Suffolk counties, became the Nassau County Dental Society and a separate county dental society was formed for Suffolk County.

33.     The Act provides that a dentist may be a member of only one component society for the purposes of representation in this tripartite structure.

34.     The Act provides for the incorporation of component dental societies based on geographic location to ensure adequate representation in this tripartite structure, establishes county lines as the smallest boundaries for such representation, and does not contemplate the creation of more than one dental society per county.

35.     As a matter of New York law, a second component society in New York County cannot be established.

**Threats to Put the NYCDS Out of Business**

36.     During 2007, tensions between NYSDA and the NYCDS involving the NYCDS's autonomy escalated. These tensions have involved, among other things, the NYCDS's right to express views and take positions on matters affecting its members, including legislative initiatives, that differ from positions taken by NYSDA management.

37.     Roy Lasky, the Executive Director of NYSDA, threatened to create a NYSDA office in New York City to supplant the NYCDS and put it out of business.

38.     In addition to serving as the Executive Director of NYSDA, Mr. Lasky is an officer of the Empire Dental Political Action Committee ("EDPAC"), NYSDA's political action committee.  Mr. Lasky's lobbying firm, Capital Public Affairs, also serves as a lobbyist for EDPAC.

39.     Specifically, Mr. Lasky warned the NYCDS that one of the functions of NYSDA's New York City office would be to provide continuing education courses free of charge in direct competition with the NYCDS's continuing education programs.

**Mr. Lasky's July 11, 2007 Telephone Call**

40.     On July 11, 2007, Roy Lasky telephoned the NYCDS's Executive Director, Ellen Gerber and the NYCDS's then President, Maitreya P. Padukone, DMD.

41.     Mr. Lasky's tone on the telephone conversation was threatening to Ms. Gerber and the NYCDS.

42.     Mr. Lasky began the telephone conversation by stating that he understood that the NYCDS's Executive Committee would be meeting in July 2007 to question the votes at NYSDA's Board of Governor's meeting.

43.     Mr. Lasky stated further that he has given up on the NYCDS because the NYCDS's members fight him at the legislative level and bypass him by directly contacting state senators and representatives.

44.     Mr. Lasky complained that he needs "team players" in the city and he accused the NYCDS of not being a "team player".

45.     Mr. Lasky said that he is opening an office in New York City to compete with the NYCDS and to put it out of business.

46.     Mr. Lasky told then President Dr. Padukone that he (Padukone) would be responsible for the demise of the NYCDS.

47.    Mr. Lasky said that the new office would be a Manhattan division with officers, a newsletter, continuing education programs and other activities.

48.    Mr. Lasky claimed that an organizational meeting had already been held to form this new organization.

49.    Before concluding the telephone call, Mr. Lasky said that when the NYCDS is ready to be a "team player" he will welcome the NYCDS back.

**Mr. Lasky's July 16, 2007 Memorandum**

50.    On July 16, 2007, Mr. Lasky sent a memorandum, on NYSDA letterhead, to the Board of Governors, Component Presidents and Component Executive Directors with the subject line "New York City Office."

51.    Mr. Lasky stated:

> NYSDA will open an office in Manhattan to better communicate with the membership and to further develop our relationship with legislative officials at both the state and local levels. A sizeable percentage of our membership either lives or practices in New York City, and it is critical that organized dentistry have a strong presence in this strategic location.

52.    Further, Mr. Lasky also wrote that he had hired a former president of the NYCDS, Dr. Elliott Moskowitz, editor of the New York State Dental Journal, to be the director of the new office and that Dr. Melyvn Leifert, another past president of the NYCDS, will be the President of the new office's advisory committee.

53.    In concluding, Mr. Lasky noted "[t]here can be no question that the public relations, education and public dental health benefits that will evolve will more than justify the effort we put into this important move."

9

**The Formation of the New Association**

54.    On November 15, 2007, an Application for Reservation of Name under section 303 of the Not-for-Profit Corporation Law was filed with the State of New York Department of State reserving the corporate name "New York County Dental Association, Inc."

55.    On February 22, 2008, the New Association was incorporated.

56.    The New Association's Certificate of Incorporation identifies virtually the identical purposes as the NYCDS.

57.    The New Association's Certificate of Incorporation provides that the directors of the New Association shall be Elliott Moskowitz, Melvyn Leifert and Robert B. Raiber, yet another past president of the NYCDS.

58.    The New Association's Certificate of Incorporation lists its purposes as including, among other things, "[t]o promote and improve the science, art and profession of dentistry"; "[t]o promote common interests of its members through the establishment of a collegial environment for dentists to explore ethical paths of professional expression and learning as may qualify it as exempt from federal income tax pursuant to Section 501(c)(6) of the Internal Revenue Code of 1986 or the corresponding provision of any subsequent federal tax laws"; and "[t]o support the American Dental Association tri-partite structure on a local, state and national level."

59.    Annexed to the New Association's Certificate of Incorporation is the consent, pursuant to Section 404(a) of the NPCL, of the Antitrust Bureau of the New York State Attorney General's Office Antitrust Bureau.    Under NPCL Section 404(a), every certificate of incorporation which includes among its purposes the formation of a trade or business association must have the consent of the Attorney General annexed to the certificate before it may be filed with the State.

60.    The New Association was formed to compete with the NYCDS in violation of the limitations provided in New York law governing the composition of Dental Societies.

**The March 28, 2008 Announcement**

61.    On March 28, 2008, Dr. Elliott Moskowitz, as the Executive Director of the New Association, sent a letter to Ellen Gerber, the NYCDS's Executive Director on the New Association's letterhead announcing the formation of a new dental organization in the New York City Area called the "New York County Dental Association."

62.    The New Association's letterhead identifies the following officers: Melvyn Leifert, President, Charles Kaner, Vice President, and Robert Raiber, Secretary Treasurer.

63.    Robert Raiber is a member of the NYCDS and is one of the NYCDS's three representatives to the Board of Governors of NYSDA. He is also a member of the NYSDA Executive Committee and chair of the NYSDA Board Audit Committee. He is also Vice Chairman of the New York State Dental Foundation.

64.    For the last 80 years, NYCDS has co-sponsored the Greater New York Dental Meeting with the Second District Dental Society. This annual dental conference offering scientific sessions, continuing education, and product and technology demonstrations for dentists from all over the United States. The Greater New York Dental Meeting is the largest dental conference in North America and it is a principal source of revenue for both the NYCDS and the Second District Dental Society.

65.    In the March 28 letter, Dr. Moskowitz wrote that the New Association is dedicated to benefiting the dental profession and the public and that it will work closely with organizations that are supportive of the ADA tripartite structure.

66.    The letter provided, in pertinent part, as follows:

11

> The NYCDA will have a strong legislative presence in the New York City area and our efforts will complement, support and will be coordinated with the legislative goals of the ADA tripartite structure.   Additionally, the NYCDA will reach out to our academic institutions in an effort to support meaningful educational programs.

67.     In conclusion, Dr. Moskowitz noted that the he looks "forward to announcing upcoming projects of the New York County Dental Association."

68.     At a meeting between representatives of NYSDA and the Society held on April 2, 2008, NYSDA denied any knowledge of the New Association.

**New Association's Logo**

69.     The New Association's letterhead bears a logo of the Statute of Liberty which is confusingly similar to the Statute of Liberty logo that is used in conjunction with the annual Greater New York Dental Meeting.

**New Association's Website**

70.     Upon information and belief, on or about February 26, 2008, Robert Raiber registered the Internet domain name for the New Association as www.nycdentalassociation.org

71.     The New Association's Internet domain name is confusingly similar to the NYCDS's domain name www.nycdentalsociety.org.

72.     The New Association's Internet website boasts that its goal is:

> [t]o promote the science, art and profession of dentistry as well as to support the American Dental Association Tri-partite structure on a local, state and national level.  To disseminate knowledge and information to foster better oral health of the public in the County of New York in all aspects of dentistry by means of educational forums, programs, seminars, publications, the media, and to work with community and legislative bodies to promote increased awareness of the importance of oral health care.

73.    In addition, the New Association's Internet website directly solicits the NYCDS's members by stating "Now New York County ADA members may join an association whose goals are to work within the tripartite system."

**Resulting Confusion**

74.    The New Association's formation, in violation of New York law, and its marketing, advertising and promotion of its competing services and use of a confusingly similar service mark and similar trade name has caused and will continue to cause confusion among dentists in the organized practice of dentistry.

75.    NYCDS has not granted Defendants any right, assignment or license to use its Mark in the manner set forth herein.

76.    Defendants' conduct infringes upon the Mark; trades upon the NYCDS's goodwill, reputation and service mark; dilutes the distinctiveness of the Mark; caused, and will continue to cause a likelihood of confusion in the marketplace as to the source and/or sponsorship of the New Association's unauthorized services; and otherwise unfairly competes with the NYCDS as set forth herein.

77.    The New Association's conduct has damaged and continues to damage the NYCDS.

78.    The NYCDS has no adequate remedy at law.

**COUNT I**
**FEDERAL UNFAIR COMPETITION**
**15 U.S.C. SECTION 1125**
**(Against All Defendants)**

79.    Plaintiff incorporates paragraphs 1 through 78 as if fully set forth herein.

80.    The New Association's use in commerce of the NEW YORK DENTAL ASSOCIATION falsely designates the New Association and its services as originating from or being sponsored by or somehow connected with the NYCDS.

81.    The New Association uses its competing mark to sell, promote, and market its services on its Internet website to gain an unfair competitive advantage over the NYCDS regarding the sale, promotion and marketing of its services.

## COUNT II
## COMMON LAW UNFAIR COMPETITION
### (Against All Defendants)

82.    Plaintiff incorporates paragraphs 1 through 81 as if fully set forth herein.

83.    The New Association intentionally used the mark, and distributed and publicized unauthorized services bearing the Mark.

84.    In violation of New York law governing the establishment of component dental societies, Defendant, following bad-faith misrepresentations, entered into direct competition with Plaintiff using a virtually identical business name and website.

85.    Defendants' actions were intended to confuse and mislead patrons and beneficiaries of Plaintiff's services so that such individuals and organizations would believe that Defendant's services were actually Plaintiff's services; an extension of Plaintiff; or services sanctioned or otherwise associated with Plaintiff. Defendants' conduct is and was calculated to deceive and confuse individuals and organizations into believing that they were receiving services authorized by Plaintiff.

86.    By its actions, Defendant misappropriated Plaintiff's goodwill. Defendants' conduct further diluted, and continues to dilute, the distinctive quality of the Mark and deprives Plaintiff of its control over the manner of use thereof. By deliberately engaging in such conduct,

14

Defendant is intentionally passing off its services as if authorized by Plaintiff, and otherwise unjustly enriching itself by trading upon Plaintiff's goodwill and the Mark.

87.    By using a similar name, it is virtually certain that the public will be confused by the businesses using similar names.

88.    By its actions, Defendants are deceptively gaining a competitive advantage over Plaintiff in the industry with respect to using the Mark to sell, promote or market its services.

89.    As a result of Defendants' conduct, Defendant has committed acts of unfair competition.

90.    Plaintiff has been, and absent injunctive relief, will continue to be, injured as a result of Defendant's aforesaid actions.

91.    Plaintiff has no adequate remedy at law.

92.    Plaintiff has been damaged as a direct and proximate result of the Defendant's unfair competitive practices in an amount to be determined at trial.

## COUNT III
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
### (Against Defendant New Association)

93.    Plaintiff incorporates paragraphs 1 through 92 as if fully set forth herein.

94.    Plaintiff has an advantageous business relationship with each of its dentists for whom it provides services.  Plaintiff has been engaged in this business for 140 years.  These business relationships are sources of actual and potential revenue for Plaintiff.

95.    Defendant was and is aware of the business relationships that exist between Plaintiff and the dentists in New York County, as well as the nature and extent of Plaintiff's reliance on them.

96.    In violation of New York law governing the establishment of component dental societies, Defendant unlawfully interfered and continues to interfere with Plaintiff's advantageous business relationships with its members by attempting to induce dentists in New York County to use Defendant's new venture and continue to do so.

97.    Defendant has acted with conscious disregard for Plaintiff's rights and with the intent to frustrate and interfere with the Plaintiff's expectations of continuing its established business relationships.

98.    Defendant's unlawful conduct has in fact diminished and damaged Plaintiff's advantageous business relationships and has made Plaintiff's dealings within the relationships substantially more difficult.

99.    As a result of Defendant's efforts to interfere with and damage Plaintiff's business relationships with its member dentists in New York County, Plaintiff has suffered significant damages, in an amount to be determined at trial.

**COUNT IV**
**UNFAIR AND DECEPTIVE TRADE PRACTICES**
**(Against Defendant New Association)**

100.    The NYCDS incorporates paragraphs 1 through 99 as if fully set forth herein.

101.    The New Association represented to the public that they are properly qualified and licensed to provide, *inter alia,* continuing education and professional training programs and other services in the State of New York.

102.    As a result, dentists reasonably relied on the representations of the New Association and as a result have been damaged and will continue to be damaged by the New Association's misrepresentation.

16

103.    By reason of their deliberate and willful acts as set forth above, the New Association engaged in deceptive acts and trade practice in the conduct of its business within the meaning of New York General Business Law § 349.

104.    The NYCDS has been, and absent injunctive relief will continue to be, irreparably harmed by the New Association's aforementioned actions.

105.    The aforesaid deceptive practices have injured the plaintiff in an amount to be determined at trial.

106.    Plaintiff also demands recovery of its attorney's fees.

## COUNT V
## VIOLATION OF GENERAL BUSINESS LAW SECTION 133
### (Against Defendant New Association)

107.    The NYCDS incorporates paragraphs 1 through 106 as if fully set forth herein.

108.    The New Association used a name with the intent to deceive and mislead the public.

109.    The New Association's use of this name is likely to cause, and has caused, confusion, mistake or deception.

110.    The New Association's formation violates New York law governing the establishment of component dental societies, to compete with the NYCDS and put it out of business.

111.    The New Association's use of the Mark constitutes a violation of New York General Business Law § 133.

112.    The aforesaid actions have injured Plaintiff in an amount to be determined at trial.

17

<u>COUNT VI</u>
**UNJUST ENRICHMENT**
**(Against Defendant New Association)**

113.    The NYCDS incorporates paragraphs 1 through 112 as if fully set forth herein.

114.    By its use of the Mark, a benefit was conferred upon the New Association of which the New Association has full appreciation and knowledge.

115.    The New Association was formed in violation of New York law governing the establishment of component dental societies, to compete with and put the NYCDS out of business.

116.    The New Association accepted and retained a benefit that rightfully belongs to Plaintiff.

117.    The New Association was unjustly enriched because it wrongfully used and retained a benefit from the NYCDS by the New Association's misappropriation of the Mark.

118.    The New Association should be ordered to disgorge its unlawful profits to the NYCDS.

**WHEREFORE**, Plaintiff respectfully prays for relief and judgment against Defendants as follows:

    a.    injunctive relief enjoining and restraining Defendants from distributing, displaying, and advertising any of Defendants' services using the Mark(s) or any confusingly similar trademarks;

    b.    injunctive relief enjoining and restraining Defendants from marketing, advertising or distributing any unauthorized services bearing any of Plaintiff's trademarks;

18

    c.  injunctive relief enjoining and restraining Defendants from marketing, advertising or providing any services in New York County in competition with Plaintiff;

    d.  injunctive relief enjoining and restraining Defendants from making any representations that the New Association is affiliated or associated with Plaintiff;

    e.  requiring Defendants and their successors, and assigns and all others acting in concert or in privity with Defendants, to account for and pay over to Plaintiff any gains, profits, enrichments, and advantages derived from Defendants' actions referred to herein;

    f.  requiring Defendants to pay Plaintiff statutory damages for each unauthorized use of Plaintiff's trademark referred to herein, in accordance with 15 U.S.C. section 1117(c);

    g.  requiring Defendants to pay Plaintiff treble damages for all damages suffered by Plaintiff resulting from Defendants' willful and intentional activities referred to herein, in accordance with 15 U.S.C. section 1117;

    h.  requiring Defendants to pay Plaintiff for its costs, including Plaintiff's attorney's fees and other expenses referred to herein, in accordance with 15 U.S.C. section 1117;

    i.  requiring Defendant New Association to pay Plaintiff damages, in an amount to be determined at trial, as a result of Defendant New Association's interference with Plaintiff's business relations;

    j.  requiring Defendant New Association to pay Plaintiff damages, in an amount to be determined at trial, as a result of Defendant New Association's deceptive trade practices, and recovery of Plaintiff's attorney's fees;

k.    requiring Defendant New Association to pay Plaintiff damages, in an amount to be determined at trial, as a result of Defendant New Association's use of a name with intent to deceive and mislead;

l.    an order directing Defendant New Association to disgorge its unlawful profits to Plaintiff, and;

m.    any and all other relief this Court deems just and proper.

Dated:  New York, New York
        June 2, 2008

HOLLAND & KNIGHT LLP

By
        Sean C. Sheely
        Amy B. Kletnick

Attorneys for Plaintiff
195 Broadway
New York, New York  10007
(212) 513-3200

# 5373015_v1

20



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE DISTRICT DENTAL SOCIETY OF THE
FIRST JUDICIAL DISTRICT, D/B/A THE NEW
YORK COUNTY DENTAL SOCIETY

                                Plaintiffs,

   - against -

THE NEW YORK COUNTY DENTAL
ASSOCIATION, INC., ELLIOTT MOSKOWITZ,
MELVYN LEIFERT, and ROBERT RAIBER

                              Defendants.

Case No. 08 CIV 5062 (LTS)(MHD)

**STIPULATION**

     WHEREAS, on June 4, 2008, plaintiff the District Dental Society of the First Judicial District, d/b/a the New York County Dental Society (the "Society") served and filed an order to show cause for a preliminary injunction and temporary restraining order; and

     WHEREAS, on June 4, 2008, counsel for the Plaintiff and counsel for the Defendants appeared before United States District Judge Laura Taylor Swain concerning plaintiff's application for a temporary restraining order; and

     WHEREAS, the parties stipulated on the record at the hearing on June 4, 2008 to the terms of a temporary restraining order wherein the Defendants agreed (i) to remove the website from the world wide web bearing the domain name www.nycdentalassociation.org, (ii) to cease and desist from distributing any communications bearing the name New York County Dental Association or New York County Dental Society, and (iii) to cease and desist from marketing, advertising or distributing any services using the name New York County Dental Association or New York County Dental Society; and

WHEREAS, on June 24, 2008, without any acknowledgement that Plaintiff's unfair competition and trademark claims have any merit whatsoever, Defendants represented to the Court that they are in the process of changing the name of the New York County Dental Association to a new name completely dissimilar to "New York County Dental Society"; and

WHEREAS, on June 25, 2008, the United States District Judge entered an Order to Show Cause requiring the Society to show cause, by written submission, why Plaintiff's request for preliminary and permanent injunctive relief on its trademark and unfair competition claims is not now moot.

IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned, as follows:

1.    The Defendants shall permanently refrain from distributing, displaying and advertising any services under the name New York County Dental Association.

2.    The Society hereby withdraws, with prejudice, its application for an order to show cause for preliminary injunction and temporary restraining order based on the Defendants' use of the name New York County Dental Association.  The Society reserves all rights to seek injunctive relief on other grounds.

3.    The parties are directed to Magistrate Judge Dolinger for scheduling discovery and the briefing of any motion practice on any remaining issues on July 15, 2008, at 2:00PM. 

4.    Defendants, who have indicated their intent to file a motion to dismiss in lieu of an Answer, will confer with Plaintiff and/or Judge Dolinger to set a briefing schedule for that motion and, accordingly, the Defendants time to Answer or otherwise respond to the Complaint is extended for 16 days until July 30, 2008.

DATED:  New York, New York
        July 2, 2008

HOLLAND & KNIGHT LLP
Attorneys for Plaintiffs

By: _____
        Sean C. Sheely
195 Broadway
New York, New York  10007
(212) 513-3200

NIXON PEABODY LLP
Attorneys for Defendants

By: _____
        Tamar Y. Duvdevani
437 Madison Avenue
New York, NY 10022
(212) 940-3710

SO ORDERED: _____

_____  7/9/2008
HON. LAURA T. SWAIN U.S.D.J.

# 5450423_v2